**IN THE  UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| ANTHONY BAYAD , | ) |
| | ) |
| | ) |
| Plaintiff  , | )           **CIVIL ACTION** |
| | ) |
| | ) |
| | )           **CASE NO. 05-cv-11005-GAO** |
| | ) |
| BRUCE BASTIAN, KATE DCAMP | ) |
| LYNN FRASER, CELLIA HERPER | ) |
| RICK JUSTICE, CISCO SYSTEMS | ) |
| | )           **HONORABLE   DISTRICT JUDGE O' TOOLE** |
| Defendants , | ) |

## PLAINTIFF *PRO SE*  RESPONSE TO DEFENDANTS ' MOTION TO DISMISS AS IT PREMATURE IN CIVIL RIGHTS CASE

### I.    BACKGROUND

Defendants Attorneys for Piper Rudnick Gray Carry introduced in
their defense the CASE NO. 04-10468-GAO '  Magistrate Report and
Recommendation that misstates the Facts, the law of Discrimination  and
the law of Civil rights, absent of discovery and prejudicing Bayad Pro Se,
such recommendations was summarized from the Defendants converting
Motion to dismiss introduced once before  of such motion under Rule 12 to
Summary Judgment as premature,  as they are doing right here in the
above forgoing litigation in Bastian et, al. They  stated in it opinions
and declaration of them selves ( attorneys),  acting as defendants and
absent of any third parties or defendants ' depositions, or production of
documents, or any means to command  third party or witness to disclose
as required by Fe.R.Civ.P.26(a)(2) accordingly by said rule governing the

1

discovery, and absent of the issuance of Subpoenas by the Magistrate
Clerk of the Court or such presiding authority, the Subpoenas were not
provided to Bayad including those already pending and were not obeyed in
good faith, docketed before the Court in the Case No. 04-10468-GAO
defendants John Chambers, Tony Savastano, and Carl Wiese. Additionally
these Attorneys have gambled in this law suit and took a major risk when
they demanded Magistrate Jude presiding in Chambers et, al. case No.
04-10468-GAO to denY Bayad with prejudice to conduct depositions as
it is against Bayad ` of rights, to deny him the request of production of
documents requested by Bayad as it is against his rights, nor to allow nor
to grant a third party to the law suit nor to allow filing of any counterclaim,
cross-claim as it against Bayad ` rights in accordance with the Federal
Rule of Civil Procedures said by such Rule, as it was agreed by the
Attorneys Piper Rudnick Gray Carry Proposed Pretrial Schedule that was
introduced to the Magistrate Judge who accept it and it is docketed and
dated November 12, 2004 before this Court in Chambers et, al, and they
did not live up to it. Exhibit A attached hereto of the proposed pretrial
schedule that was planned without the cons cent or involvement of Bayad
proceeding Pro Se.

## II.  **EMPLOYMENT AT WILL FACT**

The Underlying Title 42 Section 1981 and equal clause under the law
is to remove what Defendants' attorneys are introducing documents
calling it a contract of arbitration and unnecessary barriers to employment

2

when those barriers operate to discriminate on the basis of race, or other protected characteristics. Sink v. Knox County Hosp., S.D.Ind.1995, 900 F.Supp. 1065, and Section 1981 seeks to achieve two goals, compensation and deterrence. Therefore the Court must dismissed the defense inserted for the second time by defendants and their attorneys in regard to their Exhibit A of a employment 'contract attached to Attorney 'Affidavit of Bruce E. Falby, knowingly when Bayad was hired then, was no such employment contract between Cisco and Bayad Pro Se, his employment with Defendants Cisco was at all time "at will relationship", Cisco Defendants could terminate his employment at any time and vice versa on Bayad 'part. Defendants keep inserting that it was a contractual agreement binding upon Bayad 'termination with Cisco and Defendants, such defense is unfounded and there was never a contract between Bayad and Cisco and Defendants. Wherefore The Exhibit A is not a contract of employment but it is a release document stating voluntarily release and how can it be when it is demanded to be signed against Bayad ' will, this document was a well designed to evade liability for the purpose of Bayad ' termination, and well drafted a 30 to 40 pages to be signed against his will as they have done at Lucent Technology in close doors at present of Cisco Police and the police hiding in another office, waiting for action and an opportunity to arrest him if Bayad refuse to comply of such demand, and mandating Bayad to sign them without prior review or the reason for such release agreements, and knowingly it is an employment "at will" a discharge could be executed upon

3

Bayad at any time  ( they have the Surveillance Video evidencing the false imprisonment like wise at Lucent Technologies), and the last time  Bayad recall  refusing to sign  company documents regarding his employment with them as  it was employment at will relationship, while at Lucent Technologies Tampa Florida with the same Defendants Savastano and Wiese, such action was conducted in stressful environment close doors as in this  case, Bayad  ended up in fountain and in an ambulance and in hospital ,  was transferred to a confined prison against his will ( not a hospital), and was put homeless  and now unemployed and disabled (In the eyes of the Defendants Bayad is a Moroccan). Important to this suit, the Supreme Court' s 1989 decision in Pattterson  v. Mclean Credit Unio, 491 U.S.164,  109 SCt. 2363, 105 LE.d.2d 132 (1989). In patterson , the court held that section 1981' guarantee that all persons have " the same rights ... to make and enforce contracts... as is  enjoyed by white citizens"  includes the enjoyment of all benefits, privilege, terms and conditions of the contractual relationship. The only contractual relationship was introduce to Bayad was the Cisco business Code of Ethics and if such book is a considered as contract then Defendants have violated such contract on discriminatory ground, thus  their defense will stand and their liability will shift  for failing to  provide a safe employment environment absent from retaliation and discrimination,  as stated of such Cisco Book the Business Code of Conduct a presumably a contract between Bayad and Defendants Cisco. Hence employment at-will provides a sufficient

4

contractual relationship to support section 1981 claims.

## III. **STATEMENT OF FACT**

The attorneys ' motion to dismiss as they weighted heavy on time
limitation, the Magistrate Report and Recommendation  absent from any
discovery process as matter of rights, and  their motion under Rule 11
obstructing the  Motion introduce by Bayad Pro Se in this forgoing above
case in regard of the discriminatory animus the **Cisco-No-Hire-List**,
targeting the Minority similar situated as Bayad,  a misconduct of Race
Classification targeted only Minority in **violation of Equal Clause** and
our **Constitutional Laws**. The motion to dismiss is designed to shield
their clients' unlawful act of discrimination target only minority similar
situated as Bayad.  the Defendants did not carry its burden by
producing evidence of legitimate in  support to their Motion to dismiss
for its action, unfortunately Bayad Pro Se introduced in  support of his
complaint in part by  Preponderance of evidences of motive of history of
discrimination and in other such evidences are also dated May 30 2001
to present time ( Dkt.1 dated May 16, 2005) of   past history of
disparate treatment while back in Florida with Lucent Technologies
International Services and now with Cisco, are Provided and are
docketed ( Dkt.1) before the Court, including  the Discriminatory
Animus the Cisco-No-Hire-List created the year of 1997 and used to
present time to discriminate against Minorities similar Situated as
Bayad, where the Name of defendant Rick Justice, and Celia Harper-

5

guerra were found in it and it is also used by Human Resource of Cisco defendant Kate Dcamp, in conjunction of The Discriminatory animus Cisco Equal Employment Opportunity ( EEO) used by Cisco Human Resource Defendant Kate Dcamp to control the flow of Minority similar situated as Bayad into Cisco and it is docketed ( Dkt.1) before the court, and dated the year of 2003 and used to present time, unless the Court take action. The correspondence Between Liz Bacchi a human resource and Defendant Lynn Fraser is a correspondence of defamation and retaliation on discriminatory ground targeted Bayad Pro Se not to be hired at any future time with Cisco dated the year of 2004 and docketed ( Dkt.1) before the Court, and the Racial Audio intentionally sent by Defendant Bruce Bastian on about May 30, 2001 to disgrace, humiliate, defame, and discriminate against people with English accent and in particular Bayad , it was sent the same month of Bayad termination May 2001. Hence the time limitation has no barring in this case , because if we do the math we will find the evidence dates are within the 4 years time limitation as proscribed by such law and the Court. Therefore defendants chambers et, al are not Bastian et, al and Motion to dismiss has no foundation to dismiss Bayad ' complaint under the protection of Civil Rights and District Court has jurisdiction over Bayad Federally Protected Civil Rights. And failure to state claim is an old defense without ground to support their motion to dismiss.

6

## IV.    ANALYSIS OF LAW

The analysis applied to cases arises under Title of the Civil Rights

Reconstruction Era Statues, 42 **U.S.C** § 1981 the parent of § 1985, as

amended by the Civil Rights Act of 1991, the Civil Right Act of 1871,

section II Codified at 42 **U.S.C.** §1981, is the same analysis as applied in

the title VII. *Roxas  v.   Presentation  College*, 90 F.3d 310, 315 (8th Cir.

19960).    *Brown v. American  Honda Motor Co*., 939 F.2d 946, 949 ( 11th

1991), cert. denied, 502 **U.S**. 1058, 112 S.C.t. 935, 117 L.E.d.2d 106

(1997), and to pursue in analyzing Bayad' claims under the *McDonnell*

*Douglas* standard;    And under the *McDonnell Douglas* Standard  of proof,

Plaintiff Bayad has  established  *Prima Facie* case of intentional

discrimination in his early stage of this litigation and absent of discovery

that  will be with prejudice once again be  denied. In   *McDonnell Douglas*,

411 **U.S**. at 802. Bayad has met this  burden as stated in his complaint,

there was  a presumption that intentional discrimination has occurred.

## V.    COUNT I RACE DISCRIMINATION IN REHIRE ( SECTION 1981) AGAINST DEFENDANT LYNN FRASER BAYAD ' MANAGER, DEFENDANT KATE DCAMP  CELIA HARPER HUMAN RESOURCES, AND CISCO SYSTEMS.

In this early stage of this litigation in Bayad case, direct evidence is

evidence sufficient to prove discrimination without inference or

presumption. *Santiago-Tamos   v.  Centinnial  P.R.  Wireless Corp*. 217

F.3d 46, 56 (1st Cir.). ( Preponderance of Evidence docketed before the

Court).  During Bayad' termination with Cisco , was told "presumably" that

he was eligible for rehire within one year from the date of his termination of his employment with Cisco . Therefore Bayad applied as required by the employer Cisco Systems for multitude of positions (outside Massachusetts and in way far from Lynn Fraser), called requisites herein, on about September 30, 2003 to present time, a copy of all the Requisitions from the year 2003 to present time is attached as Exhibits to **Dkt.1**. *Under the Mc Donnell Douglas* theory in a claim of discrimination, Bayad established and carry the initial burden of establishing Prima facie case of discrimination. This has been done by showing in his complaint in this early stage **(1)** that he belong to a racial minority;

**( 2)** that he applied and was qualified for the job for which Cisco employer was seeking applicants; see Dkt1 page 20 line 56 **(3)** that, despite his qualifications, he was rejected; see Dkt.1 page 21 And **(4)** that his rejection, the position remained open and the employer continued to seek applicants from persons outside Bayad protect class as they admitted to it. The prove of inference of discrimination sufficient to preclude Motion to dismiss, Defendants and their attorneys introduced in their defense unfounded pretext of various explanation of their intentional discrimination calculated to evade the liability, **(1)** that the position that Bayad applied and was considered for it, was given to the best "**White Employee of the month**" at Cisco, as it is unbelievable unfounded pretext, Bayad rebutted such pretext as it is a lie, knowingly when an employee is nominated to such position as the best employee he or she is automatically promoted

8

and not transferred to another position as Bayad Proved it with the evidence provided by Mr. Amado Navas who was nominated the best Cisco employee World Wide Channel of the year and was given to enter to the leadership program to become a manager with more money and less travel and work, **(2)** the same Attorneys ( Bruce Falby) now in this litigation stated that the position was not provided to Bayasd because such position is located in San Jose California and Cisco is not Seeking applicants from Massachusetts. Hence Defendants and their attorneys various explanation and statements and records, attempt to conceal its true reason for taking the challenge action, which is considered a lie and a conduct aimed to evade this federal proceeding, wherefore, Defendants and their Lawyers, at different times, has given "**different**" and arguable inconsistent explanations for rehiring Bayad 'employment with Cisco and with other claims stated in other case and herein, Jury may infer that articulated reasons are pretexts for race discrimination. See *Dominguez-Cruz  v.  Shuttle Caribbean , Inc*. 202 F.3d  424, 431-32, (1st Cir.). (Defendant  inconsistent or changing Explanation). It is shame that they introduced such defense in various context and time frames in two separate cases Chamber et, al and now Bastian et, al. additionally there is a correspondence proving otherwise between Bayad ' Manager Lynn Fraser, Liz Bacchi and Mike Kent on about Wed, 07 2004, who considered Bayad such  position ,  and Liz Bacchi state in part and quoted in other as Follow: ( The Defamation and Retaliation)

9

" . . . From what I remember, Anthony called me on my cell phone and wanted to speak to me about the position that I had open in California for a Voice Specialist. He mentioned that he use to work for Lynn Fraser and that I could call her. I called Lynn directly and she was very hesitant on speaking with me. Since I was an internal HR Manager , she felt better. She said that **she would not recommend Anthony to come back to Cisco** that he worked for her for I believe 1 year. That he made commitments for his CCIE but **never took the lab or any classes**. I think he is still stating that he is taking the CCIE. She was nervous about speaking to me anymore about him she was Uncomfortable."

Liz Bacchi' evidence is evidence of direct evidence of Lynn Fraser' statements of Defamation,  retaliation, and discrimination  in references about Bayad employment history, and it is sufficient to raise inference of discrimination sufficient to preclude defendants ' motion to dismiss as it is early in this stage. She ( Fraser) deliberately bad mounted Bayad, placed an inaccurate information about him and gave him bad references on discriminatory ground and as she placed  bad evaluation  into his Cisco employment  file (**as Defendant Savastano has done with the Cisco-No-Hire-List**), She intent to cause harm to Bayad. Hence Bayad was told By Mr. Amado Navas as he submitted his Declaration filed before this court ( Dkt.1), a  Channel Manager with Cisco Tampa Florida Office that Tony Savastano visited his office and told him : " **...Tell that monkey Bayad that his days at Cisco are numbered, my friend Lynn Fraser will take care of him soon, that he and his people need to go back where they came from, ha, ha.....**

## VI.   COUNT II DISCRIMINATION IN HE SELECTION THE GRANTING THE CISCO CERTIFICATION INTERNETWORKING EXPERT THE "CCIE" TARGETED THE MINORITIES OR SIMILAR SITUATED AS BAYAD

Cisco Human Resources evidencing of correspondence between her and

Defendant Lynn Fraser stated in part and quoted in other as follow:
> ". . . She said that **she would not recommend Anthony to come back to Cisco** that he worked for her for I believe 1 year. **That he made commitments for his CCIE exams but never took the lab or any classes**. I think he is still stating that he is taking the CCIE. . ."

._____.

Her  discriminatory conduct of retaliation and defamation by this

defendant (Bayad ' Manager defendant Lynn Fraser)  as she  stated to Liz

Bacchi that he  (Bayad) **did not take any Cisco CCIE classes**, the fact

and evidence docketed before this Court  Bayad  took all the CCIE classes

offered by Cisco that guarantee the passing of such exam the CCIE, she

also  stated  Bayad  **did not take  the CCIE exams** the fact Bayad  took

the CCIE exams for the 11 times and Cisco Defendants  failed him on

discriminatory ground as the race is a factor Moroccan.  Bayad established

Prima Facie on  such Count II (CCIE). Bayad  proved *his Prima Facie* with

two elements,   **(1)** Direct evidence  or **(2)** using the *McDonnell* theory

*t*hat:   **(1)** Bayad is member of a protected class as proscribed by **§**

**1981.   (2)** he was qualify and met the Cisco  requirement of the Exam

and letter was sent to him welcoming him into the program.   **(3)** he was

denied the CCIE such exam on discriminatory ground .     and **(4)** someone

outside the protected group or class  were treated more favorably and

were given the CCIE exam.  The Fact drawn her and it is the [**Tier of Fact**]

function that  Defendants intentionally failed Plaintiff Bayad for the **11**

**times**,  denied him access to take the CCIE exam  retaliation ground,

11

Forced him to spent money and to travel to North America Canada, to South America Brazil, and to Europe Belgium, ( Defendant Lynn Fraser) Denied him of any reimbursement of any accrued expenses of the Cisco Certification Internetworking Expert (" CCIE"), even though Bayad was employed with Defendants Cisco, and Records shown that other non minority are being treated differently and even though they were given all the test in advance and helped to pass the test the CCIE, designed to favor non minority Engineers over the minority Engineers. Hence Bayad ' *Prima Facie* is established. Do_ _v._ _Tomes, 54 F.3d 9, C.A.1 ( Mass. 1995);_ (pointed to restriction on physician ' medical license making it impossible for physician to "**bump**" to another hospital). Hence the attorneys of Piper Rudnick Gray Carrey ' motion to dismiss has no ground in this litigation. Defendant Lynn Fraser played a major role with Chambers et, al. and her action made her liable and implicating her in this litigation and this including Cisco Systems and Human Resources Defendants Kate Dcamp and Celia Harper-guerra.

## VII. COUNT III THE DISCRIMINATION ANIMUS POLICY THE "CISCO-NO-HIRE-LIST"TARGETING ALL MINORITIES SITUATED AS BAYAD

Defendant Savastano classified the name of Bayad in it the Cisco-No-Hire-List and Broadcasted it in a secure website within Cisco ( a very known Cisco discriminatory policy list targeted only minorities), that only Cisco Executives as Defendants have access to it and has Bayad ' name to present time and with other minorities as follow:

" Do not hire/transfer/promote/Anthony Bayad Cisco Employee #73799 should you have question, contact Tony Savastano "

The list also is used to warn Cisco resellers and partners not to hire Bayad or any minorities 'names that is found in the list the **Cisco-No-Hire-List**. The discriminatory animus the Cisco –No-hire-List is docketed before this Court as Hard and Soft Copy. Bayad' direct evidence (Cisco-No-Hire-List) is evidence of discrimination animus introduced herein and with the accordance with *Fed.R.Evid*. 803(6), within records of regularly conducted activity of Defendants owners of Cisco; And this Court generally have admitted computer Records upon showing that the Records ( Cisco-No-Hire-List Defendants' Policy) fall within the Business Records Exception. *United States v. Moore*, 923 F.2d 910, 914 (1st Cir.). The discriminatory policy the Cisco-No-Hire, that defendants admitted to it and it is obvious as a record which fall within one of their daily discriminatory usage of business records. The list was created on about the year of 1997 and it is used to present time the year of 2005, designed and aimed to control and to discriminate against Minority companies , to promote only none minority as International Network Services, Coleman Technologies or similar situated white companies and absolutely no minorities, assigned Cisco Agents or Representatives in control and in constant contact with all of the Cisco partners/Resellers (employers), the list contains to present time a group of hundred to thousand of names of Minorities not to be hired (classification of race);

13

Additionally the policy Cisco-No-Hire-list is Mainly utilized by <u>the President of Cisco John Chambers</u> and his team of Executives including Cal Wiese, and Defendants Rick Justice, to invest his money and grow his wealth ( in violation of the Security Exchange laws) in white companies and his buddies like Sir Don McKinney the owner of the company the In International Network Services ("INS"), that was sold to Lucent Technologies for about 3 Billion dollars a great profit for John Chambers and Sir Don McKinney of INS (the facts is filed before this Court), also his Senior Vice President of Sales Rick Justice as his name found in it, used it ( Cisco-No-Hire-List) in daily basis to send his messages and his directions to all his sales' team in the fields ( sales' offices), about companies that has been picked and chosen to get all the sales leads and contracts ( absolutely not Bayad or others Minorities Business owners), and to completely control companies listed in it, to steal their best engineers from them If they decided to venture without Cisco Products or abide by Cisco 'terms, in addition John Chambers and his teams promote companies by granting their engineers the useless CCIE certifications as he has done with International Networking Services ("INS"), a statue that Cisco called it the Golden Partners and it means in Cisco terms that the company as INS has more than five [5] Certified Engineers as Cisco Certify Internetworking Expert ( "CCIE"), and the CCIE certification is also used to control the Market and boost the Shares of the Publicly traded companies as INS. The Senior Vice President of

14

Human Resources use the Cisco-No-Hire-List to this day, in Conjunction with another Cisco discriminatory animus the Cisco Equal Employment Opportunity ("EEO")that is sent to Minority applicants similar situated as Bayad, requesting them to identify their Race and Gender before being hired, utilized by Cisco Human Resources to entertain the maximum flow of Minorities applicant into Cisco Systems Inc, and it is administered by the  Director of Human Resources Celia Haper-Guerra.         The fact finder or the jury will find such unlawful race classification disturbing  whereof Defendants as  Chambers, Savastano, and Wiese the owners of Cisco acted outside of their daily scope of duty,    created a discriminatory policy such as this (Cisco-No-Hire-List) as it is morally and  ethical  wrong and constitutionally unlawful ,   to classify a block or   group of race minority and publish them ( as Bayad) in a data file on the Cisco Intra Website ( internal use) to intentionally deny them the right to pursue the American dream,  to interfere with their Civil Rights that all white person enjoy. *Strauder    v.   West Virginia*, 100 U.S. 303 (1879), and national origin, cf. City of *Cleburn   v.    Cleburn living Center*,  473 U.S. 432 (1985). --The Court   must subjects them to strict scrutiny review and that only a compelling interest, such as military  necessity,  can justify such classification and never less Defendants owners of a company such as  Cisco Systems,   do not process such power as it is a clear violation of similar situated persons to Plaintiff Bayad.  *Korematsu   v.   United* States, 323 U.S. 214 (1944), (military exclusion order,  during  World

15

War II , of persons of Japanese ancestry from certain West Coast areas
justified). Defendants ' Motion to Dismiss has no merit where direct
evidence is concrete and in support of Bayad ' claims in this litigation
against defendants Cisco Systems, Rick Justice, Cisco Human Resources
Kate Dcamp and Celia Harper.

## IX. COUNT IV CISCO DEFENDANTS PROMOTING HARASSMENT AND RACIAL DISCRIMINATORY JOKES TARGETED ALL MINORITIES OR SIMILAR SITUATED AS BAYAD

Statement of bias from a top Executives in the corporate hierarchy
as Defendant Bruce Bastian is enough to establish a *Prima Facie* case-
that is to raise an inference of discrimination sufficient to shift the burden
of explanation onto Defendants. In similarity see *Wright v. Southland
Corp.*, 187 F.3d 1287, 1297 ( 11th Cir. 1999);  See *Slattery v. Swiss
Reinsurance America*, 248 F.3d 87 ( 2d Cir. 2001). *Cordova v. State Farm
Insurance Companies,* 124  F.3d 1145 ( 9th Cir. 1997).( in Cordova
statement of bias of the hiring Manager referred to another employee a
"dumb Mexican"). Hence the inference of discrimination which is shifted to
the Defendants to articulated a legitimate reason for its action *. McDonne
Douglas Corp v. Green*, 411 U.S. at 792, 802. they were aware of the racial
audio aimed to defame Bayad as they admitted to it and failed to take
action. Prima Facie on this count is established as it is not rebut able .
On about **May 30th of 2001**, Bruce Bastian Cisco Manager sent an
electronic mail, whom reporting to Rick Justice and Carl Wiese both are
Cisco Vice President of Sales, Broadcasted a "**wicked racial Audio** "via

16

Electronic mail within the authority of Cisco 's way of mail
communications to coworkers with Cisco Systems Inc. The directive audio
that was sent, was controlled with "multifarious racial jokes" about
Moroccans and minorities similar situated as Mr. Bayad 's ineptitude to
verbalize the expression of the English tongue, clearly ridicule any and all
foreign nationals, sound stylish and feebleminded of the of English
palaver, and relate to employees getting terminated as Mr. Bayad. The
consignation of the multifarious racial jokes audio was titled
and state the following : **"hate this "Fucking job",** and **"I will be
fired"; "I have just been fired** ", **and By-By- everybody"; "I need a
"P" quick and my Etc...**), and it goes on and on. It is a shame.
Cisco Defendants and in particular Rick Justice with others Cisco
Executives admitted of Bruce Bastian' misconduct of sending the racial
audio email, and as quoted from their email of Correspondence; the email
was racist in nature and against all <u>minorities with broken English</u> as Bayad
(It was Cisco 'policy and customs to promote racism). Unfortunately Cisco
Defendants Kate Dcamp, Rick Justice, and Celia Harper, do not terminate
or reprimand White Employees, and their authorities is only applied to
only Minorities as Bayad, if they violate the Cisco Business conduct.

**<u>A copy of the Racila audio is attached to the complaint Dkt.1</u>** as a
copy of the email and CD contains multifarious sound as word perfect ,
click and listen. Tony Savastano and Carl Wiese the Cisco Vice President of
Cisco 'pattern of discrimination was shown also during Bayad ' <u>termination</u>

17

of employment with  Lucent , Broadcasted a racist Electronic Email Title; "
It is done" This Email was sent by a white  Employee and a Manager
reporting to Tony  Savastano.  The Email was delivered the day of Bayad
termination of employment with Tony   Savastano and Wiese, to the entire
Bayad ' coworkers  and to the Defendants, and the e: mail express
antipathy toward foreigners and toward Plaintiff Bayad in particular, and it
used ethnic epithets to describe Plaintiff Bayad .  The e: mail further
expressed the  hope that writer   (was promoted by Tony Savastano   as he
is very close to them) could make Plaintiff  Bayad look bad and have him
terminated;  The " it's Done!"  e-mail states: ( Mike Reed the author is a
high school drop out and could not spell the word "**NIGER**" and stated as
follow:

._____.

**" From:    Mike Reed**

**To        Bay, BBRewer**  ( Bay & BBRewer correspond to a
group of  Employes)

**Date      1/24/97 12: 25 am**

**Subject :  It's done!**

Bruce, I need your help we need to stop these dammned
foreigners they think they can come over to my country and
first of all take our jobs, then be our bosses. Anthony Bayad
needs to be stopped or before you know it he will be running
this company. He is nothing but a sand nigger or dirty arab or
something like that.

18

> I think that with your help , we can make him look bad in the
> eyes of upper management, so we can finally get rid of him
> and his spick boss, once and for all.
> Tony ( means Defendant Savastano herein) already has a plan
> Scott Boda will get certified in the near future, and two other
> people they told to get certified, we can finally get rid of them,
> Even if they are right in saying most people in this company
> don't like to work hard , and all they do is play games they
> should not come in and make waves.
> Mike Reed "

Cisco Defendants Kate Dcamp Vice president of Human Resources , Rick

Justice and Carl Wiese both Cisco Vice President of Sales ( this include their

Cisco President John Chambers)  are promoting racism and ignoring the

Law as the fact drawn herein. The Sales team or  group led by   Director of

Sales Chuck Robbins and Mountford  Paul ( both report to Rick Justice and

Carl Wiese) disgracefully  broadcasting E:Mail to their sales team members

( all White persons),the improper word –"***NIGER***" with  an "***L***" and the ord

"***PUPIL***"  for  "***BLACK***" in their Cisco electronics correspondence to other

white Cisco Sales Engineers.

## X.    COUNT V THE CISCO DISCRIMINATORY POLICY THE EQUAL EMPLOYMENT OPPORTUNITY ("EEO") TO SELECT WHITE APPLICANTS OVER NONE WHITE APLICANTS OR SIMIALR SITUATED AS PRO SE BAYAD

Massachusetts law  States the following :

> " Employer cannot ask employees about their race, origin, ethnicity,
> disability, and age, during the interview process, but Employer can
> ask only about the candidate qualifications background ."

deliberately sent an   employment" e-mail" of correspondence to Bayad

requesting  him to provide his Ethnic,   race background , and his genders

19

during the interview process and states the following:

> **"From**:        **Cisco Systems [vsid@cisco.com]**
> **Sent:**         **Wednesday, December 03, 2003 6:01 PM**
> **To:**           **Anthony Bayad**
> **Subject:**      **Cisco Systems:: Voluntary Self Identification**
>
> Dear Anthony,
>
> To assist Cisco Systems, Inc. in collecting government required candidate **EEO** ( **Equal Employment Opportunity**) information, please go to the website address listed below. Once there, enter your e-mail address in the e-mail address field, this will be used to identify you. Then enter the unique password ( include below. Submit the information , and you will be logged on to Voluntarily self Identification form. Once you have logged in, please complete and submit the form **.......** Submission of this information is strictly voluntarily and you may choose to decline to state **your race and gender** once you are logged on the form. Refusal to complete this information …..**"**

The Senior Vice President of Human Resources defendants Kate Dcamp

And Celia harper-guerrra use the Discriminatory Animus the Cisco-No-

Hire-List to this day, in Conjunction with another Cisco discriminatory

animus the Cisco Equal Employment Opportunity ("EEO") that is sent to

Minority applicants similar situated as Bayad, requesting them to identify

their Race and Gender before being hired, utilized by Cisco Human

Resources to entertain the maximum flow of Minorities applicant into

Cisco Systems Inc, and it is administered by the Director of Human

Resources Celia Haper-Guerra. Hence Defendants 'motion to dismiss has

no merit where there is prove of discrimination implicating Defendants

Cisco Systems, Human Resources Kate Dcamp and her director Celia

Harper-Guerra.

## XI.  COUNT VI BREACH OF ORAL CONTRACT AND CONTRACTUAL OF OBLIGATION

Bayad established with the direct evidence of the  three (3)  bases

for Defendants ' s breach of contract –One (1) Oral Contract binding in

Massachusetts  and discriminatory breach of contract  against his

Business the Company *Global Internetworking Consulting*- two  (2)

Defendants Cisco discriminatory intent  and with retaliation  in denying

him the  grant of the Cisco  Certify Internetworking Expert that other

white persons were granted and enjoyed that privilege- three (3) and

Defendants Cisco ' failure to follows its own policy and procedures to

protect Plaintiff  Bayad form discrimination and retaliation,  as it was

alleges a cause of action for breach of contract:

> "  **Investments in Private Companies**:   Cisco employees will
> occasionally find them selves in a position to invest in Cisco partners or
> customers. It is imperative that employees presented with such opportunities
> understand the potential conflict of interest that may occur in these
> circumstances. Cisco employees must always serve        our shareholders first.
> Investing in companies that Cisco has an actual or potential        business
> relationship with may not be in our shareholders' best interests.  The guidelines
> a re intended to cover such circumstances:…"

._____.

Defendants failed to follow its own policies and procedures on evaluating,

hiring, and providing Equal Employment Opportunity and by failing to

truthfully investigate and reprimand Bruce Bastian, Sir Chuck Robbins, and

Sir MountFord the authors of the hateful  e-mail and the audio targeting

Minorities similar situated as Bayad at Cisco.

21

## XII.  COUNT VI  DEFAMATION

Bayad proved his defamation count VI that Defendant Lynn Fraser

"published" A false statement about him to third party Liz Bacchi that

caused him not to be hired and caused him loss economic or is Per Se

defamatory ( actionable without proof of economic). Proof of such

defamatory is

> " ... I called Lynn directly and she was very heisted on
> speaking with me. Since I was an internal HR Manager, she felt
> better. She said that she would not recommended Anthony to
> come back to Cisco that he worked for her I believe 1 year,
> That he made commitments for his CCIE but never took the lab
> or any classes. I think he still stating that he is taking the
> CCIE."

It is a shame as she is also aware that  Cisco Human Resources Kate

Dcamp and Celia Harper-Guerra has my name  in the Cisco No-Hire-List at

the request of Savastano and Wiese as  in the CCIE-No-Minorities as the

Cisco-Equal-Employer-Opportunity the "EEO" targeted minorities only as

Bayad.  I was told By Mr. Amado Navas as he submitted his Declaration

filed before this court, a  Channel Manager with Cisco Tampa Florida Office

that Tony Savastano visited his office and told him : " **...Tell that monkey**

**Bayad that his days at Cisco are numbered, my friend Lynn Fraser**

**will take care of him soon, that he and his people need to go back**

**where they came from, ha, ha.....**

In addition and on the same Month of my termination, May the year of

2001 Bruce Bastian     Cisco manager reporting to Rick Justice and Carl

Wiese both are Cisco  Vice President of Sales,  Broadcasted  a "**wicked**

22

**racial Audio** "via Electronic mail within the authority of Cisco 's way of mail communications to coworkers with Cisco Systems Inc. The directive audio that was sent, was controlled with "multifarious racial jokes" about Moroccans and minorities similar situated as Bayad 's ineptitude to verbalize the expression of the English tongue. Although the Supreme Judicial Court, for the first time, conclude[d] that defamatory publication may result from physical actions of a defendant, in the absence of written or spoken communication. Hence Defendants ' motion to dismiss has not merit and should be strike.

## XIIII.    CONSPIRACY COUNT VII

Defendants in violation of **Title 42 § 704 of Title VII**)

The fact Bayad upon being spotted advised Defendants Lynn Fraser , Rick Justice, John Chambers , Celia harper-Guerra, and Kate Dcamp of the Discriminatory conduct executed upon Bayad while employed with Savstano and filing the charge of discrimination with the Equal Employment Opportunity (EEOC), thereafter the law suit was filed in Florida against Savastano on about the year of 1997, who proceeded with discrimination against Bayad the year of 2000 to this day, while Bayad was employed with him ( Savastano) at Cisco Lexington Massachusetts. Hence Bayad' employment with Cisco and with the Defendant Savastano the year of 2000, put Bayad within **The Protective or Equal protection Clause of Law as proscribed of Title 42 § 704 of the Title VII**.    Bayad established the Count (§1985) of Conspiracy against Defendants By

23

**(1)** Defendants acted in concert outside of the scope of their employment and discriminated for personal reason because Bayad complaint in writing and person to them of the decimator actions taken against Bayad as the Cisco-No-Hire-List by their Executive Tony Savastano dated while Back at Lucent Technologies Florida, **(2)** within the scope of their supervisory but in ways which did not further the company legitimate business concern, and **(3)** Defendants acted in connection with multiple acts of discrimination ( stated in Dkt.1). *Rackin v. University of Pennsylvania*, 386 F. Supp. 992, 1005- 1006 (E. D. Pa. 1974). Additionally the first Circuit, in *Harrison v. Brooks* 1st Cir. 1975, 519 F.2d 1358, adopted and explained the elements of a cause of action under the § 1985 (3) first set forth by the Supreme Court in *Griffin v. Breckenridge* 1971, 430 **U.S**. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338. In Harrison the Court states that the Complaint must allege facts showing that the Defendants conspired against the Plaintiff because of their membership in class (or group) and that the criteria defining the class were " invidious". 519 F.2d at 1360. *Personnel Administrator of Massachusetts v. Feeney*, supra 442 **U.S**. at 273, 99 S.Ct. at 2293. Thus Courts have held that an actionable section **1985 (3)** claim is presented have generally done so only where individuals Defendants are named and the corporation ( such as Cisco ), and Defendants acted outside of the scope of their employment or for personal reasons, a*nd* Cross Correctly we must points out that case law does not completely

24

foreclose that possibility of applying § 1985 (3); *Great America Savings and Loan Ass'n v. Novotny*, 442 **U.S.** 366, 372 n. 11, 99 S.Ct. 2345, 2349 n.11, 60 L.E.d. 2d 957 (1979); See also *Stathos v. Bowden,* 514 F. Supp.1288, 1291-1293 (D.Mass.1981).

## XIV. **COUNT IX FALSE IMPRISONMENT**

False imprisonment is the intentional, unjustified confinement of Bayad, directly or indirectly, by force or threat, of which Bayad is conscious and which resulted in his emotional harm. Defendant Lynn Fraser provided a obscured documents a well designed to evade liability in regard of Bayad ' termination, and well drafted a 30 to 40 pages and in very stressful environment at close doors at present of Cisco Police and the Lexington police hiding in another office waiting for action , mandating Bayad to sign them without prior review or what is the reason for such agreements ( they have the Surveillance Video evidencing the false imprisonment like wise Lucent), and the last time Bayad recall refusing to sign company documents in close doors such in this case with Defendant Tony Savastano and Carl Wiese, he ended up in fountain and in an ambulance and in hospital , was transferred to a confined prison against his will( not a hospital), and was put homeless and now unemployed and disabled (In the eyes of the Defendants Bayad is a Moroccan). This unlawful act caused Bayad a flash back and brought him back a trauma of the hate Crime orchestrated by Savastano while back at Lucent Technologies and now the same reoccurrences intentionally executed upon

25

Bayad, and Defendants introduced their Motion to dismissed that has no merit in this litigation.

## XV.   COUNT X INTENTIONAL INFLICT OF EMOTIONAL DISTRESS & ENJOYMENT OF LIFE

A claim for negligent infliction of emotional distress requires that Bayad ' emotional injuries flow from physical injuries. Bayad was injured physically and emotionally in Florida Lucent and now Massachusetts Cisco. Defendants intentionally created the same stressful environment at Cisco resulted a flash back of Florida and Defendants Lucent, Savastano and Wiese, brought the trauma back to him during his employment with them at Cisco of the abuse executed upon him at Lucent Technologies Florida. It made it more critically very serious .

## XVI.  COUNT XI RETALIATION

Defendants are in  violation of  Title  42 § 704 of Title VII and protected conduct or  expression of the  complaint of Discriminatory conduct (**Cisco-No-H-ire-List**) executed by Savastano against Bayad and was initiated , made aware of it to Human Resources Defendants Kate Dcamp and Celia Harper accordingly to Cisco open door policy, and was also communicated to Defendants Lynn Fraser. Hence  Bayad established Prima Facie on the Count of Retaliation against Defendants. Bayad satisfied   three elements that  make out a *Prima Facie* case of retaliation; **(1)** Plaintiff engaged in statutorily protected conduct or expression;  **( 2)** Plaintiff suffered an adverse action subsequently to such activity;   and **(3)** there was a casual link between the protected conduct or  expression and

26

the adverse action. *See Cones v. Shalala*, 1999 F.3d 512, 81 FEP
Cases (D.C. Cir. 2000). In similarity to Bayad the Cones case, the Court
held that Plaintiff ( as Bayad) produce sufficient evidence to support a
jury finding that employer (as Defendants) 'articulated reason for
transferring another employee into the position to which Plaintiff sought –
a downsizing – was a pretext for **Retaliation against the plaintiff**,
sufficient to **preclude summary judgment** for the employer. in
similarity *White v. New Hampshire Department of Corrections*, 221
F.3d 254, 83 FEP Cases 851 ( 1st Cir. 2000). Additionally *Rhoads v
FDIC*, 257 F.3d 373, 11 AD Cases 1776, 7 WH Cases 2d. 129 (4th Cir.),
cert. denied, 535 U.S. 933 (2002). The court held that to prevail on a
claim of retaliation a Plaintiff ( such as Bayad) must either: **(1)** offer
sufficient direct and indirect evidence of retaliation, [**or**] **(2)** proceed
under a burden shifting of proving. Bayad established *Prima Facie* in this
Count of Retaliation.

## XVII.COUNT XI GENERAL LAW MASSACHUSETTS PART I TITLE XXI, CHAPTER 149 § 52 (c)

The fact Bayad could not find job in his field an employed to this date
because of Cisco Defendants whom are interfering constantly and defaming
him on discriminatory ground the race factor Moroccan. Bayad has once
demanded Cisco to comply with the Rules of law and this include the
Massachusetts law , the access to his Personnel Records ( it is the law)
[e]mployers in Massachusetts are required to provide employees with an

27

opportunity to review their personnel records   and the relevant law is Codified

in general laws of *the Commonwealth law of Massachusetts at Part I , Title*

*XXI, Chapters 149, section 52 c.*

## XVIII.   COUNT XII DENIAL OF ACCESS & EXCLUDE BUSINESS ON DISCRIMINATORY GROUND M.G.L.A c.266. § 120

Defendants denied Bayad access to Cisco or to any potential

Customers as they have done with potential employers,  therefore

Massachusetts criminal trespass  statue does not enable Business ( as

Defendants Cisco) to exclude business licenses on discriminatory grounds

as they have done  here with Bayad and his business as he is legally a

Cisco Partner and reseller**. *M. G. L.A.c.266.  § 120***.

### CONCLUSION

Primary objective of equal employment opportunity and race equality

provisions of the Title 42 Section 1981 and 1985(3), equal clause and the

right of due process, was to achieve equality of employment opportunities

and remove barriers that have operated in the past to favor an identifiable

group of white persons as defendants over minorities similar situated as

Bayad, and to make persons such as Bayad whole for injuries suffered on

account of unlawful employment discrimination, and to insure equality of

opportunity for every member of minority similar situated as Bayad.

Therefore this case brought under the Civil Rights Act should not be

dismissed at the pleading stage unless it appears to a certainty that Bayad

Pro Se would be entitled to no relief under any state of facts which could

be proved in support of his claim. Bayad ' evidence filed before the Court

28

are concrete in nature and barred from time limitation and all of them are

dated 2001 to 2004.

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that a true and correct copy of PLAINTIFF *PRO SE* RESPONSE TO DEFENDANTS ' MOTION TO DISMISS AS IT PREMATURE IN CIVIL RIGHTS CASE was furnished via U.S. mail to : Bruce E. Falby, BBO #544143, PIPER RUDNICK LLP,One International Place, Boston MA 02110, this . 10 . day of    June  2005

*PRO SE* ANTHONY BAYAD
MAGOUN AVENUE
MEDFORD, MA 02155
(781)704-8982

ANTHONY BAYAD

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANTHONY BAYAD, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-10468-GAO |
| JOHN CHAMBERS, PATRICIA RUSSO, ) | |
| ANTHONY SAVASTANO, and ) | |
| CARL WIESE, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' PROPOSED PRETRIAL SCHEDULE

Defendants John Chambers, Anthony Savastano, and Carl Wiese propose the following pretrial schedule:

1)      Rule 26(a)(1) Disclosures must be completed by November 26, 2004.

2)      Document Requests: First requests for production of documents must be served by December 13, 2004. Further requests may be served as required but no document request may be served later than 30 days prior to the close of written discovery as set forth below.

2)      Interrogatories: Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule 33.1 of the Local Civil Rules of the District of Massachusetts must be served by December 13, 2004. No other interrogatories are permitted except by express permission of the Court.

3)      All written discovery, with the exception of Requests to Admit, must be completed by March 18, 2005.

4)      Depositions: Depositions may not be noticed or taken prior to the close of written discovery on March 18, 2005. All fact depositions must be completed by May 13, 2005.

5)      Experts: Every proponent of a claim (including any counterclaim, cross-claim, or third-party claim) that intends to offer expert testimony in respect of such claim must make the disclosures required by Fed. R. Civ. P. 26(a)(2) by May 27, 2005. Every party-opponent of such claim that intends to offer expert testimony in opposition to such claim must make the

disclosures required by Fed. R. Civ. P. 26(a)(2) by <u>June 20, 2005</u>. All experts may be deposed but such depositions must occur prior to <u>July 27, 2005</u>.

      6)     Requests to Admit: All Requests to Admit must be served no later than <u>June 27, 2005</u>.

      7)     All discovery is to be completed by <u>July 27, 2005</u>. Interim deadlines set forth above may be extended on consent of all parties without application to the Court but in no event shall such extension result in an extension of this discovery completion deadline.

      8)     Dispositive motions must be filed on or before <u>August 27, 2005</u>.

Defendants' Local Rule 16.1D(3) Certifications are attached hereto.

Respectfully submitted,

DEFENDANTS JOHN CHAMBERS,
ANTHONY SAVASTANO and
CARL WIESE
By their attorneys,

Bruce E. Falby, BBO #544143
PIPER RUDNICK LLP
One International Place
Boston, MA 02110
Phone: (617) 406-6000
Fax:   (617) 406-6100

Dated: November 12, 2004

- 2 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTHONY BAYAD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 04-10468-GAO |
| JOHN CHAMBERS, PATRICIA RUSSO, | ) | |
| ANTHONY SAVASTANO, and | ) | |
| CARL WIESE, | ) | |
| | ) | |
| Defendants. | ) | |

## **CERTIFICATE PURSUANT TO LOCAL RULE 16.1(D)(3)**

This will certify that, pursuant to Local Rule 16.1(D)(3), defendants John Chambers,

Anthony Savastano, and Carl Wiese, and their counsel have conferred with a view to

establishing a budget for the cost of conducting the full course - and various alternative courses -

for the litigation and that they have considered the resolution of the litigation through alternative

dispute resolution programs such as those outlined in Local Rule 16.4.

Respectfully submitted,

DEFENDANTS JOHN CHAMBERS,
ANTHONY SAVASTANO and
CARL WIESE
By their attorneys,

Bruce E. Falby, BBO #544143
PIPER RUDNICK LLP
One International Place
Boston, MA 02110
Phone: (617) 406-6000
Fax:    (617) 406-6100

John Chambers, II

Anthony Savastano

_____

Carl Wiese

Dated: November 9, 2004

-NEWY1:3871572.v1

John Chambers
_____

Anthony Savastano
_____

Carl Wiese   /1-11-04
_____

Dated: November 9, 2004

~NEWY1:3871572.v1

**1987 Amendment**

The amendment is technical. No substantive change is intended.

**1993 Amendments**

**Subdivision (1).** The last sentence of revised subdivision (a) not only includes the substance of the provisions formerly contained in the second paragraph of Rule 30(b)(2), but adds a provision to deal with the situation when a party, receiving minimal notice of a proposed deposition, is unable to obtain a court ruling on its motion for a protective order seeking to delay or change the place of the deposition. Ordinarily a party does not obtain protection merely by the filing of a motion for a protective order under Rule 26(c); any protection is dependent upon the court's ruling. Under the revision, a party receiving less than 11 days notice of a deposition can, provided its motion for a protective order is filed promptly, be spared the risks resulting from nonattendance at the deposition held before its motion is ruled upon. Although the revision of Rule 32(a) covers only the risk that the deposition could be used against the non-appearing movant, it should also follow that, when the proposed deponent is the movant, the deponent would have "just cause" for failing to appear for purposes of Rule 37(d)(1). Inclusion of this provision is not intended to signify that 11 days' notice is the minimum advance notice for all depositions or that greater than 10 days should necessarily be deemed sufficient in all situations.

**Subdivision (c).** This new subdivision, inserted at the location of a subdivision previously abrogated, is included in view of the increased opportunities for video-recording and audio-recording of depositions under revised Rule 30(b). Under this rule a party may offer deposition testimony in any of the forms authorized under Rule 30(b) but, if offering it in a nonstenographic form, must provide the court with a transcript of the portions so offered. On request of any party in a jury trial, deposition testimony offered other than for impeachment purposes is to be presented in a nonstenographic form if available, unless the court directs otherwise. Note that under Rule 26(a)(3)(B) a party expecting to use nonstenographic deposition testimony as substantive evidence is required to provide other parties with a transcript in advance of trial.

**HISTORICAL NOTES**

**Effective Date of Amendment Proposed November 20, 1972**

Amendment of this rule embraced by the order entered by the Supreme Court of the United States on November 20, 1972, effective on the 180th day beginning after January 2, 1975, see section 3 of Pub.L. 93–595, Jan. 2, 1975, 88 Stat. 1959, set out as a note under section 2071 of Title 28.

## Rule 33. Interrogatories to Parties

**(a) Availability.** Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by any officer or agent, who

shall furnish such information as is available to the party. Leave to serve additional interrogatories sha be granted to the extent consistent with the principle of Rule 26(b)(2). Without leave of court or writte stipulation, interrogatories may not be served befor the time specified in Rule 26(d).

**(b) Answers and Objections.**

(1) Each interrogatory shall be answered sep rately and fully in writing under oath, unless it objected to, in which event the objecting party sha state the reasons for objection and shall answer the extent the interrogatory is not objectionabl

(2) The answers are to be signed by the perso making them, and the objections signed by th attorney making them.

(3) The party upon whom the interrogatori have been served shall serve a copy of the answe and objections if any, within 30 days after th service of the interrogatories. A shorter or long time may be directed by the court or, in the absen of such an order, agreed to in writing by the parti subject to Rule 29.

(4) All grounds for an objection to an interrog tory shall be stated with specificity. Any grou not stated in a timely objection is waived unless t party's failure to object is excused by the court 1 good cause shown.

(5) The party submitting the interrogatories m move for an order under Rule 37(a) with respect any objection to or other failure to answer interrogatory.

**(c) Scope; Use at Trial.** Interrogatories may late to any matters which can be inquired into und Rule 26(b)(1), and the answers may be used to 1 extent permitted by the rules of evidence.

An interrogatory otherwise proper is not necessa ly objectionable merely because an answer to 1 interrogatory involves an opinion or contention th relates to fact or the application of law to fact, but 1 court may order that such an interrogatory need 1 be answered until after designated discovery has be completed or until a pre-trial conference or other la time.

**(d) Option to Produce Business Records.**

Where the answer to an interrogatory may be rived or ascertained from the business records of 1 party upon whom the interrogatory has been serv or from an examination, audit or inspection of su business records, including a compilation, abstract summary thereof, and the burden of deriving or asc taining the answer is substantially the same for party serving the interrogatory as for the pa served, it is a sufficient answer to such interrogat to specify the records from which the answer may derived or ascertained and to afford to the pa

freeze the present scheme, making future change even more difficult.

**Table Showing Rearrangement of Rules**

| Existing Rule No. | New Rule No. |
| --- | --- |
| 26(a) | 30(a), 31(a) |
| 26(c) | 30(c) |
| 26(d) | 32(a) |
| 26(e) | 32(b) |
| 26(f) | 32(c) |
| 30(a) | 30(b) |
| 30(b) | 26(c) |
| 32 | 32(d) |

## Rule 26. General Provisions Governing Discovery; Duty of Disclosure

**(a) Required Disclosures; Methods to Discover Additional Matter.**

(1) **Initial Disclosures.** Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and

(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(E) The following categories of proceedings are exempt from initial disclosure under Rule 26(a)(1):

(i) an action for review on an administrative record;

(ii) a petition for habeas corpus or other proceeding to challenge a criminal conviction or sentence;

(iii) an action brought without counsel by a person in custody of the United States, a state, or a state subdivision;

(iv) an action to enforce or quash an administrative summons or subpoena;

(v) an action by the United States to recover benefit payments;

(vi) an action by the United States to collect on a student loan guaranteed by the United States;

(vii) a proceeding ancillary to proceedings in other courts; and

(viii) an action to enforce an arbitration award.

These disclosures must be made at or within 14 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) discovery plan. In ruling on the objection, the court must determine what disclosures—if any—are to be made, and set the time for disclosure. Any party first served or otherwise joined after the Rule 26(f) conference must make these disclosures within 30 days after being served or joined unless a different time is set by stipulation or court order. A party must make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

(2) **Disclosure of Expert Testimony.**

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing

freeze the present scheme, making future change even more difficult.

Table Showing Rearrangement of Rules

| Existing Rule No. | New Rule No. |
| --- | --- |
| 26(a) | 30(a), 31(a) |
| 26(c) | 30(c) |
| 26(d) | 32(a) |
| 26(e) | 32(b) |
| 26(f) | 32(c) |
| 30(a) | 30(b) |
| 30(b) | 26(c) |
| 32 | 32(d) |

## Rule 26. General Provisions Governing Discovery; Duty of Disclosure

**(a) Required Disclosures; Methods to Discover Additional Matter.**

**(1) Initial Disclosures.** Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by court order, a party must, without awaiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;

(C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and

(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

(E) The following categories of proceedings are exempt from initial disclosure under Rule 26(a)(1):

(i) an action for review on an administrative record;

(ii) a petition for habeas corpus or other proceeding to challenge a criminal conviction or sentence;

(iii) an action brought without counsel by a person in custody of the United States, a state or a state subdivision;

(iv) an action to enforce or quash an administrative summons or subpoena;

(v) an action by the United States to recover benefit payments;

(vi) an action by the United States to collect on a student loan guaranteed by the United States;

(vii) a proceeding ancillary to proceedings in other courts; and

(viii) an action to enforce an arbitration award.

These disclosures must be made at or within 1 days after the Rule 26(f) conference unless a different time is set by stipulation or court order, unless a party objects during the conference that initial disclosures are not appropriate in the circumstances of the action and states the objection in the Rule 26(f) discovery plan. In ruling on the objection the court must determine what disclosures—any—are to be made, and set the time for disclosure. Any party first served or otherwise joined after the Rule 26(f) conference must make the disclosures within 30 days after being served joined unless a different time is set by stipulation court order. A party must make its initial disclosures based on the information then reasonable available to it and is not excused from making disclosures because it has not fully completed investigation of the case or because it challenges sufficiency of another party's disclosures or because another party has not made its disclosures.

**(2) Disclosure of Expert Testimony.**

(A) In addition to the disclosures required paragraph (1), a party shall disclose to other parties the identity of any person who may used at trial to present evidence under Rules 7 703, or 705 of the Federal Rules of Evider

(B) Except as otherwise stipulated or direc by the court, this disclosure shall, with resp to a witness who is retained or specially ployed to provide expert testimony in the case whose duties as an employee of the party re larly involve giving expert testimony, be acc panied by a written report prepared and sig by the witness. The report shall contain a c plete statement of all opinions to be expres and the basis and reasons therefor; the data other information considered by the witness forming the opinions; any exhibits to be use a summary of or support for the opinions; qualifications of the witness, including a lis all publications authored by the witness wi the preceding ten years; the compensation t paid for the study and testimony; and a lis