UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,

                    Plaintiff,

        v.

CISCO SYSTEMS, INC., BRUCE
BASTIAN, KATE DCAMP, LYNN
FRASER, CELIA HARPER-GUERRA, and
RICK JUSTICE,

                    Defendants.

CIVIL ACTION NO. 05-11005 GAO

## AFFIDAVIT OF BRUCE E. FALBY

I, Bruce E. Falby, declare as follows:

1.      My name is Bruce E. Falby.  I am a partner at the law firm DLA Piper Rudnick

Gray Cary US LLP.  I represent the defendants in the above captioned matter.  I also represent

the defendants in Bayad v. Chambers, Civil Action No. 04-10468-GAO (D. Mass).

2.      Attached hereto as Exhibit A is a true and accurate copy of the Court's

Memorandum and Order in Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO

(D. Mass), dated October 25, 2004.

3.      Attached hereto as Exhibit B is a true and accurate copy of Magistrate

Judge Bowler's Report and Recommendation Re:  Defendants' Motion for Summary Judgment

(Docket Entry #65); Plaintiff's Cross Motion for Summary Judgment (Docket Entry #73) in

Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO (D. Mass), dated May 25, 2005.

Signed under the pains and penalties of perjury this 1st day of July 2005.

                    Respectfully submitted,

                    /s/ Bruce E. Falby

                    Bruce E. Falby, BBO #544143
                    DLA PIPER RUDNICK GRAY CARY US LLP
                    One International Place, 21st Floor
                    100 Oliver Street
                    Boston, MA  02110-2613
                    (617) 406-6000 (*telephone*)
                    (617) 406-6100 (*fax*)

Dated:  July 1, 2005

- 2 -

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10468-GAO

ANTHONY BAYAD,
Plaintiff,

v.

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and CARL WIESE,
Defendants.

MEMORANDUM and ORDER
October 25, 2004

O'TOOLE, D.J.

Pro se plaintiff, Anthony Bayad, brings this employment discrimination action against

individual defendants John Chambers, Patricia Russo, Anthony Savastano, and Carl Wiese, seeking

monetary damages and declaratory and injunctive relief. The defendants have filed two motions to

dismiss: one on behalf of Chambers, Savastano, and Wiese (Docket No. 17) and one on behalf of

Russo (Docket No. 31). After careful consideration of the complaint and the briefs in support of and

in opposition to the motions,[1] I conclude that oral argument is unnecessary and I make the following

rulings based on the parties' submissions.

---

[1] I have considered the plaintiff's arguments in his Motion to Strike the Cisco Defendants' Partial
Motion to Dismiss (Docket No. 20) as arguments in opposition to the three defendants' motion
(Docket No. 17), and his Motion in Response to Defendant Russo's Motion to Dismiss (Docket
No. 35) as his opposition to Russo's motion (Docket No. 31).

## I.    Summary of Alleged Facts

For the purpose of evaluating the motions to dismiss, the following factual allegations by the plaintiff are assumed to be provable:

Bayad is a Moroccan born United States citizen.  In 1995 he began working for Lucent Technologies, Inc. ("Lucent") as a manager in the company's Largo, Florida office, where he reported to Russo, Savastano and Wiese.  While at Lucent, Bayad created a plan of action to save Lucent's failing data networking business and communicated his plan to Russo, Savastano, Wiese, and Lucent Chairman, Henry Schachts.  Thereafter, Savastano and Russo sent Wiese to meet with Bayad and to advise him that by communicating Lucent's business flaw to Schachts, Bayad had given Lucent a black eye and that it would be just a matter of time before he was fired.

Over the course of his employment with Lucent, Bayad became aware that Russo, Savastano, Wiese, and other Lucent managers did not like him because of his Arab descent.  Russo, Savastano, and Wiese conspired to discriminate against Bayad by stripping him of his status as lead manager without cause and in order to humiliate him.

On January 21, 1997, Bayad applied for the vacant position of general manager of Lucent's Largo, Florida office, but Savastano refused to promote him and promoted a less experienced white employee instead.  Savastano also prevented Bayad's promotion to other management positions within Lucent.  In addition, Wiese told Bayad that Lucent would never promote or consider an Arab to be Vice President of Operations.

On January 23, 1997, Savastano directed Lucent corporate police to imprison Bayad in a room where he was mentally tortured, interrogated, intimidated, physically assaulted, and accused of stealing from Lucent by incurring personal charges on his corporate American Express credit card.

2

Savastano led the conspiracy to falsely accuse Bayad of stealing from the company. When Bayad

tried to leave the room, Savastano and corporate security police attempted to restrain him and keep

him in the room. A scuffle ensued and Bayad was dragged or thrown down a flight of stairs and

ended up submerged head first in a fountain on the floor below. Bayad received injuries to his head

and neck. While Bayad was on his way to the hospital, Savastano, who was on the phone with Wiese

and Russo, terminated his employment with Lucent. The defendants also had Bayad committed to

a psychiatric hospital for seventy-two hours before being released.

Between 1997 and 1999, Bayad attempted to find subsequent employment in the data

networking industry, but Russo, Savastano, and Wiese conspired to prevent him from obtaining and

sustaining employment with other companies, including Bay Network, Inc. and International

Networking Services, Inc.

In April 2000, Bayad began working as a project engineer at the Lexington, Massachusetts

office of Cisco Systems, Inc. ("Cisco"). During a business trip to Cisco's San Jose, California office,

Bayad was spotted by Savastano, who was also now a Cisco employee. Savastano reported to John

Chambers, the President of Cisco. Upon returning to Massachusetts, Bayad's manager, Lynn Fraser,

began keeping close tabs on Bayad in order to find a reason to terminate his employment with Cisco.

In November 2000,[2] Bayad applied for the position of systems manager or engineer for Cisco

in the North Africa region. After three interviews for the position in Dubai, London and Paris, Bayad

was given a verbal offer by the region manager but was advised that the decision to hire him had to

be approved by Cisco's corporate office in California. Even though Bayad, who speaks Arabic,

---

[2] It appears that Bayad incorrectly states this date as November 2, 2001 in paragraph 88 of his complaint, because he also alleges that he applied for the systems manager position *before* being terminated from Cisco in May 2001. Compl. ¶ 88.

French and English, was a perfect match for the position, he was not given the position. Bayad complained to Chambers of the discriminatory treatment and misconduct, but was ignored.

In May 2001, Bayad was terminated from Cisco. Lynn Fraser told Bayad that he was laid off due to the economy and that he would be eligible for rehire one year from the date of termination. His termination was completely pretextual. He was then asked to sign documents and contracts behind closed doors in the presence of Cisco corporate police. After Bayad's termination, Savastano told one of Bayad's former coworkers that Bayad and other minorities had no business at Cisco, and Chambers prevented Bayad from obtaining his Cisco Internetworking Expert Certification.

In September 2001, Bayad formed his own computer and networking technology company and attempted to do business with Cisco, but Chambers instructed Cisco employees not to do any business with minorities and Arabs such as Bayad.

Since at least September 2003, Bayad has applied for a multitude of employment opportunities at Cisco but has been denied a position. On or about December 3, 2003, in connection with one of Bayad's applications to Cisco, the defendants sent Bayad an email requesting he provide his ethnic or racial background and gender before Cisco could proceed with its hiring decision.

On March 8, 2004, Bayad filed the instant action.

## II. Discussion

Chambers, Savastano, and Wiese, who are now all employees of Cisco, move to dismiss all of the claims against them, except for claims for violation of 42 U.S.C. § 1981 that arose after May 2001, on the grounds that they are barred by the applicable statutes of limitation, res judicata, collateral estoppel, have been released, or fail to comply with the statutory prerequisites for filing such claims. Russo moves to dismiss all of the claims against her on the grounds that they are barred

4

by the applicable statutes of limitation, res judicata, collateral estoppel, or because Title VII does not create individual liability.

    A.    <u>The Federal and State Employment Discrimination Claims</u>

        1.    The pre-June 1997 claims

Counts I, II, VII, VIII, and IX of Bayad's complaint can be considered together, as there are many overlapping allegations, primarily related to employment discrimination in one facet or another. However, the discrimination claims arising out of Bayad's employment and termination at Lucent (i.e. the pre-June 1997 claims) have already been considered by the United States District Court for the Southern District of Florida and summary judgment was granted for the defendants in that case (Civ. No. 97-06671-NCR).

On June 2, 1997, Bayad, represented by counsel, filed an employment discrimination action in the Southern District of Florida alleging causes of action under Title VII, the Florida Civil Rights Act, 42 U.S.C. § 1981, false imprisonment, intentional infliction of emotional distress, defamation, and breach of contract against Lucent, Savastano and others not parties to the present action. The allegations in his complaint in the Florida action are virtually identical to those in his complaint in this action with respect to events surrounding his employment and termination at Lucent. He also alleged in the Florida action that unnamed Lucent personnel interfered with his attempts to find subsequent employment after he was terminated from Lucent. Summary judgment was granted for the defendants in that action and the Eleventh Circuit dismissed Bayad's appeal.

The judgment in the Florida action bars relitigation of Bayad's Title VII, § 1981, false imprisonment, intentional infliction of emotional distress, and breach of contract claims against Savastano, Wiese and Russo arising out of their pre-June 1997 conduct. See Massachusetts Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Savastano was a named defendant in the Florida action. Wiese and Russo were allegedly co-conspirators in the discriminatory actions taken against Bayad at Lucent who should have been joined in the Florida action, and Bayad has not offered any good reason why they were not named in that action. Massachusetts Sch. of Law, 1142 F.2d at 38; see also In re El San Juan Hotel Corp., 841 F.2d 6, 10-11 (1st Cir. 1988). His assertion of these pre-June 1997 claims here is an impermissible attempt to relitigate issues already decided.[3]

  2. The post-June 1997 Title VII and Mass. Gen. Laws ch. 151B claims

Bayad's Title VII claims against all of the defendants must be dismissed because individuals are not subject to suit under Title VII. Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003); Holly D. v. California Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003); Akers v. Alvey, 338 F.3d 491, 500 (6th Cir. 2003); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc).

---

[3] As evidence of his desire for a second bite at the apple, Bayad claims in his current complaint that he is confident that "this time around" the defendants will be declared in violation of the law. Compl. ¶ 61.

Bayad alleges violations of "Massachusetts State law" in Counts I, II, VII, VIII, and IX.[4]  I construe the complaint as alleging violations of chapter 151B of the Massachusetts General Laws. See Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 n.2 (1st Cir. 1995) ("Mass. Gen. L. ch. 151B is the exclusive remedy under Massachusetts law for employment discrimination claims.").  Unlike Title VII, chapter 151B allows for personal liability of individual employees. Thomas v. EDI Specialists, Inc., 773 N.E.2d 415, 420 (Mass. 2002).  However, Bayad's post-June 1997 discrimination claims under Massachusetts law are subject to dismissal for failure to first file a timely administrative complaint with respect to these claims. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Carter v. Comm'r of Correction, 681 N.E.2d 1255, 1259 (Mass. App. Ct. 1997).

Bayad alleges that he filed a charge with the federal Equal Employment Opportunity Commission on April 4, 1997, as a precursor to his Florida lawsuit and was issued a "right-to-sue" letter on April 22, 1997. Compl. ¶ 59.  He then filed the Florida action on June 2, 1997.  He did not timely file a complaint with the Massachusetts Commission Against Discrimination (the "MCAD"), as is required prior to seeking redress in the courts. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Lindsay v. Future Elec. Corp., 930 F. Supp. 677, 678 (D. Mass. 1996) (filing charge with EEOC insufficient to satisfy exhaustion requirement under Mass. Gen. Laws ch. 151B).  Bayad's failure to timely file an administrative complaint with the MCAD requires dismissal of his discrimination claims under Massachusetts law.

---

[4]  The complaint also alleges that the defendants violated the "Fair Labor [A]ct" and the "Massachusetts Rules of Law." Compl. ¶¶ 143, 146.

3.      The post-June 1997 § 1981 claims

Bayad's § 1981 claims have a four-year statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., __ U.S. __, 124 S.Ct. 1836, 1845-46 (2004).  Therefore, his § 1981 claims against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2000 are time barred, but § 1981 claims against these defendants that arose after March 8, 2000 survive.  Because all of the allegations against Russo concern events that occurred prior to March 8, 2000, Bayad's § 1981 claims against her are time barred.

4.      The post-June 1997 § 1985 and state law conspiracy claims

Similarly, Bayad's conspiracy claims under 42 U.S.C. § 1985 and Massachusetts law against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2001 are time barred because these claims are subject to a three year statute of limitations.  Nieves v. McSweeney, 73 F. Supp.2d 98, 102 n.4 (D. Mass. 1999), aff'd, 241 F.3d 46 (1st Cir. 2001).[5] But § 1985 and state law civil conspiracy claims against these defendants that arose after March 8, 2001 survive.  Because all of the allegations against Russo concern events that occurred prior to March 8, 2001, Bayad's § 1985 and state law conspiracy claims against her are time barred.

I reject the defendants' contention that the narrow "intracorporate conspiracy doctrine" requires dismissal of Bayad's § 1985 claims at this stage of the litigation, as I find he has at least sufficiently alleged a series of acts over time by Chambers, Savastano, and Wiese going beyond simple ratification of managerial decisions.  See Strathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984).

---

[5] Bayad fails to articulate a specific legal basis for his conspiracy allegations in Count V, so I liberally construe this count as setting forth a claim under both federal and state law.

B.     The State Law Tort and Contract Claims

1.     False imprisonment

Though Bayad alleges false imprisonment under both federal and Massachusetts law, Count III is essentially a claim under state tort law for events occurring in 1997 and is therefore time barred.  See Lavecchia v. Massachusetts Bay Transp. Auth., 804 N.E.2d 932, 936 (Mass. 2004) (noting three-year statute of limitations for false imprisonment claims under Mass. Gen. Laws ch. 260, § 2A).  This claim is also barred under the doctrine of res judicata.  See discussion, supra, Part II(A)(1).  To the extent that Bayad alleges a claim for false imprisonment during his tenure at Cisco, there are no factual allegations to support such a claim against the named defendants.  The arguably relevant allegations are that Lynn Fraser at Cisco, who is not a defendant in this action, confined Bayad to a room to sign Cisco documents upon his termination.  Compl. ¶ 104.  Accordingly, Count III is dismissed against all defendants.

2.     Intentional infliction of emotional distress and
        breach of contract

As noted above, Bayad's pre-June 1997 intentional infliction of emotional distress and breach of contract claims are barred under the doctrine of res judicata.  See discussion, supra, Part II(A)(1).  Bayad fails to adequately plead claims under Massachusetts law for intentional infliction of emotional distress and breach of contract for conduct that occurred post-June 1997.  Counts IV and VI are dismissed against all defendants.

9

### III.    Conclusion

For all the foregoing reasons, the motion to dismiss of Chambers, Savastano, and Wiese (Docket No. 17) is GRANTED IN PART AND DENIED IN PART, and the motion to dismiss of Russo (Docket No. 31) is GRANTED.    All of the claims against Chambers, Savastano, and Wiese except for the § 1981 claims against them that arose after March 8, 2000 and the § 1985 and state law conspiracy claims against them that arose after March 8, 2001, are dismissed.  The complaint is dismissed in its entirety as against Russo.

It is SO ORDERED.


October 25, 2004                                           \s\ George A. O'Toole, Jr.

DATE                                                              DISTRICT JUDGE


10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD, Pro Se,
    Plaintiff,

    v.                                          CIVIL ACTION NO.
                                                04-10468-GAO
JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and
CARL WIESE,
    Defendants.


**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 65);**
**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 73)**

**May 25, 2005**

**BOWLER, U.S.M.J.**

Pending before this court are cross motions for summary judgment filed by defendants John Chambers ("Chambers"), Anthony Savastano ("Savastano") and Carl Wiese ("Wiese") (collectively, "defendants") (Docket Entry # 65) and plaintiff Anthony Bayad ("Bayad") (Docket Entry # 73). After conducting a hearing on March 22, 2005, this court took the motions (Docket Entry ## 65 & 73) under advisement.


PROCEDURAL BACKGROUND

Bayad filed the instant action on March 8, 2004. The complaint alleges numerous counts of employment discrimination under Title VII, 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. § 1985 ("section 1985") and Massachusetts General Laws chapter 151B

("chapter 151B") in addition to claims of false imprisonment, intentional infliction of emotional distress and breach of contract. (Docket Entry # 1). In October 2004, the court dismissed all claims except the section 1981 claims arising after March 8, 2000, and the conspiracy claims under section 1985 and Massachusetts law arising after March 8, 2001.[1] Chambers, Savastano and Wiese are the only remaining defendants.[2] In sum, the only claims remaining before this court are the post-March 8, 2000 claims under section 1981 and the post-March 8, 2001 conspiracy claims against Chambers, Savastano and Wiese.

Bayad complains that defendants individually and collectively acted and conspired to discriminate against him by denying him employment opportunities at Cisco System's, Inc. ("Cisco") on account of his race and national origin. (Docket Entry # 1). Reduced to their essence, Bayad's allegations relevant to defendants' post-March 8, 2000 conduct revolve around a denial of a promotion, his termination and the failure to rehire. (Docket Entry # 1, ¶¶ 79-143).

Generally speaking, Bayad's complaint recounts the following story. In November 2000, while employed at Cisco, Bayad applied

---

[1] The court dismissed the section 1981 claims arising prior to March 8, 2000, as well as the conspiracy claims under section 1985 and Massachusetts law arising prior to March 8, 2001, as time barred.

[2] All claims against Patricia Russo were dismissed as either time barred or precluded under res judicata.

2

for a transfer/promotion to a systems manager position in Cisco's
North Africa region.  Bayad was flown abroad for three separate
interviews for the position at Cisco's expense in the cities of
Dubai, London and Paris.  Following the interviews, Bayad
received a verbal offer for the position but was advised that the
decision would have to be approved by Cisco's corporate office in
California.  Despite claiming to be "highly qualified" due to his
language background and knowledge of the North African region,
Bayad was ultimately rejected for the transfer position.  Around
this time, Savastano purportedly ordered Lynn Fraser ("Fraser"),
Bayad's manager, to "micromanage" Bayad in order to find grounds
to terminate his employment with the company.  Bayad was
ultimately terminated in May of 2001.  Following Bayad's
termination, he applied for several positions with Cisco but was
denied employment in each instance.  Bayad asserts that the
denial of the promotion, his subsequent termination and the
failure to rehire all resulted from defendants' racial animus.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

3

56(c); <u>Seaboard Surety Co. v. Town of Greenfield</u>, 370 F.3d 215, 218 (1st Cir. 2004). A factual issue is "genuine" where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party." <u>Blackie v. State of Maine</u>, 75 F.3d 716, 721 (1st Cir. 1996). A factual issue is "material" where it "has the potential to alter the outcome of the suit under the governing law." <u>Blackie v. State of Maine</u>, 75 F.3d at 721.

The burden initially rests with the party seeking summary judgment to demonstrate that "no genuine issue of material fact exists." <u>National Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . party's pleading." Fed. R. Civ. P. 56(e). The nonmovant, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e); <u>Triangle Trading Co. v. Robroy Ind., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999). Factual disputes must be resolved in a "light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir. 1995).

Cross motions for summary judgment do not alter the normal summary judgment standard. <u>Wightman v. Springfield Terminal Ry.</u>

4

<u>Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996). "Cross motions simply require us to determine whether either of the parties deserves judgment as a mater of law on facts that are not disputed." <u>Wightman v. Springfield Terminal Ry Co.</u>, 100 F.3d at 230.


### FACTUAL BACKGROUND[3]

Bayad began working for Cisco at its Lexington, Massachusetts facility in May 2000.  At the time of Bayad's employment, Cisco maintained approximately 40,000 employees.  The title of Bayad's position was Project Engineer II.  Fraser, currently employed as the Senior Sales Manager/Advanced Services in the company's Lexington, Massachusetts facility (the

---

[3] Facts are taken from the affidavits and the agreed upon facts set forth in the parties' Local Rule 56.1 statements. Citations to the record are provided only for direct quotes. Facts are construed in a light most favorable to the nonmoving party.

Pursuant to Local Rule 56.1, defendants properly submitted a statement of undisputed facts along with their memorandum in support of summary judgment. (Docket Entry # 67). Bayad, on the contrary, failed to submit his own Local Rule 56.1 statement with either his opposition or cross motion. In this situation, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties." LR. 56.1. While courts must allow for the liberal construction of complaints by pro se litigants in accordance with <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1972), a litigant's status as pro se "does not insulate him 'from complying with procedural and substantive law.'" <u>Kenda Corp., Inc. v. Pot O'Gold Money Leagues</u>, 329 F.3d 216, 225 n.7 (1st Cir. 2003) (citations and internal quotations omitted). Accordingly, defendants' statement of undisputed facts (Docket Entry # 67) shall be adopted into the factual record.

"Massachusetts facility"), interviewed Bayad for the Project
Engineer II position in or around April 2000 and subsequently
extended an offer of employment.  During the interview, Bayad
informed Fraser that he expected to attain his Cisco Certified
Internetworking Engineer ("CCIE") certification within a short
period of time.[4]  Throughout Bayad's employment with Cisco,
Fraser served as Bayad's manager and direct supervisor.

Chambers is the Chief Executive Officer and President of
Cisco and has been employed by the company at its San Jose,
California facility (the "California facility") from 1991 to the
present.  Savastano is Cisco's Vice President of Finance and has
been employed by the company at the California facility from
April 28, 2000 to the present.  Wiese has served as Area Vice
President for Advanced Technology at Cisco's Edison, New Jersey
office from August 27, 2002 to the present.

In or around February 2001, Cisco management notified Fraser
that "due to an economic downturn" the company would be forced to
undergo a large scale reduction in force ("RIF") "by laying off
approximately 8500 total employees."  (Docket Entry # 68, Att. 3,
¶ 18).  All Cisco managers were instructed to reduce the number
of workers on their respective teams "based upon an assessment of

---

[4]  According to Fraser, while the "CCIE certification was
not essential for [Bayad's] position . . . it is a highly desired
qualification because, occasionally, it may be a direct customer
requirement or required for a particular effort."  (Docket Entry
# 68, Att. 3, ¶ 7).

their team members' contribution to the team's overall
profitability." (Docket Entry # 68, Att. 3). Based on this
directive, Fraser determined that four members of her team would
have to be terminated. This group of individuals consisted of
Bayad, two white males and an additional male whose race and
ethnicity Fraser was unable to recall.

At the time of his termination, Bayad had been employed at
Cisco for less than one year and was the most junior member of
Fraser's team. While employed at Cisco, Bayad was not assigned
as a primary leader to any significant project. Bayad had spent
the majority of his time studying for the CCIE certification
exam, which he ultimately failed to obtain. Fraser avers that
defendants had no involvement in and in no way influenced her
decision to select Bayad for lay off.

On April 25, 2001, Fraser informed the four members of her
team selected for termination, including Bayad, that they were
being laid off due to failing economic conditions. The
terminations were to be effective no later than June 25, 2001.
The individuals were informed that they would be eligible for
rehire after one year in accordance with Cisco's rehire policy.
The individuals were each provided with a Voluntary Severance
Agreement and General Release ("Release"). Under the conditions
of the Release, each individual was entitled to a severance
payment conditioned upon that individual waiving any then-

existing claims against Cisco.  Bayad and the others were each

provided up to 60 days to accept or decline the Release.  Bayad

executed the Release and accepted the severance payment on May 1,

2001, seven days after he was provided with the document by

Fraser.[5]  According to the terms of the Release, Bayad was

allowed up to seven days to revoke his acceptance, which he

ultimately declined to do.  On the Release below his signature,

Bayad wrote, "Thank you to all of you and Good Luck."  (Docket

Entry # 68, Att. 3, Ex. A).

In the fall of 2003, Bayad applied for and was denied a

position with Cisco as Systems Engineer II at the Massachusetts

facility.  According to Cisco's personnel records, the position

required "extensive experience in Network Security and, following

a preliminary telephone screening interview, the hiring manager

determined that" Bayad lacked this necessary minimum requirement.

(Docket Entry # 68, Att. 7, ¶ 11).  The individual ultimately

selected for the position had "extensive experience in Network

Security and had won Cisco's 'Systems Engineer of the Year' award

the previous year."  (Docket Entry # 68, Att. 7, ¶ 12).

Around the same time, Bayad applied for an additional

position with Cisco as a "Voice Specialist" position in the

---

[5]  Bayad's complaint alleges that he was forced to sign the
Release behind "closed doors" in the presence of Cisco's
"Corporate Police."  Bayad, however, has failed to support this
assertion through an affidavit or evidence otherwise allowable
under Rule 56, Fed. R. Civ. P.

California facility.[6]  (Docket Entry # 68, Att. 7, ¶ 13).  Upon

considering Bayad's application, the Human Resources Manager

contacted Fraser, Bayad's former supervisor, and was informed

that Bayad had never completed the CCIE certification.  Moreover,

"Cisco was not at that time paying to relocate prospective

employees."  (Docket Entry # 68, Att. 7, ¶ 13).  Because Bayad

was then living in Massachusetts and the position was in

California, relocation would have been necessary had Cisco

decided to hire Bayad.  Based on these factors, Bayad was not

selected for the position.[7]

In reviewing company records, defendants have been unable to

uncover any documents or testimony supporting Bayad's allegation

that he applied for a transfer position in November 2000.[8]  As of

_____

[6]  The record does not expressly reflect the time period of
Bayad's application for the Voice Specialist position.  Based on
the email correspondence from the Human Resources Manager, the
time frame for this application appears to have been the fall of
2003.  (Docket Entry # 68, Att. 7, Ex. C).

[7]  In his complaint, Bayad alleges that he applied for a
number of positions at Cisco.  (Docket Entry # 1).  Cisco's
personnel files, however, contain no record of Bayad applying for
any positions other than the two described above.  Cisco's Human
Resources department has inquired whether various employees
likely to have knowledge about these positions have any
independent recollection of Bayad's application.  All have
answered in the negative.  Moreover, while Bayad raises these
allegations in his complaint, he presents no evidence through
affidavit or other means allowable under Rule 56, Fed. R. Civ. P.

[8]  In her affidavit, Paula Hughes, Cisco's Human Resources
Manager, avows that after conducting "an exhaustive search of
Cisco's records," she has "located no documents, memoranda,

9

November 2000, Bayad had been employed at Cisco for approximately six months.  Pursuant to Cisco's transfer and promotion policy, an employee was ineligible for transfer or promotion until completing one year of employment absent approval from a manager. Fraser does not recall Bayad ever seeking her approval for a transfer to North Africa.  Cisco's policy further requires "Cisco's Recruiting department to notify the manager of the employee" whenever an employee is seeking another position. (Docket Entry # 68, Att. 3, ¶ 12).  Fraser does not recall receiving notification from the Recruiting department of Bayad's seeking a transfer in November 2000.  Cisco records further reflect that Bayad did not seek or receive paid time off during November 2000, the time he alleges he was interviewing in Europe and Africa.  According to company records, Bayad received regular pay for performing his duties at Cisco's Lexington, Massachusetts facility.

    While Bayad's complaint asserts numerous factual allegations, summarized above, the majority are unsupported through affidavits or other forms of properly documented evidence that may be considered at summary judgment.  The only evidence submitted by Bayad that comports with Rule 56(e), Fed. R. Civ.

---

vouchers or any other such materials that substantiate . . . Bayad's allegations that (1) he applied for the [North Africa] position, (2) he was flown at Cisco's expense to Europe or Africa to interview for the position or (3) he interviewed with Cisco engineers for the position."  (Docket Entry # 68, Att. 7, ¶ 5).

P., is the affidavit of Amado Navas ("Navas"), another former employee of Cisco. (Docket Entry # 75). According to Navas, shortly after Savastano began working at Cisco, Savastano traveled to the Cisco office in Saint Petersburg, Florida, where Navas was employed and proceeded to threaten Navas. Savastano instructed Navas to relay a massage to Bayad "that his days at Cisco are numbered" because "[Savastano's] friend Lynn Fraser [sic] will take care of him soon." Savastano further stated that, "[Bayad] and his people need to go back where they came from, ha ha . . .." (Docket Entry # 75).

Bayad also submits as documentary evidence an alleged no-hire list maintained by Cisco on which his name appears. The top of the no-hire list reads: "Do not hire/transfer/promote Anthony Bayad Cisco Empl # 3799*** Should you have any questions, contact Tony Savastano regarding Anthony Bayad." (Docket Entry # 77). In submitting the document, however, Bayad fails to attach any affidavit to authenticate the document. Defendants challenge the lack of authentication and Bayad fails to explain how the document came into his possession. Absent proper authentication, this court cannot properly consider the alleged no-hire list as evidence supporting Bayad's opposition or cross motion for summary judgment. Fed. R. Civ. P. 56(e); <u>Carmona v. Toledo</u>, 215 F.3d 124, 131 (1st Cir. 2000) (failure to authenticate documents

11

precludes consideration in a motion for summary judgment).[9]

## DISCUSSION

I.  Cisco's Release Agreement

Bayad's complaint raises essentially three separate incidents of racial discrimination by defendants:  (1) Bayad's termination from Cisco in May 2001; (2) Bayad's denial of a transfer or promotion to Cisco's North African facility in November 2000; and (3) defendants' failure to rehire Bayad in the fall of 2003 for two separate positions following his termination.  Defendants argue that Bayad's valid execution of the Release on May 1, 2001, precludes any claims arising from his employment with and termination from Cisco.

As a general rule, releases of federal statutorily created claims, including those involving employment discrimination, are given legal effect provided that the releases are "knowing and voluntary, as evidenced by the totality of the circumstances." Melanson v. Browning-Ferris Industries, Inc., 281 F.3d 272, 274

---

[9]  In their motion for summary judgment, defendants dispute the authenticity of Bayad's no-hire list.  Defendants, including Savastano, have each submitted an affidavit averring that they have never seen a copy of the document before Bayad produced it during this litigation.  Savastano further avers that he has never placed or instructed anyone to place Bayad's name on a "no-hire" list.  After conducting extensive investigation, Cisco's Human Resources department has found no evidence to authenticate the alleged no-hire list.

(1st Cir. 2002) (knowing and voluntary execution of release waiving all claims against employer precluded employee's Title VII claim).  The employer carries the burden of demonstrating that the release was knowing and voluntary.  Melanson v. Browning-Ferris Industries, Inc., 281 F.3d at 276.  To determine whether a given release was knowing and voluntary, the First Circuit has developed a set of six factors:  "(1) plaintiff's education and business experience; (2) the respective roles of the employer and employee in . . . determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice; and (6) the consideration for the waiver." Melanson v. Browning-Ferris Industries, Inc., 281 F.3d at 276 n. 4 (citing Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 181 n.3 (1st Cir. 1995)).  Of course, "'no single fact or circumstances is entitled to talismanic significance on the question of waiver.'"  Melanson v. Browning-Ferris Industries, Inc., 281 F.3d at 276 (quoting Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d at 181).

In the instant case, Bayad was offered 60 days to review and execute the Release.  This would have afforded Bayad plenty of time to consider the terms of the Release and to consult counsel if he so desired.  The terms of the Release clearly state that, upon execution, the employee agrees to "release Cisco Systems,

any affiliated companies, and their current and former officers,
directors, agents, and employees and assigns from *any and all
claims* up through the date of the execution." (Docket Entry #
68, Att. 3, Ex. A) (emphasis added). In no uncertain terms, the
Release states:

> This expressly includes waiver and release of any rights and
> claims arising under any and all laws, rules, regulations,
> or ordinances, including but not limited to the Age
> Discrimination in Employment Act (ADEA); the Workers
> Adjustment and Retraining Notification Act (WARN); Title VII
> of the Civil Rights Act of 1964, as amended; . . . and any
> similar law of any other state or governmental entity.

(Docket Entry # 68, Att. 3, Ex. A). This language is
sufficiently clear to put Bayad on notice that, by signing the
Release, he would be waiving any claims of employment
discrimination against Cisco and its employees that arose during
his employment until May 1, 2001, the date the Release was
executed.

Bayad argues that his execution of the Release was not
voluntary because he was forced to sign the document under
duress.[10] Other than the allegations of his complaint, however,
Bayad has come forward with no evidence to support this
conclusion.[11] Nor does the imminent fact of Bayad's termination
constitute a circumstance of duress. <u>Melanson v. Browning-Ferris</u>

---

[10]  Bayad alleges that he was forced to sign the Release
behind closed doors and in the presence of Cisco's corporate
police. (Docket Entry # 1, ¶ 104).

[11]  See footnote number five.

14

Industries, Inc., 281 F.3d at 277 (the normal emotional and financial stress associated with termination is insufficient, by itself, to create an inference of duress). Bayad's own words written on the Release below his signature, "Thank you to all of you and Good Luck," further contradict his assertion of duress. The allegations in Bayad's complaint, absent further evidence, are insufficient to create a genuine factual dispute as to whether the Release was knowing and voluntary in light of the evidence put forth by defendants.

Summary judgment is therefore warranted as to Bayad's claims arising from his employment with Cisco from May 1, 2000 to May 1, 2001. Bayad's section 1981, section 1985 and Massachusetts law conspiracy claims arising from his termination and the November 2000 denial of promotion are therefore subject to summary judgment. Thus, the only remaining issues to be decided are the section 1981 and conspiracy claims regarding the two incidents of the failure to rehire Bayad in the fall of 2003.

II. Bayad's Remaining Section 1981 Claims

Defendants raise two arguments in support of granting summary judgment as to Bayad's claims under section 1981. First, defendants argue that their lack of personal knowledge and involvement regarding any decisions made concerning Bayad's employment bar liability under section 1981. Second, defendants further submit that Bayad has failed to establish a genuine issue

15

of material fact that he was subjected to employment discrimination by any person at Cisco.  The issue of personal knowledge and section 1981 liability need not be addressed because Bayad ultimately fails to make a substantive case for discrimination.  In reviewing the record, this court finds insufficient evidence from which a reasonable jury could conclude that defendants' failure to hire Bayad on either occasion was the result of race-based animus.

For cases involving disparate treatment in the employment sector, courts use the common analytical framework outlined by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-805 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253-254 (1981).  Under this framework, the plaintiff bears the initial burden of establishing each element of his or her prima facie case.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802.  This minimal showing functions to raise an inference of discrimination.  <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. at 253-254.  The burden then shifts "to the employer to articulate some legitimate, non-discriminatory reason" for the employment action.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 804.  The plaintiff then carries the final burden of "proving that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination."  <u>Texas Department of Community</u>

16

Affairs v. Burdine, 450 U.S. at 253.

In establishing pretext, a plaintiff may present evidence including but not limited to "evidence of differential treatment, evidence of discriminatory comments, statistical evidence, and comparative evidence." Rathbun v. Autozone, Inc., 361 F.3d 62, 72 (1st Cir. 2004). Additional evidence of discriminatory animus is not necessarily required. "In a proper case, the trier of fact may infer the ultimate fact of discrimination from components of the plaintiff's prima facie showing combined with compelling proof of the pretextual nature of the employer's explanation." Rathbun v. Autozone, Inc., 361 F.3d at 72.

"Because employment discrimination cases arise in a variety of contexts, the prima facie elements must be tailored to the given case." Rodriguez-Torres v. Carribean Form Manufacturer, Inc., 399 F.3d 52, 58 (1st Cir. 2005). Bayad's final allegation of discrimination arises from Cisco's rejection of his two applications for employment in the fall of 2003: the Systems Engineer II position at the Massachusetts facility and the Voice Specialist position at the California facility. To establish a failure to hire claim, an employee must show that: "(1) he is a member of a protected class . . .; (2) he applied for an open position; (3) he was not hired; and (4) the [employer] sought to fill the positions with individuals who had qualifications similar to his." Lewis v. City of Boston, 321 F.3d 207, 217 (1st

17

Cir. 2003).

Regarding the Systems Engineer II position, though Bayad establishes the first three elements of his prima facie case, he fails to establish the fourth.  Defendants have submitted evidence that the System Engineer II position required extensive experience in Network Security, which Bayad did not possess. Defendants have further submitted that the individual ultimately selected for the position did possess such qualifications.  Bayad has not provided evidence that would support an inference that Cisco sought to fill the Systems Engineer II position with a person of similar qualifications.

Bayad's only remaining allegation under section 1981 is his rejection for the Voice Specialist position.  Even supposing Bayad has put forth evidence to establish each prima facie element, defendants nevertheless submit two legitimate non-discriminatory reasons for denying Bayad's application.  First, the Human Resources Manager chose not to select Bayad after learning that he had never completed the CCIE certification. Second, at the time of Bayad's application, Cisco was not paying to relocate prospective employees.[12]

The burden then shifts to Bayad to demonstrate that

---

[12]   The Voice Specialist position was located at Cisco's California facility, whereas Bayad was living in Massachusetts. Thus, relocation would have been necessary had Bayad been selected.

defendants' proffered reasons are a pretext for discriminatory animus. To establish pretext, Bayad may demonstrate that the adverse employment action was "(i) more likely motivated by discrimination than by the explanation proffered by [defendants], or (ii) the proffered explanation [was] unworthy of credence." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001) (citations and internal quotations omitted). Bayad's only evidence of pretext are the discriminatory comments and threats against Bayad made by Savastano, as recounted in the affidavit of Navas.[13] (Docket Entry # 75).

Under certain circumstances, discriminatory remarks made by key decisionmakers or individuals in a position to influence key decisionmakers may constitute evidence of pretext. Walton v. Nalco Chemical Co., 272 F.3d 13, 24 (1st Cir. 2001) (citing Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001)); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000). At the same time, "statements made by nondecisionmakers or decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

---

[13] Defendants heavily dispute the veracity of the facts alleged in the Navas affidavit. For the purpose of resolving defendants' motion for summary judgment only, the facts alleged in the affidavit will be taken as true.

19

While Savastano was Cisco's Vice President of Finance, he was not the key decisionmaker in regards to Bayad's application for the Voice Specialist position. Savastano has submitted an affidavit explicitly denying involvement in any decision regarding Bayad's employment with Cisco. There is no evidence that the Cisco Human Resources Director, who actually made the employment decision at issue, harbored discriminatory animus against Arabs. The only outside factor considered by the Human Resources Director in denying Bayad's application was the statement of Fraser that Bayad had never completed his CCIE certification.[14] Even if one could draw an inference that Fraser harbored discriminatory animus, through the influence of Savastano, nothing indicates that the information she gave to the Human Resources Director was either false or misleading. Thus, the evidence supplied by Bayad, which includes the Navas affidavit, is insufficient to rebut the legitimacy of defendants' proffered reasons for the failure to hire.

III.  <u>Bayad's Remaining Section 1985 Claims</u>

Section 1985(3) "confers a private right of action for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any persons or class of persons of the equal protection of the

---

[14]  Notably, the Human Resources Director contacted Fraser at the request of Bayad.

20

laws, or of equal privileges and immunities under the laws . .
. .'" Aulson v. Blanchard, 83 F.3d 1, 3 n.2 (1st Cir. 1996); 42
U.S.C. § 1985(3).

> To state a claim under 1985(3) a plaintiff must allege the
> existence of (1) a conspiracy, (2) a conspiratorial purpose
> to deprive a person or class of persons, directly or
> indirectly, of the equal protection of the laws or of equal
> privileges and immunities under the laws, (3) an overt act
> in furtherance of the conspiracy, and (4) either (a) an
> injury to person or property, or (b) a deprivation of a
> constitutionally protected right or privilege.

Aulson v. Blanchard, 83 F.3d at 3 (citing Griffin v.

Breckenridge, 403 U.S. 88, 102 (1971)).

Defendants correctly point out that Bayad is unable to
demonstrate that he was deprived of a constitutionally protected
right or privilege.  As discussed in the preceding section, Bayad
presents insufficient evidence for a reasonable jury to conclude
that Cisco's failure to hire him was the result of discrimination
as opposed to the legitimate reasons proffered by defendants.
Because Bayad cannot support his substantive claims under section
1981, his conspiracy claims must likewise fail.  Torres-Rosado v.
Rotger-Sabat, 335 F.3d 1 (1st Cir. 2003) (summary judgment
against conspiracy claim upheld where the plaintiff failed to
demonstrate a constitutional deprivation).  Accordingly, Bayad's
remaining section 1985 claims are without merit.

IV.  Bayad's Massachusetts Law Conspiracy Claims

Massachusetts law recognizes a "very limited" and "rare"
cause of action for conspiracy, often referred to as "true

conspiracy." <u>Massachusetts Laborers' Health & Welfare Fund v.
Phillip Morris, Inc.</u>, 62 F.Supp.2d 236, 244 (D.Mass. 1999). The
plaintiff is required to "allege and prove that by 'mere force of
number acting in unison' the defendants exercised 'some peculiar
power of coercion of the plaintiff which any individual standing
in a like relation to the plaintiff would not have had."
<u>Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris,
Inc.</u>, 62 F.Supp.2d at 244 (quoting <u>Fleming v. Dane</u>, 22 N.E.2d
609, 611 (Mass. 1939)). In "true conspiracy" cases "the wrong
was in the particular combination of the defendants rather than
in the tortuous nature of the underlying conduct." <u>Kurker v.
Hill</u>, 689 N.E.2d 833, 836 (Mass.App.Ct. 1998). "For 'true
conspiracy' the plaintiff must prove that concerted action gave
the defendants a 'peculiar power of coercion' over the plaintiff
enabling them to bring about results that are different in kind
from what any of them could achieve individually." <u>Massachusetts
Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 62
F.Supp.2d at 244.

Bayad provides no evidence to support an inference that
defendants acted "in unison" to deprive him of employment at
Cisco after March 8, 2001. Defendants' affidavits all assert
that they had no individual or collective involvement in any
decision regarding Bayad's employment with Cisco. Defendants
further aver that they had no communication with one another

22

regarding Bayad's employment at any time during the relevant time period.  Moreover, even if Bayad produced evidence that defendants, in fact, acted in concert, the injury caused to Bayad, his denial of employment, does not appear to be substantially different from what any single defendant could have achieved by himself.

Defendants point to an alternate form of conspiracy recognized under Massachusetts law.  This form of "concerted action" conspiracy "is 'more akin to a theory of common law joint liability for tort.'"  Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F.Supp.2d at 244 (citing Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994)).  "Concerted action" conspiracy assigns liability "for actions done by others pursuant to a common design or with the defendants' substantial assistance or encouragement." Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F.Supp.2d at 244 (citations omitted).  While "concerted action" conspiracy does not required a "peculiar power of coercion," it does require "proof of underlying tortuous conduct."  Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F.Supp.2d at 244 (citing Santiago v. Sherwin Williams Co., 3 F.3d 546, 552 (1st Cir. 1993)).  As previously noted, Bayad fails to show that his not being hired was the result of any tortuous conduct by defendants.  Thus,

Bayad's lack of a substantive claim precludes any claim under this form of conspiracy.

In accordance with the above reasoning, Bayad fails to satisfy a claim of conspiracy under Massachusetts law.  Thus, although this court sympathizes with Bayad's plight and circumstances, the law unfortunately provides him no relief.


### CONCLUSION

_____In accordance with the foregoing discussion, this court **RECOMMENDS**[15] that defendants' motion for summary judgment (Docket Entry # 65) be **ALLOWED** and Bayad's cross-motion (Docket Entry # 73) be **DENIED.**

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[15] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

24

## Responses and Replies
1:05-cv-11005-GAO Bayad v. Bastian et al

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was received from Falby, Bruce entered on 6/7/2005 at 6:17 PM EDT and filed on 6/7/2005

**Case Name:**      Bayad v. Bastian et al
**Case Number:**    1:05-cv-11005
**Filer:**          Cisco Systems, Inc.,
                    Bruce Bastian
                    Kate Dcamp
                    Lynn Fraser
                    Celia Harper-Guerra
                    Rick Justice

**Document Number:** 6

**Docket Text:**
AFFIDAVIT of Bruce E. Falby in Support re [4] MOTION to Dismiss filed by Cisco Systems, Inc.,, Bruce Bastian, Kate Dcamp, Lynn Fraser, Celia Harper-Guerra, Rick Justice. (Attachments: # (1) Exhibit A# (2) Exhibit B# (3) Exhibit C)(Falby, Bruce)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/7/2005] [FileNumber=1005715-0]
[96b3ebb1d0134a42ad75219893d5d153d3461d1ae7aef08846929a6598a82fbeb969
0e2acb07443254a897ce34d71806cec8ffada1d1f94add03bfb442709099]]
**Document description:** Exhibit A
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/7/2005] [FileNumber=1005715-1]
[d412a3599e4b76394a6c396b949df8731e5a05ae151cc53950d3f60f18346158d0e4
1d2652dc2c138e33c60b9ce4f55659ebf9c628ec60814399183238ec521b]]
**Document description:** Exhibit B
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/7/2005] [FileNumber=1005715-2]
[8be453446845efe1c80359e0490aee0d1c0419199fbe1f03443d003dcd46675d76e4
6100ab61f4dbcfde4b826db041230219b2eda488c33e91eec60b44b2cb72]]
**Document description:** Exhibit C
**Original filename:** yes

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=6/7/2005] [FileNumber=1005715-3]
[dffa7927b4c91fc303cd4d24fb3053706a099de1e771c053d706a65c55145021ab0b
30a011724e7f2e8a0919eecd5d7b1abc72ac4efeb267de0998047e4186b2]]

**1:05-cv-11005 Notice will be electronically mailed to:**

Bruce E. Falby      bruce.falby@piperrudnick.com, lisa.freedman@piperrudnick.com

**1:05-cv-11005 Notice will not be electronically mailed to:**

Anthony Bayad
2 Magoun Avenue
Medford, MA 02155