UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,

                Plaintiff,

    v.

CISCO SYSTEMS, INC., BRUCE
BASTIAN, KATE DCAMP, LYNN
FRASER, CELIA HARPER-GUERRA, and
RICK JUSTICE,

                Defendants.

Civil Action No. 05-11005 GAO

## AFFIDAVIT OF BRUCE E. FALBY

I, Bruce E. Falby, declare as follows:

1.      My name is Bruce E. Falby. I am a partner at the law firm DLA Piper Rudnick Gray Cary US LLP. I represent the defendants in the captioned matter. I also represent defendants in Bayad v. Chambers, et al., No. 04-10468-GAO (D. Mass).

2.      Attached hereto as Exhibit A is a true and accurate copy of the Complaint filed in Bayad v. Chambers, et al., No. 04-10468-GAO (D. Mass).

3.      Attached hereto as Exhibit B is a true and accurate copy of the Memorandum and Order in Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO (D.Mass), dated October 25, 2004.

4.      Attached hereto as Exhibit C is a true and accurate copy of Magistrate Judge Bowler's Report and Recommendation Re: Defendants' Motion for Summary Judgment (Docket Entry # 65); Plaintiff's Cross Motion for Summary Judgment (Docket Entry # 73) in Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO (D.Mass), dated May 25, 2005.

~BOST1:373728.v1

5.    Attached hereto as Exhibit D is a true and accurate copy of the Complaint filed in this matter, <u>Bayad v. Bastian, et al.</u>, No. 05-11005-GAO (D. Mass).

6.    Attached hereto as Exhibit E is a true and accurate copy of a letter sent by my office to Anthony Bayad on June 7, 2005, advising him of the requirements of Fed. R. Civ. P. 11 and the service of this motion.

7.    Attached hereto as Exhibit F is the Certificate of Service in this matter.

8.    Attached hereto as Exhibit G is a true and accurate copy of the Memorandum in Support of the Defendant's Motion to Dismiss, filed with this Court on June 7, 2005.

9.    Attached hereto as Exhibit H is a true and accurate copy of a letter, dated May 19, 2005, sent by Anthony Bayad to my office, giving notice of his intention to sue me and my firm.

Signed under the pains and penalties of perjury this 7th day of June, 2005.

Respectfully submitted,

/s/ Bruce E. Falby

Bruce E. Falby, BBO #544143
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2613
Telephone: 617.406.6000
Fax:        617.406.6100

Dated:  June 7, 2005

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

RECEIPT # 54377
AMOUNT $ 150°°
SUMMONS ISSUED X-Y
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M
DATE 3-8-04

ANTHONY BAYAD ,                    )
                                   )
                                   )
        Plaintiff ,                )         CIVIL ACTION
                                   )
                                   )
                                   )         CASE NO. _____
                                   )
JOHN CHAMBERS, PATRICIA            )
RUSSO, ANTHONY                     )      **04  10468 GAO**
SAVASTANO and CARL                 )
WIESE,                             )         **JURY TRIAL DEMANDED**
        Defendants ,               )
                                   )         MAGISTRATE JUDGE Bowler

## COMPLAINT

Plaintiff Anthony Bayad complains of defendants John Chambers, Patricia Russo,

Anthony Savastano, and Carl Wiese as follows:

## PRELIMINARY STATEMENT

1.      This action seeks declaratory, injunctive, and equitable relief, compensatory and

punitive damages,  legal costs, and other remedies  as deemed  and appropriate,

for intentional conspiracy to  discriminate  based on the plaintiff's Moroccan ancestry,

and his Arab race;  breach of contractual of obligations (Business & Employment

Relationship); emotional distress, mental anguish, and loss of enjoyment of life, and;

include injury to character and reputation (defamation) ,and  injury to credit standing

suffered by plaintiff Anthony Bayad while working and associating with

Defendants.

1

## JURIDICTION

2.    This action arises under the Civil Rights Reconstruction Era Statues, 42 U.S.C §§

1981, 1981(a) as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871,

section two now codified at 42 U.S.C. § § §1985, 1985(3), 1985(C),1988, and § 2000a;

Title VII of Civil Act of 1964, codified at 42 U.S.C. § 704; and the Supplemental Right

of Due Process under the State law.

3.    Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. § 1343(4)

and, over the state law claims pursuant to the doctrine of supplemental jurisdiction, now

codified at 28 U.S.C. §1367.

4.    Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. §§§§

1981, 1985, 2000a and 2000e-5(g) (administrative remedies once before exhausted and

plaintiff had complied with provision of 28 U.S.C § 2000e-5(f)(1) ); and the supplemental

State law claims.

5.    Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981 and

§ 1985; 42 U.S.C. § 704, and§ 2000a, Title VII of Civil Act of 1964, codified at 42

U.S.C. § 704; and the supplemental state laws claims.

Costs and other fees may be awarded pursuant to 42 U.S.C §§ 1988 and 2000e-5(k),

Federal Rule 54 of Civil Procedures and Massachusetts state law.

## VENUE

6.     This action lies in the district of Massachusetts, pursuant to 28 U.S.C. § 1391(b), because the claim initially arose in the judicial district, and pursuant 28 U.S.C. § 2000e-5(f) (3); Because the plaintiff associated, and works in this judicial district. Moreover, Defendants John Chamber, Anthony Savastano, Carl Wiese, and Patricia Russo have a business office located in this district, and the Plaintiff resides here.

7.     Plaintiff Anthony Bayad is an Arab/American who was born in Casablanca Morocco (North Africa) and is of Arab ethnicity. Plaintiff is currently a United States citizen who resides in the United States of America.

8.     Defendants John Chambers, Carl Wiese, and Anthony Savastano own most or substantial shares of Cisco Systems Inc. ("Cisco") or Lucent Technologies Inc. ("Lucent"), an employers that engages in an industry affecting commerce and employs more than 40,000.00 employees World Wide. Defendant Patricia Russo is employed by Lucent and owns most or a substantial shares of the company Lucent or Cisco.

9.     Defendants John Chambers, Anthony Savastano, Carl Wiese, and Patricia Russo are very close friends, and all one time had worked or had been associated with Lucent Technologies Bell Lab Inc., Cisco Systems Inc., International Networking Services Inc., or Wang Laboratory Inc.

## FACTS

10.    Mr. Bayad was born in Casablanca Morocco and immigrated to the United States when he was 17 years old to get an education with an eye toward supporting his elderly parents, his four brothers, and his two sisters in Casablanca Morocco.

3

11.    Mr. Bayad worked his way through school by washing dishes at burger King, doing construction work and as a gasoline attendant, as well as other low paying jobs such as cleaning bathrooms, and distributing news papers. Mr. Bayad graduated with Bachelor's of Science in Computer Engineering Technologies the year of 1994 from Wentworth Institute of Technology, with a GPA approaching 3. 5 on a 4.0 scale, and was placed four time in the honorable Dean's list for his high achievement during his four year College. After graduation he began his career as a network engineer.

12.    Prior of working for Defendant John Chambers (Cisco Systems Inc.) Mr. Bayad become employed by lucent Technologies Inc., holding a title as a Manager; and on about December 15, 1995 Mr. Bayad worked in Lucent Largo, Florida office (outside Tampa), where he met Defendants Carl Wiese, Anthony Savastano, and Patricia Russo. Mr. Bayad was reporting to them. **See Exhibit A attached.**

13.    Within one week of becoming employed by Lucent Mr. Bayad accomplished a certification that entitles Lucent significant discounts from its supplier Bay Networks Inc. (it was acquired by Nortel Networks Inc.). Mr. Bayad was the first Lucent Technologies Manager who successfully completed the Bay Network Certification testing at the Expert Level, and was promoted by his direct Lucent Manager Mario Calvez (a Spanish person) to the position of a lead Manager, and Mr. Bayad made a voluntarily sacrifices by teaching Routing and switching technologies (data networking ), and computer technologies to all Lucent engineers in order to bring them up to speed in this competing high tech market. **See Exhibit B attached.**

14.    Mr. Bayad was an excellent leader and a knowledgeable network engineer who consistently satisfied Lucent ' customers with his expertise and services. **See Exhibit C**

4

15.     As an officer, Share holder, and manager of Lucent, Mr. Bayad was encouraged

To provide his technical knowledge and his initiatives to add value and to build the

confidence of Lucent 's customers, this include a plan to favor Lucent against its **rivals**

as **Cisco Systems Inc.**,  in the business of data communication field.

16.     As he was told and instructed, he communicated his concern and his plan of

action to save Lucent  failing Business of Data Networking  to Defendants Anthony

Savastano, Carl Weise, Pat Russo, and Chairman Henry Schachts of Lucent Technologies

Inc. **Please Exhibit D attached.**

17.     Defendants Anthony Savastano, Carl Wiese, and Patricia Russo did not like

Mr. Bayad,simply because he was an Arab from North Africa. Mr. Bayad had never

Breathed discrimination against him in any where else in the world, and not even during

his **twenty years of** living and residing in the state of Massachusetts.

18.     Mr. Bayad was able to come up with a plan of attack and solutions to the

problems that Lucent was facing, and decided to help. His action was conducted in a

professional manner by following the chain of the command from Defends up to their

Chairman Henry Schacht.  It was achieved accordingly, and under the encouragement of

Lucent  executives.

19.     Unfortunately the flaw of business was purposely put in place by Defendant

Patricia Russo and her followers, Lucent was a start up company and every one was back

stabbing each others, and Mr. Bayad was unaware of this game , and he was found

in the middle of cross fire and Defendant Patrica Russo 's back yard.

20.     Lucent Chairman Henry Schacht and his right hand man CEO Rich Mcguin

for lucent were loosing business to competitors and could not compete in this demanding high tech Market.

21.     One of the Defendants Anthony Savastano, Carl Wiese, and Patricia Russo's plan of conspiracy and discriminatory action was, to first terminate his Spanish Manager Mario Galvez, and then by stripping Mr. Bayad of his status as lead Manager for no cause or any wrong doing; It was aimed to humiliate and to arm Mr. Bayad well being.

22.     Over the course of Mr. Bayad 'employment with lucent Technologies, He become repeatedly aware that Defendant Anthony Savastano , Carl Wiese, Patricia Russo, and other Lucent Technologies managers did not like him because of his Arab race, ethnic background, and his national origin.

23.     Mr. Bayad informed Defendants Patricia Russo, Anthony Savastano, and Carl Wiese over the telephone and in person that this intentional discrimination followed by disparate treatment must end now.

24.     In January 21 the year of 1997, Mr. Bayad applied for the vacant position of general manager of the largo office (as well as other management positions), but was also denied these promotions by Defendant Savastano (Director of Lucent). **See Exhibit E attached to the complain.**

25.     Defendant Carl Wiese was sent by Defendants Anthony Savastano and Patricia Russo, who met with Mr. Bayad in Fort Lauderdale Lucent office to advise him that by Pinpointing the flaw of Business to Lucent Chairman Henry Sheachts, Mr. Bayad has given Lucent a black eye and that his time in this company (Lucent) is just a matter of time.

26.     Defendant Carl Wiese also told Mr. Bayad that Lucent will never promote or

6

consider an Arab to be Vice President of Operation. He was right. Mr. Bayad was blind by working very hard trying to make it, He did not know any thing about discrimination, or games played in corporate America by individuals as the Defendants.

27.    Defendant Savastano has denied Mr. Bayad a promotion to a "Sale Manager" once before. Mr. Bayad had been offered a lucrative transfer and promotion to sales management position in another lucent division, but Defendant Savastano refused to promote Mr. Bayad or allow him to be promoted within lucent Technologies Inc. See **Exhibit F attached to the complain.**

28.    Defendant Anthony Savastano, Carl Wiese, and Patricia Russo promoted Lewis Kaslow instead who was a white employee to the largo, Florida office as General Manager for Lucent that Mr. Bayad had sought, despite the fact Lewis Kaslow knew virtually nothing about data networking field and was simply a phone technician.

29.    Lewis Kalsow 'first day on the job was instructed by Defendant Savastano, Carl Wiese, and Patricia Russo (He was reporting to them) to call Mr. Bayad who is working In Fort Lauderdale Florida area and demanded him to come to Largo, Florida as soon as possible.

30.    When, Mr. Bayad declined his demand to meet immediately because of his Commitment with a Customer in the Fort Lauderdale area (Lucent has a policy in place that customers comes first). Mr. Bayad nicely communicated his concern to Lewis Kaslow, to simply reschedule the meeting at some other time (knowingly all Lucent managers are playing golf all day long).

31.    Mr. Bayad was out there in the field working as slave because he was an Arab from Africa and he cannot say a word fearing the consequences of being terminated

and defamed against him ( to make it hard to find a job).

32.    Lewis Kaslow begun angry and screamed at Mr. Bayad and accuse him of misconduct, and called him a **"dirty Arab"** and he stated openly that he "did not care if [Mr. Bayad] had to take" **a flying carpet** to Largo Florida office. It is shame.

33.    Mr. Bayad is an American born in Morocco, a country who has long been recognized as a strategic allied, and the country that was the first nation to acknowledge the existence of the United State independent and free nation in the free world. (**Check with U.S State Department for more info**)

34.    Mr. Bayad understood Mr. Kaslow's remarks to be demeaning and disparaging to his Arabic background, his race, his ethnicity. He also understand this desperate treatment has been encouraged by Defendants Anthony Savastano, Carl Wiese , and Patricia Russo.

35.    Mr. Bayad had to drop every commitments promised to lucent's customers, and flew immediately from Fort Lauderdale to Tampa (Largo) on the same day of **January 23, of the year 1997**. Defendants Anthony Savastano, Carl Wiese, and Patricia Russo were mandating Mr. Bayad to execute Lewis Kaslow's demand without any further delay or otherwise. (Defendants were planning to send him to the hospital as they did )

36.    Upon Mr. Bayad's arrival at Lucent Largo (Tampa) office, Mr. Bayad was escorted by Defendant Anthony Savastano, the new General Manager Lewis Kaslow, and the Lucent corporate Police Renold Laurino .**Exhibit G attached to the complain of Lucent Front Desk guard's report being briefed for his shift (conspiracy).**

37.    Mr. Bayad was then imprisoned alone in a room with lucent corporate Police acting under the direction of Defendant Anthony Savastano, who proceeded with mental torture and accused Mr. Bayad of stealing from Lucent Technologies Inc. by charging

8

items on his corporate American Card, and it was common conduct by every white

people of Lucent Managers including Defendant Carl Wiese and Mike Reed. **Exhibit I**

**attached to the complain of Wiese and Mike Reed of Lucent Amex Credit card .**

38.    Since Defendant Savastano's title was the Director of Lucent Finance and

accounting. This **conspiracy** was clearly initiated by him without a doubt, and all the

facts implicated him as the author of this ridiculous conspiracy of accusing Mr. Bayad of

**finance fraud** (stealing from the company), Defendant Savastano had a **complete**

**access to Mr. Bayad 's lucent personal financial records. Exhibit J attached.**

39.    Moreover Defendant Anthony Savastano was **an accountant** during his entire

career and a **financial analyst** with **Wang Laboratory , Lucent Technologies,** and now

**Cisco Systems Inc.**

40.    Defendant Savastano was the **lead conspirator** and the **expert in Finance** and

**accounting.** It was conspicuous of him to accuses Mr. Bayad of **financial fraud** and

**stealing** from **Lucent technologies Inc.,** It was a **dumb pretext** to **finish him up once**

and **for all,** Brightly Mr. Bayad was a hard working, very educated, and very

technically competent in field of internetworking .

41.    The fact are indisputable about Mr. Bayad's conduct. He is a Tax Payer,

as well as a responsible citizen during his entire life, and without any criminal behavior,

or any mental history as he was framed by Defendants and was committed involuntarily

to the psychiatric award against his will.

42.    Mr. Bayad has never considered filing chapter 11 or any other credit

discharge even when he was destroyed financially by Defendants.

43.    After being screamed at, abusively interrogated, intimidated, physically assaulted,

9

and confined alone in a room with Lucent Corporate Police, Mr. Bayad became extremely scared and afraid for his safety.

44.    Mr. Bayad advised Lucent Corporate Police that this action taken against him was not right, and if he could leave the room or could call his attorney, or if someone else could be admitted to the room so that his personnel safety could be assured.

45.    Lucent Corporate Police refused Mr. Bayad's demand and kept Mr. Bayad falsely imprisoned and proceeded to scare, Harass, intimidate him as he has been instructed by Defendants. Lucent corporate police Renold Laurino continuously made derogatory remarks about Mr. Bayad's ethnic, racial background as Arab, and about Mr. Bayad's ability to speak English.

46.    While falsely imprisoned at the hand of lucent corporate police acting under the direction of Defendants Anthony Savastano. He stated things like: "I don't know what's wrong with company (Lucent) hiring people like you. "And "ten year ago I wouldn't even be talking to someone like you."(Meaning Arabs)

47.    Such remarks were directed specially at Mr. Bayad's Arab race and ethnic background, and the fact he had been born in Africa and was considered foreigner under the eyes of Defendants.

48.    After being falsely imprisoned and abusively interrogated by Lucent Corporate police for such intense period of time, Mr. Bayad became sick with fear and tried to leave the room.

49.    When Mr. Bayad reached the door, several Lucent Technologies including corporate Police , security and Defendant Anthony Savastano attempted to physically

10

restrain him and kept him locked in the room where he was being falsely imprisoned.

50.    In the scuffle that ensued, Mr. Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below.

51.    As result of the scuffle, Mr. Bayad received injuries to his head and neck and his clothes were torn. **Exhibit K attached of the Pinellas County Sheriff's office incident/Offense report.**

52.    An ambulance was called to take Mr. Bayad to the hospital, while he was lying in the ambulance with an I.V in his arm and being treated by paramedics, Mr. Bayad was terminated from Lucent at the presence of Defendant Anthony Savastano who was on the phone with Carl Wiese and Patricia Russo.

53.    Mr. Bayad was charged of trespassing even though he was asked to come to Largo (Tampa Florida) office at their request and Mr. Bayad was an employee of Lucent Technologies Inc.

54.    While lying in the ambulance and with an I.V. in his arm, Mr. Bayad was forced through the humiliation of having to give back his business addresses, his pager was wet and not operational, and his corporate American Express cards despite the fact the card had already been deactivated and could no longer be used by anyone. **Exhibit L attached of the Fire Department's report at the scene during the 911 call .**

55.    Defendant deliberately and intentionally humiliated, tortured and degraded Mr. Bayad and it was well act of conspiracy. They **reposed** the **occurrences** of the incident and **conspired** against Mr. Bayad, and they were the **ones** who **called** the **Police and the Fire Rescue to the Scenes**, also they were the ones who provided **defamatory Occurrences** to the police, simply to convinced them to commit Mr. Bayad to the

11

**Psychiatric ward** against his will (in Florida they call it "Backer Act").

56.    At the scene, Defendant Savastano 'secretary Joan Grohe 'secretary Joan Grohe was heard to Exclaim, "I warned", and "I told them (Defendants) not to do it. They fucked it up." Ms. Grohe also knew that Mr. Bayad was going to be Baker Acted (or committed to the psychiatric ward against his will) before the ambulance had even left the parking lot of the Lucent Largo office and remarked to a coworkers that **"we're going to baker Act him."**

57.    Forcibly Mr. Bayad was **obeyed to spent a good 72 hours in the psychiatric ward**, and since he Was recognized not having any problem, the Sun cost Mental Hospital's Doctors released him **very shortly.(It was the most grim moments of his life)**.

58.    When Mr. Bayad was released from the hospital, and he was left by defendants without any money, clothes, or means of transport ting him self to his home, it was an obvious conduct of hate and disgrace by the Defendants.

59.    On April 4 the year 1997, Mr. Bayad filed a charge of discrimination under the Equal Employment Opportunity Commissions and Human Right Division against Lucent technologies Inc. Mr. Bayad was issued a right-to-Sue letter by the EEOC on April 22 the year of 1997 and legal action is still pending in the U.S District Court of the 11th Circuit of Appeal.

60.    The reason Mr. Bayad 'law suit is still pending is because Lucent with their power and money and their attorneys Todd Legon and Fash paid off Mr. Bayad ' attorney attorneys David Sales and Stephanie Alexander, Mr. Bayad attorney threaten Mr. Bayad to accept an amount of $50,000.00 from Lucent Technologies or otherwise they will

withdraw from the case and they were acting at the direction of Lucent Technologies.

61    Mr. Bayad 'Attorney David Sales and Stephanie Alexander introduced a bogus Local rules and withdrew from the case. Lucent took advantage of the weak judicial systems put in place in Florida which is all the lawyers are known for their connection, and Mr. Bayad is confident of this time around they will not find any one to pay off, but they will be declared of their violation of the Law. Additionallylawsuit against Mr. Bayad 'corrupted attorneys is in progress. **Exhibit M of Right-to-Sue letter attached to the complain (a complain is being with the Bar and Supreme Court of Florida).**

62.    Moreover Lucent **employees Cisco Mr. Hamdi Elsiah and Mr. Amado Navas,** had also been targeted by the same defendants and discriminated against while working with Lucent , and simply because one of them was an Arab and the other one was a Spanish of descend, and they were very technically knowledgeable of internetworking field.

63.    Very shortly after his termination and between the year of 1997 and 1999, Mr. Bayad attempted to find subsequent employment in data networking industry. Mr. Bayad was aware of Defendant Anthony Savastano, Carl Wiese, and Pattricia Russo had spoken to Bay Network Inc., and told them not to hire Mr. Bayad. He was crazy and that he had been fired for stealing form the company Lucent.

64.    Defendants Anthony Savastano, Carl Wiese, and Patricia Russo did not stop there. The fact shows Defendants openly conspired with International Network Services Inc. "INS" against Mr. Bayad. He was humiliated and to terminated him on his first day on the job. **Exhibit N attached to the complain of the Defendant Patricia Russo conspiracy and defamation.**

65.    About One month later Defendant Patricia Russo without caution to conceal her misconduct for her conspiracy and liability of interfering with Mr. Bayad 's Civil Rights. She purchased International Networking Services company to demonstrate her power to all Minorities and specifically to Mr. Bayad of her **power** and her **fortune**, but in **contrary** she has provided and alleviate the burden of proof of this litigation by admitting of the **defamation** and **conspiracy Counts**. Further more and all the **Exhibits attached in this complain** all pointing at her and her followers (Defendant Savastano, Wiese, and Mckinney of INS). This conspiracy caused Mr. Bayad a greater pain to his health, mental anguish, loss of enjoyment of life; include injury to character and reputation.

66.    Moreover it was done with the collaboration of Mckinney of INS to conspire against Mr. Bayad and to purposely terminate his employment with INS Inc., This misconduct Caused Mr. Bayad a greater pain to his health, mental anguish, loss of enjoyment of life; include injury to character and reputation.

66.    Defendant John Chambers was a good friend with McKinney, the primary investor for International Networking Services, and made it happen for Mckinney to raise a capital venture approaching to **"1.5 millions"** and provided him with all the material support that resulted of the **flying colors with a take home of 3.5 Billions, and Mickiney was very grateful to both his friend Defendant Patricia Russo and John Chambers. Exhibit O attached the complain of InformationWeek wire regarding the purchase INS.**

67.    **Their conduct was well severe as Martha Stuart 'case or even far than Enron**

14

corporation. It is shame their action goes unnoticed.

68.    On or about **April 12 of the year 2000**, Mr. Bayad was offered a position as

Project Engineer I I grade level 9 Cisco Systems Inc., Professional Services- U.S.

Enterprise Northeast region, reporting directly to Lynn Fraser starting salary of

$90,000.00 yearly, working out of  Cisco Systems Lexington office located in

Massachusetts. **Exhibit P attached of employment offer by Defendant John**

**Chamber 'company Cisco Systems Inc.**

69.    Mr. Bayad was hired because of his experience in the field of Data Networking,

after the well known rigorous five interviews process, and personal background check

that Mr. Bayad  was  put through by Cisco;  Mr. Bayad has been through out his entire

career an excellent employee and Project Engineer with Cisco Systems.

70.    Mr. Bayad continued his outstanding performance by executing well all of his

duties. His Manager Lynn Fraser rated his overall **job performance as an "E"**, which in

Cisco performance rating means: "Employee is successful; meets or exceeds all key

performance expectations". **Exhibit Q attached.**

79.    During a Business trip to San Jose California, Mr. Bayad was **spotted** by

Defendant Anthony Savastano **wearing a Cisco Badge**, while working at the corporate

office in San Jose California.  Defendant Savastano hold a tile as Director or **"Vice**

**President of finance"** with Cisco Systems  Inc., and was reporting to his friend

John Chambers the President of Cisco and owner (An old Body of Wang Laboratory

Inc.), Defendant Savastano was reunited again with Mr. Bayad. **Exhibit R attached**

80.    Upon returning from his trip back to Massachusetts, Plaintiff Anthony Bayad has

informed his Manager Lynn Fraser, was made aware of the act of the discrimination

and disparate treatment that Mr. Bayad have undergone while working with Defendant Anthony Savastano with Lucent

81.     From that Moment on, Lynn Fraser lunched her self into fishing expeditions by looking at every avenues for the sole purpose to find an alibi and to dismiss Mr. Bayad from his employment with Cisco, and knowingly Mr. Bayad was technically competent and knowledgeable of his job as a Project Engineer, and it was impossible to dismiss him for no cause.

82.     Lynn Fraser begun to micro manages Mr. Bayad by ordering him not to work from home and to show up in the Lexington Office, while all his white co-workers were enjoying the freedom of working from home and her conduct become political toward Mr. Bayad.

83.     Hence Lynn Fraser was ignoring her commitments to her customers, instead she was occupied with Mr. Bayad, and she was helped by her friends Brian Low and Jeremy Noonan. These individuals were always slaking and Lynn Fraser was very protective of them.

84.     Lynn Fraser demanded Mr. Bayad to submit his **Corporate Financial Expenses (Travel expenses, Business Expenses) at all the time** to her before being reimbursed. her demand of action against him was very abusive of her authority as a manager, and knowingly all his white co-workers were not mandated as Mr. Bayad was.

85.     Mr. Bayad au courant of these disparate treatments of a **long- standing of pattern** of behavior from Defendant **Anthony Savastano**. Lynn Fraser was simply a messenger with an order to conspire and to terminate him from his employment.

86.    Lynn Fraser was serving Defendant Savastano Vice President of Cisco's Finance and accounting,  **his office was involved in preparing yearly budgetary and monetary reports to all Cisco Managers including Lynn Fraser**.

87.    Mr. Bayad understand his future and his **career with <u>Cisco Systems is over</u>**, specially when Defendant Anthony Savastano and John Chamber were very close friends, and their friend ship goes way back when they were working or associating  at (INS) International Networking Services Inc., and Wang Laboratory Inc.

88.    On about **November 2nd of the year 2001 and before** Mr. Bayad being wrongfully terminated from Cisco Systems Inc., Mr. Bayad had applied for the position as a Systems Manager or System leads Engineer for North Africa region, and since Mr. Bayad speaks the languages of Arabic, English, French, and North African Dialect. He was considered well suited for the  position by Cisco Europe Division.

89.    Mr. Chris Dedicoat's team of Managers (no Arabs/American as Executives in Cisco) of **Cisco Systems Shared Middle East, Africa** – France were very impressed about Mr. Bayad's technical background, and decided **to fly him** halfway **around the world** for 3 very lengthy and tough rounds of **interviews** with several Engineers and Managers from 3 different countries, the **United Arab Emirate (Dubai),** the **United Kingdom (London)**, and **France (Paris)**, all within <u>**3 days time period**</u>.

90.    All the European Managers reported to Defendant John Chambers and the interview went very well and Mr. Bayad was offered a verbal offer by the Manager of the region. **(Travel Documents, Visas, places,  and Managers 'names contact will be Provide during discovery of the 3 days trip half around the world.**

91.    Upon Mr. Bayad return from his trip he was advised by several European

Managers that the decision to hire him was **standing at Cisco Corporate** office in California (Meaning John **Chamber's office**).

92.    Mr. Bayad was acquainted with the Defendants intend to construct the "**Chinese wall**" to **bar** him of all the **enjoyment of life** and block him from being promoted or even of being able to **support his families** ( paying the bills).

93.    The **Managers** of **Cisco Europe** have **invested** a considerable amount of money approaching more than **$10.000.00 dollars** in travel **expenses** and **time**. They spot him as a well suited and a professional and a potential  candidate to the **North African regions.**

94.    It was with certainty that Mr. Bayad was a perfect match for Cisco Africa regions because of his technical background and his abilities to speak the languages,  such as the English  in the East, West of Africa; French and Arabic in Africa.

95.    Mr. Bayad was also an **American Born in Casablanca Morocco** a 30 Minutes distance duration of **Spain** and **Gibraltar**, and who is well **acquainted** with all the of obligation and the understanding of the **North Africans** way of doing  business.( As was said by Defendant **Carl Wiese** Arabs as you (Mr. Bayad) are **disbarred** of being **promoted** as **Managers**  and  **Executives** at **Cisco Systems Inc.**, or **Lucent .**

96.    Mr. Bayad was very **distress** of these inequitable treatments **targeting** him, Mr. Bayad decided to write a letter to Defendant **John Chamber** and to **Rick Justice** the Vice President of world wide operation for Cisco Systems and copied Defendant John Chambers in it.

97.    In the Letter Mr. Bayad laid down his concern and advised him about this unfair

treatment and misconduct, knowingly he was over qualify for this position.

98.     Rick Justice or defendant John Chamber had not replied to Mr. Bayad's request for immediate attention to his matter. It was a clear sign that they were admitting their misconduct. **The Letter of correspondence in this matter is in both computers of Mr. Bayad , Defendant John Chambers, and Rick Justice.**

99.     Mr. Bayad had the fortuity to meet with Defendant John Chambers for the first time in New York City,  where he was conducting a meeting with Key Span Energy at Cisco office of 10 Pen Plaza New York. **(Travel document and expenses reports of both Mr. Bayad and Defendant John Chambers, and Testimonies of Cisco Client Key Span Energy about the meeting that took place in Cisco office 10 pen plaza New York).**

100.    Mr. Bayad was assigned to a project of migrating NY 'Office from the old phone systems to the new IP Telephony call Manager (AVVID).

101.    While in the office of New York Defendant John Chambers had made contact with several Cisco Employees, spoke to every one of them, but  ignored Mr. Bayad. It was a clear behavior of dislike toward him.

102    On about April/ May 2001 time frame, Mr. Bayad for the second time met personally with Defendant John Chambers, and who was conducting a town meeting in Massachusetts. Mr. Bayad, and all his coworkers was also Invited, He had the chance to speak with Defendant John Chamber and to confront him about this conspiracy and discrimination aimed specially against him.  Defendant John Chambers ignored and walked way fearless to another crowd tried to avoid Mr. Bayad.

103.    **In   May of the year 2001**, Mr. Bayad was taking by surprise and terminated from

his Employment. Lynn Fraser used a ridicules excuse such as the economy was the

reason why he was terminated from his employment. (Lay off)

104.    During the time of Mr. Bayad's termination with Cisco Systems, Lynn Fraser'

under the direction of Defendant John Chambers and Anthony Savastano, had created

the same stressful environment as Lucent Technologies have accomplished back in

**January 23rd of 1997**, to purposely frighten Mr. Bayad knowingly he was mentally and

physically abused while employed with Defendants at Lucent , likewise she had Mr.

Bayad in close doors and at presence of Cisco Systems Corporate Police while he was

signing with **obscure ness** a Cisco Systems '**documents or contracts.( the obscure**

**Cisco documents will be read and provided during discovery).**

105.    Lynn Fraser unconditionally mandated Mr. Bayad stressfully to sign Cisco

documents approaching to twenty pages that was signed without any prior notice or

review.

106.    The asserted reason for Mr. Bayad's termination was completely **pretextual** since

Mr. Bayad **exceeded** his white coworkers, **Robert Tracy, Mike Ippolito, Brian Low,**

**Jeremy Nooman,** and even **exceeded** his manager **Lyn Fraser**, in any territorial

**expertise, of educational background** or **Internetworking technologies field.**

**Exhibit S attached to the complain** of Mr. Bayad s experiences and **achievement**

**during his 10 years in the Data Internetworking field and will be compared against**

**the qualification if his Manager Lynn Fraser and his Coworkers who did not get fire**

**as Mr. Bayad was.**

107.    Defendants and specially Savastano was athirst to cause mental and emotional

distress, and loss of enjoyment of life, and; include injury to character and reputation, and injury to credit standing ( He did not succeed this time around at Cisco ).

108.    Shortly after his termination, Lynn Fraser called Mr. Bayad on his Cell phone and admitted to him the asserted reason was not her decision and it was the sole action of **Cisco Corporate** ( Meaning from Defendants), and she will inform Mr. Bayad of any opening in the nearest future with Cisco.

109.    Lynn Fraser' call to Mr. Bayad was **alerting**, as she was not a **trustworthy "persona"**.

110.    Mr. Bayad informed her that he was in Florida trying to open a consulting firm (a new company of his) , and welcomed her if she can assist him with any advise or sales ' leads to jump start his company, Knowingly her contact that day was to ascertain the effect of her discriminative conduct

111.    Subsequently upon Mr. Bayad 'termination of employment with Cisco, on about May 30th of 2001, **Bruce Bastian** a Systems Engineer **Manager** sent a **"wicked racial Audio "via Electronic mail** within **the authority of Cisco Systems 's** way of mail communications, intentionally to Mr. Bayad's coworkers with Cisco Systems Inc.

112.    The directive audio that was sent and was controlled with **"multifarious racial jokes"** about Mr. Bayad 's ineptitude to verbalize the expression of the English tongue, clearly ridicule any and all **foreign nationals**, sound stylish and **feebleminded** of the of **English palaver**, and relate to employees getting terminated as Mr. Bayad was.

113.    The **consignation** of the multifarious **racial jokes** audio was titled as Follow: **hate this "Fucking " job, and I will be fired; I have just been fired , and By-By-everybody; I need a "P" quick and my Etc...),** and it goes on and on. It is a shame.

114.    Moreover Rick Justice and all other Cisco Executives admitted of Bruce Bastian'
misconduct of sending the racial audio email , and as quoted from their email of
correspondence; The email was racist in nature and against all minorities with broken
English (It was Cisco 'policy and customs). Unfortunately they do not terminate White
employees but  only Minorities if they violate the Cisco Business conduct. **Exhibit T
attached to the complain** as copy of the email and CD contains multifarious sound as
word perfect , click and listen.

115.    At all the time pertinent to this complaint, The Defendant John Chambers had an
employee hand book and a stated policy barring discrimination and retaliation on the
basis of race, religion, and origin. **Exhibit U attached to the complain** of Defendant
**John Chambers of Cisco Code of Business Conduct.**

116.    **Along the multifarious racial** Email from Se Manager Bruce Bastian, Defandant
**Anthony Savastano** visited a coworker Mr. Amado Navas Cisco Channel Manager out
of Tampa office Florida , to let him know personally that Mr. Bayad or any Minorities
including Mr. Navas , has **no business in Cisco Systems** a company of **His Friend**
Defandant **John Chambers.** Mr. Bayad was informed by Mr. Navas a Spanish employee
of Defendant John Chambers of Cisco Systems as **Follows** ( **Exhibit V attached to
the complain** of Cisco Channel Manager letter of correspondence) :

" Mr. Bayad,

Per your request I am enclosing this electronic mail message sent with the sole purpose of
ridicule your termination from Cisco Systems by Tony Savastano and Bruce Bastian. The
content of this email is public record currently under review by the US Federal of the
Middle District of  Florida in Tampa. This email was sent as a warning and ridicule to all

22

employees of foreign origin that work at Cisco and want to pursue a management career.
The white employees above mentioned warned both me you that we would be terminated if
we attempted to seek promotions and or transfers to better jobs within the company. I
know this fact because Mr. Savastano came to the St Petersburg office soon after your
Termination in early May of 2001, to verbally warn me, and ridicule both me and you. That
people like me and you would not be allowed to stay at Cisco Systems. He said that he
took care of us at Lucent with the help of Patricia Russo, and know he would take care of
us again with the help of Carl Weise.

If you have any questions at all about my case please do not hesitate to contact me, since
it is a matter of public record. If you aware of any other individuals that are also victims of
this discriminatory behavior, and the conspiracy led by Savastano, Wiese and Patricia
Russo please let me know immediately.

Respectfully,

Amado Navas"

117.    After his termination Mr. Bayad was vesting time **and Money** to achieve the
**Cisco Certification Internetworking Expert and "CCIE**, which it comprised of two
parts, the **writing** and the **lab Exam**, was designed by Defendant **John Chambers** and
his company Cisco Systems Inc., to favor only the **White Engineers** in the field of
internetworking Technologies field.

118.    Defendants accession of discrimination and disparate treatment against Mr.
Bayad proceeded far more of their jurisdictions with threatening to restrict Mr. Bayad
from  taking his  **CCIE Lab exam** and  since Mr. Bayad successfully passed the Written
exam that  was administered  by **Silva Prometic  Company. The written Exam** was
out of their control. Unfortunately the CCIE Lab was not. John Chamber has all the

jurisdiction under his control and Mr. Bayad was scheduled for the CCIE lab exam which due in February of the year 2004, in Sao Paolo Brazil. **Exhibit V attached to the complain of the threatening and restraining Mr. Bayad's right as share holder to pursuit his certification as white Engineers of Cisco.**

119.    The white Engineers were (cheating) given the original copies of the actual exams of the CCIE, and were facilely appointed as the best **Engineers** in the field of internetworking technologies field. They were **compensated a subsequently a** ridiculous amount of money exceeding a  some of **$200,000.00** dollars; and  **some of them were high school drop out. (Bruce Brewer and Dale Ronowski one of them)**

120.    On about between the **year of 1996 and 1997,** Mr. Bayad was an eyewitness Defendant Anthony Svastano aided two persons of common ancestry (white person) **Bruce Brewer** and **Dale Roznowski,** were provided **the original exams** copies for the **Cisco Certify internetworking expert level. Exhibit Y attached to the complain** of **the CCIE copies dated the year of 1997 that was given to Mckinney, Brewer, and Ronowski.**

121.    Like wise Defendant Savastano promoted Bruce Brewer and Dale Ronowski to Management positions while at Lucent and Dale Ronowski while at Cisco.

122.    Mr. Bayad was also au courant of neither Bruce Brewer nor Dale Ronowski has worked for any fortune  500 companies as Mr. Bayad did, nor they have graduated from any University in the U.S as Mr. Bayad had accomplished,  and ought to pay back over $60,000.00 of Governments students loan.

123.    **Cisco Travel Expenses reports** will show Defendant Savastano took mission trips or tours to Tampa (Florida) at the account of Cisco Systems to visit his  friends Dale

Ronowski Cisco Systems and Bruce Brewer with Lucent Technologies In, and to deliver

His personal message of superiority to the Channel Manager of Cisco Systems and

Spanish ethnicity about Mr. Bayad' termination.

124.    While working with Cisco Systems Mr. Bayad (recall) had obtained a copy of the

CCIE exams that was distributed to only white Cisco employees by Cisco Systems

Managers Gene Popula was given them to his friends at the Lab of Cisco Lexington,

Defendant Anthony Savastano provided them to his Friends Bruce Brewer and Dale

Ronowski , and John Chambers made it available to Mckinney of International Network

Services Inc., and Patricia Russo of Lucent Technologies for her Engineers in Tampa.

**the updated copies of the CCIE Lab exam will be provided upon request ( they are**

**too many copies)**

125.    On about September 2001, Mr. Bayad founded a company, Global

Internetworking Consulting Inc., that engages in the computer and networking

technology, security, IP telephony, client server technologies, and routing and switching

technologies. **Exhibit z attached to the complain of Company GIC registration in**

**Massachusetts**

126.    Mr. Bayad invested his retirement saving to promote his company Global

Internetworking Consulting Inc.,("GIC") and became partner with other solutions

provider such as Cyber guard Inc., Kalix Inc., for Surveillance and Security, and

Cisco Systems Inc., Routing and a Switching Technologies.

127.    GIC has chosen these service providers as Cisco Systems for its customers, to

build a strategist alliances and business relationships, and **GIC** was acting as the front

Liner for Cisco Systems Inc., to promote and to recommend all the Cisco System's products and services according to Cisco Systems agreements and guidelines.

**Exhibit X-1 attached in the complain the copy of the registration of Global Internetworking Consulting as Cisco Register Partners.**

128.    Mr. Bayad was the owner of Global Internetworking Consulting Company , he was also aware of neither of Defendants John Chambers for Cisco nor Patricia Russo for Lucent Technologies, do not promote or **support small business minority owner of companies**, in fact they only promote white businesses as they have done with Mckinny of International networking Services and not with businesses owned as Mr. Bayad.

129.    Additionally Defendants John Chambers **did not provide any Business** support to Mr. Bayad 's company GIC as he did with his friend **Mckinney of INS**, and the fact shows Mr. Bayad requested from **Cisco SE Nick Brandaleone** to provide him with the name of Cisco Sales Manager for (GEM) Jim Skeele.

130.    Mr. Bayad was a customer and partner of Cisco Systems and it was of his right to schedule a business meeting ( Business orientation) to discuss some opportunities that GIC will bring to Cisco Systems and vice versa, neither **Jim Skeely of Cisco** nor any other **Sales Manager of Cisco Lexington office** had contacted Mr. Bayad, and the reason being of their authority. They proceeded as instructed by Corporate ( meaning John Chamber) not to do any businesses with minorities and Arabs as Mr. Bayad).**Exhibit X-2 attached to the complain of the request made to the Cisco SE Nick Brandaleone.**

131.    Each time Mr. Bayad visited Cisco Lexington Office, where it is white race only dominating office, and every one from Cisco was alienating them selves from Mr.

Bayad as he was a **criminal or in the Federal Bureau of Investigation ' most wanted list.**

132.    Hence since he left Cisco Systems Inc., in good term and was told he was eligible for rehire (Supposedly). Mr. Bayad corresponded with his Manager and since she informed him back in May of the year 2001 that he was eligible for rehire, he also informed her of his intend to apply, he even sent a letter to Human resources who replied back by encouraging him to apply. Unfortunately when they process Mr. Bayad's application it get stalled and it get denied the right by Defendants and the excuse is always Corporate ( meaning Defendants).

133.    Mr. Bayad was destroyed economically and his business was not doing well, he decided to put his resume out in the market by applying with Cisco as he was told by his good Cisco coworkers about Cisco employments opening.

134.    On about **September 30 of the year 2003 to present time,** Mr. Bayad had applied of **multitude employment** opportunities within Cisco Systems Inc., and noted as " **Cisco requisition** ";

1) **Requisition 714007** contact name Michael Kent, 2) **Requisition 713667** contact name Niki Peleuses,3) **Requisition 713906** contact name Michael Kent,4) **Requisition 713644** contact name Niki Peleuses, 5) **Requisition 713123** contact Michael Kent, 6) Requisition 711846 contact name Chuck Ramsburg, 7) **Requisition 711780** contact Domick Delfino, 8) **Requisition 72133** contact Scoot Lovett, 9) **Requisition 712669** Michael Kent, 10) and **Requisition 713950** Liz Bacchi, and many more.

**Exhibit X-3 attached to the complain of all the inquiry regarding opportunity with**

**Cisco Systems Inc.**

135.    These individuals named above were all Manager of Cisco Systems Human

Resources, and all have been contacted via **Electronics Emails and certified mail.**

**Exhibit X-4 attached to the complain** a correspondence to **Human Resouces and**

**Lynn Fraser of Mr. Bayad complaining about this inequality within Cisco.**

136.    **Untowardly they did not** confirm nor acknowledgements Mr. Bayad's pursuit of

opportunities with Cisco Systems Inc., because of the inequality policies Seth forth

intentionally against Mr. Bayad. They were interfering with his rights and his way of life.

137.    In good faith Mr. Bayad had complied fully with all Cisco's requirement including

signing unspecified documents during his exit interviews, and vis-à-vis with Lynn Fraser

Mr. Bayad was informed that he was eligible for rehire after one year from the time he

was Terminated, and presumably her excuses was the economy. It was a clear conspiracy

aimed to terminate him without justifiable cause.

138.    When Mr. Bayad applied for an open positions with Cisco Systems Inc., and dealt

**directly** with  the hiring Manager as he did with  **Robert Bardani  an SE Manager** with

Cisco Systems, who shortly replied and asked Mr. Bayad to provide a convenient time,

for a Telephone Interview. **Exhibit X-5 attached to the complain** of the

**communication with Robert Bardani.**

139.    In the final stage of the interview Mr. Bardani asked Mr. Bayad about his

preceding direct Manager Lynn Fraser, to contact her regarding the  history of  his

employment with Cisco Systems Inc., and after he spoke to Lynn Fraser he lost interest

for no reason. It was obvious conspiracy that was aimed at Mr. Bayad.

140.    Additionally Mr. Bayad has **directly** contacted  **Mike Kent of Cisco Systems**

28

Inc., He was very professional and welcomed Mr. Bayad back to Cisco.

141.    He was willing to proceed further in the application process. His team sent an electronic mail indicating that Mr. Bayad was considered for a position with Cisco Systems, an application is required to be filled in order to proceed further in this process. **Exhibit X-6 attached to the complain** of the correspondence of Mike Kent **indication of Corporate intention of discriminating against Mr. Bayad.**

142.    About all Bayad has **complied entirely** with all the Cisco requirement and demands, but Unfortunately Mr. Kent sent back an **electronic mail** to Mr. Bayad stating in it as **Follow:**

**"It is all in the Management hand"** meaning Defendants **John Chambers, Carl Wiese, and Anthony Savastano.** Mr. Bayad had never heard from him again and it was "anew" pattern of behavior and conspiracy against Mr. Bayad, and frimely it was proven by the Hard copies of all correspondence Sent back and forth by **Cisco European Managers, SE Robert Bardani, and Mr. Kent, have taken** in regarding the hiring of Mr. Bayad (the decision to hire Mr. Bayad is a decision of **Corporate, Defendants John Chambers, Carl Wiese, Anthony Savastano**).

143.    On about **December 3rd of the year of 2003,** Defendants deliberately sent an employment email of correspondence to Mr. Bayad requesting him to provide his Ethnic **race background** and his **genders** before Cisco Systems a company of Defendants John Chambers can proceed in the regards of his hiring decisions of Mr. Bayad,  and it was a clear  act of Discrimination that is totally unlawful and contradicting the **Fair Labor act and the  Massachusetts Rules of Law.**

29

144.    This unlawful employment of race preferences and practices that was intentionally consigned by Defends in retaliation of Mr. Bayad as Arab of Race. **Exhibit X-7 attached to the complain of Cisco making sure that the applicant Are white Engineers and not black before being hired and Defendant John Chamber of Cisco is still living  the 1960's the era of Ms. Rose Parker.**

145.    Defendant **John Chamber the President of Cisco** cannot deny nor can he provide a defense in this litigation to  such information is for the sole " **pretext**" so called "**EEO**" and it is volunteered information only , or it is not requirement, and if it is assumed required based of his policy ,then it should have been **provided** to Mr. Bayad and all Cisco employment applicant" **when" they have finalized and secured their positions with this company called Cisco , and then Cisco can proceed with the request of race identification or as he calls it "self identification" as matter of privilege, but unfortunately it  was not the case with Mr. Bayad as Arab.**

146.    Moreover Defendant **John Chamber the President of Cisco** "over" again of his selection policy targeted only  **American minorities applicants** of color as Black, **Arab, Spanish, Indian** has violated the Title VII of Civil Act of 1964, codified at 42 U.S.C. and 42 U.S.C section 1981 and 1985, the Fair Labor Law Act, and the Law of Massachusetts. Defendant john Chambers's misconduct has lawfully  admitted to count I, II, V, and VIII of this complain.

147.    Mr. Bayad who may proceed of fear of not complying with John Chambers 's Race so called self identification's request of being rejected, and forcibly proceed with Defendant John Chambers 'demand to identify his race of origin, and even though he has not "secured"nor have been "**guaranteed**" a Job with Defendant **John Chambers**

of Cisco Systems Inc., and by intentionally sending him the letter of race definition before hiring him. Defendant John Chambers intentionally discriminated against minorities and Mr. Bayad as an Arab.

148.    Defendant John Chambers **"barbarously"** proceed even further by demanding Mr.Bayad, to submit a letter from his current employer Aztec Inc. and even though no decision of employment was offered to Mr. Bayad with Defendant Chambers, Cisco Systems. Defendant John Chambers's policies mandate Mr. Bayad to furnish an employment of authorization or release letter sign and dated from his employer Aztec Communications and for the purpose to be eligible to work with his company Cisco, and it is clear abuse of power and the Law by Defendant John Chambers.

**Exhibit X-8 attached to the complain Mr. Bayad requesting a letter from his current employer in order to be considered for hire with Cisco Systems.**

149.    And John Chambers and his company Cisco Systems upon receiving the letter from Mr. Bayad 's employer Aztec Communication, he request one of his Manager as Lynn Fraser to find out about Mr. Bayad 's current salary from his employer Aztec Communication Inc, even before considered or hired with Defendant John Chambers Cisco Systems Inc. Again Defendant 's conduct is only targeted Mr. Bayad.

150.    Defendant John Chambers disrespectfully neglected the fundamentals **Rules of Law Seth forth in this complain** that strictly prohibit all person and employer such as Defendant John Chambers of **Cisco** or Patricia Russo of **Lucent** to intentionally threats person as Mr.Bayad differently because of his/her **race**, or national origin; then to pose a specific disparate of treatment of certain race as Defendant John Chamber of

Cisco or Patricia Russo of **Lucent** have done with Mr. Bayad , and to conspired to intentionally causing emotional distress, mental anguish, and loss of enjoyment of life; and defamation including destroying his Character and reputation as Defendants John Chamber of **Cisco** or Patricia Russo of **Lucent** have done to Mr. Bayad.

151.    Employers as Defendant John Chamber of **Cisco** or Patricia Russo of **Lucent** are Liable (**law of Tort**) of conducting any internal investigation intentionally for personal reason and aimed to hurt that person as they have done with Mr. Bayad , by summoning any employee as they did with Mr. Bayad for the sole purpose to conduct a **pretextual** so" **called** "company internal investigation or termination of employment;

both conducts **run parallel** and **produce the same result**, and Employer as Defendants should proceed with cautious in such process as deemed respectfully and appropriate to the well being of such person, as they did not with Mr. Bayad, and the interview **shall not** be conducted by **one person** and absolutely no close doors as they have done.

152.    Moreover if so called Cisco or Lucent "Corporate Police" is conducting the interview then the interviewer shall inform the person as Mr. Bayad of his rights at the presence of a person or witnesses and in open doors at the convenience and at the direction of such person as Defendants did not, additionally if Defendants John Chambers or Patricia Russo believes the matter is criminal as they have accused Mr. Bayad then you should have been handled by the Law enforcement and with the judicial of such district. Unfortunately Defendants took the matter in their own hand and acted intentionally and against the Law and a violation of his Civil Rights.

153.    Defendant John Chamber of **Cisco** or Patricia Russo of **Lucent** cannot deny the fact that Cisco Systems Inc. or Lucent is "**designedly**" setup to allocate white race only to

be admitted to the Program of Cisco Certify Internetworking Expert and to Managements positions, and which group of ethnicity ( race) will be dispensed from the job market of the Internetworking Technologies Field, as they have done to Mr. Bayad.

154.    Mr. Bayad is in mental chock as a young American man of 37 years old, unemployed even though he is a college grad, and a hardworking citizen. He was definitely escorted with his family too poverty and to the berth end of misery. Defendants had successfully set him up to be eligible as an applicant for Public assistance and Welfare programs, and absolutely without remorse or opportunity in his field of Internetworking, as it is always said "in our country as ours, America is a land of opportunities and the right of due process for all the citizens"

155.    Unfortunately, Mr. Bayad is now living in poverty in Massachusetts and rather far of his salary of 120,000.00 dollars and his contribution to thhe U.S government of more than 40,000.00 in taxes of every single year.

156.    Moreover Defendants intentionally promoted Mr. Bayad 's coworker Robert Tracey who has no education nor has he did not work for any fortune 500 companies nor has he achieved any internetworking certifications. He was promoted purposely as they have done in the past with others and knowingly he was thought data internetworking and trained as Cisco Associate Engineer (CCNA) with the leadership of Mr. Bayad.

157.    Cisco employee Robert Tracy was given promotion and relocation packages estimated more than 100,000.00 dollars. Defendant John Chambers purchased his House in Massachusetts and bought him a new house in New Jersey and gave him a public Stocks option Cisco Systems worth more than **800,000.00 dollars and his Cisco portofolio of public Cisco Stocks options is more than 1,000,000.00 dollars, and**

33

simply to sent a message to Mr. Bayad that the American Dreams are only for White and not for Arabs, Blacks, or Spanish. As of the birth of the year of **1997 to present time** Mr. Bayad and his family have suffered financially and mentally at the hand of Defendants.

158.    Mr. Bayad as human being with emotional distress brought to him by defendant and without control of his anger and depression , Mr. Bayad decided to inform Defendants about their misconduct and his intention of a pursuit of a legal action that implicating them as **liable** of the <u>**crucifixion of his career and his way of life**</u>.

159.    Defendants responded shortly as accustomed with retaliations and humiliations with emails containing **police badges** and threatening letters from their **powerful Co-council** who is also an **officer of the court** and knowledgeable of the rules of **professional conduct & Ethics** that states as follow : " An attorney as <u>**Cisco Co-counsel**</u> shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, include, but not limited to , on account of race, ethnicity, gender, religion, national origin, disability, martial status, sexual orientation , age socioeconomic status, employment, or physical characteristics".

160.    Cisco Co- counsel was viewing Mr. Bayad as a terrorist and second class citizen. He intentionally encouraged of the threatening emails targeting Mr. Bayad , and **plan** to arrest and apprehend him   as of **January 20  the year of 2004 of any of his visit to any of Cisco Systems offices.**

161.   **As stated in their threatening legal Letter dated as of January 20 of the year**

34

2004, Defendants and **Cisco Co-counsel** begun intentionally sending **soliciting conspiring** emails and invitations **dating as of January 20 if the year 2004 and were** served to welcome  Mr. Bayad  to Cisco Systems for the sole purpose to **arrest and to reprimanded** him as a **criminal and terrorist** even though in their letters mandating in it **no contact** what so ever with Defendants and vice versa.

162.    The fact show Mr. Bayad is not criminal nor terrorist nor  a second class Citizen, but  an honest American Citizen and a person who is **registered** with **the United States Selective Arms Services** and was willing to volunteer **with the United States Central Intelligent Agency without** pay just to save **life of our Men and Women of the Arms Force. Exhibit 10 attached of the Complain is Letters by the CIA and Mr. Bayad requesting to volunteer without pay to serve in IRAQ and Elsewhere.**

163.    Moreover Mr. Bayad was employed by a much known family Mahon family in Boston. Mr. Bayad and Mr. Mahon were responsible for network and security design of Massachusetts government agencies that include all the Police Stations, all the court houses, District Attorney, Criminal History Build in Chelsea, and Miami Airport as well. We all can agree about Mr. Bayad well proper reputation and honesty. **Exhibit X-9 is soliciting email and threatening letter by their Co counsel and Defendant John Chambers with  Cisco Systems Inc.**

164.    The real dishonest individuals are the Defendants themselves who are in violation of **United States Securities and Exchange**  as  they  are currently holding strategic positions with Cisco Systems as V.P of accounting and Finance and, and Sales & advance Technologies and working on conspiring deals to only  favor their Stocks options over others as they have done with **"Sir" Mckinney** with International Network

Services who sold a company INS that has none of liquid able assets or any valuable

intellectual properties innovations but simply it was a company admired by John

Chambers as business and reseller of Cisco products.

165.    Furthermore Sir Mckinney of INS **derailed** and **cons** the Wall Street and Share

holders by introducing a **bogus Software** and calls it **INS Management software** at

value **of 3.5 Billions** as Defendant Patricia Russo pretended.

166.    . During the period of Defendant Patricia Russo closing the deals with her Friend

Mckinney of INS, all the INS engineers were offer employment with John Chamber

of Cisco Systems Inc., and all INS Engineers were Cisco Certify Engineers by his

contributions and his generosity to his friends as McKinney.

(It is facts backed up by witnesses). It is a violation of Law and Securities fraud.

167.    As always, Defendants are exchanging of crucial information and vice versa about

AVAYA Inc., Lucent technologies and Cisco Systems. They are purposely favoring

their Cisco , Lucent, and AVAYA ' public Stocks options and looking forward of their

values to increase (Securities fraud). **Exhibit X- 11 attached to the complain**

168.    **On about February 25, 2004 Lucent Technologies** and Cisco Systems **unveil**

**joint** voice over IP offering their mobile service providers and the reason behind of this

**amicable relationship** was for personal **profit from the public offering Stocks** of

**Lucent** Technologies and **Cisco** Systems, It is an unlawful joint venture and clearly

evidence that they belong to the good old boys clubs beginning of he year 1997.

Defendants are openly admitting of their engagement of aggressions and conspiracy

against Mr. Bayad that had begun since January 23 of the year 1997 to present.

**Exhibit X-12 attached to the complain** of Lucent news wire.

169.    Respectfully to this **Honorable Court** and to the **American Tax Payer,**. Mr.

Bayad whish not filed multiple separate law Suites for multiple violation of his Civil

rights and Discrimination; retaliation and defamation, conspiracy against all defendants.

170.    For all the facts Seth forth in this complain, and since Plaintiff Anthony has

suffered great deal of pain and emotional distress, mental anguish, and loss of enjoyment

of life, and; include injury to character and reputation (defamation), and injury to credit

standing. **Therefore Mr. Bayad respectfully demands as matter of right  the**

**following:**

**COUNT I**
**RACE, ETHNIC NATIONAL ORIGIN**
**IN VIOALATION OF MASSACHSSETTS LAW**

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

171.    Mr. Bayad incorporates as if realleged paragraphs 1 through 170 of the complaint.

172.    By disrespectfully neglecting the fundamentals **Rules of Law Seth forth in this**

**complain**  that strictly prohibit all person and employer to intentionally threats person as

Mr.Bayad differently because of his/her **race,** or national origin; then to

**pose** a specific disparate of treatment of certain race , and to conspired to intentionally

causing emotional distress, mental anguish, and loss of enjoyment of life; and defamation

including destroying his Character and reputation.

173.    By conducting any internal investigation intentionally for personal reason

aimed to hurt Mr. Bayad, by summoning Mr.Bayad for the sole purpose to conduct a

**pretextual so"** called "company internal investigation or  termination of employment; by

knowingly both conducts **run parallel** and **produce the same result,** By  proceeding

37

recklessly in such process as deemed disrespectfully and inappropriate to the well being

of Mr. Bayad, by interviewing conducting the interview by **one person** and with close

doors, by allowing the Corporate police to conduct such interview and knowingly it is

unlawful, and by failing to inform the person of his rights at the presence of witnesses

and in open doors at the convenience and direction of such person as Defendants did

not, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42

U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts

State law.

### COUNT I 1
### DISPARATE TREATMENT
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

174.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

175.    By intentionally treating Mr. Bayad differently because of his Arab Race, by

failing to provide equal employment opportunity and by failing to truthfully investigate

and reprimand all employees as Mr. Bayad, by not providing equally protection, by

purposely restricting Mr. Bayad promotional opportunity, and by harassing him.

176.    By restricting Mr. Bayad of achieving the Certify Cisco Internetworking Expert,

by discriminating against him, and finally terminating him one time with Lucent and

second time with Cisco Systems on account of his race,

177.    By encouraging or participating of the distribution of the multifarious racial jokes

and remarks aiming at Mr. Bayad as an Arab, by excluding him from certifications

and promotion, By sending him soliciting emails with the police Badge intentionally

aimed to scare him, by threatening him with restraining order and knowingly he is

a Business owner and partner and reseller of Cisco,

178.    By implementing race preference in hiring and firing of employment selection, by

recklessly, maliciously, injurious negative, communicating a false information to the

Police and to cause  Mr. Bayad to be committed in psychiatric ward,

179.    By  locking him in room, and abusively interrogating him, by firing him while

lying in the ambulance and with an I.V. in his arm , and by taking his business address,

his pager was wet and not operational, and his corporate American cards despite the fact

the card had already been deactivated, by intentionally humiliating tortured.

180.    By Firing wrongfully terminating him while with Lucent Technologies and once

again with Cisco Systems, Defendants are in violation of Title VII of the Civil Right Act

of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. §

200a, and Massachusetts State law.

### COUNT III
### FALSE IMPRISONMENT
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

181.    Mr. Bayad Incorporates as if realledge paragraphs 1 through 170 of the Complain.

182.    By unreasonably confining Mr. Bayad to a locked room at Lucent & Cisco office

against his will and by refusing to let him leave that room, by keeping the door locked

with out his consent , failing to keep the door open and by failing to have  the Corporate

police informing him about his rights, failing to not allowing him to leave, by forcing him

to sign document against his will in a locked room, by having Mr. Bayad to  obey to spent

a **72 hours in the psychiatric ward**  Sun cost Mental Hospital, Defendants are in

violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42

U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts State law.

## COUNT IV
## INTENTIONAL INFLICT OF EMOTIONAL DISTRESS & ENJOYMENT OF LIFE
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

183.    Mr. Bayad incorporates as if realleged Paragraphs 1 through 170 the Complain.

184.    By engaging in a concert effort to harass and discredit Mr. Bayad, by fostering a

hostile environment, by locking him in room, screaming at him and hitting him and

falsely accusing him of finances fraud, by firing him from his employment while

he was in an ambulance on the way to the hospital, by ordering, arranging, and

encouraging Mr. Bayad 's confinement in a psychiatric hospital, by leaving him stranded

in largo after his release form the hospital without any money stranded in Largo after his

release form the hospital without any money or mean of transportation back to his home,

and by swearing out of a trespassing complaint against him while he was hospitalized and

after he had been specifically ordered to come to the office by Defendants while working

and associating with  Defendants at Lucent Technologies Inc.

185.    By repeating the same long standing of misbehavior against Mr. Bayad  while

working and associating with Cisco Systems, by engaging for the second time in a concert

effort to harass and discredit Mr. Bayad, by fostering a hostile environment, by locking

him in room, By unconditionally mandating Mr. Bayad to sign documents approaching to

twenty pages that was signed in locked doors at presence of Corporate police, by causing

Mental and emotional distress, loss of enjoyment of life, injury to character and

reputation and injury to credit, by keeping him from achieving the Cisco Certification

Internetworking Expert, By interfering with his way of life, by denying him business

opportunities for his company, by lying to him for rehire, by denying him employment .

186.    by intentionally sending email with multifarious racial jokes toward Mr. Bayad

Arab Race and requesting his race and gender before being eligible for hiring while

working and associating with Defendants at Cisco systems Inc., Defendants are in

violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42

U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts State law.

## COUNT V
## CONSPIRACY
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

187.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

188.    By discharging him whit not cause with Cisco Systems, by terminating Mr.

Bayad 'employment from International Networking Services and Cisco Systems, by

denying equal privilege as white employees, by engaging in mental and physical torture,

189.    by accusing him of stealing and finance fraud, by restricting him access and

achievement to Certifications, by denying promotion, by interfering with life, by

intentionally sending multifarious racial jokes, by unreasonably confining Mr. Bayad to

locked room at Lucent Technologies and Cisco Systems, by refusing to let him leave that

room, by ordering, lying to the police and Fire Rescue, and causing Mr. Bayad 's illegal

an unwarranted confinement in a psychological ward, the Defendant have violated

## COUNT VI
## BREACH OF CONTRACTUAL OF OBLIGATION
## BUSINESS & EMPLOYMENT RELATIONSHIP

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

190.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

191.    By failing to follow its own personnel policies and procedure and procedures

on evaluating, promoting, and providing equal business and employment opportunity, By

41

restricting fair access to the Cisco Certifications, and the support material needed for his

business , and by failing to truthfully investigate an reprimand the author of the

multifarious jokes against Mr. Bayad and the other conspirators in discrimination ,

192.    By providing a full support to **Sir (McKinney)** the owner of INS Inc.,

Defendants has breached its contractual obligation to Mr. Bayad in violation of

Massachusetts State law.

## COUNT VII
### Wrongful denial of Ceritification to candidate of Arab race
### Against all Defendants

**193.**   Mr. Bayad incorporate as if realleged paragraph 1 through 173 of the complain .

194.    By restricted and threatened Mr. Bayad from the **taking of the CCIE Lab**

**exam** that was due in February of the year 2004.

195.    By promoting and aiding two persons of common ancestry (white person) **Bruce**

**Brewer** and **Dale Roznowski,** were provided **the original exams** copies for the **Cisco**

**Certify internetworking expert level.**

196.    By promoting and allowing only white Engineers **cheating** and given the original

copies of the actual exams of the CCIE, and which they were **facilely appointed** as the

**best Engineers** in the field of internetworking technologies field, and favoring them and

**compensating them subsequently** a ridiculous amount of money exceeding a some of

**$200,000.00** dollars over minorities as Mr.Bayad , and by giving Sir Mckinney all the

Exams in order to raise His company INS 'Stocks values, Defendants are in violation of

Title VII of the Civil Right Act of 1964, codified at 42 U.S.C. § 407, 42 U.S.C. § 1981,

42 U.S.C. § 1985, 42 U.S.C. § 200a and, Massachusetts State law.

## COUNT VIII
## RECONSTRUCTED ERA CIVIL RIGHTS ACT CLAIM
### Against all Defendants

197.    Mr. Bayad incorporates as if realleged paragraphs 1 through 170 of the complaint.

198.    By deliberately sending Mr. Bayad a correspondence requesting him to

provide his **race** and his **genders** before Cisco Systems a company of Defendants John

Chambers can proceed in the regards of the decisions of hiring.

199.    By **barbarously**" proceeding and demanding Mr.Bayad, to submit a letter from

his current employer Aztec Inc. and even though no decision of employment was offered

to Mr. Bayad with Cisco, by mandating Mr. Bayad to furnish from his employer a letter

of employment of authorization for no purpose simply to work with his company Cisco

200.    By intentionally theating Mr. Bayad differently, by restricting promotions and

opportunites, by harassing, abusing, and finally terminating him while working at Lucent

Technologies and Cisco Systems.

201.    By purposely not promoting equality among races in promotional opportunities,

Company access to certification achievement, by targeting Mr. Bayad's race when

deciding who get terminated and who get reinstated in employment practices, and By

encouraging racial prejudice in the making of work and business, by discriminating

against Mr.Bayad job applicant on the basis of the belief of his race, ethnicity, and

national origin, Defendants are in violation of Title VII of the Civil Right Act of 1964,

Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a and

Massachusetts State law.

## COUNT IX
## RETALIATION

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

43

202.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the complain.

203.    By intentionally treating Mr. Bayad differently because of his Arab Race, by

failing to provide equal employment opportunity and by failing to truthfully investigate

and reprimand all employees as Mr. Bayad, by not providing equally protection, by

purposely restricting Mr. Bayad promotional opportunity, and by harassing him,

204.    By restricting Mr. Bayad of achieving the Certify Cisco Internetworking Expert

certification, by discriminating against him, and finally terminating him not once but the

second time in the row with Lucent and with Cisco Systems of his race as Arab.

205.    By encouraging or participating of the distribution of multifarious racial jokes and

remarks aiming at Mr. Bayad as an Arab, by excluding him from certifications

and promotion, By sending him Emails with police Badge and by humiliating

him and to intentionaly scare him, by threatening with restraining order against him and

knowingly he is a Business owner and partner and reseller, by implementing race

preference in hiring and firing of employment selection, by recklessly, maliciously,

injurious negative, and false information to the Police for the purpose to commit Mr.

Bayad in psychiatric ward, by selecting and locking him in room, and abusively

interrogating him, by firing him while lying in the ambulance and with an I.V. in his arm ,

and by taking his business address, his pager was wet and not operational, and his

corporate American cards despite the fact the card had already been deactivated, by

intentionally humiliating tortured, Defendants are in violation of Title VII of the Civil

Right Act of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42

U.S.C. § 200a ,and Massachusetts law.

**RELIEF REQUSTED**

WHEREFORE, Plaintiff Bayad prays that this court:

(a) declare the Defendants' conduct to be in violation of his rights;

(b) enjoin defendants from engaging in such conduct;

(c) award him back pay and benefits ( with interest ) that have accrued to date;

(d) award him front pay until normal retirement age;

(e) award him compensatory damages of $10,000,000.000 or more for emotional distress, mental anguish, and loss of enjoyment of life , humiliation and the disparate treatment, and discrimination and false imprisonment he suffered at the hands of the defendants;

(f) award him compensatory damages off $1,000,000.00 for interfering with his Civil Rights, conspiring to restrict him from equal rights and benefits, and for retaliation for the second time by the same defendants while at Lucent and Cisco;

(g) award him damages of 1,000,000.00 or more for defamation and damage to his business and career, his reputation, injury to character and to credit standing;

(h) award him punitive damages in the amount of 10,000,000.00 or more ;

(i) award him costs and legal fees;

(j) grant such other relief as the court may deem just and proper.

**JURY DEMANDED**

Mr. Bayad demands a jury on all claims liable to a judicial trial as a matter of right by Jury or as deemed appropriate and right by this honorable court, and with the Right of Due Process as a citizen of this land.

Date March _8_, 2004

Anthony Bayad, Pro Se
2 Magoun Avenue
Medford, MA 02155
(781) 704-8982
abayad@gicamerica.com

46

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10468-GAO

ANTHONY BAYAD,
Plaintiff,

v.

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and CARL WIESE,
Defendants.

MEMORANDUM and ORDER
October 25, 2004

O'TOOLE, D.J.

Pro se plaintiff, Anthony Bayad, brings this employment discrimination action against

individual defendants John Chambers, Patricia Russo, Anthony Savastano, and Carl Wiese, seeking

monetary damages and declaratory and injunctive relief.  The defendants have filed two motions to

dismiss: one on behalf of Chambers, Savastano, and Wiese (Docket No. 17) and one on behalf of

Russo (Docket No. 31).  After careful consideration of the complaint and the briefs in support of and

in opposition to the motions,[1] I conclude that oral argument is unnecessary and I make the following

rulings based on the parties' submissions.

---

[1] I have considered the plaintiff's arguments in his Motion to Strike the Cisco Defendants' Partial
Motion to Dismiss (Docket No. 20) as arguments in opposition to the three defendants' motion
(Docket No. 17), and his Motion in Response to Defendant Russo's Motion to Dismiss (Docket
No. 35) as his opposition to Russo's motion (Docket No. 31).

## I.    Summary of Alleged Facts

For the purpose of evaluating the motions to dismiss, the following factual allegations by the plaintiff are assumed to be provable:

Bayad is a Moroccan born United States citizen. In 1995 he began working for Lucent Technologies, Inc. ("Lucent") as a manager in the company's Largo, Florida office, where he reported to Russo, Savastano and Wiese. While at Lucent, Bayad created a plan of action to save Lucent's failing data networking business and communicated his plan to Russo, Savastano, Wiese, and Lucent Chairman, Henry Schachts. Thereafter, Savastano and Russo sent Wiese to meet with Bayad and to advise him that by communicating Lucent's business flaw to Schachts, Bayad had given Lucent a black eye and that it would be just a matter of time before he was fired.

Over the course of his employment with Lucent, Bayad became aware that Russo, Savastano, Wiese, and other Lucent managers did not like him because of his Arab descent. Russo, Savastano, and Wiese conspired to discriminate against Bayad by stripping him of his status as lead manager without cause and in order to humiliate him.

On January 21, 1997, Bayad applied for the vacant position of general manager of Lucent's Largo, Florida office, but Savastano refused to promote him and promoted a less experienced white employee instead. Savastano also prevented Bayad's promotion to other management positions within Lucent. In addition, Wiese told Bayad that Lucent would never promote or consider an Arab to be Vice President of Operations.

On January 23, 1997, Savastano directed Lucent corporate police to imprison Bayad in a room where he was mentally tortured, interrogated, intimidated, physically assaulted, and accused of stealing from Lucent by incurring personal charges on his corporate American Express credit card.

2

Savastano led the conspiracy to falsely accuse Bayad of stealing from the company. When Bayad tried to leave the room, Savastano and corporate security police attempted to restrain him and keep him in the room. A scuffle ensued and Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below. Bayad received injuries to his head and neck. While Bayad was on his way to the hospital, Savastano, who was on the phone with Wiese and Russo, terminated his employment with Lucent. The defendants also had Bayad committed to a psychiatric hospital for seventy-two hours before being released.

Between 1997 and 1999, Bayad attempted to find subsequent employment in the data networking industry, but Russo, Savastano, and Wiese conspired to prevent him from obtaining and sustaining employment with other companies, including Bay Network, Inc. and International Networking Services, Inc.

In April 2000, Bayad began working as a project engineer at the Lexington, Massachusetts office of Cisco Systems, Inc. ("Cisco"). During a business trip to Cisco's San Jose, California office, Bayad was spotted by Savastano, who was also now a Cisco employee. Savastano reported to John Chambers, the President of Cisco. Upon returning to Massachusetts, Bayad's manager, Lynn Fraser, began keeping close tabs on Bayad in order to find a reason to terminate his employment with Cisco.

In November 2000,[2] Bayad applied for the position of systems manager or engineer for Cisco in the North Africa region. After three interviews for the position in Dubai, London and Paris, Bayad was given a verbal offer by the region manager but was advised that the decision to hire him had to be approved by Cisco's corporate office in California. Even though Bayad, who speaks Arabic,

---

[2] It appears that Bayad incorrectly states this date as November 2, 2001 in paragraph 88 of his complaint, because he also alleges that he applied for the systems manager position *before* being terminated from Cisco in May 2001. Compl. ¶ 88.

3

French and English, was a perfect match for the position, he was not given the position. Bayad complained to Chambers of the discriminatory treatment and misconduct, but was ignored.

In May 2001, Bayad was terminated from Cisco. Lynn Fraser told Bayad that he was laid off due to the economy and that he would be eligible for rehire one year from the date of termination. His termination was completely pretextual. He was then asked to sign documents and contracts behind closed doors in the presence of Cisco corporate police. After Bayad's termination, Savastano told one of Bayad's former coworkers that Bayad and other minorities had no business at Cisco, and Chambers prevented Bayad from obtaining his Cisco Internetworking Expert Certification.

In September 2001, Bayad formed his own computer and networking technology company and attempted to do business with Cisco, but Chambers instructed Cisco employees not to do any business with minorities and Arabs such as Bayad.

Since at least September 2003, Bayad has applied for a multitude of employment opportunities at Cisco but has been denied a position. On or about December 3, 2003, in connection with one of Bayad's applications to Cisco, the defendants sent Bayad an email requesting he provide his ethnic or racial background and gender before Cisco could proceed with its hiring decision.

On March 8, 2004, Bayad filed the instant action.

## II.    Discussion

Chambers, Savastano, and Wiese, who are now all employees of Cisco, move to dismiss all of the claims against them, except for claims for violation of 42 U.S.C. § 1981 that arose after May 2001, on the grounds that they are barred by the applicable statutes of limitation, res judicata, collateral estoppel, have been released, or fail to comply with the statutory prerequisites for filing such claims. Russo moves to dismiss all of the claims against her on the grounds that they are barred

by the applicable statutes of limitation, res judicata, collateral estoppel, or because Title VII does not

create individual liability.

    A.    <u>The Federal and State Employment Discrimination Claims</u>

        1.    The pre-June 1997 claims

        Counts I, II, VII, VIII, and IX of Bayad's complaint can be considered together, as there are

many overlapping allegations, primarily related to employment discrimination in one facet or another.

However, the discrimination claims arising out of Bayad's employment and termination at Lucent (i.e.

the pre-June 1997 claims) have already been considered by the United States District Court for the

Southern District of Florida and summary judgment was granted for the defendants in that case (Civ.

No. 97-06671-NCR).

        On June 2, 1997, Bayad, represented by counsel, filed an employment discrimination action

in the Southern District of Florida alleging causes of action under Title VII, the Florida Civil Rights

Act, 42 U.S.C. § 1981, false imprisonment, intentional infliction of emotional distress, defamation,

and breach of contract against Lucent, Savastano and others not parties to the present action. The

allegations in his complaint in the Florida action are virtually identical to those in his complaint in this

action with respect to events surrounding his employment and termination at Lucent. He also alleged

in the Florida action that unnamed Lucent personnel interfered with his attempts to find subsequent

employment after he was terminated from Lucent. Summary judgment was granted for the

defendants in that action and the Eleventh Circuit dismissed Bayad's appeal.

The judgment in the Florida action bars relitigation of Bayad's Title VII, § 1981, false imprisonment, intentional infliction of emotional distress, and breach of contract claims against Savastano, Wiese and Russo arising out of their pre-June 1997 conduct. See Massachusetts Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Savastano was a named defendant in the Florida action. Wiese and Russo were allegedly co-conspirators in the discriminatory actions taken against Bayad at Lucent who should have been joined in the Florida action, and Bayad has not offered any good reason why they were not named in that action. Massachusetts Sch. of Law, 1142 F.2d at 38; see also In re El San Juan Hotel Corp., 841 F.2d 6, 10-11 (1st Cir. 1988). His assertion of these pre-June 1997 claims here is an impermissible attempt to relitigate issues already decided.[3]

2. The post-June 1997 Title VII and Mass. Gen. Laws ch. 151B claims

Bayad's Title VII claims against all of the defendants must be dismissed because individuals are not subject to suit under Title VII. Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003); Holly D. v. California Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003); Akers v. Alvey, 338 F.3d 491, 500 (6th Cir. 2003); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc).

---

[3] As evidence of his desire for a second bite at the apple, Bayad claims in his current complaint that he is confident that "this time around" the defendants will be declared in violation of the law. Compl. ¶ 61.

Bayad alleges violations of "Massachusetts State law" in Counts I, II, VII, VIII, and IX.[4] I construe the complaint as alleging violations of chapter 151B of the Massachusetts General Laws. See Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 n.2 (1st Cir. 1995) ("Mass. Gen. L. ch. 151B is the exclusive remedy under Massachusetts law for employment discrimination claims."). Unlike Title VII, chapter 151B allows for personal liability of individual employees. Thomas v. EDI Specialists, Inc., 773 N.E.2d 415, 420 (Mass. 2002). However, Bayad's post-June 1997 discrimination claims under Massachusetts law are subject to dismissal for failure to first file a timely administrative complaint with respect to these claims. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Carter v. Comm'r of Correction, 681 N.E.2d 1255, 1259 (Mass. App. Ct. 1997).

Bayad alleges that he filed a charge with the federal Equal Employment Opportunity Commission on April 4, 1997, as a precursor to his Florida lawsuit and was issued a "right-to-sue" letter on April 22, 1997. Compl. ¶ 59. He then filed the Florida action on June 2, 1997. He did not timely file a complaint with the Massachusetts Commission Against Discrimination (the "MCAD"), as is required prior to seeking redress in the courts. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Lindsay v. Future Elec. Corp., 930 F. Supp. 677, 678 (D. Mass. 1996) (filing charge with EEOC insufficient to satisfy exhaustion requirement under Mass. Gen. Laws ch. 151B). Bayad's failure to timely file an administrative complaint with the MCAD requires dismissal of his discrimination claims under Massachusetts law.

---

[4] The complaint also alleges that the defendants violated the "Fair Labor [A]ct" and the "Massachusetts Rules of Law." Compl. ¶¶ 143, 146.

7

3.    The post-June 1997 § 1981 claims

Bayad's § 1981 claims have a four-year statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., __ U.S. __, 124 S.Ct. 1836, 1845-46 (2004).  Therefore, his § 1981 claims against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2000 are time barred, but § 1981 claims against these defendants that arose after March 8, 2000 survive.  Because all of the allegations against Russo concern events that occurred prior to March 8, 2000, Bayad's § 1981 claims against her are time barred.

4.    The post-June 1997 § 1985 and state law conspiracy claims

Similarly, Bayad's conspiracy claims under 42 U.S.C. § 1985 and Massachusetts law against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2001 are time barred because these claims are subject to a three year statute of limitations.  Nieves v. McSweeney, 73 F. Supp.2d 98, 102 n.4 (D. Mass. 1999), aff'd, 241 F.3d 46 (1st Cir. 2001).[5] But § 1985 and state law civil conspiracy claims against these defendants that arose after March 8, 2001 survive.  Because all of the allegations against Russo concern events that occurred prior to March 8, 2001, Bayad's § 1985 and state law conspiracy claims against her are time barred.

I reject the defendants' contention that the narrow "intracorporate conspiracy doctrine" requires dismissal of Bayad's § 1985 claims at this stage of the litigation, as I find he has at least sufficiently alleged a series of acts over time by Chambers, Savastano, and Wiese going beyond simple ratification of managerial decisions.  See Strathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984).

---

[5] Bayad fails to articulate a specific legal basis for his conspiracy allegations in Count V, so I liberally construe this count as setting forth a claim under both federal and state law.

8

B.    The State Law Tort and Contract Claims

1.    False imprisonment

Though Bayad alleges false imprisonment under both federal and Massachusetts law, Count III is essentially a claim under state tort law for events occurring in 1997 and is therefore time barred. See Lavecchia v. Massachusetts Bay Transp. Auth., 804 N.E.2d 932, 936 (Mass. 2004) (noting three-year statute of limitations for false imprisonment claims under Mass. Gen. Laws ch. 260, § 2A). This claim is also barred under the doctrine of res judicata. See discussion, supra, Part II(A)(1). To the extent that Bayad alleges a claim for false imprisonment during his tenure at Cisco, there are no factual allegations to support such a claim against the named defendants. The arguably relevant allegations are that Lynn Fraser at Cisco, who is not a defendant in this action, confined Bayad to a room to sign Cisco documents upon his termination. Compl. ¶ 104. Accordingly, Count III is dismissed against all defendants.

2.    Intentional infliction of emotional distress and
breach of contract

As noted above, Bayad's pre-June 1997 intentional infliction of emotional distress and breach of contract claims are barred under the doctrine of res judicata. See discussion, supra, Part II(A)(1). Bayad fails to adequately plead claims under Massachusetts law for intentional infliction of emotional distress and breach of contract for conduct that occurred post-June 1997. Counts IV and VI are dismissed against all defendants.

9

### III.    Conclusion

For all the foregoing reasons, the motion to dismiss of Chambers, Savastano, and Wiese (Docket No. 17) is GRANTED IN PART AND DENIED IN PART, and the motion to dismiss of Russo (Docket No. 31) is GRANTED.    All of the claims against Chambers, Savastano, and Wiese except for the § 1981 claims against them that arose after March 8, 2000 and the § 1985 and state law conspiracy claims against them that arose after March 8, 2001, are dismissed.  The complaint is dismissed in its entirety as against Russo.

It is SO ORDERED.


October 25, 2004                                           \s\ George A. O'Toole, Jr.

DATE                                                            DISTRICT JUDGE

10

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD, Pro Se,
     Plaintiff,

     v.                           CIVIL ACTION NO.
                                      04-10468-GAO

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and
CARL WIESE,
     Defendants.

## REPORT AND RECOMMENDATION RE:
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 65);
## PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT
## (DOCKET ENTRY # 73)

### May 25, 2005

**BOWLER, U.S.M.J.**

Pending before this court are cross motions for summary judgment filed by defendants John Chambers ("Chambers"), Anthony Savastano ("Savastano") and Carl Wiese ("Wiese") (collectively, "defendants") (Docket Entry # 65) and plaintiff Anthony Bayad ("Bayad") (Docket Entry # 73). After conducting a hearing on March 22, 2005, this court took the motions (Docket Entry ## 65 & 73) under advisement.

## PROCEDURAL BACKGROUND

Bayad filed the instant action on March 8, 2004. The complaint alleges numerous counts of employment discrimination under Title VII, 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. § 1985 ("section 1985") and Massachusetts General Laws chapter 151B

("chapter 151B") in addition to claims of false imprisonment, intentional infliction of emotional distress and breach of contract. (Docket Entry # 1). In October 2004, the court dismissed all claims except the section 1981 claims arising after March 8, 2000, and the conspiracy claims under section 1985 and Massachusetts law arising after March 8, 2001.[1] Chambers, Savastano and Wiese are the only remaining defendants.[2] In sum, the only claims remaining before this court are the post-March 8, 2000 claims under section 1981 and the post-March 8, 2001 conspiracy claims against Chambers, Savastano and Wiese.

Bayad complains that defendants individually and collectively acted and conspired to discriminate against him by denying him employment opportunities at Cisco System's, Inc. ("Cisco") on account of his race and national origin. (Docket Entry # 1). Reduced to their essence, Bayad's allegations relevant to defendants' post-March 8, 2000 conduct revolve around a denial of a promotion, his termination and the failure to rehire. (Docket Entry # 1, ¶¶ 79-143).

Generally speaking, Bayad's complaint recounts the following story. In November 2000, while employed at Cisco, Bayad applied

---

[1] The court dismissed the section 1981 claims arising prior to March 8, 2000, as well as the conspiracy claims under section 1985 and Massachusetts law arising prior to March 8, 2001, as time barred.

[2] All claims against Patricia Russo were dismissed as either time barred or precluded under res judicata.

2

for a transfer/promotion to a systems manager position in Cisco's
North Africa region.  Bayad was flown abroad for three separate
interviews for the position at Cisco's expense in the cities of
Dubai, London and Paris.  Following the interviews, Bayad
received a verbal offer for the position but was advised that the
decision would have to be approved by Cisco's corporate office in
California.  Despite claiming to be "highly qualified" due to his
language background and knowledge of the North African region,
Bayad was ultimately rejected for the transfer position.  Around
this time, Savastano purportedly ordered Lynn Fraser ("Fraser"),
Bayad's manager, to "micromanage" Bayad in order to find grounds
to terminate his employment with the company.  Bayad was
ultimately terminated in May of 2001.  Following Bayad's
termination, he applied for several positions with Cisco but was
denied employment in each instance.  Bayad asserts that the
denial of the promotion, his subsequent termination and the
failure to rehire all resulted from defendants' racial animus.


## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

3

56(c); <u>Seaboard Surety Co. v. Town of Greenfield</u>, 370 F.3d 215, 218 (1st Cir. 2004).  A factual issue is "genuine" where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party."  <u>Blackie v. State of Maine</u>, 75 F.3d 716, 721 (1st Cir. 1996).  A factual issue is "material" where it "has the potential to alter the outcome of the suit under the governing law."  <u>Blackie v. State of Maine</u>, 75 F.3d at 721.

The burden initially rests with the party seeking summary judgment to demonstrate that "no genuine issue of material fact exists."  <u>National Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995).  The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . party's pleading."  Fed. R. Civ. P. 56(e).  The nonmovant, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56 (e); <u>Triangle Trading Co. v. Robroy Ind., Inc.</u>, 200 F.3d 1, 2 (1st Cir. 1999).  Factual disputes must be resolved in a "light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir. 1995).

Cross motions for summary judgment do not alter the normal summary judgment standard.  <u>Wightman v. Springfield Terminal Ry.</u>

<u>Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996).  "Cross motions simply require us to determine whether either of the parties deserves judgment as a mater of law on facts that are not disputed." <u>Wightman v. Springfield Terminal Ry Co.</u>, 100 F.3d at 230.


### FACTUAL BACKGROUND[3]

Bayad began working for Cisco at its Lexington, Massachusetts facility in May 2000.  At the time of Bayad's employment, Cisco maintained approximately 40,000 employees.  The title of Bayad's position was Project Engineer II.  Fraser, currently employed as the Senior Sales Manager/Advanced Services in the company's Lexington, Massachusetts facility (the

---

[3] Facts are taken from the affidavits and the agreed upon facts set forth in the parties' Local Rule 56.1 statements. Citations to the record are provided only for direct quotes. Facts are construed in a light most favorable to the nonmoving party.

Pursuant to Local Rule 56.1, defendants properly submitted a statement of undisputed facts along with their memorandum in support of summary judgment.  (Docket Entry # 67).  Bayad, on the contrary, failed to submit his own Local Rule 56.1 statement with either his opposition or cross motion.  In this situation, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties."  LR. 56.1.  While courts must allow for the liberal construction of complaints by pro se litigants in accordance with <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1972), a litigant's status as pro se "does not insulate him 'from complying with procedural and substantive law.'"  <u>Kenda Corp., Inc. v. Pot O'Gold Money Leagues</u>, 329 F.3d 216, 225 n.7 (1st Cir. 2003) (citations and internal quotations omitted).  Accordingly, defendants' statement of undisputed facts (Docket Entry # 67) shall be adopted into the factual record.

"Massachusetts facility"), interviewed Bayad for the Project Engineer II position in or around April 2000 and subsequently extended an offer of employment. During the interview, Bayad informed Fraser that he expected to attain his Cisco Certified Internetworking Engineer ("CCIE") certification within a short period of time.[4] Throughout Bayad's employment with Cisco, Fraser served as Bayad's manager and direct supervisor.

Chambers is the Chief Executive Officer and President of Cisco and has been employed by the company at its San Jose, California facility (the "California facility") from 1991 to the present. Savastano is Cisco's Vice President of Finance and has been employed by the company at the California facility from April 28, 2000 to the present. Wiese has served as Area Vice President for Advanced Technology at Cisco's Edison, New Jersey office from August 27, 2002 to the present.

In or around February 2001, Cisco management notified Fraser that "due to an economic downturn" the company would be forced to undergo a large scale reduction in force ("RIF") "by laying off approximately 8500 total employees." (Docket Entry # 68, Att. 3, ¶ 18). All Cisco managers were instructed to reduce the number of workers on their respective teams "based upon an assessment of

---

[4] According to Fraser, while the "CCIE certification was not essential for [Bayad's] position . . . it is a highly desired qualification because, occasionally, it may be a direct customer requirement or required for a particular effort." (Docket Entry # 68, Att. 3, ¶ 7).

6

their team members' contribution to the team's overall
profitability." (Docket Entry # 68, Att. 3). Based on this
directive, Fraser determined that four members of her team would
have to be terminated. This group of individuals consisted of
Bayad, two white males and an additional male whose race and
ethnicity Fraser was unable to recall.

At the time of his termination, Bayad had been employed at
Cisco for less than one year and was the most junior member of
Fraser's team. While employed at Cisco, Bayad was not assigned
as a primary leader to any significant project. Bayad had spent
the majority of his time studying for the CCIE certification
exam, which he ultimately failed to obtain. Fraser avers that
defendants had no involvement in and in no way influenced her
decision to select Bayad for lay off.

On April 25, 2001, Fraser informed the four members of her
team selected for termination, including Bayad, that they were
being layed off due to failing economic conditions. The
terminations were to be effective no later than June 25, 2001.
The individuals were informed that they would be eligible for
rehire after one year in accordance with Cisco's rehire policy.
The individuals were each provided with a Voluntary Severance
Agreement and General Release ("Release"). Under the conditions
of the Release, each individual was entitled to a severance
payment conditioned upon that individual waiving any then-

existing claims against Cisco.  Bayad and the others were each
provided up to 60 days to accept or decline the Release.  Bayad
executed the Release and accepted the severance payment on May 1,
2001, seven days after he was provided with the document by
Fraser.[5]  According to the terms of the Release, Bayad was
allowed up to seven days to revoke his acceptance, which he
ultimately declined to do.  On the Release below his signature,
Bayad wrote, "Thank you to all of you and Good Luck."  (Docket
Entry # 68, Att. 3, Ex. A).

In the fall of 2003, Bayad applied for and was denied a
position with Cisco as Systems Engineer II at the Massachusetts
facility.  According to Cisco's personnel records, the position
required "extensive experience in Network Security and, following
a preliminary telephone screening interview, the hiring manager
determined that" Bayad lacked this necessary minimum requirement.
(Docket Entry # 68, Att. 7, ¶ 11).  The individual ultimately
selected for the position had "extensive experience in Network
Security and had won Cisco's 'Systems Engineer of the Year' award
the previous year."  (Docket Entry # 68, Att. 7, ¶ 12).

Around the same time, Bayad applied for an additional
position with Cisco as a "Voice Specialist" position in the

---

[5]  Bayad's complaint alleges that he was forced to sign the
Release behind "closed doors" in the presence of Cisco's
"Corporate Police."  Bayad, however, has failed to support this
assertion through an affidavit or evidence otherwise allowable
under Rule 56, Fed. R. Civ. P.

California facility.[6]  (Docket Entry # 68, Att. 7, ¶ 13).  Upon considering Bayad's application, the Human Resources Manager contacted Fraser, Bayad's former supervisor, and was informed that Bayad had never completed the CCIE certification.  Moreover, "Cisco was not at that time paying to relocate prospective employees."  (Docket Entry # 68, Att. 7, ¶ 13).  Because Bayad was then living in Massachusetts and the position was in California, relocation would have been necessary had Cisco decided to hire Bayad.  Based on these factors, Bayad was not selected for the position.[7]

In reviewing company records, defendants have been unable to uncover any documents or testimony supporting Bayad's allegation that he applied for a transfer position in November 2000.[8]  As of

---

[6]  The record does not expressly reflect the time period of Bayad's application for the Voice Specialist position.  Based on the email correspondence from the Human Resources Manager, the time frame for this application appears to have been the fall of 2003.  (Docket Entry # 68, Att. 7, Ex. C).

[7]  In his complaint, Bayad alleges that he applied for a number of positions at Cisco.  (Docket Entry # 1).  Cisco's personnel files, however, contain no record of Bayad applying for any positions other than the two described above.  Cisco's Human Resources department has inquired whether various employees likely to have knowledge about these positions have any independent recollection of Bayad's application.  All have answered in the negative.  Moreover, while Bayad raises these allegations in his complaint, he presents no evidence through affidavit or other means allowable under Rule 56, Fed. R. Civ. P.

[8]  In her affidavit, Paula Hughes, Cisco's Human Resources Manager, avows that after conducting "an exhaustive search of Cisco's records," she has "located no documents, memoranda,

November 2000, Bayad had been employed at Cisco for approximately six months.  Pursuant to Cisco's transfer and promotion policy, an employee was ineligible for transfer or promotion until completing one year of employment absent approval from a manager. Fraser does not recall Bayad ever seeking her approval for a transfer to North Africa.  Cisco's policy further requires "Cisco's Recruiting department to notify the manager of the employee" whenever an employee is seeking another position. (Docket Entry # 68, Att. 3, ¶ 12).  Fraser does not recall receiving notification from the Recruiting department of Bayad's seeking a transfer in November 2000.  Cisco records further reflect that Bayad did not seek or receive paid time off during November 2000, the time he alleges he was interviewing in Europe and Africa.  According to company records, Bayad received regular pay for performing his duties at Cisco's Lexington, Massachusetts facility.

While Bayad's complaint asserts numerous factual allegations, summarized above, the majority are unsupported through affidavits or other forms of properly documented evidence that may be considered at summary judgment.  The only evidence submitted by Bayad that comports with Rule 56(e), Fed. R. Civ.

---

vouchers or any other such materials that substantiate . . . Bayad's allegations that (1) he applied for the [North Africa] position, (2) he was flown at Cisco's expense to Europe or Africa to interview for the position or (3) he interviewed with Cisco engineers for the position."  (Docket Entry # 68, Att. 7, ¶ 5).

P., is the affidavit of Amado Navas ("Navas"), another former employee of Cisco. (Docket Entry # 75). According to Navas, shortly after Savastano began working at Cisco, Savastano traveled to the Cisco office in Saint Petersburg, Florida, where Navas was employed and proceeded to threaten Navas. Savastano instructed Navas to relay a massage to Bayad "that his days at Cisco are numbered" because "[Savastano's] friend Lynn Fraser [sic] will take care of him soon." Savastano further stated that, "[Bayad] and his people need to go back where they came from, ha ha . . .." (Docket Entry # 75).

Bayad also submits as documentary evidence an alleged no-hire list maintained by Cisco on which his name appears. The top of the no-hire list reads: "Do not hire/transfer/promote Anthony Bayad Cisco Empl # 3799*** Should you have any questions, contact Tony Savastano regarding Anthony Bayad." (Docket Entry # 77). In submitting the document, however, Bayad fails to attach any affidavit to authenticate the document. Defendants challenge the lack of authentication and Bayad fails to explain how the document came into his possession. Absent proper authentication, this court cannot properly consider the alleged no-hire list as evidence supporting Bayad's opposition or cross motion for summary judgment. Fed. R. Civ. P. 56(e); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (failure to authenticate documents

11

precludes consideration in a motion for summary judgment).[9]

## DISCUSSION

I.  Cisco's Release Agreement

Bayad's complaint raises essentially three separate incidents of racial discrimination by defendants:  (1) Bayad's termination from Cisco in May 2001; (2) Bayad's denial of a transfer or promotion to Cisco's North African facility in November 2000; and (3) defendants' failure to rehire Bayad in the fall of 2003 for two separate positions following his termination.  Defendants argue that Bayad's valid execution of the Release on May 1, 2001, precludes any claims arising from his employment with and termination from Cisco.

As a general rule, releases of federal statutorily created claims, including those involving employment discrimination, are given legal effect provided that the releases are "knowing and voluntary, as evidenced by the totality of the circumstances." Melanson v. Browning-Ferris Industries, Inc., 281 F.3d 272, 274

---

[9]  In their motion for summary judgment, defendants dispute the authenticity of Bayad's no-hire list.  Defendants, including Savastano, have each submitted an affidavit averring that they have never seen a copy of the document before Bayad produced it during this litigation.  Savastano further avers that he has never placed or instructed anyone to place Bayad's name on a "no-hire" list.  After conducting extensive investigation, Cisco's Human Resources department has found no evidence to authenticate the alleged no-hire list.

(1st Cir. 2002) (knowing and voluntary execution of release waiving all claims against employer precluded employee's Title VII claim).  The employer carries the burden of demonstrating that the release was knowing and voluntary.  <u>Melanson v. Browning-Ferris Industries, Inc.</u>, 281 F.3d at 276.  To determine whether a given release was knowing and voluntary, the First Circuit has developed a set of six factors:  "(1) plaintiff's education and business experience; (2) the respective roles of the employer and employee in . . . determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice; and (6) the consideration for the waiver." <u>Melanson v. Browning-Ferris Industries, Inc.</u>, 281 F.3d at 276 n. 4 (citing <u>Smart v. Gillette Co. Long-Term Disability Plan</u>, 70 F.3d 173, 181 n.3 (1st Cir. 1995)).  Of course, "'no single fact or circumstances is entitled to talismanic significance on the question of waiver.'"  <u>Melanson v. Browning-Ferris Industries, Inc.</u>, 281 F.3d at 276 (quoting <u>Smart v. Gillette Co. Long-Term Disability Plan</u>, 70 F.3d at 181).

In the instant case, Bayad was offered 60 days to review and execute the Release.  This would have afforded Bayad plenty of time to consider the terms of the Release and to consult counsel if he so desired.  The terms of the Release clearly state that, upon execution, the employee agrees to "release Cisco Systems,

any affiliated companies, and their current and former officers,
directors, agents, and employees and assigns from *any and all
claims* up through the date of the execution." (Docket Entry #
68, Att. 3, Ex. A) (emphasis added).  In no uncertain terms, the
Release states:

> This expressly includes waiver and release of any rights and
> claims arising under any and all laws, rules, regulations,
> or ordinances, including but not limited to the Age
> Discrimination in Employment Act (ADEA); the Workers
> Adjustment and Retraining Notification Act (WARN); Title VII
> of the Civil Rights Act of 1964, as amended; . . . and any
> similar law of any other state or governmental entity.

(Docket Entry # 68, Att. 3, Ex. A).  This language is
sufficiently clear to put Bayad on notice that, by signing the
Release, he would be waiving any claims of employment
discrimination against Cisco and its employees that arose during
his employment until May 1, 2001, the date the Release was
executed.

Bayad argues that his execution of the Release was not
voluntary because he was forced to sign the document under
duress.[10]  Other than the allegations of his complaint, however,
Bayad has come forward with no evidence to support this
conclusion.[11]  Nor does the imminent fact of Bayad's termination
constitute a circumstance of duress.  <u>Melanson v. Browning-Ferris</u>

---

[10]  Bayad alleges that he was forced to sign the Release
behind closed doors and in the presence of Cisco's corporate
police.  (Docket Entry # 1, ¶ 104).

[11]  See footnote number five.

14

Industries, Inc., 281 F.3d at 277 (the normal emotional and
financial stress associated with termination is insufficient, by
itself, to create an inference of duress).  Bayad's own words
written on the Release below his signature, "Thank you to all of
you and Good Luck," further contradict his assertion of duress.
The allegations in Bayad's complaint, absent further evidence,
are insufficient to create a genuine factual dispute as to
whether the Release was knowing and voluntary in light of the
evidence put forth by defendants.

Summary judgment is therefore warranted as to Bayad's claims
arising from his employment with Cisco from May 1, 2000 to May 1,
2001.  Bayad's section 1981, section 1985 and Massachusetts law
conspiracy claims arising from his termination and the November
2000 denial of promotion are therefore subject to summary
judgment.  Thus, the only remaining issues to be decided are the
section 1981 and conspiracy claims regarding the two incidents of
the failure to rehire Bayad in the fall of 2003.

II.  Bayad's Remaining Section 1981 Claims

Defendants raise two arguments in support of granting
summary judgment as to Bayad's claims under section 1981.  First,
defendants argue that their lack of personal knowledge and
involvement regarding any decisions made concerning Bayad's
employment bar liability under section 1981.  Second, defendants
further submit that Bayad has failed to establish a genuine issue

15

of material fact that he was subjected to employment
discrimination by any person at Cisco.  The issue of personal
knowledge and section 1981 liability need not be addressed
because Bayad ultimately fails to make a substantive case for
discrimination.  In reviewing the record, this court finds
insufficient evidence from which a reasonable jury could conclude
that defendants' failure to hire Bayad on either occasion was the
result of race-based animus.

For cases involving disparate treatment in the employment
sector, courts use the common analytical framework outlined by
the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S.
792, 802-805 (1973), and Texas Department of Community Affairs v.
Burdine, 450 U.S. 248, 253-254 (1981).  Under this framework, the
plaintiff bears the initial burden of establishing each element
of his or her prima facie case.  McDonnell Douglas Corp. v.
Green, 411 U.S. at 802.  This minimal showing functions to raise
an inference of discrimination.  Texas Department of Community
Affairs v. Burdine, 450 U.S. at 253-254.  The burden then shifts
"to the employer to articulate some legitimate, non-
discriminatory reason" for the employment action.  McDonnell
Douglas Corp. v. Green, 411 U.S. at 804.  The plaintiff then
carries the final burden of "proving that the legitimate reasons
offered by the [employer] were not its true reasons, but were a
pretext for discrimination."  Texas Department of Community

16

<u>Affairs v. Burdine</u>, 450 U.S. at 253.

In establishing pretext, a plaintiff may present evidence including but not limited to "evidence of differential treatment, evidence of discriminatory comments, statistical evidence, and comparative evidence." <u>Rathbun v. Autozone, Inc.</u>, 361 F.3d 62, 72 (1st Cir. 2004). Additional evidence of discriminatory animus is not necessarily required. "In a proper case, the trier of fact may infer the ultimate fact of discrimination from components of the plaintiff's prima facie showing combined with compelling proof of the pretextual nature of the employer's explanation." <u>Rathbun v. Autozone, Inc.</u>, 361 F.3d at 72.

"Because employment discrimination cases arise in a variety of contexts, the prima facie elements must be tailored to the given case." <u>Rodriguez-Torres v. Carribean Form Manufacturer, Inc.</u>, 399 F.3d 52, 58 (1st Cir. 2005). Bayad's final allegation of discrimination arises from Cisco's rejection of his two applications for employment in the fall of 2003: the Systems Engineer II position at the Massachusetts facility and the Voice Specialist position at the California facility. To establish a failure to hire claim, an employee must show that: "(1) he is a member of a protected class . . .; (2) he applied for an open position; (3) he was not hired; and (4) the [employer] sought to fill the positions with individuals who had qualifications similar to his." <u>Lewis v. City of Boston</u>, 321 F.3d 207, 217 (1st

17

Cir. 2003).

Regarding the Systems Engineer II position, though Bayad establishes the first three elements of his prima facie case, he fails to establish the fourth. Defendants have submitted evidence that the System Engineer II position required extensive experience in Network Security, which Bayad did not possess. Defendants have further submitted that the individual ultimately selected for the position did possess such qualifications. Bayad has not provided evidence that would support an inference that Cisco sought to fill the Systems Engineer II position with a person of similar qualifications.

Bayad's only remaining allegation under section 1981 is his rejection for the Voice Specialist position. Even supposing Bayad has put forth evidence to establish each prima facie element, defendants nevertheless submit two legitimate non-discriminatory reasons for denying Bayad's application. First, the Human Resources Manager chose not to select Bayad after learning that he had never completed the CCIE certification. Second, at the time of Bayad's application, Cisco was not paying to relocate prospective employees.[12]

The burden then shifts to Bayad to demonstrate that

---

[12]   The Voice Specialist position was located at Cisco's California facility, whereas Bayad was living in Massachusetts. Thus, relocation would have been necessary had Bayad been selected.

18

defendants' proffered reasons are a pretext for discriminatory animus.  To establish pretext, Bayad may demonstrate that the adverse employment action was "(i) more likely motivated by discrimination than by the explanation proffered by [defendants], or (ii) the proffered explanation [was] unworthy of credence." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001) (citations and internal quotations omitted).  Bayad's only evidence of pretext are the discriminatory comments and threats against Bayad made by Savastano, as recounted in the affidavit of Navas.[13]  (Docket Entry # 75).

Under certain circumstances, discriminatory remarks made by key decisionmakers or individuals in a position to influence key decisionmakers may constitute evidence of pretext.  Walton v. Nalco Chemical Co., 272 F.3d 13, 24 (1st Cir. 2001) (citing Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001)); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000).  At the same time, "statements made by nondecisionmakers or decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

---

[13]  Defendants heavily dispute the veracity of the facts alleged in the Navas affidavit.  For the purpose of resolving defendants' motion for summary judgment only, the facts alleged in the affidavit will be taken as true.

While Savastano was Cisco's Vice President of Finance, he was not the key decisionmaker in regards to Bayad's application for the Voice Specialist position. Savastano has submitted an affidavit explicitly denying involvement in any decision regarding Bayad's employment with Cisco. There is no evidence that the Cisco Human Resources Director, who actually made the employment decision at issue, harbored discriminatory animus against Arabs. The only outside factor considered by the Human Resources Director in denying Bayad's application was the statement of Fraser that Bayad had never completed his CCIE certification.[14] Even if one could draw an inference that Fraser harbored discriminatory animus, through the influence of Savastano, nothing indicates that the information she gave to the Human Resources Director was either false or misleading. Thus, the evidence supplied by Bayad, which includes the Navas affidavit, is insufficient to rebut the legitimacy of defendants' proffered reasons for the failure to hire.

III.  Bayad's Remaining Section 1985 Claims

Section 1985(3) "confers a private right of action for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any persons or class of persons of the equal protection of the

_____

[14]  Notably, the Human Resources Director contacted Fraser at the request of Bayad.

laws, or of equal privileges and immunities under the laws . . .'" <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 n.2 (1st Cir. 1996); 42 U.S.C. § 1985(3).

> To state a claim under 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

<u>Aulson v. Blanchard</u>, 83 F.3d at 3 (citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)).

Defendants correctly point out that Bayad is unable to demonstrate that he was deprived of a constitutionally protected right or privilege. As discussed in the preceding section, Bayad presents insufficient evidence for a reasonable jury to conclude that Cisco's failure to hire him was the result of discrimination as opposed to the legitimate reasons proffered by defendants. Because Bayad cannot support his substantive claims under section 1981, his conspiracy claims must likewise fail. <u>Torres-Rosado v. Rotger-Sabat</u>, 335 F.3d 1 (1st Cir. 2003) (summary judgment against conspiracy claim upheld where the plaintiff failed to demonstrate a constitutional deprivation). Accordingly, Bayad's remaining section 1985 claims are without merit.

IV. <u>Bayad's Massachusetts Law Conspiracy Claims</u>

Massachusetts law recognizes a "very limited" and "rare" cause of action for conspiracy, often referred to as "true

21

conspiracy." <u>Massachusetts Laborers' Health & Welfare Fund v.</u>
<u>Phillip Morris, Inc.</u>, 62 F.Supp.2d 236, 244 (D.Mass. 1999).  The
plaintiff is required to "allege and prove that by 'mere force of
number acting in unison' the defendants exercised 'some peculiar
power of coercion of the plaintiff which any individual standing
in a like relation to the plaintiff would not have had."
<u>Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris,</u>
<u>Inc.</u>, 62 F.Supp.2d at 244 (quoting <u>Fleming v. Dane</u>, 22 N.E.2d
609, 611 (Mass. 1939)).  In "true conspiracy" cases "the wrong
was in the particular combination of the defendants rather than
in the tortuous nature of the underlying conduct." <u>Kurker v.</u>
<u>Hill</u>, 689 N.E.2d 833, 836 (Mass.App.Ct. 1998).  "For 'true
conspiracy' the plaintiff must prove that concerted action gave
the defendants a 'peculiar power of coercion' over the plaintiff
enabling them to bring about results that are different in kind
from what any of them could achieve individually." <u>Massachusetts</u>
<u>Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 62
F.Supp.2d at 244.

Bayad provides no evidence to support an inference that
defendants acted "in unison" to deprive him of employment at
Cisco after March 8, 2001.  Defendants' affidavits all assert
that they had no individual or collective involvement in any
decision regarding Bayad's employment with Cisco.  Defendants
further aver that they had no communication with one another

22

regarding Bayad's employment at any time during the relevant time period.  Moreover, even if Bayad produced evidence that defendants, in fact, acted in concert, the injury caused to Bayad, his denial of employment, does not appear to be substantially different from what any single defendant could have achieved by himself.

Defendants point to an alternate form of conspiracy recognized under Massachusetts law.  This form of "concerted action" conspiracy "is 'more akin to a theory of common law joint liability for tort.'"  <u>Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 62 F.Supp.2d at 244 (citing <u>Aetna Casualty Surety Co. v. P & B Autobody</u>, 43 F.3d 1546 (1st Cir. 1994)).  "Concerted action" conspiracy assigns liability "for actions done by others pursuant to a common design or with the defendants' substantial assistance or encouragement."  <u>Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 62 F.Supp.2d at 244 (citations omitted).  While "concerted action" conspiracy does not required a "peculiar power of coercion," it does require "proof of underlying tortuous conduct."  <u>Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 62 F.Supp.2d at 244 (citing <u>Santiago v. Sherwin Williams Co.</u>, 3 F.3d 546, 552 (1st Cir. 1993)).  As previously noted, Bayad fails to show that his not being hired was the result of any tortuous conduct by defendants.  Thus,

Bayad's lack of a substantive claim precludes any claim under this form of conspiracy.

In accordance with the above reasoning, Bayad fails to satisfy a claim of conspiracy under Massachusetts law. Thus, although this court sympathizes with Bayad's plight and circumstances, the law unfortunately provides him no relief.

CONCLUSION

_____In accordance with the foregoing discussion, this court **RECOMMENDS**[15] that defendants' motion for summary judgment (Docket Entry # 65) be **ALLOWED** and Bayad's cross-motion (Docket Entry # 73) be **DENIED**.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[15] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

'05 MAY 16 P 1: 15

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| ANTHONY BAYAD ,       ) | |
|       ) | |
|       ) | |
| Plaintiff ,       ) | **CIVIL ACTION** |
|       ) | |
|       ) | **CASE NO. _____** |
|       ) | |
| Bruce Bastian, Kate Dcamp,       ) | |
| Lynn Fraser, Celia Harper-Guerra ,       ) | **05 - 11005 GAO** |
| Rick Justice, Cisco Systems Inc.       ) | |
|       ) | **JURY TRIAL DEMANDED** |
| Defendants ,       ) | |
|       ) | |

## COMPLAINT

Plaintiff Anthony Bayad complains of defendants Bruce Bastian , Kate Dcamp, Lynn Fraser,

Celia Harper-Guerra , Rick Justice, and Cisco Systems as follows:

## PRELIMINARY STATEMENT

1.      This action seeks declaratory, injunctive, and equitable relief, compensatory and punitive

damages, legal costs, and other remedies as deemed and appropriate, for the violation of Plaintiff

Anthony Bayad ' Federally Protected Civil Rights under title 42 U. S. C Section 1981 and 1985 for

intentional conspiracy to discriminate and to retaliate based on the plaintiff's Moroccan ancestry, and

his Arab race; and similar situated individuals, and for breach of contractual of obligations

(Business & Employment Relationship); emotional distress, mental anguish, and loss of enjoyment

of life, and; include injury to character and reputation (defamation) ,and injury to credit standing

suffered by plaintiff Anthony Bayad while working and associating with Defendants.

1

## JURISDICTION

2.      This action arises under the Civil Rights Reconstruction Era Statues, 42 U.S.C §§ 1981,

1981(a) as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871, section two now

codified at 42 U.S.C. § § §1985, 1985(3), 1985(C),1988, and § 704 of Civil Act of 1964, and   the

Commonwealth Law of Massachusetts at Part I, Title XXI Chapters 149, section 52c., and

M. G. L.A.  c.266.  § 120.  Supplemental Right of Due Process the Fourteen Amendment and Equal

Protection clause (Classification of race)  under the United State Constitution and Massachusetts

state law.

3.      Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. § 1343(4)

and, over the Constitution and state law claims pursuant to the doctrine of supplemental

jurisdiction, now codified at 28 U.S.C. §1367 and Equal Protection Clause.

4.      Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. §§§§

1981, 1985,  704,  and supplemental Constitution and  State law claims.

5.      Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981 and  § 1985;

42 U.S.C. § 704, and the supplemental Constitution and state laws claims. Costs and other fees may

be awarded pursuant to 42 U.S.C §§ 1988 and 2000e-5(k), Federal Rule 54 of Civil Procedures and

Massachusetts state law.

## VENUE

6.      This action lies in the district of Massachusetts, pursuant to 28 U.S.C. § 1391(b), because

the claim initially arose in the judicial district, and pursuant 28 U.S.C.  § 2000e-5(f) (3); Because the

Plaintiff associated, and works in this judicial district. Moreover, Defendants Bruce Bastian, Kate

Dcamp, Lynn Fraser,   Celia Harper-Guerra , Rick Justice and Cisco Systems have a business office

located in this district, and the Plaintiff resides here.

7.     Plaintiff Anthony Bayad is a U.S. Citizen for twenty [20] years native of Morocco and is of Arab ethnicity. Plaintiff is currently a resident of the State of Massachusetts. for twenty [20] years.

8.     Defendants Bruce Bastian Kate Dcamp, Lynn Fraser,  Celia Harper-Guerra , Rick Justice, and Cisco Systems are all Executives and partners/owners  of Cisco Systems,  whom  some of them own 10 percent  of shares of the Company Cisco Systems Inc. ("Cisco").

9.     ("Cisco "), an employer that engages in an industry affecting commerce and employs approximately more than  40,000.00 employees  World Wide. .

## FACTS

10.    Plaintiff Bayad was born in Casablanca Morocco a North African country,  immigrated to the United States at age of  17 years old to enjoy the freedom and the opportunity that this wonderful country the United States of America has to offer.

11.     Bayad worked his way through College thank to the help of  the Tax payers ( the promissory student loan) and  by washing dishes at burger King, doing construction work and as a gasoline  attendant, as well as other low paying jobs such as cleaning bathrooms, and distributing news papers. Bayad graduated with Bachelor's of Science in Computer Engineering Technologies the year of  1994 from Wentworth Institute of Technology,  with a GPA approaching 3.5 on a 4.0 scale, and was placed four time in the honorable Dean's list for his high achievement during his four year College. After graduation he began his career as a network engineer.

12.    On or about **April 12 of the year 2000**,  Bayad was offered a position as Project Engineer I I grade level 9 Cisco Systems Inc., Professional Services- U.S. Enterprise Northeast region, reporting directly to Lynn Fraser starting salary of $90,000.00 yearly, working out of  Cisco Systems Massachusetts Lexington  office. A copy of the Cisco offer letter is as Exhibit 1 to the complaint.

3

12.    Bayad was hired because of his experience in the field of Data Networking, after the well known rigorous five interviews process, and personal background check that Bayad was put through by Cisco; Bayad has been through out his entire career an excellent employee Project Engineer with Cisco Systems.

13.    Bayad continued his outstanding performance by executing well all of his duties, was rated his overall **job performance as an "E"**, which in Cisco performance rating means: Employee is successful; meets or exceeds all key performance expectations, and his review input summary was quoted as follow : A copy of the letter of Plaintiff Bayad ' Cisco job performance is attached as Exhibit 2 to the complaint.

" Anthony is very dedicated to Customer satisfaction. He works hard and is very conscientious . . . Anthony has been mentoring a former Strata-Com Engineer who is working hard to cross-train on LAN technologies. Anthony has been an integral part of the Engineer's success, who is constantly giving me positive feedback on Anthony' mentoring and reasoning capabilities. . . he is also very impress with Anthony' s technical capabilities. . . Anthony is clearly a Team Player. He is very supportive of his Team, and encourages other's success. . .

14.    The President of Cisco John Chambers and Chief Executive of Cisco sent a letter to Bayad on <u>August 21, 2000</u> addressed to his Home address begin with Dear Anthony (formality Mr. Bayad) and signed personally by him (Chambers) and by Bayad ' Manager also wrote on top of the page with her hand writing " Congratulation Anthony ! ( sign)---Lynn" . and Chambers' s letter to Bayad state the following : A copy of the letter of Cisco President John Chambers to Plaintiff Bayad is attached as Exhibit 3 to the complaint.

I want to <u>congratulate</u> you on our 42nd quarter of consecutive revenue and earnings growth which was the strongest quarter and year-over-year growth . . . . Your individual contributions have played a significant role in making year 2000 a success. As a result, you ( Anthony) will be receiving a Cisco Incentive Plan ( CIP) <u>bonus</u> for *$5, 858.05* in recognition of your accomplishments this past year. You ( Anthony) will receive your bonus via direct or, if you do not have direct deposit, via mail to your home..."

4

15.    Hence Plaintiff Bayad has been successful at meeting his performance objectives and clearly performed in an exceptional manner  accordingly to Cisco 'rating;  On about  <u>October 16, 2000</u> was spotted by Anthony Savastano ( known as Tony Savastano) a Director  or Vice President of Cisco Finance, was a former Manager or Executive  of Lucent Technologies that  Bayad used to report to him during his employment at Lucent Technologies,  the year of 1995 and 1997 prior of joining Cisco Systems;

<u>Factual Background of Hate Crime executed on Bayad at work place within Lucent Technologies '</u>
<u>jurisdiction  of  intent , defamation , false imprisonment no right of due process harassment ,</u>
<u>disparate treatments of discrimination and the list goes on. Provided as follow:</u> (Justice Miscarriage)

15. During Bayad ' employment with  Lucent Technologies , Tony Savastano demoted Anthony Bayad for no reason or justification, promoted instead a Spanish person to take over the position that Anthony Bayad held. Tony Savastano 'tactic was aimed to cover up his hate toward Moroccan, replacing him by a minority, by  keeping him  in the lower ranks and eventually terminating his employment,  because   he ( Savastano) was  motivated by hatred of  Bayad ' race Moroccan or similar situated as him.

16.    During Bayad ' employment at Lucent with Tony Savastano, Bayad requested a meeting with Amado Navas a Manager reporting to Tony Savastano and Carl Wiese an Executive of Lucent Technologies that Bayad reported to him also , and during the meeting Bayad complained  to them (Savastano and Wiese) about their treatment and discrimination toward him because of his race, by asking them if they have a problem with people with an accent like him ( meaning Anthony Bayad) and why can John White ( an engineer similar situated as Bayad), a white employee also reported to Carl Wiese and Tony Savastano, who had just gotten a significant promotion, fly high, like an eagle

(John White) and he (Bayad) can't , Why is it that he ( Bayad) have to prove him self every day to you ( Carl Wiese and Tony Savastano), Carl Wiese immediately shouted: shut up!! Stop talking about my people!!. A copy of the declaration of Mr. Amado Navas who attended the  is attached as Exhibit 4 to the complaint.

17.    Tony Savastano and Carl Wiese approached Kaslow a Phone technician without a college degree or similar qualification as Bayad, offered him the managerial position, instead of Bayad and others qualify educated minorities that sought the position the  Manager of the Largo Florida ' Office.

18.    Additionally Carl Wiese met  personally with Bayad and told him  that he gave a black eye to this organization and Arab like  you are disbarred of being promoted as Managers and Executives at Lucent  Technologies.  Defendant Wiese during his employment at Lucent,  was a The Right Hand man of President Patricia Russo of Lucent and his Brother John Wiese was the Vice President of Lucent and close to the Lucent President Patricia Russo,  was the man and untouchable, Openly  proud promoting  racism in the work force at Lucent (and now Cisco) . The fact drawn he directed Lewis Kaslow  to verbally humiliate Bayad , calling  him    **"Sand Niger"**, **"dirty Arab"** and did not care if Bayad had to take a" **Flying Carpet"** . Carl    Wiese is known to only promote white persons as the fact clearly shows that he  approached Lewis Kaslow and  offered hired him the managerial  position,  was not qualified nor met the potential candidature and the experience that others candidates as Bayad possess as they were qualified. A copy of the admission of Lewis Kaslow reporting to Carl Wiese, stating he did not care if Bayad had to take a **"Flying Carpet"** is attached as Exhibit 5 to the complaint.

19.    During Bayad 'employment with Tony Savastano and  Carl Wiese ( both Executives with

Lucent Technologies and now Cisco Systems Defendants) proceeded with and act so outrageous and so extreme in degree as to go beyond all possible bound of decency and to be regarded as atrocious and utterly intolerable in a civilized community. They ( Savastano and Wiese) orchestrated a criminal act ( hate crime); by falsely imprisoned Bayad at the hand of lucent technologies corporate police, Renold Laurino acting under the direction of Savastano and Wiese who Bayad reported to them, stated things like: "**I don't know what's wrong with company (Lucent) hiring people like you**." "**ten year ago I wouldn't even be talking to someone like you**."(Meaning Moroccans) such remarks were directed specially at Bayad's Arab race and ethnic background, the fact he had been born in North Africa and was considered foreigner under the eyes of Savastano and Wiese.

20.    After being falsely imprisoned and abusively interrogated by Lucent Corporate police Renold Laurino for such intense period of time,    Bayad became sick with fear and tried to leave the room; when Bayad reached the door, several Lucent Technologies including corporate Police , security and Anthony Savastano attempted to physically restrain him and kept him locked in the room where he was being falsely imprisoned, in the scuffle that ensued, Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below; as result of the scuffle, Bayad received injuries to his head and neck and his clothes were torn. of the Pinellas County Sheriff's office incident/Offense report; an ambulance was called to take Bayad to the hospital, while he was lying in the ambulance with an I.V in his arm and being treated by paramedics, Bayad was terminated from Lucent at the presence of Tony Savastano who was on the phone with Carl Wiese. A copy of the Fire Rescue Police report is attached as Exhibit 6 to the complaint.

21.    Bayad was charged of trespassing even though he was asked to come to Largo (Tampa Florida) office at their request even though Bayad was still an employee of Lucent Technologies

7

Inc., and while lying in the ambulance and with an I.V. in his arm, Bayad was forced through the humiliation of having to give back his business addresses, his pager was wet and not operational, and his corporate American Express cards despite the fact the card had already been deactivated and could no longer be used by anyone..

22.    Tony Savastano deliberately and intentionally humiliated, tortured and degraded Bayad. He and others reposed the occurrences of the incident and conspired against Bayad, and they were the ones ( Savastan , Wiese and others) who called the Police and the Fire Rescue to the Scenes, also they were the ones who provided defamatory occurrences to the police, simply to convinced them to commit Bayad to the Psychiatric ward against his will (in Florida they call it "Backer Act").

23.    At the scene, Tony Savastano 'secretary Joan Grohe was heard stating , "I warned", and "I told them (savastano and others) not to do it. They fucked it up." Grohe also knew that Bayad was going to be Baker Acted (or committed to the psychiatric ward against his will) before the ambulance had even left the parking lot of the Lucent Largo office and remarked to a coworkers that "we're going to baker Act him." Forcibly Bayad was obeyed to spent a good 72 hours in the psychiatric ward, and since he Was recognized not having any problem, the Sun cost Mental Hospital's Doctors released him very shortly.(It was the most grim moments of his life).

24.    Hence when Bayad was released from the hospital, and he was left by Savastano , Wiese , and Lucent Technologies without any money, clothes, or means of transport ting him self to his home, it was an obvious conduct of hate and disgrace by Savastano , Wiese during his employment with Lucent Technologies and Savastano, wanted to proceed with the same hate crime against Bayad now with Cisco Systems.( they did not accomplished their goal as they have done at Lucent).

25.    On about January 24th, 1997 and only days later Tony Savastano sent letter drafted by his

lawyers and stated as follow:

._____.

" Mr. Anthony Bayad
2900 NE. 30th, Apt 7F
Fort Lauderdale, Fl.33306

Dear Mr. Bayad,
I ( meaning Tony Savastano stated herein) have reviewed the information from the security
investigation regarding the purchase of two airline from Morocco to Miami. This is a serious
violation of the Lucent Technologies Code of Conduct, misusing the Corporate American Express
Card for personal expenses.\

This is to notify you that your employment is terminated immediately as a result of your violation of
the Lucent Technologies Code of Conduct.

Signed
Tony Savastano
General Manager "

._____.

A copy of the Letter is attached as Exhibit 7 to the complaint.

26.    Tony Savastano was the lead conspirator as his resume proves that he is an expert in Finance

and accounting during his entire career with Wang Laboratories, AT&T, Lucent Technologies and

now Cisco Systems.  It was conspicuous of him to accuses Bayad of financial fraud and stealing

from Lucent technologies Inc., It was a dumb pretext to finish him up once and for all, Brightly

Bayad was a hard working,  very educated, and  very  technically competent in field  of

Internetworking; Tony Savastano and Carl Wiese were desperate and not very wise, because the

State of Florida is a state of Employee at "Will" , they could simply pick up the phone,  and

terminate Bayad' employment at any time, but "No" they want to send a clear message to all

minorities and to all Moroccans, Spanish, Asians , Arabs,  as well as African Americans that they

( Savastano, Wiese, Cisco Defendants, and Chambers et, al are the masters the white supremacists .

27.    Anthony Bayad tried to move forward with his life and career by joining a new company  the

9

Consulting Firm the  International Network Services ( "INS"), only to have once again to endure

suffering at the hand of Tony Savastano and his personal secretary Johan Grohe and Carl Wiese and

others. Bayad was terminated the first day of his employment with INS, thereafter Lucent

Technologies purchased the Company INS ( it is a shame), and Tony Savastano was familiar with the

Legal Systems that the attorneys at law ( dispense any liability with summary judgments)  are

always on  his side, and the share holders always end up loosing by picking  up the tabs (legal fees).

A copy of letters of International Network Services ( INS) and communication of Lucent Savastano

and his personal secretary John Grohe is attached as Exhibit 8 to the complaint.

<u>Factual Background at Cisco Systems of  Pattern of Intent ( Disparate) Discrimination,  Defamation,
Conspirator, false imprisonment ,  and Retaliation From the year of May 2000 to present time 2003
and 2005 provided as follow</u>

28.    Tony Savastano and Carl Wise now are" Cisco Systems Executives", Carl Wiese is **Vice**

**President of Sales** and Tony Savastano hold a tile of **Vice President of finance"** with Cisco

Systems  Inc., and was reporting to his friend John Chambers the President of Cisco and owner

(<u>an old Buddy at Wang Laboratory Inc</u>.). Tony Savastano and Carl Wise were reunited again with

Bayad at  Cisco Systems. A copy of background of John Chambers and Tony Savastano '

employment together with Wang Laboratory is attached as Exhibit 9 to the complaint.

29.    Upon Anthony Bayad being spotted at Cisco Corporate San Jose California where Tony

Savastano works and resides, <u>about October 16, 2000</u>, and upon Bayad ' return from his business

trip from California and back to Massachusetts, informed his Manager Lynn Fraser, was made aware

of the act of the discrimination and disparate treatment that  Bayad has undergone while working

with Tony Savastano with Lucent  Technologies. A copy of Travel Document evidencing Bayad '

Business trip to Cisco Corporate San Jose where Tony Savastano works and resides is attached as

Exhibit 10 to the complaint.

30.    Additionally Bayad correspondent by Cisco inter-mail and by Cisco Electronic Mail to Cisco President of Human Resources <u>Kate Dcamp</u>, <u>Rick Justice</u> Sr. Vice President of Sales, <u>John Chambers</u> the president of Cisco, and Director of Human Resources <u>Celia</u> Harper-Guerra , in regard to the discriminatory conduct executed upon Bayad By Savastano while at Lucent Technologies, International Network Services , and now at Cisco Systems. A copy of the Letter of correspondence to Defendants and this include the President of Cisco Systems John Chambers where Bayad Complaining of discrimination is attached as Exhibit 11 to the complaint.

31.    The correspondence were with the accordance to the Cisco open door policy that encourages any employees and this include the similar situated employees that are  minorities as Bayad, to freely communicate without  fear of appraisal or retaliation to upper Cisco Managers ( as Rick Justice Sr. Vice President of Cisco) and to Human Resources ( Kate Dcamp Sr. Vice president and Celia Harper Director of  Cisco Human Resources), of any discrimination or any violation of law or any wrong doing by any Cisco Employee and this include Tony Savastano Vice president of finance.

32.    Bayad' manager Lynn Fraser (" Fraser ")  was made aware of the fact of the discrimination and  disparate treatment Bayad  have undergone while reporting to Defendant Savastano  at Lucent Florida,  Thereafter  Fraser  conspired with Tony Savastano and with Defendants Cisco and others Executives of Cisco,  begun  to micro manage Bayad , by ordering him to check with her every day and not to work from home while  other white persons ( co-workers) were enjoying that privilege and freedom given to them as it is very discriminatory and  defined   as follow:

> "To discriminate is to make a distinction, to make a difference in treatment or favor, and those distinctions or differences in treatment or favor which are prohibited . . . are those which are based on any five of the forbidden- criteria : race ( applies § 1981), religion, sex, and national origin. Any other

criterion or qualification is not affected by this title."

33.    Fraser assigned two of her best buddies (Bayad co-workers), Brian Low and Jeremy Nooman to watch over Bayad and to page him each time they wanted for no reasons, simply to harass Bayad.

34.    Because Tony Savastano is a finance Executive of Cisco and a good friend of the President of Cisco, used his friendship ( as Wiese have done with Lucent President) directed Fraser to scrutinize and demanding Bayad to submit his Cisco Corporate Finance Expenses (Business Travel Expenses) at all the time to her or to her buddies (Jeremy Nooman and Brian Low), every time before being submit - to Cisco Corporate Finance that Tony Savastano manages as Vice President or Director of Finance for Company travel expense reimbursement;

35.    Hence during Bayad employment with Cisco, was preparing for the Cisco Certification Internetworking Expert ( "CCIE"), has passed many tougher difficult College Exams and Certifications administered by Fortune 500 Companies, Proteon Inc., Bay/Nortel Networks, and Cyber Guard. The fact drawn here, Tony Savastano did not stop his vendetta of intentional discrimination aimed to destroy Bayad a Moroccan of race. Tony Savastano with Lynn Fraser and others Cisco Defendants and its Executives, made it impossible for Bayad to become a Cisco Certify and for the sole reason is , to make it easy for Bayad ' employment termination with Cisco; and to use the CCIE as defense against Bayad when time of his termination shall arrive as Lynn Fraser was planning. A copy of College Transcript and 500 Fortune Companies certification ( Bayad credential) is attached as Exhibit 12 to the complaint.

36.    Orchestrated by others and this include Tony Savastano and Carl Wiese, that both are Vice President(s) of Cisco , conspiring with Lynn Fraser and directing her not to pay for any Bayad' accrued expenses of the CCIE Exam even though Bayad is an official Cisco Employee. She was put

12

in notice and made aware of Tony Savastano ' intention to intentionally ( discriminatory act out

side if his scope of his duty at Cisco), to <u>fail Bayad</u> for the " eleven [11]times the grant of the Cisco

Certification Internetworking Expert ( the CCIE), and never less enabling him ever to become a

CCIE certify of Cisco Systems.

37.    Cisco Systems has policy (as many others discriminatory policies will be stated herein) to

pay for the Cisco CCIE exams to only non minorities and favor them the grant of the CCIE , as

**Michael Pucel** Cisco Systems and others paid for all white person to pass the CCIE exams

including Michael Pucel  and gave him ( white persons only) free Vouchers,  paid full expenses to

him ( to others white persons) ,  granted him ( to other white persons) 6 **[six Titles]** of different

subjected the CCIE Exams,  the CCIE for Routing  and  Switching, the CCIE SNA/IP,  the CCIE for

ISP, the CCIE, for Security,  the CCIE for VOICE, and  the CCIE for Services, also  Greg Gall

Senior a white person and the  list  goes on and on . . .., it is a shame. A copy of the letter Cisco

Defendants and Executives   graduating Michael Pucel is attached as Exhibit 13 to the complaint.

38.    On about November 2nd of the year 2000, during Bayad employment with Cisco Defendants ,

and just before being wrongfully terminated by Defendants stated herein and by Chambers et, al.

with Cisco Systems . Bayad  applied for the position of Systems Engineer for North Africa Region

with Cisco Europe Shared Middle East Africa, because Bayad aptitude to speak the Language of

English, France, Arabic , and the North African dialect , in addition of  his educational and technical

background,   this include his requirement of being with the company accordingly to the time

permitted for a Cisco Employees to transfer ( 3 to 6) months of employment,    is allowed according

to Cisco Europe Manager(s),  who proceeded with the interview process, and Bayad was considered

for that position as he was qualified.

39.    Bayad was considered for multiple sets of phone of interviews and technology tests.

Thereafter the manager (s) were very impressed and decided to meet with Bayad in person in 3 countries the United Arab Emirates ( Dubai), France ( Paris), and England ( London) for the purpose to hire him. The interviews went well and the Cisco Arab Manager(s) , the Cisco France Manger(s), and The Cisco British Manager(s) provided Bayad with "verbal Offer" ( oral Contract) and proceeded with the Transfer Process.

40.     Upon Bayad returning to the States, he was denied - advised with regret that the Decision was standing at Cisco Corporate. All the European Manager(s )Backed up and only the Arab Manager(s), who spent considerable money and effort for the benefit Cisco Systems, by adding a well skillful and bilingual Engineer (Bayad) to compete against other companies presence in those region.

41.     On November 29, 2000 (one week Later from the trip) the Arab Manager(s) provided and informed Bayad that a Cisco Executive based out of San Jose classified and Broadcast him in a secure website within Cisco called Cisco-No-Hire-List ( very known discriminatory policy list targeted minorities), that only Cisco Executives as Defendants Bruce Bastian , Rick Justice, Lynn Fraser, Celia Harper-Guerra, and Kate Dcamp and Hiring Manager[s], have access to it, and the Cisco Executive ' name was: "Tony Savastano", who directed Celia Harper-Guerra to classified Anthony Bayad in it, aimed to deny him Job Transfer, Promotion, and any opportunity at Cisco. The list also is used to warn Cisco resellers and partners not to hire Bayad or any minorities 'names that is found in the list the Cisco-No-Hire-List. A hard copy of the discriminatory animus the Cisco – No-hire-List targeting only minorities or similar situated as Bayad is attached as Exhibit 14 to the complaint and an authentic electronic copy is also filed before this court in pending in an other pending litigation against other defendants Chambers et,. al.

42.     Cisco Systems has policy in place that allow white individuals as Tony Savastano to exercise

their racism on minorities as Bayad without disciplinary actions , for their obvious  act  that is out

side  of their normal  duties of  the company Cisco Systems' daily Business or Ethics or

Guidelines, and against the Federal  Protected Civil Rights of Bayad and similar situated minorities,

and without fear  of the Law of this land.

43.    The man responsible of the list the Cisco-No-Hire-List is Rick Justice the Cisco Sr. Vice

President of Sales (and president of Cisco John Chambers who Ok it), who used it more often as his

name was  found in it , and he  used it to sent  his  messages to his  sales field ( thru the Cisco-No-

hire-List) , also  Kate Dcamp the Sr. Vice president  of Human Resources used it  to control the

minorities in her  hiring process decision at Cisco, and Celia Harper-Guerra  the Cisco Director of

Human Resources, a principal administrator of the  Cisco-No-Hire-List as she is aware of her

violations of Cisco Business ethics and of the law to discriminate only  against minorities until to

this  day, where she has no conscience and aware that no other companies has a list as the Cisco-No-

Hire-List as it is a  policy of discriminatory animus, where Bayad and other similar Cisco minorities

employees are   Broadcasted as follow:

" ***       **Do not hire/transfer/promote Anthony Bayad Cisco Employee # 73799**       ***

**Should you have question, contact Tony Savastano  "**

The Cisco-No-Hire-List contains Cisco Agent and Representatives whom only promote none

minorities Companies  (Cisco Partners/Resellers), and the  List ( the Cisco-No-Hire-List) also

contains 100 to 1000 Minorities' name and their addresses  not to be hired. ( classification of race).

44.    **On about  May of the year 2001,**. Bayad was taking by surprise and was terminated

from his employment. Lynn Fraser used a ridicules excuse such as the economy was the reason why

he was terminated from his employment (Lay off).  In the context of a reduction in force, where

Bayad was the sole person of protected group (Minority) in his department or group at Cisco

Systems, was incrementally in demand than other in the same situated  Position as his , the Project

Engineer,  in term of Time Utilization  called  Billable Hours to Cisco Customers and to the

employer Defendants Cisco .  (Evidence is of the time sheet called by Cisco Time Tracker).

A copy of the Cisco Time Sheet evidencing Bayad total hours greater to his Co-worker (more

utilized, is attached as Exhibit 15 to the complaint.

45.     Bayad  was  adequately performing his job and the firing of a qualified and skilful and

technically competent and well educated  minority employee (such as Bayad) raises the inference of

discrimination because it is facially illogical for an employer (such as Cisco Systems) to  randomly

fire  in absence of any wrong doing or of any act of  any violation of Company Business Ethics or

guidelines (such as Cisco) an otherwise qualify employee and thereby incur the  considerable

expense and loss of production associated with hiring and training a replacement.

A copy of Cisco Travel  Document evidencing more utilization and production is attached as Exhibit

16 to the complaint.

47.     Bayad 's Cisco Co-workers outside the protected class were treated more favorably,  Bob

Tracy  a  white person ( no College Degree or  possession of any Cisco or Internetworking

Certification), whom Plaintiff was cross- training in order to meet the expectation of his Job

description  and his duties required by such position  the Project Engineer, and Mike Illpolito (no

College Degree or  possession of any Cisco or Internetworking  Certification),  also Bayad was cross

training to bring him to the similarity position and confidence in order to handle  the high demanding

Cisco Customers for the Position that Cisco hired him for it, the Project Engineer as Bayad. And

there are more names  to stated with fact.

48.     During  Bayad's termination with Cisco Systems, his Manager Lynn Fraser  under the

direction  of Defendant Kate Dcamp and Celia Harper and Tony Savastano and  with  others,  created

16

the same stressful environment as it was done to Bayad at <u>Lucent Technologies</u>  while back in <u>January 23rd, 1997</u>, to purposely bring the Trauma back to him of the hate crime committed against him  while back with Lucent Technologies and to frighten him , humiliate  him , knowingly he was once  before mentally and physically abused while employed with  Tony Savastano and Carl Wiese the  Vice President of Cisco Finance,  and Sales once before at Lucent. (deja vu)

49.    The same lucent scenario was reacted at Cisco, as they had Bayad in close doors against his  will at presence of Cisco Systems Corporate Police and Lexington police or law enforcement detective  hiding in another office waiting for action , sending message that Moroccan as Bayad or similar situated have no business at Cisco as at Lucent.  Bayad was forced to sign with obscure ness a Cisco Systems 'documents or contracts calculated to evade liability.

50.    Cisco corporate Police accompanied by Lynn Fraser unconditionally mandated  Bayad stressfully to sign Cisco documents approaching to forty   pages that Bayad   signed without any prior notice or Review, likewise to sign or not to sign you ( Bayad) will suffer the same Consequences termination (as move or not to move you will get shot). The last time Bayad refused to sign while back at Lucent with Savastano, ended up in fountain and in an ambulance and in a hospital, was transferred to a confined prison against his will (not a hospital), end up homeless and now unemployed for about 7years and disabled.( in the eyes of the Defendants Bayad is a Moroccan).

51.    All the defendants including Sr. Vice president Kate Dcamp participated, supervised, and handled  with due care the termination of Bayad with Cisco with calculation and precision to evade any  liability that Bayad may claim against them as they are self guilty conscious of discrimination..

52.    On about <u>**May 30th of 2001**</u>, Bruce Bastian Cisco Manager sent  an electronic mail, whom reporting to Rick Justice and Carl Wiese both are Cisco  Vice President of Sales,  Broadcasted a "**wicked  racial Audio** "via Electronic mail within  the authority of Cisco 's  way of  mail

communications to coworkers with Cisco Systems Inc. The directive audio that was sent, was controlled with "multifarious racial jokes" about Moroccans and minorities similar situated as Mr. Bayad 's ineptitude to verbalize the expression of the English tongue, clearly ridicule any and all foreign nationals, sound stylish and feebleminded of the of English palaver, and relate to employees getting terminated as Mr. Bayad. The consignation of the multifarious racial jokes audio was titled and state the following : **"hate this "Fucking job", and "I will be fired"; "I have just been fired ", and By-By- everybody"; "I need a "P" quick and my Etc...**), and it goes on and on. It is a shame. A soft copy of the racial audio in <u>Word Perfect format</u> to be opened and to <u>double click on the icon</u> showing as <u>small speaker</u> to enable and to listen to the sound, is attached as Exhibit 17 to the complaint.

53.    Cisco Defendants and in particular Rick Justice with others Cisco Executives admitted of Bruce Bastian' misconduct of sending the racial audio email, and as quoted from their email of Correspondence; the email was racist in nature and against all <u>minorities with broken English</u> as Bayad (It was Cisco 'policy and customs to promote racism). Unfortunately Cisco Defendants Kate Dcamp, Rick Justice, and Celia Harper, do not terminate or reprimand White Employees, and their authorities is only applied to only Minorities as Bayad, if they violate the Cisco Business conduct. **Exhibit T attached to the complain** as copy of the email and CD contains multifarious sound as word perfect , click and listen. A copy of the correspondence by Defendant Rick Justice and others in regard to the racial audio is attached as Exhibit 18 to the complaint.

54.    Tony Savastano and Carl Wiese the Cisco Vice President of Cisco 'pattern of discrimination was shown also during Bayad ' <u>termination of employment with Lucent</u> , Broadcasted a racist Electronic Email Title; " <u>It is done</u>" This Email was sent by a white Employee and a Manager reporting to Tony Savastano. The Email was delivered the day of Bayad termination of

employment with Tony  Savastano and Wiese, to the entire Bayad ' coworkers  and to the

Defendants, and the <u>e: mail express antipathy toward foreigners and toward Plaintiff Bayad</u> in

particular, and it used <u>ethnic epithets to describe Plaintiff Bayad</u> .  The e: mail further expressed the

hope that writer   (was promoted by <u>Tony Savastano</u>   as he is very close to them) could make

Plaintiff  Bayad look bad and have him terminated;  The " it's Done!"  e-mail states: ( Mike Reed the

author is a high school drop out and could not spell the word **"NIGER"** and stated as follow:

---

**" From: Mike Reed**

**To**          **Bay, BBRewer**   ( Bay & BBRewer correspond to a group of
                   Employes)

**Date**         **1/24/97 12: 25 am**

**Subject :**    **It's done!**

Bruce, I need your help we need to stop these dammned foreigners they think they can
come over to my country and first of all take our jobs, then be our bosses. Anthony
Bayad needs to be stopped or before you know it he will be running this company. He
is nothing but a sand nigger or dirty arab or something like that.
I think that with your help , we can make him look bad in the eyes of upper
management, so we can finally get rid of him and his spick boss, once and for all.
Tony ( means Defendant Savastano herein) already has a plan Scott Boda will get
certified in the near future, and two other people they told to get certified, we can
finally get rid of them, Even if they are right in saying most people in this company
don't like to work hard , and all they do is play games they should not come in and
make waves.
Mike Reed **"**

---

A copy of the Racial Email is attached as Exhibit 19 to the complaint.

55.    Cisco Defendants Kate Dcamp Vice president of Human Resources ,  Rick Justice

and Carl Wiese both Cisco Vice President of Sales ( this include their Cisco President John

Chambers)  are promoting racism and ignoring the Law as the fact drawn herein. The Sales team or

group led by  Director of Sales Chuck Robbins and Mountford  Paul ( both report to Rick Justice

and Carl Wiese) disgracefully  broadcasting E:Mail to their sales team members ( all White persons),

the improper word –"***NIGER***" with  an "***L***" and the ord "***PUPIL***"  for  "***BLACK***" in their Cisco

electronics correspondence to other white Cisco Sales Engineers.

A copy of the E:mail correspondence using  ethnic epithets is attached ad Exhibit 20 to the

complaint.

56.    During Bayad 'termination with Cisco , was told "presumably" that he was eligible fo

rehire within one year from the date of his termination of his employment with Cisco . Therefore

Bayad  apply as required by the employer Cisco Systems for multitude of positions (outside

Massachusetts and in way far from Lynn Fraser),  called requisites herein. On about September 30,

2003 to present time,  and stated in the complaint and herein as noted by **Cisco requisitions as**

**follow:**

"1) Requisition 714007 contact name Michael Kent, 2) Requisition 713667 contact name Niki

Peleuses,3) Requisition 713906 contact name Michael Kent,4) Requisition 713644 contact name

Niki Peleuses, 5) Requisition 713123 contact Michael Kent, 6) Requisition 711846 contact name

Chuck Ramsburg, 7) Requisition 711780 contact Domick Delfino, 8) Requisition 72133 contact

Scoot Lovett, 9) Requisition 712669 Michael Kent, 10)  and Requisition 713950 Liz Bacchi, and

many more." A copy of all the Requisitions from the year 2003 to present time is attached as Exhibit

21 to the complaint.

57.    Bayad  was subject to an adverse employment decision. The evidence introduced herein,

clearly prove when Bayad applied for an open positions in direct contact with  Cisco' Human

Resources run by Kate Dcamp the Sr. Vice Human Resources and Celia Harper-harper, no reply is

provided or consideration is given to Bayad,  and to the contrary when Bayad contacted or dealt

direct with the hiring Manager  evidencing herein ,  the  hiring Manager as  with  Robert Bardani  a

Cisco Systems SE Manager, who shortly replied and asked Mr. Bayad to provide a convenient time for a telephone interview. A copy of such correspondence is attached as Exhibit 22 to the complaint.

58.      Additionally,   Bayad directly contacted a second   Hiring Manager for another open position, Mike Kent a Manager of Cisco Systems, who was very professional and welcomed Bayad back to Cisco, who proceeded further in the application process. In fact his team sent an electronic mail  indicating that  Bayad was considered for a position with Cisco Systems, an application is required to be filled in order to proceed further in this process. A copy of such correspondence is attached as Exhibit 23 to the complaint.

59.      Accordingly, Bayad has complied fully with the entire process of Cisco requirement and demands in regard  the application process Cisco,  therefore the process was open for Bayad consideration for those positions as he was qualified.  Unfortunately Cisco Manager Bardani backed off;  Also Cisco Manager  Kent  has  sent back an  electronic mail  to Bayad stating  in it as Follow: "It is all in the Management  hand" (meaning  Cisco Defendants and Others as Carl Wiese Tony Savastano and Jon Chambers , (Chambers, et. al). A copy of such correspondence is attached as Exhibit 24 to the complaint.

60.      Plaintiff Bayad was subject to an adverse employment decision  during the final stage of the interview.  Mr. Bardani asked  Bayad about his  preceding direct Manager Lynn Fraser, to  contact her  regarding the  history of  his employment  with Cisco Systems Inc., Thereafter Bayad had never heard  from  him again. Lynn Fraser always acting behind the scene with her purpose to defame and to help her friend Tony Savastano ( as Witness declaration that Tony Savastano called Lynn Fraser " My Friend) to execute his racist and his retaliatory misconduct against **Bayad ' Federally Protected Civil Rights** . (Cisco Employee Mr. Amado Navas also a Cisco manager' sworn declaration

provided herein is attached as Exhbit 25 to the complaint).

61.     Additionally one of many correspondences of fact proving defamation and retaliation By

Lynn Fraser, when one of Cisco recruiter working with the Hiring Manager Mr. Bardani who was in

process of considering Bayad for a Position as he was qualified , otherwise he will not spent his time

calling Bayad and returning calls for 3 time, the Cisco recruiter Liz Bacchi evidencing as stated in

the correspondence . Lynn Fraser is delicated to discriminate to retaliate to conspire with Tony

Savastano and others at Cisco, Plaintiff Bayad has always acted with discretion and respect and kept

by pretending of not knowing her misconduct. Plaintiff Bayad even sent her Email thanking her and

appraising her as the best Manager as she not ( trying not to burn bridges for the future).

Unfortunately her act with defendants stated herein have gone far and outside of their jurisdiction .

Additionally Lynn Fraser does not have a College degrees as Bruce Bastian the Cisco Manager or

Director , did not work of any fortune 500 companies as Bayad , but the only thing that gave her job

at Cisco, are her buddy at Lexington.

And she doe not have any certification of the high tech field and this include her buddies Brian Low

and Jeremy Nooman. Thus when an employer or a recruiter request about Bayad ' history at Cisco,

as She replied  and quoted as follow:

"Lynn Fraser does not feel comfortable talking about Anthony Bayad "

What type of message is she sending to Bayad potential employers ,  when someone hear this

statement what type of feedback is this!!!!" Please See the following:

A copy of a correspondance between between a Cisco Recruiter and Lynn Fraser of such defamation

is attached as Exhibit 26 to the complaint also stated herein.

22

**Liz Bacchi, 09:20 AM 1/7/2004 -0800, Fwd: Re: Requisition #714082 and others**

X-Sender: lbacchi@mail1.cisco.com
X-Mailer: QUALCOMM Windows Eudora Version 4.3.2
Date: Wed, 07 Jan 2004 09:20:14 -0600
To: jbotelho@cisco.com, ceharper@cisco.com
From: Liz Bacchi <lbacchi@cisco.com>
Subject: Fwd: Re: Requisition #714082 and others

Hi Judy,

Below is an email that I sent to Anthony Bayad (in PS he has a different last name, can't remember what that was) when he contacted me on my cell phone directly for an interest in returning to Cisco. Celia wanted me to send this to you.

From what I remember, Anthony called me on my cell phone and wanted to speak to me about the position that I had open in California for a Voice Specialist. He mentioned that he used to work for Lyn Fraiser and that I could call her. I called Lyn directly and she was very hesitant on speaking with me. Since I was an internal HR Manager, she felt better. She said that she would not recommend Anthony to come back to Cisco that he worked for her for I believe 1 year. That he made commitments for his CCIE but never took the lab or any classes. I think he is still stating that he is taking the CCIE. She was nervous about speaking to me anymore about him. She was uncomfortable.

That is when I sent this email to Anthony about the relocation issues and that we don't pay a lot or any for relocation (especially for Federal) and to look for other positions in his area. I also sent him to our sourcing group to have screened for other positions.

HOpe this info helps. Let me know if you have any questions.
thanks!
Liz

Date: Wed, 15 Oct 2003 09:21:41 -0700
To: "Anthony Bayad" <abayad@gicamerica.com>
From: Liz Bacchi <lbacchi@cisco.com>
Subject: Re: Requisition #714082 and others
Cc: <brussell@cisco.com>, <lyfraser@cisco.com>

Hi Anthony,

Thank you for your interest in coming back to Cisco.
I did receive your email and I forwarded it to our sourcing group to have you pre-screened for position in your area.

The position you applied for is in California and you are located in MA. Due to the number of candidates we have for our position, we are not relocating anyone at this time.

Please keep checking the website for positions located in your area.

Thanks!

---

Printed for Judy Botelho <jbotelho@cisco.com>

1

CISCO 00096

62.     During the application process   an inference of intent (disparate) of discrimination occur by Cisco Defendants and Chambers et,al., When   Cisco Defendants  and Kate Dcamp with others (Justice, Harper, Fraser, Savastano, Wiese, Chambers et,al.) Deliberately sent an  employment" e-mail" of correspondence to Bayad requesting  him to provide his Ethnic,   race background , and his genders and states the following:

---

> **"From:**          **Cisco Systems [vsid@cisco.com]**
> **Sent:**           **Wednesday, December 03, 2003 6:01 PM**
> **To:**             **Anthony Bayad**
> **Subject:**        **Cisco Systems:: Voluntary Self Identification**
>
> Dear Anthony,
>
> To assist Cisco Systems, Inc. in collecting government required candidate **EEO** ( **Equal Employment Opportunity**) information, please go to the website address listed below.  Once there, enter your e-mail address in the e-mail address field, this will be used to identify you. Then enter the unique password ( include below.  Submit the information , and you will be logged on to Voluntarily self  Identification form. Once you  have logged in, please complete and submit the form ....... Submission of this information is strictly voluntarily and you may choose to decline to state **your race and gender** once you are logged on the form. Refusal to complete this information ....."

A copy of such correspondence is attached as Exhibit 27 to the complaint.

63.     Even though before Cisco Systems a company and   Defendants stated herein and this include Carl Wiese, Tony Savastano and John Chambers , can   proceed in the regards of Bayad  hiring decisions or other minorities similar situated as  Bayad,  this unlawful act is  also in  violation the federal law and the state of  Massachusetts law,  States the following :

" Employer cannot ask employees about their race, origin, ethnicity, disability, and age, during the interview process, but Employer can ask only about the candidate qualifications background ."

64.     On about September 2001, Bayad founded a company, Global Internetworking

Consulting Inc., that engages in the computer and networking technology, security, IP telephony, client server technologies, and routing and switching technologies..

65.    Bayad invested his retirement saving to promote his company Global Internetworking Consulting Inc.,("GIC") and became partner with other solutions provider such as Cyber guard Inc., Kalix Inc., for Surveillance and Security, and Cisco Systems Inc., Routing and a Switching Technologies.

66.    GIC has chosen these service providers as Cisco Systems for its customers, to build a strategist alliances and business relationships, and **GIC** was acting as the front Liner for Cisco Systems Inc., to promote and to recommend all the Cisco System's products and services according to Cisco Systems agreements and guidelines.

67.    Bayad was the owner of Global Internetworking Consulting Company , he was also aware of neither of Defendants Cisco ,John Chambers for Cisco and his buddy Tony Savastano nor Rick Justice the Sr. Vice President of Sales and his buddy Carl Wiese also Vice president of Sales,  do not promote or **support small business minority owner of companies**, in fact they only promote white businesses as they have done with white business only and absolutely not the minorities businesses owned in similar situated as Bayad.

68.    Cisco and Defendants specifically Rick Justice , Tony Savastano ,Carl Wiese, and John Chambers  refused  to contract or allow  Bayad to conduct Business with Cisco or its partners or Resellers, his company  Global  Internetworking Consulting ;

69.    Defendants and their Counselor Mark Batten and now Bruce Falby in discriminatory and absent to Bayad,  swear a Trespassing against him,  under  Massachusetts  law person who remains without right, on the property of another commits a  continuing  Misdemeanor, even though Plaintiff is owner of Global Internetworking a partner and  resellers of Cisco Systems.

70.    Defendants denied Bayad access to Cisco or to any potential Customers as they have done with potential employers, therefore Massachusetts criminal trespass statue does not enable Business ( as Defendants Cisco) to exclude business licenses on discriminatory grounds as they have done here with Bayad and his business as he is legally a Cisco Partner and reseller. *M. G. L.A. c.266. § 120.*

71.    Bayad was put in poverty and unemployed from 1997 to 1998, destroyed financially unable to pay back to his promissory to the American people the student Loans ( worth over $50,000.00), no retirement to fall on , no family ( Children), and unemployed for almost 7 years (2001- present), and finally was discriminatory put disabled from his careers that he loves by these Powerful Cisco Executives and well connected, including the above defendants in this forgoing litigation.

72.    The fact Bayad could not find job in his field because of Cisco Defendants whom are interfering constantly and defaming him. Bayad has once demanded Cisco to comply with the Rules of law and this include the Massachusetts law , the access to his Personnel Records ( it is the law) [e]mployers in Massachusetts are required to provide employees with an opportunity to review their personnel records and the relevant law is Codified in general laws of *the Commonwealth law of Massachusetts at Part I , Title XXI, Chapters 149, section 52 c.*

73.    Cisco Defendants ' Attorney Mark Batten and Now Bruce Flaby did not want to provide any of Bayad ' personnel Records even though it is the law as they are officers of the Court, also they **threaten** Bayad to be **arrested** and **deported** like his **people.** The LAW FIRM DLA PIPER RUDNICK GRAY CARRY WITH ONE BILLION IN REVENUES.

## COUNT I
## RACE DISCRIMINATION

**(Against Defendants, Cisco Systems, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )**

74.      Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complain

75.      By disrespectfully neglecting the fundamentals **Rules of Law**  that strictly prohibit all

person and employer to intentionally threats person as Bayad differently because of his/her **race,** or

national origin; then to **pose** a specific disparate of treatment of  certain race, and to discriminate and

to make a distinction, to make a difference in treatment or favor, and those distinctions or differences

in treatment or favor which are prohibited;

76.      By purposely restricting Bayad ' transfer and hiring opportunities, denying the grant of

the  CCIE Exams and failing him for 11 time,  harassing, abusing, defaming, retaliating ,making fun

the way he speaks English, and finally terminating him on his account of his race,  Defendants and

Cisco has Violated Civil Rights Reconstruction Era Statues, 42 U.S.C §§§ 1981, 1981(a) and 704 as

amended  by the Civil Rights Act of 1991, the Civil Right Act of 1871,

## COUNT I I
## DISCRIMINATION IN THE SELECTION THE GRANTING THE CISCO CERTIFICATION INTERNETWORKING EXPERT THE "CCIE" TARGETED THE MINORITIES OR SIMILAR SITUATED AS  PLAINTIFF BAYAD

**(Against all Defendants, Cisco Systems, Rick Justice , Bruce Bastian, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )**

77.      Plaintiff Bayad Incorporates as if realleged Paragraphs 1 through 73  of the Complaint.

78.      By intentionally treating  Bayad differently because of his Arab Race and All Minorities similar

situated as him,  By restricting  him of achieving the Certify Cisco Internetworking Expert,

discriminating against him, and knowingly he has  passed many tougher difficult  College Exams and

Certifications administered by Fortune 500  Companies,  Proteon Inc., Bay/Nortel Networks, and

Cyber Guard. Lynn Fraser and Cisco Defendants and its Executives,  made it impossible for Bayad to

27

become a Cisco Certify Internetworking Expert the "CCIE.

79.      By <u>not paying</u> for any Bayad' accrued expenses of the Cisco "CCIE", <u>failing him</u> for the

" eleven [11]times, and never less enabling him ever to become a CCIE certify of Cisco Systems, anf

by favoring only White Engineers over None White Engineers in the making and the granting of the

CCIE, by creating a policy as the Cisco-EEO-List and Cisco No-Hire-List targeting all Minorities,

defendants violated the Civil Rights Reconstruction Era Statues, 42 U.S.C §§ 1981, 1981(a) as

amended by the Civil Rights Act of 1991, the Civil Right Act of 1871, section two now codified at

42 U.S.C. § § §1985, 1985(3), 1985(C),1988, and § 704 of Civil Act of 1964, and  Supplemental

Right of Due Process the Fourteen Amendment and Equal Protection clause (Classification of race)

under the United State Constitution and Massachusetts state law.

<u>**COUNT III**</u>

**<u>CLASSIFICATION OF RACE</u>**
**<u>The discrimination animus Policy the "Cisco-No-Hire-List"</u>**
**<u>targeting all    minorities similar situated as Bayad</u>**

**(Against all Defendants, Cisco Systems, Rick Justice , Bruce Bastian, Lynn Fraser, Kate**
**Dcamp, & Celia Haper-Guerra )**

80.      Plaintiff Bayad Incorporates as if realledge paragraphs 1 through 73 of the Complaint.

81.      By creating a discrimination animus the Cisco-No-Hire-List that is with the accordance

with <u>*Fed. R. Evid.* 803(6)</u>,   within records of regularly conducted activity of Defendants Cisco, as a

record that fall  within one of its daily usage of Cisco business records.

By implementing the list ( Cisco-No-Hire-List)  since 1997 to  control and to discriminate against

Minority Companies similar situated as Bayad , to assign  Cisco Agents or Representatives in

contact  of all the <u>Employers/Resellers</u> ( Bayad ' potential employer),  and  contains Hundred to

Thousand of names of Minorities similar situated as Bayad  not to be hired;

82.      Defendants Cisco engages of such unlawful classification of race that any jury will find

such conduct outrageous and disturbing that Defendants the owners of Cisco acted outside of their daily scope of duty, create a discriminatory policy such as this ( Cisco-No-Hire-List) as it is morally and ethical wrong and constitutionally unlawful , to classify a block or group of race minority and publish them ( as Bayad) in a data file on the Cisco Intra Website ( internal use) to intentionally deny them the right to pursue the American dream, to interfere with their Civil Rights that all white person enjoy. Defendants has violated the Federal Law , the Massachussetts Law, and the Constitution law and Federal protected Civil Right of all Minorities or similar situated as Bayad the Civil Rights Reconstruction Era Statues, 42 U.S.C §§§ 1981, 1981(a) and 704 as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871.

**COUNT IV**
**PROMOTING HARASSMENT AND RACIAL DISCRIMINATORY JOKES**
**TARGETED ALL MINORITIES OR SIMILAR SITUATED AS BAYAD**

**(Against all Defendants, Cisco Systems, Rick Justice , Bruce Bastian, Lynn Fraser,**
**Kate Dcamp, & Celia Haper-Guerra )**

83.    Plaintiff Bayad Incorporates as if realledge paragraphs 1 through 73 of the Complaint

84.    By promoting harassment and discrimination at Cisco, allowing Managers as Bruce Bastian to send a "wicked racial Audio "broadcasted via Electronic mail, that fall within the authority of Cisco 's way of mail communications, intentionally to Bayad's coworkers with Cisco Systems Inc. to humiliate and harass him , the directive audio sent was controlled with "multifarious racial jokes" about Minorities or similar situated as Bayad Bayad 's ineptitude to verbalize the expression of the English tongue, clearly ridicule any and all foreign nationals, sound stylish and feebleminded of the of English palaver, and relate to employees getting terminated as Minorities or similar situated as Bayad, and the consignment of the multifarious racial jokes audio was titled and state the following : "hate this "Fucking " job, and I will be fired; I have just been fired , and By-

By- everybody; I need a "P" quick and my Etc…),  and it goes on and on.  It is a shame.

85.     By engaging and directing the  Director of Sales Sir.. Chuck Robbins and Sir. Mountford

Paul ( both report to Rick Justice and Carl Wiese) disgracefully  broadcasting E:Mail to their sales

team members ( all White persons), the improper word –"***NIGER***" with  an "***L***" and the ord

"***PUPIL***"  for  "***BLACK***" in their Cisco electronics correspondence to other white Cisco Sales

Engineers, and failure to reprimand or discipline these individuals according the Cisco Business

Ethics and guidelines. Defendants Cisco violated the Civil Rights Reconstruction Era Statues, 42

U.S.C §§ 1981, 1981(a) as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871,

section two now codified at 42 U.S.C. § § §1985, 1985(3), 1985(C),1988, and § 704 of  Civil Act of

1964

### COUNT V
### THE CISCO DISCRIMINATORY  POLICY THE EQUAL EMPLOYMENT OPPORTUNITY ("E E O") TO SELECT WHITE APPLICANTS OVER NONE WHITE APPLICANTS OR SIMILAR SITUATED AS PLAINTIFF BAYAD

**(Against all Defendants, Cisco Systems, Rick Justice , Bruce Bastian, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )**

86.     Plaintiff  Bayad Incorporates as if realledge paragraphs 1 through 73 of the Complaint.

87.     By  proceeding  with the request of race gender in the  regards of the  hiring  decisions of

Minorities or similar situated as Bayad , "Policing" the Cisco policy the  Equal Employment

opportunity is an  unlawful act in   violation Massachusetts  law  and  States the following :

" Employer cannot ask employees about their race, origin, ethnicity, disability, and age, during the
interview process, but Employer can ask only about the candidate qualifications background ."

88.     By  creating a discriminatory policy as Cisco-No-Hire-list in the hiring process .

89.     By unlawful as it is  unconstitutional to disparately weighting on  race preferences and

practices on deciding and selecting  job applicants .

90.    By implementing this EEO to police minorities and to use the EEO information

pretending is for the sole use ( a pretext) so called "EEO" and it is volunteered information only

or it is not requirement, and if it is assumed required based of the Cisco ' policy , then it should be

provided to all Minorities or similar situated as Bayad or other similar situated protected class of

"applicants" when" they have finalized and secured their positions with Defendants Cisco, and

then Cisco .

91.    By proceeding with the request of race identification or as they calls it "self identification"

as matter of privilege, during the interview process is a discriminatory animus act, thus

any Jury will [c]onclude that Cisco Defendants have no ground herein [i]f argued and therefore

prove that its action or practice enabled it to entertain the maximum number of minority applicants,

therefore defendants has violated the Federal Law , the Massachusetts Law, and the Constitution law

and Federal protected Civil Right of all Minorities or similar situated as Bayad the Civil Rights

Reconstruction Era Statues, 42 U.S.C §§§ 1981, 1981(a) and 704 as amended by the Civil Rights

Act of 1991, the Civil Right Act of 1871.

## COUNT VI
## BREACH OF ORAL CONTRACT AND CONTRACTUAL OF OBLIGATION
### (Against Defendants, Cisco Systems, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )

92.    Plaintiff . Bayad Incorporates as if realleged Paragraphs 1 through 73 of the Complaint.

93.    By intend to discriminate , and willfully ignoring the law of Massachusetts that define

of an Oral Contract for permanent employee ( such as Bayad ) is enforceable and is not barred by

the Statue of Fraud By failing to follow its own personnel policies and procedures on evaluating,

promoting, and providing equal business and employment opportunity;

94.    By failing to follow its own personnel policies and procedures on evaluating, hiring , and

providing equal employment opportunity and by failing to truthfully investigate and reprimand

Bruce Bastian ,Sir. Chuck Robbins, and Sir. Mountford  Paul  the authors of the hatful e-mail

and the audio-e-mail against Minorities or similar situated as Bayad, Cisco Defendants has breached

its contractual obligations to Minorities Cisco Employees or similar situated as Bayad in violation of

Massachusetts Law and the federally protected Rights, and Civil Rights Reconstruction Era Statues,

42 U.S.C §§ 1981, 1981(a) as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871,

section two now codified at 42 U. S. C. § § §1985, 1985(3), 1985(C),1988, and § 704 of  Civil Act

of  1964

## COUNT VII
## DEFAMATION

**(Against all Defendants Cisco Systems , Bruce Bastian , Rick Justice  Lynn Fraser, Kate Dcamp,**
**Celia Haper-Guerra & )**

95.     Plaintiff . Bayad incorporate as if realleged paragraph 1 through 73 of the complaint .

96.     By intentionally and/or recklessly communicating and/or allowing the communication of

malicious  and defamatory e-mail and audio- mail  about Bayad ' ineptitude to verbalize the English

language  discriminatory against Bayad ' race , ethnic, religious, and national origin to others, the

defendants  have defamed Bayad  in violation of the  Law.

97.     By intentionally Broadcasting Bayad ' name in the Cisco-No-Hire-List, the Defendants

defamed Bayad in violated the law.

98.     By intentionally requesting him to identify his race and gender during the Cisco interview

process , the Defendants defamed Bayad in violation of the law.

99.     By intentionally  and/or recklessly communicating malicious,  negative,  and false

information about Bayad to prospective employers, The defendants have defamed Bayad in violation

of the violated the Civil Rights Reconstruction Era Statues, 42 U.S.C §§ 1981, 1981(a) as

amended by the Civil Rights Act of 1991, the Civil Right Act of 1871, section two now codified at

42 U.S.C. § § §1985, 1985(3), 1985(C),1988, and § 704 of Civil Act of 1964, and Massachusetts

state law.

**COUNT VIII**
**CONSPIRACY**

**(Against all Defendants, Cisco Systems, Rick Justice , Bruce Bastian, Lynn Fraser, Kate**
**Dcamp, & Celia Haper-Guerra)**

100.    Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complaint.

101.    By intentionally treating  Bayad differently, by restricting promotions and  opportunities, and

purposely not promoting equality among races in promotional opportunities, Company access to

certification achievement, by targeting  Bayad's race when deciding  who will be terminate and who

to will be  reinstated , and openly encouraging racial prejudice in the making of work and business,

by discriminating against  job applicants or similar situated as Bayad  on the basis of the belief of

their race, ethnicity, and national origin;

102.    By acting  in concert outside the scope of their employment and discriminated for  personal

reasons,  within the scope of their supervisory  ( as Cisco Executives)  but in ways which did not

further the company legitimate business concern., and  acting  in connection with multiple acts of

Discrimination for the  purpose of the conspiracy must be to deprive,  directly or indirectly, Bayad

of the equal protection of the laws or equal  privileges and immunities under the laws;

Defendants  the conspirators mist commit some act against Bayad in furtherance of the conspiracy,

whereby  Bayad  was either injured in his person or property, or deprived of having and exercising

any right or privilege of as a citizen of the United States. Defendants has violated the Civil Rights

Reconstruction Era Statues, 42 U.S.C §§ 1981, 1981(a) as mended by the Civil Rights Act of 1991,

the Civil Right Act of 1871, section two now codified at 42 U.S.C. § § §1985, 1985(3),

1985(C),1988, and § 704 of Civil Act of 1964, and Massachusetts state law.

33

## COUNT IX
## FALSE IMPRISONMENT

**(Against Defendants, Cisco Systems, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra)**

103.    Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complaint.

104.    By unreasonably confining Bayad to a locked room at Cisco office Lexington Massachusetts against his will and by refusing to let him leave that room, by keeping the door locked with out his consent , failing to keep the door open and by failing to have the Corporate police informing him about his rights, failing to not allowing him to leave, by forcing him to sign document against his will in a locked room.

105.    Orchestrated the same stressful environment with Cisco likewise with Lucent Technologies to simply provoke , humiliate, to sent message that Arab as Bayad have no business at Cisco as at Lucent, mandating Bayad to sign Cisco' papers without prior review or what for or the purpose of signing , to sign or not sign you to suffer the same consequences (termination) (as move \ or not to move you will get shot). And the last time Bayad refused to sign while back at Lucent, he ended up in fountain and in an ambulance and in hospital , was transferred to a confined prison against his will( not a hospital), and was put homeless and now unemployed and disabled (In the eyes of the Defendants Bayad is a Moroccan), then terminating immediately his employment with Cisco. Defendants are in violation of Massachusetts Law and general law. Defendants has violated the Law.

## COUNT X
## INTENTIONAL INFLICT OF EMOTIONAL DISTRESS & ENJOYMENT OF LIFE
**(Against Defendants, Cisco Systems, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )**

106.    Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complaint.

107    intentionally creating the same stressful environment at Cisco resulted and brought the trauma back to Bayad during his employment with them at Cisco and by disparately treating him

34

and wrongfully terminated him that brought him back the flash back of the abuse executed upon him

at Lucent Technologies Florida made it more critically very serious .Defendants have intentionally,

or in the alternative, negligently inflicted emotional distress upon Bayad in violation of

Massachusetts law.

## COUNT XI
## RETALIATION

**(Against all Defendants, Cisco Systems, Rick Justice , Bruce Bastian, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra)**

108.    Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complaint.

109,    Plaintiff engaged in statutorily protected conduct or expression; ( 2) Plaintiff suffered an

adverse action subsequently to such activity; and (3) there was a casual link between the protected

conduct or expression and the adverse action, that was known to Defendants the Inter-Mail

and by Electronic Mail with the Cisco Sr. Vice President of Human Resources Kate Dcamp, Sr.

Vice President of Sales Rick Justice, and Defendants Chambers the President of Cisco , a friend of

Defendant Savastano , in regard to the discriminatory conduct executed upon Bayad By Savastano

while at Lucent and Cisco ( present time).Defendants has violated the law.

## COUNT XI
## *GENERAL LAW OF MASSACHUSETTS*
### *The Commonwealth law of Massachusetts at Part I, title XXI, Chapters 149 §52 c*

**(Against Defendants, Cisco Systems, Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )**

110.    Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complaint.

111.    By even refusing to comply with the Rules of law and this include the Massachusetts law ,

the access to Personnel Records ( law) [e]mployers in Massachusetts are required to provide

employees with an opportunity to review their personnel records and the relevant law is Codified in

general laws of *the Commonwealth law of Massachusetts at Part I, title XXI, Chapters 149, section*

*52 c.* ; Defendants has violated the Massachusetts law.

## COUNT XII
### DENIAL OF ACCESS & EXCLUDE BUSINESS ON DISCRIMINATORY GROUND
### M. G. L.A. c.266. § 120.

**(Against Defendants, Cisco Systems, Rick Justice Lynn Fraser, Kate Dcamp, & Celia Haper-Guerra )**

112.    Plaintiff Bayad incorporates as if realleged paragraphs 1 through 73 of the complaint.

113.    By directing their Counselor Mark Batten and now Bruce Falby on Discriminatory ground and absent to Bayad, swearing a Trespassing against him, by implying the Massachusetts law that person who remains without right, on the property of another commits a continuing Misdemeanor, even though Plaintiff is owner of Global Internetworking a partner and resellers of Cisco Systems; to harass and to humiliate him , by denying Bayad access to Cisco or to any potential Customers as they have done with potential employers, knowingly the Massachusetts criminal trespass statue does not enable Business ( as Defendants Cisco) to exclude business licenses on discriminatory grounds as they have done here. **M. G. L.A. c.266. § 120**. Defendants has violated the Massachusetts law.

### RELIEF REQUESTED

WHEREFORE, Plaintiff Bayad prays that this court:

(a) declare the Defendants' conduct to be in violation of his rights;

(b) enjoin defendants from engaging in such conduct;

(c) award him back pay and benefits ( with interest ) that have accrued to date;

(d) award him front pay until normal retirement age;

(e) award him compensatory damages of $10,000,000.000 or more for emotional

distress, mental anguish, and loss of enjoyment of life , humiliation and the

disparate treatment, and discrimination and false imprisonment he suffered at the

hands of the defendants;

36

(f)  award him compensatory damages off $2,000,000.00 for interfering with his

Civil Rights, conspiring to restrict him from equal rights and benefits,

and for retaliation by defendants while employed with Cisco;

(g)  award him damages of $3,000,000.00 or more for defamation and damage to his

business and career, his reputation, injury to character and to credit standing;

(h)  award him punitive damages in the amount of 20,000,000.00 or more ;

(i)  award him costs and legal fees;

(j)  grant such other relief as the court may deem just and proper.

## JURY  DEMANDED

Plaintiff Pro Se Anthony Bayad respectfully demands a jury on all claims triable as a matter of

right by a jury.

Dated:   May  16, 2005

*Pro Se* Anthony Bayad
*2 Magoun Avenue*
*Medford, MA 02155*
*(781)704-8982*

# EXHIBIT E



**DLA Piper Rudnick Gray Cary US LLP**
One International Place, 21st Floor
Boston, Massachusetts 02110-2613
T 617.406.6000
F 617.406.6100
W www.dlapiper.com

June 7, 2005

**By First-Class Mail**

Mr. Anthony Bayad
2 Magoun Avenue
Medford, MA  02155

      Re:    *Bayad v. Bastian, et al.*, Civil Action No. 05-11005-GAO

Dear Mr. Bayad:

      Please find enclosed Defendants' Motion for Rule 11 Sanctions and Injunction, supporting memorandum, affidavit, and attached exhibits.  The defendants in this matter believe that the complaint that you filed on May 16, 2005 does not comply with the requirements set forward by Fed. R. Civ. P. 11(b), and have consequently drafted the attached motion requesting sanctions.  Pursuant to Fed. R. Civ. P. 11(c)(1)(A), you have until twenty-one (21) days from the date of this letter to withdraw or correct the complaint.  If you have not done so by the end of the period specified by the Rule, the defendants will file the attached motion and proceed with their request for sanctions.

      Sincerely,

Matthew J. Iverson

MJI:btj
Enclosures

~BOST1:373589.v1
26573-15

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,

               Plaintiff,

    v.

CISCO SYSTEMS, INC., BRUCE
BASTIAN, KATE DCAMP, LYNN
FRASER, CELIA HARPER-GUERRA, and
RICK JUSTICE,

             Defendants.

Civil Action No. 05-11005 GAO

## **CERTIFICATE OF SERVICE OF DEFENDANTS' MOTION FOR RULE 11**

## **SANCTIONS AND INJUNCTION**

I, Bruce E. Falby, hereby certify that on June 7, 2004, I served upon Anthony Bayad, 2 Magoun Avenue, Medford, Massachusetts, 02155, by federal express, the following documents:

1.      Defendants' Motion for Rule 11 Sanctions and Injunction;

2.      Defendants' Memorandum in Support of Motion for Rule 11 Sanctions and Injunction; and,

3.      Affidavit of Bruce E. Falby with attached Exhibits A, B, C, D, E, F, G, and H.

Respectfully submitted,

/s/ Bruce E. Falby

_____

Bruce E. Falby, BBO #544143
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, Massachusetts 02110-2613
Telephone: 617.406.6000
Fax:       617.406.6100

Dated:  June 7, 2005

# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,

Plaintiff,

v.

CISCO SYSTEMS, INC., BRUCE
BASTIAN, KATE DCAMP, LYNN
FRASER, CELIA HARPER-GUERRA,
and RICK JUSTICE,

Defendants.

CIVIL ACTION NO. 05-11005 GAO

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants in this matter have moved the Court to dismiss this action pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. Most of plaintiff's

claims are barred by applicable statutes of limitations and/or fail to comply with statutory

prerequisites for bringing the claims in this Court. The factual allegations of the Complaint fail

to establish the necessary elements to support plaintiff's remaining claims.

### I.    STATEMENT OF FACTS[1]

Defendant Cisco Systems, Inc. ("Cisco") is a corporation which employs 40,000 persons

world wide, including defendants Bruce Bastian, Kate Dcamp, Lynn Fraser, Celia

Harper-Guerra, and Rick Justice. Complaint ¶¶ 8, 9. Cisco hired plaintiff Anthony Bayad in

April 2000 for a position at its office in Lexington, Massachusetts. Id. ¶ 12. Defendant Fraser

was Bayad's supervisor. Id.

---

[1] Defendants present the facts as alleged by plaintiff solely for the purposes of this motion to dismiss. Defendants
do not agree with or accept plaintiff's allegations.

In November 2000, Bayad applied for a transfer to Cisco's North Africa region. Complaint ¶ 38. Bayad's request for a transfer was denied, and, on November 29, 2000, Bayad allegedly obtained a "No-Hire-List" from Cisco indicating that Bayad was not to be hired, transferred, or promoted. Id. ¶¶ 41 & 43 & Ex. 14.[2] This document is dated September 10, 2000, and does not state why Bayad was singled out for adverse action. Id. Ex. 14. It refers questions to Tony Savastano, a Cisco employee not named as a defendant in this matter. Id.

In May 2001, Bayad was terminated from Cisco. Complaint ¶ 44. Bayad alleges that he was confined in a locked room and forced by Cisco corporate police to sign contracts upon his termination. Id. ¶¶ 49-50, 104-05. His final day of employment was May 1, 2001. Id. ¶¶ 49-50; see Affidavit of Bruce E. Falby ("Falby Affidavit") ¶ 2 & Ex. A, Voluntary Severance Agreement and General Release ("Severance Agreement").[3]

On May 30, 2001, defendant Bastion forwarded an email entitled "Airport Fun" to his subordinate employee Amando Navas.[4] Complaint ¶ 52 & Ex. 17. The email discussed a prank involving the reading of certain names over the public address system at airports in the United Kingdom. Id. While inappropriate, the email did not refer to Bayad, his employment, or his termination. Complaint Ex. 17. Amando Navas forwarded this email to a Cisco vice president, who in turn referred the matter to a human resources director for remedial action. Id.

---

[2] Cisco Systems has no internal record of the "No-Hire-List" labeled as Plaintiff's Exhibit 14 and assumes that it is authentic for the purposes of this motion only.

[3] The Complaint does not state the precise date of Bayad's termination. Complaint ¶ 44. The contract Bayad alleges he was forced to sign when he was terminated, however, was dated by him May 1, 2001, and specified May 1, 2001 as the final day of his employment. See Severance Agreement, Falby Affidavit Ex. A. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider any document referred to in the Complaint and pertinent to plaintiff's claims without converting a motion to dismiss to a motion for summary judgment. See, e.g., In re Computervision Securities Litigation, 869 F. Supp. 56, 60 (D. Mass. 1994) (quoting Fudge v. Penthouse Int'l, Ltd. 840 F.2d 1012, 1015 (1st Cir. 1988), cert. denied, 488 U.S. 821 (1988)).

[4] Bayad also refers to two additional emails. Complaint ¶¶ 54, 55. The first is an email allegedly circulated at Bayad's prior place of employment in 1997. Id. ¶ 54. The second is an email from a Cisco employee named Paul Mountford referring to a person named "Nigel." Id. ¶ 55 & Ex. 20. Neither email appears to have any bearing on this matter.

In September 2001, Bayad formed his own computer and networking technology company and attempted to do business with Cisco. Complaint ¶¶ 64-67. Defendants Cisco and Rick Justice refused to allow Bayad's company to conduct business with Cisco because they promoted and supported only businesses owned by whites, not businesses owned by minorities. Id. ¶¶ 67-68.

Beginning in September 2003, Bayad applied for several new positions at Cisco. Complaint ¶ 56. Bayad does not identify the positions for which he applied or describe the requirements for those positions. Although two Cisco managers spoke with Bayad regarding those positions, Cisco did not rehire him. Id. ¶¶ 57 - 60. At least one position was located in California, and Cisco informed Bayad that it would not relocate him from Massachusetts in order to fill it. Id. Ex. 26. The Complaint does not state who, if anyone, was eventually hired to fill the vacancies in question.

At Bayad's suggestion, a Cisco recruiter asked Bayad's former supervisor Fraser about Bayad. Complaint ¶ 61 & Ex. 26. Fraser stated that Bayad had not taken the lab or classes required to obtain his Cisco Certified Internetworking Engineer (CCIE) certification, did not recommend that Bayad be hired, and declined to give any further information. Id. Bayad also alleges that Fraser told other employees and recruiters that she did not feel comfortable talking about Bayad, id. ¶ 61, although the Complaint does not specify when these conversations took place or the identities of the other parties involved.

In December of 2003 and January of 2004, Bayad received emails from Cisco asking him to fill out a voluntary self-identification form for the purpose of fulfilling federal data reporting requirements. Complaint ¶ 62 & Ex. 27. The email clearly stated that race and gender information need not be provided and that any information that was provided would not be

considered in Cisco's employment decisions.  Id.  The Complaint does not specify what, if any, information Bayad provided in response to this request.

On March 8, 2004, Bayad filed a complaint in the United States District Court for the District of Massachusetts against Cisco employees John Chambers, Anthony Savastano, and Carl Wiese, as well as Patricia Russo, an employee of Lucent Corporation.  See Falby Affidavit ¶ 3 & Ex. B, Memorandum and Order in Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO (D. Mass)  ("Bayad v. Chambers Order") at 1-4.  The complaint alleged claims for employment discrimination, conspiracy, false imprisonment, intentional infliction of emotional distress, and breach of contract in violation of a variety of state and federal laws.  Bayad v. Chambers Order at 5-9.  The bulk of these allegations arose from the same events that form the basis for this action. Id. at 3-4.

On October 25, 2004, this Court dismissed all claims against defendant Patricia Russo and all claims against the Cisco defendants with the exception of those claims under 42 U.S.C. § 1981 originating after March 8, 2000, and those conspiracy claims under 42 U.S.C. § 1985 and Massachusetts law originating after March 8, 2001.  Bayad v. Chambers Order at 10.  On May 25, 2005, Magistrate Judge Bowler recommended that summary judgment enter for the defendants on the remaining claims.  See Falby Affidavit ¶ 4 & Ex. C, Report and Recommendation in Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO (D. Mass) ("Report and Recommendation") at 24.

On May 16, 2005, four years and fifteen days after his termination from Cisco, Bayad filed this Complaint in the United States District Court for the District of Massachusetts.  He again asserts claims under a number of state and federal statutes for employment discrimination, conspiracy, false imprisonment, intentional infliction of emotional distress, and breach of

contract, this time against a different set of Cisco employees and Cisco itself. The factual basis for Bayad's new complaint is, as in <u>Bayad v. Chambers</u>, is the circumstances surrounding his termination from Cisco Systems in 2001 and Cisco Systems' failure thereafter to do business with or to rehire him.

## II.    ARGUMENT

To survive a motion to dismiss for failure to state a claim, a complaint must "set forth minimal facts as to who did what to whom, when, where, and why." <u>Edsall v. Assumption College</u>, No. 04-40106-FDS, 2005 WL 984164, at *3 (D. Mass. March 31, 2005) (quoting <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 68 (2004)). "[A] court may not uphold a complaint based solely on 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" <u>Id</u>.

The claims asserted by the Complaint are largely barred by the statute of limitations, by a failure to exhaust administrative remedies, by a lack of state action, and/or by other statutory requirements. As to the remaining claims, the Complaint fails to allege any facts establishing actionable conduct by the defendants, particularly the individual defendants. To avoid repetition, defendants will address Bayad's claims collectively where possible.

### A.    <u>Claims under 42 U.S.C. § 1981</u>.

Counts I through VIII allege violations of 42 U.S.C. § 1981. These accusations fall into two broad categories: those stemming from Bayad's employment with Cisco and termination on May 1, 2001, and those stemming from Cisco's refusal thereafter to do business with Bayad or rehire him.

1. **Claims Arising from Bayad's Employment and Termination by Cisco are Barred by the Statute of Limitations.**

Claims under 42 U.S.C. § 1981 are subject to a four-year statute of limitations. See Bayad v. Chambers Order at 8; Jones v. R.R. Donnelley & Sons Co., ___ U.S. ___, 124 S.Ct. 1836, 1845-46 (2004). Therefore, Bayad's § 1981 claims arising from actions that took place more than four years prior to May 16, 2005 (the date that Bayad filed his Complaint) are time-barred. This includes the § 1981 claims arising from Bayad's employment at Cisco and his termination on May 1, 2001.

2. **Bayad Fails to State a Claim Under 42 U.S.C. § 1981 Based on Events Occurring After His Termination.**

The only § 1981 claim that is not time-barred is Bayad's claim that defendants discriminated against him by interfering with his rights to do business with Cisco in September 2001 and to enter into an employment contract with Cisco when he applied for work in 2003.[5] As to this claim, the Complaint fails to allege facts sufficient to state a claim against any defendant.

To state a claim under § 1981, "a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute." Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).

Stripped of rhetoric and conclusory accusations, the Complaint sets out the following facts relevant to Bayad's discrimination claim: (1) in September 2001, Bayad formed a

---

[5] With the exception of the identities of the defendants, these claims are identical to those brought by Bayad in the matter of Bayad v. Chambers, supra, page 4. In that matter, Magistrate Judge Bowler has recommended that summary judgment enter for the defendants on Bayad's discrimination claims on the grounds that Bayad failed to present evidence of either discriminatory animus or disparate treatment in Cisco's decisions. See Report and Recommendation at 15-20.

computer and networking business, which defendants Cisco and Rick Justice refused to allow to do business with Cisco, Complaint ¶¶ 67-68; (2) in 2003 Bayad applied for several positions at Cisco, Complaint ¶ 56; (3) Bayad spoke with Cisco managers regarding two of those positions, id. ¶¶ 57 - 60, & Exs. 23 & 24; (4) with respect to one position, a Cisco recruiter checked with defendant Fraser, who stated that Bayad had not taken the lab or classes required to obtain his Cisco Certified Internetworking Engineer (CCIE) certification, did not recommend that Bayad be hired, and declined to give any further information, Complaint ¶ 61 & Ex. 26; (5) Cisco did not hire Bayad for that position for the stated reason that it was located in California and Bayad lived in Massachusetts, id; and (6) Cisco ultimately declined to hire Bayad for any position.

When read objectively, the absence of any discriminatory animus is starkly obvious: no evidence of unlawful behavior can be inferred from these facts. While "[i]t is true that the complaint, in multiple instances, characterizes the conduct of [the defendants] as unlawful or discriminatory in conclusory terms," Edsall v. Assumption College, 2005 WL 984164, at *3, a complaint for employment discrimination must, at a minimum, contain a factual allegation of wrongdoing on the part of the named defendants.[6] Id.; see also Coyne v. Cronin, 386 F.3d 280, 288 (1st Cir. 2004) (despite liberal pleading requirements, complaint must be dismissed absent factual allegation connecting defendant with civil rights violation). The Complaint pleads no such facts.

Of course, a plaintiff may state a discriminatory hiring claim based upon disparate treatment without alleging open discrimination. To do so, however, there must be at least some

---

[6] In an apparent effort to fill this gap, the Complaint refers at various points to statements and emails made by employees of both Cisco Systems and Bayad's prior employer, Lucent. Complaint passim. The Complaint, however, fails to establish any nexus between the authors of these statements and the 2003 hiring decision. In the absence of such a nexus, the statements, even if accepted as true, cannot establish the inference of discrimination. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) (remarks by nondecisionmakers or decisionmakers not involved in hiring process cannot establish discrimination absent connection to questioned employment decision).

allegation that the employer sought to fill the positions applied for with similarly qualified individuals from outside the protected class. <u>Lewis v. City of Boston</u>, 321 F.3d 207, 217 (1st Cir. 2003). The instant Complaint does not even indicate whether those positions were ultimately filled. Bayad's claims of discriminatory treatment are thus entirely "unsupported by the factual allegations of the Complaint," <u>Edsall v. Assumption College</u>, <u>supra</u>, and must consequently be dismissed. <u>Id.</u> ("Plaintiffs are not permitted to sue someone, without any factual basis, in the vague hope that something may turn up in discovery").

The same is true as to Bayad's allegations that defendants Cisco and Justice discriminated against him by not contracting with his computer and networking business in September 2001. Bayad states no facts whatever supporting his conclusory allegation that these defendants do not "promote or support" minority-owned companies and "only promote white businesses." Complaint ¶ 67.

### B.    Claims Under 42 U.S.C. § 1985.

Counts II, IV, VI, VII and VIII allege violations of 42 U.S.C. § 1985. Again, these claims address either Bayad's employment with Cisco and termination in 2001 or Cisco System's refusal to do business with Bayad in 2001 and to hire him in 2003. All of the allegations involve conspiracies to deprive Bayad of his constitutional rights, which would be violations of subsection (3) of the statute. <u>Id.</u> The § 1985 claims fail for three reasons.

#### 1.    The Defendants Are Not Subject to Suit Under 42 U.S.C. § 1985(3) Because There Is No Allegation of State Action.

Bayad's § 1985 claims fail because he alleges purely private action. "[S]ection 1985(3) [of chapter 42 of the United States Code] does not apply 'to private conspiracies that are aimed at a right that is by definition a right only against state interference, but applies only to such conspiracies as are aimed at interfering with rights . . . protected against private, as well as

official, encroachment.'" <u>Lowden v. William M. Mercer, Inc.</u>, 903 F. Supp. 212, 219 (D. Mass. 1995) (quoting <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 278 (1993)). This requirement that the conspiracy be aimed at a right protected against private encroachment is independent of the requirement that the conspirators had a discriminatory animus. <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. at 274. Bayad claims that the defendants conspired to deprive him of his rights to equal protection and privileges and immunities. Complaint ¶ 102. "Neither the right to privileges and immunities under Article IV and/or the Fourteenth Amendment nor the right to equal protection under the Fourteenth Amendment constitutes protected rights under section 1985(3) without proof of state involvement." <u>Lowden v. William M. Mercer, Inc.</u>, 903 F. Supp. at 219.[7] As the Complaint does not allege any governmental involvement in defendants' interactions with the Bayad, his claims under §1985(3) must be dismissed.

> **2.    Section 1985 Claims Arising from Bayad's Employment and Termination by Cisco are Barred by the Statute of Limitations.**

In any event, claims under 42 U.S.C. § 1985 are subject to a three-year statute of limitations. <u>See</u> <u>Bayad v. Chambers</u> Order at 8, <u>Nieves v. McSweeney</u>, 73 F. Supp. 2d 98, 102 n.4 (D. Mass. 1999), <u>aff'd</u>, 241 F.3d 46 (1st Cir. 2001). All claims arising from actions that took place prior to May 16, 2002 are therefore time barred. This includes all claims arising from Bayad's employment at Cisco, his termination on May 1, 2001, and Cisco's alleged refusal to do business with Bayad's company in September 2001.

---

[7] Only the right to be free from involuntary servitude under the Thirteenth Amendment and the right to interstate travel are protected against private, as opposed to public, infringement. <u>Lowden v. William M. Mercer, Inc.</u>, 903 F. Supp. at 219. Neither the right to interstate travel nor the Thirteenth Amendment's guarantee against slavery and its badges and incidents is implicated by the Complaint. <u>See</u> <u>Wong v. Stripling</u>, 881 F.2d 200, 203 (5th Cir. 1989) (claim under § 1985(3) properly dismissed where allegation of discriminatory employment decision regarding doctor of Chinese descent did not fall within Thirteenth Amendment's guarantee against slavery).

3.    **The Portions of the Complaint Based on Cisco's Failure to Hire Bayad in 2003 Fail Adequately to State a Claim for Conspiracy Under § 1985(3).[8]**

The only claim under § 1985(3) that is not time-barred is the alleged conspiracy not to hire Bayad in 2003. As to this claim, the Complaint fails to allege sufficient facts to state a claim. "To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Because Bayad's Complaint is entirely devoid of factual allegations creating an inference that any of the individual defendants entered into an agreement to deprive Bayad of his constitutional rights, it fails to meet the pleading requirements of Fed. R. Civ. P. 8(a)(2). As set forth above, see supra Part II.A.2, with the exception of Fraser, the Complaint fails to allege facts tying any of the individual defendants to the 2003 hiring decision. Moreover, the sole reference to Fraser, alleging her unwillingness to discuss the plaintiff, see Complaint ¶ 61 & Ex. 26, can hardly create an inference that she participated in a conspiracy, let alone one based upon discriminatory animus. Finally, there is no allegation in the Complaint that Cisco, as a corporate entity, engaged in concerted action with any other entity with respect to Bayad. Simply put, Bayad has failed to allege "who did what to whom, when, where, and why." Edsall v.

---

[8] Again, the claims made here are substantially identical to those made against other defendants in Bayad v. Chambers, supra, page 4. In that matter Magistrate Judge Bowler has recommended that summary judgment enter on Bayad's conspiracy claims on the grounds that Bayad failed to demonstrate that he had been deprived of a constitutionally protected right or privilege. See Report and Recommendation at 20-21.

Assumption College, 2005 WL 984164, at *3. His claims for conspiracy must therefore be dismissed.

**C.    Claims under Title VII.**

Counts I through VIII allege violations of "§704 of the Civil Act of 1964." Complaint ¶¶ 76, 79, 82, 85, 91, 94, 99, 102. That particular section of the Civil Rights Act is now codified as 42 U.S.C. 2000e-3, which prohibits discrimination based on participation in enforcement proceedings and the posting of notices advertising discriminatory hiring preferences, which is plainly inapplicable. Bayad is apparently referring to the enforcement provision of Title VII, now codified as 42 U.S.C. 2000e-5. Bayad's Title VII claims fail for two reasons.

**1.    Bayad Failed to Exhaust His Administrative Remedies.**

Bayad's Title VII claim must be dismissed because he did not exhaust his administrative remedies. "Prior to filing a Title VII action in a federal district court, a plaintiff must exhaust her administrative remedies. Tight time limits constrain this protocol . . . Massachusetts is a so-called 'deferral jurisdiction' -- the commonwealth has its own civil rights statute and agency -- so exhaustion depends on the filing of a charge with the Equal Employment Opportunity Commission within 300 days of the purported discriminatory act." Lawton v. State Mut. Life Assur. Co. of America, 101 F.3d 218, 221 (1996); see also 42 U.S.C. § 2000e-5(c), e-5(e)(1). Bayad does not allege that he filed a charge with the EEOC with respect to the discriminatory actions alleged in the Complaint. His Title VII claims must therefore be dismissed.

**2.    The Individual Defendants May Not be the Subject of a Title VII Suit.**

Even if Bayad had exhausted his administrative remedies, individual defendants may not be sued under Title VII. See, e.g., Bayad v. Chambers Order at 6; Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003); Holly D. v. California Inst. of Tech., 339 F.3d 1158,

1179 (9th Cir. 2003); see also Edsall v. Assumption College, 2005 WL 984164, at *4

("Although the First Circuit has not decided whether there is individual liability under Title VII,

'every circuit court that has interpreted Title VII's definition of employer and the majority of

District Courts in the First Circuit . . . have concluded that Congress did not intend to impose

individual liability upon agents of an employer") (quoting Healy v. Henderson, 275 F. Supp. 2d

40, 44-45 (D. Mass. 2003) (ellipses in original)).  The Title VII claims against the individual

defendants must consequently be dismissed for this additional reason.

### D.    Claims Under Massachusetts Law.

Counts II, III, V, VI, VII, VIII, IX, X, and XII allege violations of various Massachusetts

laws.  These counts also fail to state a claim.

#### 1.    Bayad May Not Bring a State Law Claim for Violations of His Civil Rights Because He Failed to Exhaust His Administrative Remedies.

Bayad's state law discrimination claim also fails because he did not exhaust his

administrative remedies.  The proper vehicle for addressing Bayad's state law employment

discrimination claims is chapter 151B of the Massachusetts General Laws.  See Morrissey v.

Boston Five Cents Sav. Bank, 54 F.3d 27, 31 n.2 (1st Cir. 1995) ("Mass. Gen. L. ch. 151B is the

exclusive remedy under Massachusetts law for employment discrimination claims.").  A plaintiff

cannot maintain an action under chapter 151B, however, without first filing a timely claim with

the Massachusetts Commission Against Discrimination ("MCAD").  See Bayad v. Chambers

Order at 7; Mass. Gen. Laws ch. 151B, §§ 5-9; Carter v. Comm'r of Correction, 681 N.E.2d

1255, 1259 (Mass. App. Ct. 1997).  Bayad did not file a claim with the MCAD prior to the

institution of this suit.  As a result, his claims under 151B must be dismissed.

## 2.    Count VI Fails to State a Claim for Breach of Contract.

Count VI for breach of contract must be dismissed because the Complaint does not adequately plead the existence of a contract. Bayad alleges in Count VI that by failing to discipline the authors of several purportedly inappropriate emails, defendants breached an oral contract established by Cisco's personnel policies. Complaint ¶ 93. The emails that Bayad complains of were sent on May 30, 2001 (Ex. 17), and September 26, 2002 (Ex. 20). Bayad was not employed by Cisco on either of these dates, Complaint ¶ 44, Severance Agreement (Falby Affidavit Ex. A), and nothing in the Complaint indicates what basis there might be for a post-termination contract between Bayad and any of the defendants. As Bayad has not pled facts supporting the existence of a contractual relationship, his claim for breach of contract must fail.

## 3.    Count VII Fails to State a Claim for Defamation.

Count VII alleging defamation does not state a claim. To state a claim for defamation under Massachusetts law a plaintiff must allege that (1) the defendant made a statement concerning the plaintiff to a third party, (2) the statement could damage the plaintiff's reputation in the community, (3) the defendant was negligent in making the statement, and (4) the statement caused economic loss or is actionable without proof of economic loss. Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510 (Mass. 2003).

Bayad alleges four acts of defamation: (1) the dissemination of the May 30, 2001, email from defendant Bastian concerning public address messages at British airports, Complaint ¶ 96 & Ex. 17; (2) the placement of Bayad on the so-called "No Hire-List" on September 10, 2000, by an individual not named as a defendant, Complaint ¶ 97 & Ex. 14; (3) the December 2003 automated request, from Cisco to Bayad for demographic information, Complaint ¶ 62 & Ex. 27;

(Mass. 1915) (response by former employer to prospective employer's inquiry privileged against claim for defamation).

The facts pled in the Complaint fail to state a claim for defamation. Thus, Count VII must be dismissed.

### 4.    Count VIII Fails to State a Claim for Conspiracy Under State Law.

Count VIII alleging conspiracy under Massachusetts law fails to state a claim. Massachusetts law provides for two seldom-used causes of action for conspiracy, so-called "true conspiracy" and "concerted action conspiracy". Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999). Both carry three-year statutory limitations periods that dispose of Bayad's conspiracy claims arising from his employment and termination at Cisco and the alleged failure to do business with his computer and networking company. See Mass. Gen. L. ch. 260, § 2A. The only remaining claim is the alleged failure to rehire Bayad in 2003. While the elements of each of the two types of conspiracy theory are subtly different, both require as a predicate an allegation of some form of concerted action directed at the plaintiff. Id. Bayad's failure to allege facts indicating any form of concerted action on the part of the defendants has already been addressed. See supra Part II.B.3. Absent these facts, the claim for conspiracy under Massachusetts law must be dismissed. Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002).

### 5.    Bayad's Claims for False Imprisonment and Intentional Infliction of Emotional Distress Are Time Barred.

Counts IX and X alleging false imprisonment and intentional infliction of emotional distress, respectively, are time-barred. Massachusetts law provides for a three-year statute of limitations period for both false imprisonment, Mass. Gen. L. ch. 260, § 4, and intentional infliction of emotional distress. Mass. Gen. L. ch. 260, § 2A. The acts which allegedly form the

and (4) defendant Fraser's refusal to discuss Bayad's history with prospective employers,

Complaint ¶ 61.

The May 30, 2001 email is clearly not a statement concerning Bayad as the email does

not mention him. Consequently, there is no cause of action. Ravnikar v. Bogojavlensky,

782 N.E.2d at 510. If there was a cause of action, it would be time barred. See Mass. Gen. L.

ch. 260, § 4 (establishing three-year statute of limitation for defamation claims). The publication

of the so-called "No Hire-List" in 2000 is similarly beyond the range of the statute of limitations.

Id.

The claim regarding the December 2003 automated information request falls within the

statutory limitations period, but a request for information cannot be considered a "statement"

regarding Bayad, and, moreover, there is no indication in the Complaint that this request was

published to a third party. See Ravnikar v. Bogojavlensky, 782 N.E.2d at 510. If the request

could be considered a statement, and it was actually published, it would be still be a privileged

publication mandated by federal law. See Restatement, 2d, Torts, § 592A (legally mandated

publication is subject to absolute privilege); 41 C.F.R. § 60-1.12 (2004) (requiring employers

with government contracts to submit applicant demographic information to the EEOC).

Finally, Fraser's refusal to discuss Bayad is not a statement for the purposes of making a

defamation claim. A defamatory statement is an assertion of fact that can be proven false. Cole

v. Westinghouse Broadcasting Co., 435 N.E.2d 1021, 1026 (Mass. 1982). A refusal to make a

statement is not a disprovable assertion, and therefore cannot constitute defamation. Id. Were it

considered a statement, it would fall within the privilege protecting remarks made by employers

regarding their former employees' performance. See, e.g., Doane v. Grew, 107 N.E. 620, 621

basis of both of these claims took place during Bayad's termination from Cisco on May 1, 2001. Complaint ¶¶ 104-105. Both claims are consequently time barred.

### 6.    Massachusetts General Laws Ch. 149, § 52c Does Not Provide a Private Cause of Action.

The second Count XI of the Complaint alleges a claim for violations of the Massachusetts statute regulating requests for personnel records. However, that statute clearly states that its provisions are to be enforced by the Massachusetts Attorney General. Mass. Gen. L. ch. 149, § 52c; see Kessler v. Cambridge Health Alliance, 818 N.E.2d 582, 587 (Mass. App. Ct. 2004) (employee's remedy under chapter 149 limited to correction and expungement of information in his personnel file). This claim should therefore be dismissed. It is also worth noting that Cisco has provided Bayad with copies of his personnel records in discovery in the related case, Bayad v. Chambers, Civil Action No. 04-10468-GAO.

### 7.    Massachusetts General Laws Ch. 266, § 120 Does Not Provide a Private Cause of Action.

Count XII alleges a violation of M.G.L. c. 266, § 120. However, section 120 is a criminal trespass statute. By its terms it provides no private cause of action. Presumably this claim relates to the allegation that both Cisco and their attorneys have given notice to Bayad that he is not permitted to enter Cisco's property. Such an action is expressly permitted by section 120 ("Whoever, without right enters . . . buildings . . . or improved or enclosed land . . . after having been forbidden so to do by the person who has lawful control of said premises . . . shall be punished by a fine . . . or imprisonment . . ."). Although Bayad asserts that this action was discriminatory, the Complaint includes no facts indicating a racial motivation. This claim should be dismissed.

**E.    Bayad's Retaliation Claim Must Be Dismissed.**

The first Count XI of the Complaint claims that the defendants retaliated against Bayad in an unspecified manner after he engaged in unspecified conduct that was protected by an unspecified statute. Complaint ¶ 109. As the Complaint fails to state either a factual basis or a legal theory for this claim, it must be dismissed. See Edsall v. Assumption College, 2005 WL 984164, at *3.

## III.    CONCLUSION

For the foregoing reasons, defendants request that plaintiff's Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,

CISCO SYSTEMS, INC., BRUCE BASTIAN, KATE DECAMP, LYNN FRASER, CELIA HARPER-GUERRA, and RICK JUSTICE

By their attorneys,

/s/ Bruce E. Falby

Bruce E. Falby, BBO #544143
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
100 Oliver Street
Boston, MA  02110-2613
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated:  June 7, 2005

# EXHIBIT H



**ANTHONY BAYAD**
**MAGOUN AVENUE**
**MEDFORD, MA 02155**
**(781)704-8982**

Date: May 19, 2005

Sir & Chairman Bob Matthias
Attorney  Bruce E. Flaby
Attorney Robin C. Tarr
Law firm
DLA Piper Rudnick Gray Carry LLP
One International Place
Boston, MA 02110

Ref: Anthony Bayad  v.  Bruce Falby, Robin Tar, Bob Matthias, & DLA Piper Rudnick

Dear Sir & Madame:

You should consider this notice as friendly reminder that Bayad just finished drafting the law suit against you and your firm Dla Piper Rudnick Gray carry, will be filed shortly in the appropriate court that has jurisdiction over attorneys ( such as officer of the Court). Upon filing the law suit, a copy of the complaint will be also forwarded to the Bar Association of the appropriated jurisdiction of your memberships, Boston, New York , and Virginia.

You cannot with prejudice portray a United State Citizen of this land as you,  and you are  officers of the Court and members of the well respected Bar association, an arm of our honorable the Supreme Court, (portray him) as criminal, threatening him to be arrested (on what ground) , as terrorist (on what ground), as alien to be deported (on what  ground), and with no right of due process ( on the ground of his race), interfering with his Right of Due Process,  and  to conspire and to depriving him  access or entering the house of justice ( on the ground of his race), depriving him of his constitutional rights (on the ground of his race), as David Sales with the Law firm of Searcy Denny Scarola  Barnhart & Shipley of West Palm Beach have done in Bayad v. Lucent

et,al.

You are superstar of introducing 400 pages evidencing Bayad 's communication with you at all time and you are the best of playing with the law and  of the Professional Ethics that are meant to be applied and the integrity of judicial process demands compliance with minority litigants (similar situated as him), with the court rule and orders, whether for you ( attorneys) can  call to bar of justice is not for you to decide.

You are prohibited to engage or to aid others in misconduct in connection with practice of law that is prejudicial and discriminatory to the administration of justice, including or through indifference, disparage, humiliation, and discriminatory act against minority or similar situated as Mr. Bayad,  knowingly [y]ou are officers of the court and an essential component of the administration of justice, and such, your conduct is always subject to judicial supervision and scrutiny, and you are prohibited to intentionally , maliciously  obstructing  justice the federal proceeding in  Bayad v. Chambers et, al., as you altered evidences, and evaded the legal process .

In mean time You must advise Bayad to proceed with the filling this week or stay filling and wait for your guidance,  in case we do not hear from you, we respect your decision and we will proceed according to the Rule of Laws and professional ethics, should you have any questions or comments regarding any of the forgoing, you should not hesitate to contact Mr. Bayad in writing or by any law enforcement as you have done in the past, as it will serve for both parties best interest as well as Mr. Bayad.

Respectfully submitted

**Anthony Bayad Jr.**