UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY BAYAD,<br><br>    *Plaintiff*,<br><br>v.<br><br>CISCO SYSTEMS, INC., BRUCE BASTIAN, KATE DCAMP, LYNN FRASER, CELIA HARPER-GUERRA, and RICK JUSTICE,<br><br>    *Defendants*. | CIVIL ACTION NO. 05-11005-PBS |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is the second of two suits before this Court in which plaintiff Anthony Bayad, a former employee of Defendant Cisco Systems, Inc. ("Cisco"), alleges that Cisco or its employees discriminated against him. The first suit, Bayad v. Chambers, et al., Civil Action No. 04-10468-GAO (D. Mass) ("Bayad I"), ended earlier this year with the entry of summary judgment against Bayad.[1]

On July 12, 2006, this Court dismissed the majority of Bayad's claims. Remaining are: (1) those § 1981 claims arising from Bayad's alleged attempts to do business with Cisco (the "§ 1981 Business Claims"); (2) those § 1981 claims arising from Cisco's failure to rehire Bayad in 2003 (the "§ 1981 Hiring Claims"); (3) those § 1985

---

[1] The First Circuit Court of Appeals affirmed the entry of summary judgment in Bayad I on July 24, 2006. Facts ¶ 11.

claims arising from Cisco's failure to do business with Bayad and rehire Bayad in 2003 (the "§ 1985 Claims"); and (4) Bayad's state law claims for breach of contract (Count VI), conspiracy (Count VIII), false imprisonment (Count IX), and intentional and negligent infliction of emotional distress (Count X).

Defendants in this matter (also the "Instant Defendants") have moved the Court for summary judgment on these remaining claims, both because this suit is now precluded by res judicata and because the Defendants are independently entitled to judgment as a matter of law on each one. As set forth fully below: (1) the § 1981 Business Claims fail because there is no evidence that Bayad's company attempted to contract with Cisco; (2) the § 1981 Hiring Claims fail because there is no evidence of discrimination; (3) the § 1985 Claims fail because there is no evidence of either discrimination or state action; and (4) the state law claims are either time barred or lack evidence of an essential element. Additionally, Defendants Bastian, DCamp, Harper-Guerra, and Justice are entitled to summary judgment on all claims because they had no connection with Bayad.

## BACKGROUND

Cisco employs 40,000 persons worldwide, including defendants Bruce Bastian, Kate DCamp, Lynn Fraser, Celia Harper-Guerra, and Rick Justice (collectively, the "Individual Defendants"). Statement of Undisputed Facts ("Facts") ¶¶ 2-7. Cisco hired Bayad in April 2000 for a position at its office in Lexington, Massachusetts. Id. ¶¶ 1, 20. Although Fraser was Bayad's supervisor, id. ¶¶ 19-20, none of the other Individual Defendants had any involvement with Bayad either during or after his employment. Id. ¶¶ 12-18.

2

### A. Bayad I.

In March 2004, Bayad filed suit in this Court against Cisco's President and CEO, John Chambers; Cisco Vice-Presidents Anthony Savastano and Carl Wiese; and Patricia Russo, the Chairman and CEO of Lucent Technologies, Inc. (collectively, the "Bayad I Defendants"). Id. ¶ 8. That complaint (the "Bayad I Complaint"), like the instant Complaint, alleged that Cisco employees discriminated against Bayad both during and after his term of employment. Id. In May 2005, Magistrate Judge Bowler recommended that summary judgment enter for the defendants on the remaining claims. Id. ¶ 11. This Court adopted the Magistrate's Recommendation in February 2006 and the First Circuit Court of Appeals affirmed on July 24, 2006. Id.

### B. Bayad's Termination By Cisco.

Bayad's employment with Cisco ended on May 1, 2001, when Cisco terminated him as part of an economically driven Reduction in Force ("RIF"). Id. ¶¶ 28-38. Fraser selected Bayad and three other employees from the Lexington office for the RIF. Id. ¶ 29. Two of the three others were white males and the third was a male of unknown ethnicity. Id. ¶ 30. Fraser selected Bayad for the RIF because he had the least seniority and because he had done little substantive work since being hired. Id. ¶¶ 32-33. None of the other Individual Defendants played any role in Bayad's termination. Id. ¶ 34.

Fraser notified the selected employees (including Bayad) of the RIF on April 25, 2001. Id. ¶ 35. She notified each employee in her office. She provided each with a Voluntary Severance Agreement and Release ("Release") that offered a severance payment in exchange for an agreement to waive then-existing claims against Cisco. Id. ¶ 36. The employees were given sixty (60) days to accept or decline. Id. ¶ 37. Fraser

gave the Release to Bayad in an unlocked office with only another Cisco employee present.  Id. ¶ 36.  Bayad was calm and amicable when told of his termination.  Id.

Seven days later, on May 1, 2001, Bayad accepted the offer, signed the Release, and wrote "Thank you to all of you and Good Luck" beneath his signature.  Id. ¶¶ 38-39.  Fraser was not present when he signed the Release.  Id. ¶ 38.  Bayad declined to revoke his acceptance within seven (7) days as permitted by the Release's terms.  Id. ¶ 40.

### C. Bayad's Allegations.

Bayad also repeats several other allegations from Bayad I in this Complaint.  *First*, Bayad claims that he was placed on a "No-Hire-List" indicating that he was not to be hired, transferred, or promoted.  Complaint ¶¶ 41, 43 & Ex. 14.  The particular list he produces to support this claim (the "Plaintiff's No-Hire List") appears, however, to be a fabrication.  While otherwise similar to lists of partner companies from whom Cisco agreed not to recruit, Harper-Guerra, who maintained these lists, never added Bayad's nor anyone else's name to any of them.  Facts ¶¶ 48-49.  No other Cisco employee could have made such an addition without her knowledge.  Id. ¶ 49.  *Second*, Bayad maintains that Cisco refused to do business with his company, Global Internetworking Consulting, Inc.  Complaint ¶¶ 65-66.  Cisco, however, has no record that Bayad's company ever attempted to do business with it.  Facts ¶ 41.  *Third*, Bayad claims that Cisco refused to rehire Bayad for discriminatory reasons, Complaint ¶¶ 45, 57.  In fact, Bayad only applied for two positions, a Systems Engineer position in Massachusetts and a Voice Specialist position in California.  Facts ¶¶ 42-44.  Cisco declined to hire him for the first because he was not qualified and for the second because it was unwilling to pay to relocate Bayad from Massachusetts to California.  Id. ¶¶ 43-44.

4

On May 16, 2005, four years and fifteen days after his termination from Cisco, Bayad filed this Complaint in the United States District Court for the District of Massachusetts. He again asserts claims stemming from his termination from Cisco in 2001 and Cisco's failure thereafter to do business with or rehire him. On July 13, 2006, this Court dismissed Counts II, IV, V, VII, XI, and XII of the Complaint, all claims under Title VII and G.L. c. 151B, and certain claims arising under 42 U.S.C. §§ 1981 and 1985. See Order Re: Motion to Dismiss (Docket # 31) (the "Dismissal Order"). The Defendants address the balance of the Complaint below.

## ARGUMENT

**I.  Summary Judgment Standard.**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Thus a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Moreover, the "mere assertion that there is some fact in dispute is insufficient to defeat a motion for summary judgment." Ortega-Rosario v. Alvarado-Ortiz, 917 F.2d 71, 73 (1st Cir. 1990). "The evidence manifesting the dispute must be 'substantial,' going beyond the allegations of the complaint." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (internal citations omitted). A dispute will be regarded as genuine if it can be "properly resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (emphasis added).

**II.     Bayad's Remaining Claims Are Barred By Res Judicata.**

This Court's grant of summary judgment in Bayad I bars Bayad's remaining claims in this action as well. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were <u>or could have been</u> raised in that action." <u>Massachusetts Sch. of Law at Andover, Inc., v. American Bar Ass'n</u>, 142 F.3d 26, 38 (1st Cir. 1998) (emphasis added), quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). Federal res judicata law governs "where, as here, both the potentially precluding action and the potentially precluded suit were litigated in federal courts." <u>Massachusetts Sch. of Law</u>, 142 F.3d at 37. "The elements of federal res judicata are (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." <u>Id.</u> The Defendants are entitled to summary judgment on the entirety of the Complaint because all three elements are present.

**A.     There Has Been A Final Judgment In Bayad I.**

This Court entered summary judgment for the defendants in Bayad I in February 2006. Facts ¶ 11. That decision constitutes a final judgment for res judicata purposes. <u>Chestnut Hill Dev. Corp. v. Otis Elevator Co.</u>, 739 F. Supp. 692, 696 (D. Mass. 1990) (Caffrey, J.).

**B.     The Remaining Causes Of Action In This Suit Are Identical To Those In Bayad I.**

The First Circuit has "adopted a transactional approach to determine whether causes of action are sufficiently related to support a res judicata defense." <u>Massachusetts Sch. of Law</u>, 142 F.3d at 37. This approach "boils down to whether the causes of action

6

arise out of a common nucleus of operative facts." Id. The similarities between this case and Bayad I, however, go beyond a "common nucleus." Bayad's remaining causes of action mirror transactions already addressed in Bayad I. See, e.g., Complaint in Bayad v. Chambers, et al., Civil Action No. 04-10468-PBS ("Bayad I Complaint"), attached as Tab A to Affidavit of Matthew Iverson ("Iverson Affidavit"), ¶¶ 125-31 (alleging Cisco refused to contract with Bayad's business); ¶¶ 133-42 (alleging Cisco refused to rehire Bayad for discriminatory reasons); ¶ 182 (alleging Cisco employees falsely imprisoned Bayad during his termination); ¶ 185-86 (alleging that Cisco employees caused Bayad emotional distress during and after his termination); ¶¶ 188-89 (alleging Cisco employees conspired against Bayad); ¶¶ 190-92 (alleging state law breach of contract claim based on Cisco's alleged violation of employment policies). In short, this case represents a recycling of Bayad's old complaint against a new set of defendants. This action is thus identical to Bayad I for res judicata purposes. Porn v. National Grange Mut. Ins. Co., 93 F.3d 31, 36 (1st Cir. 1996) (final judgment in prior action "will extinguish subsequent claims with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose").

### C. There Is Sufficient Identity Of Defendants For Res Judicata To Apply.

Res judicata doctrine does not require the Instant Defendants to have been parties to Bayad I for this action to be precluded. Claim preclusion is appropriate where "the new defendants have a close and significant relationship with the original defendants." In Re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988). Such a "significant relationship" arises where new defendants are accused of having joined in wrongdoing alleged in an earlier action. See id. at 10-11 (significant relationship warranting claim

7

preclusion arose where complaint alleged new defendant joined with prior defendant in wrongful activity resolved in prior suit); see also Miller Hydro Group v. Popovitch, 851 F. Supp. 7, 11 (D. Me. 1994) (employees of company accused of wrongdoing in prior suit constituted same parties for res judicata purposes). Such a relationship exists here: the Complaint consists of allegations that the Instant Defendants joined in a conspiracy with the Bayad I Defendants to discriminate against Bayad, terminate him, and thereafter refuse to rehire him. See, e.g., id. ¶ 32 ("Fraser conspired with Tony Savastano and with Defendants Cisco and others"), ¶¶ 41-43 (alleging Savastano directed Harper-Guerra to place Bayad's name on the No-Hire List which Justice, DCamp, and Harper-Guerra then used for discriminatory purposes); ¶ 48 (alleging Fraser, DCamp, Harper-Guerra, and Savastano conspired to terminate Bayad in a stressful manner); ¶¶ 52-55 (Instant Defendants and Bayad I Defendants joined to circulate or permit the circulation of supposedly discriminatory e-mails); ¶ 62 (Instant Defendants and Bayad I Defendants together sent EEO e-mail). As there is no reason that the Instant Defendants could not have been joined in Bayad I, there is sufficient identity amongst the parties for res judicata to apply. Burns v. Town of Lamoine, 2000 WL 1612704 at *3 (D. Me. 2000) (in § 1983 case, "Plaintiffs claim that Defendant and the original defendants acted as co-conspirators against Plaintiffs. As an alleged co-conspirator, Defendant shares sufficient identity with original defendants [for res judicata to apply]."), citing In Re El San Juan Hotel Corp., 841 F.2d at 10; Connaughton v. New England Tel. & Tel., 1988 WL 34321 at *4 (D. Mass. 1988) ("the reasoning of San Juan Hotel does suggest that unnamed co-conspirators should be able to use the first decision as preclusive").

Even if the parties were not sufficiently similar to trigger traditional res judicata preclusion, the principle of non-mutual defensive collateral estoppel would produce the same result. Defensive collateral estoppel operates to prevent a plaintiff (such as Bayad) who brought an unsuccessful claim against one group of defendants from bringing the same claim against another group of defendants in the hope of prevailing the second time. Miller Hydro Group v. Popovitch, 851 F. Supp. 7, 11. The doctrine exists because such repetitive litigation wastes the resources of both courts and defendants:

> Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.

Id., quoting Blonder-Tongue Labs., Inc. v. University of Illinois Found., 402 U.S. 313, 329 (1971).

Bayad has had a full and fair opportunity to litigate his discrimination claims in Bayad I. He should not be allowed to repeat the process ad infinitum. The Court should therefore grant summary judgment for the Defendants on all of Bayad's remaining claims.

### III. Irrespective Of Res Judicata, The Defendants Are Entitled To Judgment As A Matter Of Law.

As set forth below, Bayad's claims either lack proof of an essential element or are barred by the statute of limitations.

#### A. The § 1981 Business Claims Have No Evidentiary Basis.

Not only is there no evidence that Cisco spurned Bayad's company, Global Internetworking Consulting, Inc. ("GIC"), for discriminatory reasons, there is no evidence that GIC ever made any attempt to contract with Cisco. Facts ¶ 41. As there is

9

a complete absence of proof regarding Cisco's refusal to contract with GIC, the Defendants are entitled to summary judgment on the § 1981 Business Claims.

> **B. Bayad's § 1981 Hiring Claims Fail Because Bayad Was Not Qualified For The Position He Applied For And Because Cisco Refused To Hire Him For Non-Discriminatory Reasons.**

As in Bayad I, Facts ¶ 11, Bayad has, once again, no admissible evidence that Cisco declined to rehire him due to race-based animus. Because there is no direct evidence of discrimination in this case,[2] Bayad's Hiring Claims are governed by the familiar three-stage burden shifting framework first articulated by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), and then refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). Under that framework Bayad bears the initial burden of establishing that "(1) he is a member of a protected class . . .; (2) he applied for an open position; (3) he was not hired; and (4) the [employer] sought to fill the positions with individuals who had qualifications similar to his." Lewis v. City of Boston, 321 F.3d 207, 217 (1st Cir. 2003). If Bayad can successfully establish a prima facie case, the burden shifts to the Defendants to "articulate some legitimate, non-discriminatory reason" for refusing to hire him. McDonnell Douglas Corp. v. Green, 411 U.S. 792 at 804. Bayad then bears the final burden of showing that the alleged non-discriminatory reason was a pretext. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253.

---

[2] Direct evidence of discrimination, sometimes referred to as "smoking gun" evidence, is an outright admission or its equivalent that an employer acted out of a discriminatory motive. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000). Bayad repeatedly referred to the No-Hire List as direct evidence of discrimination in Bayad I. As the Magistrate correctly concluded in that matter, Second Recommendation at 8, even if the No-Hire List were authentic (which it is not), it is not evidence of discrimination because it only singles out Bayad by name without any discussion of motive. Facts ¶ 47.

The Hiring Claims stem from Bayad's application for a Systems Engineer II position in Massachusetts and a Voice Specialist position in California. Facts ¶¶ 42-44. With regard to the Systems Engineer II position, Bayad was simply not qualified for the job. The position required extensive network security experience that the person eventually hired possessed, but Bayad did not. Facts ¶ 43. Thus, Bayad cannot demonstrate that Cisco "sought to fill the position with individuals who had qualifications similar to his." Lewis, 321 F.3d at 217. With regard to the Voice Specialist position, Cisco declined to hire Bayad because Bayad had not completed certain technical certifications and because Cisco was unwilling to pay to relocate him from Massachusetts to California. Facts ¶ 44. The only so-called evidence of pretext that Bayad can point to in reply is Fraser's statement to an inquiring HR representative that she "does not feel comfortable talking about" Bayad. Complaint ¶ 61. This statement is not discriminatory, and even if it were, "statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002). It follows that defendants are entitled to summary judgment on this point. See Cruz-Ramos v. P.R. Sun Oil, 202 F.3d 381, 384-85 (1st Cir. 2000) (summary judgment for employer is proper where plaintiff fails to present adequate evidence of pretext).

C.   **Bayad's § 1985 Claims Fail.**

Bayad's allegations under 42 U.S.C. § 1985 involve conspiracies to deprive him of his constitutional rights, which would be violations of subsection (3) of the statute. These claims fail for two reasons.

11

1. **The § 1985 Claims Cannot Stand Absent Evidence Of Discrimination.**

The absence of evidence of discrimination forecloses Bayad's § 1985 claims because without such evidence Bayad cannot show that he was deprived of a constitutionally protected right. The elements of a § 1985(3) claim are: "(1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). As discussed previously, Bayad cannot prove that the Defendants discriminated against him. See supra Part II(A-B). It follows that Bayad also cannot prove that the Defendants conspired to discriminate against him. As Bayad cannot show that the Defendants deprived him of a constitutionally protected right or privilege, the Court should enter summary judgment for the Defendants on the § 1985 Claims.

2. **The Defendants Are Not Subject To Suit Under 42 U.S.C. § 1985(3) Because There Is No State Action.**

Bayad's § 1985 claims fail because they allege purely private action. "[S]ection 1985(3) [of chapter 42 of the United States Code] does not apply 'to private conspiracies that are aimed at a right that is by definition a right only against state interference, but applies only to such conspiracies as are aimed at interfering with rights . . . protected against private, as well as official, encroachment.'" Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 219 (D. Mass. 1995), quoting Bray v. Alexandria

Women's Health Clinic, 506 U.S. 263, 278 (1993). This requirement that the conspiracy be aimed at a right protected against private encroachment is independent of the requirement that the conspirators had a discriminatory animus. Id. at 274. Bayad claims that the Defendants conspired to deprive him of his rights to equal protection and privileges and immunities. Complaint ¶ 102. "Neither the right to privileges and immunities under Article IV and/or the Fourteenth Amendment nor the right to equal protection under the Fourteenth Amendment constitutes protected rights under section 1985(3) without proof of state involvement." Lowden, 903 F. Supp. at 219.[3] As the Complaint does not allege any governmental involvement in defendants' interactions with Bayad, his claims under § 1985(3) must be dismissed.

### D. Bayad's Breach Of Contract Claims Are Either Released Or Fail Because There Was No Contract To Breach.

Bayad alleges in Count VI that the Defendants breached an oral contract established by Cisco's personnel policies. Complaint ¶ 93. To the extent that these claims arise from Bayad's employment by Cisco, they are released. As Magistrate Bowler correctly determined in Bayad I, Facts ¶ 11, Bayad's voluntary signing of the Release precludes all claims arising from his employment and termination. The Release entitled Bayad to a severance payment in exchange for his agreement to waive any claims related to his employment. Id. ¶ 36. Bayad had sixty (60) days to sign the release, but signed it after seven. Id. ¶¶ 37-38. Beneath his signature he wrote

---

[3] Only the right to be free from involuntary servitude under the Thirteenth Amendment and the right to interstate travel are protected against private, as opposed to public, infringement. Lowden v. William M. Mercer, Inc., 903 F. Supp. at 219. Neither the right to interstate travel nor the Thirteenth Amendment's guarantee against slavery and its badges and incidents is implicated by the Complaint. See Wong v. Stripling, 881 F.2d 200, 203 (5th Cir. 1989) (claim under § 1985(3) properly dismissed where allegation of discriminatory employment decision regarding doctor of Chinese descent did not fall within Thirteenth Amendment's guarantee against slavery).

13

"Thank you to all of you and Good Luck." Id. ¶ 39. Although by its terms Bayad could withdraw the Release at any time within seven days of signing it, he did not do so. Id. ¶ 40. Bayad's voluntary release thus waives any breach of contract claim arising from his employment.[4] See Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 278 (1st Cir. 2002) (summary judgment proper absent dispute of fact regarding voluntariness of release of employment discrimination claims).

To the extent that Bayad's breach of contract claims arise from events taking place after Bayad's termination, they fail because there is no allegation that a contract between Bayad and Cisco existed after Bayad left Cisco's employ. Complaint ¶¶ 57, 68.

### E. Bayad's State Law Conspiracy Claims Fail.

Count VIII alleges a civil conspiracy under Massachusetts law. Massachusetts law provides for two seldom-used causes of action for conspiracy, so-called "true conspiracy" and "concerted action conspiracy." Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999). As an initial matter, both carry three-year statutory limitations periods that dispose of the allegations stemming from Bayad's employment and Cisco's alleged failure to contract with him. See G.L. c. 260, § 2A; see also Dismissal Order at 3 (stating that 3-year statute of limitation bars "Plaintiff's conspiracy claims arising from Bayad's employment at

---

[4] Bayad alleges in the Complaint that he felt forced to sign the Release because the circumstances of his termination from Cisco mimicked those of his earlier termination from Lucent. Complaint ¶¶ 48-50. In fact, Bayad signed the release seven days after he received it in Fraser's unlocked office. Facts ¶ 36. Fraser was not present when he signed it. Id. Even if supported by admissible evidence, however, Bayad's contention would still be insufficient to defeat summary judgment absent expert corroboration. See Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 13 (1st Cir. 1997) (plaintiff's statement that he lacked capacity to knowingly and voluntarily execute release due to depression and anxiety insufficient to defeat motion for summary judgment absent expert evidence).

Cisco, his termination, and Cisco's alleged refusal to business with Bayad's company prior to May 2002"). As to the remaining conspiracy claims, while the elements of each conspiracy theory are subtly different, both require as a predicate some form of concerted action directed at the plaintiff. Id. The Defendants took no such concerted action, Facts ¶¶ 12-13, 15, 17, 34, and are consequently entitled to judgment as a matter of law. Carroll v. Xerox Corp., 294 F.3d 231, 243 (1st Cir. 2002).

> F.  **Bayad's Claims For False Imprisonment And Intentional Infliction of Emotional Distress Are Time Barred And Lack Evidentiary Support.**

Counts X and X alleging false imprisonment and intentional infliction of emotional distress, respectively, are time-barred. Massachusetts law provides for a three-year statute of limitations period for both false imprisonment, G.L. c. 260, § , and intentional infliction of emotional distress. G.L. c. 260, § 2A. The acts which allegedly form the basis of both of these claims took place during or before Bayad's termination from Cisco on May 1, 2001. Complaint ¶¶ 104-05, 107; Facts ¶ 38. Both claims are consequently time-barred.

Moreover, Fraser notified Bayad of his termination in an unlocked office with only one other employee present. Facts ¶ 36. The conversation was calm and amicable. Id. These circumstances do not rise to the level of either false imprisonment or either negligent or intentional infliction of emotional distress. See Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 701 (2005) (negligent infliction of emotional distress claim requires "proof of physical harm manifested by objective symptomatology" and "that a reasonable person would have suffered emotional distress under the circumstances of the case"); Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (intentional infliction of emotional distress requires proof that "the defendant's conduct

15

was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community"); Foley v. Polaroid Corp., 400 Mass. 82, 90-91 (1987) (discussing false imprisonment in employment termination context).

### IV. Bastian, DCamp, Harper-Guerra, And Justice Are Entitled To Summary Judgment On All Claims Because They Had No Involvement With Bayad.

As shown by their sworn declarations, with the exception of Fraser, the Individual Defendants had no involvement with (and no knowledge of) any decision regarding Bayad's employment, termination, or subsequent interactions with Cisco. Facts ¶¶ 12-13, 15, 17. For this reason alone Bastian, DCamp, Harper-Guerra, and Justice are independently entitled to summary judgment on all the remaining claims. See Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (summary judgment proper given defendant's uncontroverted denial of knowledge of alleged civil rights violation); Pinto v. Nettleship, 737 F.2d 130, 132-33 (1st Cir. 1984) (same).

### CONCLUSION

For the foregoing reasons, the Defendants request that the Court grant them summary judgment on the entirety of the Complaint.

Respectfully submitted,

CISCO SYSTEMS, INC., BRUCE BASTIAN, KATE DECAMP, LYNN FRASER, CELIA HARPER-GUERRA, and RICK JUSTICE

By their attorneys,

/s/ Matthew Iverson
Bruce E. Falby (BBO #544143)
Matthew Iverson (BBO #653880)
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated:  July 30, 2006

BOST1\430653.4

17

BOST1\430653.4