UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,

       *Plaintiff*,

v.

CISCO SYSTEMS, INC., BRUCE
BASTIAN, KATE DCAMP, LYNN
FRASER, CELIA HARPER-GUERRA, and
RICK JUSTICE,

       *Defendants*.

CIVIL ACTION NO. 05-11005-PBS

## DECLARATION OF MATTHEW IVERSON

I, MATTHEW IVERSON, declare under the pains and penalties of perjury, pursuant to 28 U.S.C. § 1746, the following:

1.      I am an associate at the law firm of DLA Piper Rudnick Gray Cary US LLP. I represent the defendants in the above-captioned matter. The facts set forth in this declaration are based upon my own personal knowledge and a review of the records of my firm concerning this litigation.

2.      Attached at Tab A is a true and accurate copy of the Complaint in Bayad v. Chambers, et al., Civil Action No. 04-10468-PBS.

3.      Attached at Tab B is a true and accurate copy of the Report and Recommendation in Bayad v. Chambers, et al., Civil Action No. 04-10468-PBS, dated May 25, 2005.

4.       Attached at Tab C is a true and accurate copy of the Memorandum and Order dated October 25, 2004 in <u>Bayad v. Chambers, et al.</u>, Civil Action No. 04-10468-PBS.

5.       Attached at Tab D is a true and accurate copy of the Order dated February 17, 2006 in <u>Bayad v. Chambers, et al.</u>, Civil Action No. 04-10468-PBS.

6.       Attached at Tab E is a true and accurate copy of the Judgment entered July 24, 2006 in <u>Bayad v. Chambers, et al.</u>, Appeal No. 06-1396.

7.       Attached at Tab F is a true and accurate copy of the Report and Recommendation dated November 15, 2006 in <u>Bayad v. Chambers, et al.</u>, Civil Action No. 04-10468-PBS.

8.       Attached at Tab G is a true and accurate copy of the Defendants' Rule 26(a)(1) Initial Disclosures provided to Bayad on April 13, 2006, including excerpts from the attachments to those disclosures.  To date, Bayad has made no Rule 26(a)(1) disclosures to the Defendants and has served no requests for written discovery in this matter.

/s/ Matthew Iverson_____
Matthew Iverson

Dated:  July 28, 2006

2

TAB A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

RECEIPT # 54377
AMOUNT $ 150.00
SUMMONS ISSUED X-7
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M
DATE 3-8-04

ANTHONY BAYAD ,                    )
                                   )
                                   )
        Plaintiff ,                )        CIVIL ACTION
                                   )
                                   )
                                   )        CASE NO. _____
                                   )
JOHN CHAMBERS, PATRICIA            )
RUSSO, ANTHONY                     )        **04  10468 GAO**
SAVASTANO and CARL                 )
WIESE,                             )        **JURY TRIAL DEMANDED**
        Defendants ,               )        MAGISTRATE JUDGE Bowler

## COMPLAINT

Plaintiff Anthony Bayad complains of defendants John Chambers, Patricia Russo,

Anthony Savastano, and Carl Wiese as follows:

## PRELIMINARY STATEMENT

1.    This action seeks declaratory, injunctive, and equitable relief, compensatory and

punitive damages, legal costs, and other remedies as deemed and appropriate,

for intentional conspiracy to discriminate based on the plaintiff's Moroccan ancestry,

and his Arab race; breach of contractual of obligations (Business & Employment

Relationship); emotional distress, mental anguish, and loss of enjoyment of life, and;

include injury to character and reputation (defamation) ,and injury to credit standing

suffered by plaintiff Anthony Bayad while working and associating with

Defendants.

1

## JURIDICTION

2.    This action arises under the Civil Rights Reconstruction Era Statues, 42 U.S.C §§

1981, 1981(a) as amended by the Civil Rights Act of 1991, the Civil Right Act of 1871,

section two now codified at 42 U.S.C. § §1985, 1985(3), 1985(C),1988, and § 2000a;

Title VII of Civil Act of 1964, codified at 42 U.S.C. § 704; and the Supplemental Right

of Due Process under the State law.

3.    Jurisdiction over the federal issues is invoked pursuant to 28 U.S.C. § 1343(4)

and, over the state law claims pursuant to the doctrine of supplemental jurisdiction, now

codified at 28 U.S.C. §1367.

4.    Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. §§§§

1981, 1985, 2000a and 2000e-5(g) (administrative remedies once before exhausted and

plaintiff had complied with provision of 28 U.S.C § 2000e-5(f)(1) ); and the supplemental

State law claims.

5.    Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981 and

§ 1985; 42 U.S.C. § 704, and§ 2000a, Title VII of Civil Act of 1964, codified at 42

U.S.C. § 704; and the supplemental state laws claims.

Costs and other fees may be awarded pursuant to 42 U.S.C §§ 1988 and 2000e-5(k),

Federal Rule 54 of Civil Procedures and Massachusetts state law.

## VENUE

6.     This action lies in the district of Massachusetts, pursuant to 28 U.S.C. § 1391(b), because the claim initially arose in the judicial district, and pursuant 28 U.S.C. § 2000e-5(f) (3); Because the plaintiff associated, and works in this judicial district. Moreover, Defendants John Chamber, Anthony Savastano, Carl Wiese, and Patricia Russo have a business office located in this district, and the Plaintiff resides here.

7.     Plaintiff Anthony Bayad is an Arab/American who was born in Casablanca Morocco (North Africa) and is of Arab ethnicity. Plaintiff is currently a United States citizen who resides in the United States of America.

8.     Defendants John Chambers, Carl Wiese, and Anthony Savastano own most or substantial shares of Cisco Systems Inc. ("Cisco") or Lucent Technologies Inc. ("Lucent"), an employers that engages in an industry affecting commerce and employs more than 40,000.00 employees World Wide.  Defendant Patricia Russo is employed by Lucent and owns most or a substantial shares of the company Lucent or Cisco.

9.     Defendants John Chambers, Anthony Savastano, Carl Wiese, and Patricia Russo are very close friends, and all one time had worked or had been associated with Lucent Technologies Bell Lab Inc., Cisco Systems Inc., International Networking Services Inc., or Wang Laboratory Inc.

## FACTS

10.    Mr. Bayad was born in Casablanca Morocco and immigrated to the United States when he was 17 years old to get an education with an eye toward supporting his elderly parents, his four brothers,  and his two sisters in Casablanca Morocco.

3

11.    Mr. Bayad worked his way through school by washing dishes at burger King, doing construction work and as a gasoline attendant, as well as other low paying jobs such as cleaning bathrooms, and distributing news papers. Mr. Bayad graduated with Bachelor's of Science in Computer Engineering Technologies the year of 1994 from Wentworth Institute of Technology, with a GPA approaching 3. 5 on a 4.0 scale, and was placed four time in the honorable Dean's list for his high achievement during his four year College. After graduation he began his career as a network engineer.

12.    Prior of working for Defendant John Chambers (Cisco Systems Inc.) Mr. Bayad become employed by lucent Technologies Inc., holding  a title as a Manager; and on about December 15, 1995 Mr. Bayad worked in Lucent Largo, Florida office (outside Tampa), where he met Defendants Carl Wiese, Anthony Savastano, and Patricia Russo. Mr. Bayad was reporting to them. See **Exhibit A attached.**

13.    Within one week of becoming employed by Lucent Mr. Bayad accomplished a certification that entitles Lucent  significant discounts from its supplier Bay Networks Inc. (it was acquired by Nortel Networks Inc.). Mr. Bayad was the first Lucent Technologies Manager who successfully completed the Bay Network Certification testing at the Expert Level, and   was promoted by his direct Lucent Manager Mario Calvez (a Spanish person) to the position of a lead Manager, and Mr. Bayad made a voluntarily sacrifices by teaching Routing and switching technologies (data networking ), and computer technologies to all Lucent  engineers in order to bring them up to speed in this competing high tech market. See **Exhibit B attached.**

14.    Mr. Bayad was an excellent leader and a knowledgeable network engineer who consistently satisfied Lucent ' customers with his expertise and services. See **Exhibit C**

4

15.     As an officer, Share holder, and manager of Lucent, Mr. Bayad was encouraged
To provide his technical knowledge and his initiatives to add value and to build the
confidence of Lucent 's customers, this include a plan to favor Lucent against its rivals
as **Cisco Systems Inc.,** in the business of data communication field.

16.     As he was told and instructed, he communicated his concern and his plan of
action to save Lucent failing Business of Data Networking to Defendants Anthony
Savastano, Carl Weise, Pat Russo, and Chairman Henry Schachts of Lucent Technologies
Inc. **Please Exhibit D attached.**

17.     Defendants Anthony Savastano, Carl Wiese, and Patricia Russo did not like
Mr. Bayad, simply because he was an Arab from North Africa. Mr. Bayad had never
Breathed discrimination against him in any where else in the world, and not even during
his **twenty years** of living and residing in the state of Massachusetts.

18.     Mr. Bayad was able to come up with a plan of attack and solutions to the
problems that Lucent was facing, and decided to help. His action was conducted in a
professional manner by following the chain of the command from Defends up to their
Chairman Henry Schacht.  It was achieved accordingly, and under the encouragement of
Lucent executives.

19.     Unfortunately the flaw of business was purposely put in place by Defendant
Patricia Russo and her followers, Lucent was a start up company and every one was back
stabbing each others, and Mr. Bayad was unaware of this game , and he was found
in the middle of cross fire and Defendant Patrica Russo 's back yard.

20.     Lucent Chairman Henry Schacht and his right hand man CEO Rich Mcguin

for lucent were loosing business to competitors and could not compete in this demanding high tech Market.

21.    One of the Defendants Anthony Savastano, Carl Wiese, and Patricia Russo's plan of conspiracy and discriminatory action was, to first terminate his Spanish Manager Mario Galvez, and then by stripping Mr. Bayad of his status as lead Manager for no cause or any wrong doing; It was aimed to humiliate and to arm Mr. Bayad well being.

22.    Over the course of Mr. Bayad 'employment with lucent Technologies, He become repeatedly aware that Defendant Anthony Savastano , Carl Wiese, Patricia Russo, and other Lucent Technologies managers did not like him because of his Arab race, ethnic background, and his national origin.

23.    Mr. Bayad informed Defendants Patricia Russo, Anthony Savastano, and Carl Wiese over the telephone and in person that this intentional discrimination followed by disparate treatment must end now.

24.    In January 21 the year of 1997, Mr. Bayad applied for the vacant position of general manager of the largo office (as well as other management positions), but was also denied these promotions by Defendant Savastano (Director of Lucent). **See Exhibit E attached to the complain.**

25.    Defendant Carl Wiese was sent by Defendants Anthony Savastano and Patricia Russo, who met with Mr. Bayad in Fort Lauderdale Lucent office to advise him that by Pinpointing the flaw of Business to Lucent Chairman Henry Sheachts, Mr. Bayad has given Lucent a black eye and that his time in this company (Lucent) is just a matter of time.

26.    Defendant Carl Wiese also told Mr. Bayad that Lucent will never promote or

6

consider an Arab to be Vice President of Operation. He was right. Mr. Bayad was blind by working very hard trying to make it, He did not know any thing about discrimination, or games played in corporate America by individuals as the Defendants.

27.    Defendant Savastano has denied Mr. Bayad a promotion to a "Sale Manager" once before. Mr. Bayad had been offered a lucrative transfer and promotion to sales management position in another lucent division, but Defendant Savastano refused to promote Mr. Bayad or allow him to be promoted within lucent Technologies Inc. See **Exhibit F attached to the complain.**

28.    Defendant Anthony Savastano, Carl Wiese, and Patricia Russo promoted Lewis Kaslow instead who was a white employee to the largo, Florida office as General Manager for Lucent that Mr. Bayad had sought, despite the fact Lewis Kaslow knew virtually nothing about data networking field and was simply a phone technician.

29.    Lewis Kalsow 'first day on the job was instructed by Defendant Savastano, Carl Wiese, and Patricia Russo (He was reporting to them) to call Mr. Bayad who is working In Fort Lauderdale Florida area and demanded him to come to Largo, Florida as soon as possible.

30.    When, Mr. Bayad declined his demand to meet immediately because of his Commitment with a Customer in the Fort Lauderdale area (Lucent has a policy in place that customers comes first). Mr. Bayad nicely communicated his concern to Lewis Kaslow, to simply reschedule the meeting at some other time (knowingly all Lucent managers are playing golf all day long).

31.    Mr. Bayad was out there in the field working as slave because he was an Arab from Africa and he cannot say a word fearing the consequences of being terminated

and defamed against him ( to make it hard to find a job).

32.    Lewis Kaslow begun angry and screamed at Mr. Bayad and accuse him of misconduct, and called him a **"dirty Arab"** and he stated openly that he "did not care if [Mr. Bayad] had to take" **a flying carpet** to Largo Florida office. It is shame.

33.    Mr. Bayad is an American born in Morocco, a country who has long been recognized as a strategic allied, and the country that was the first nation to acknowledge the existence of the United State independent and free nation in the free world. (**Check with U.S State Department for more info)**

34.    Mr. Bayad understood Mr. Kaslow's remarks to be demeaning and disparaging to his Arabic background, his race, his ethnicity. He also understand this desperate treatment has been encouraged by Defendants Anthony Savastano, Carl Wiese , and Patricia Russo.

35.    Mr. Bayad had to drop every commitments promised to lucent's customers, and flew immediately from Fort Lauderdale to Tampa (Largo) on the same day of **January 23, of the year 1997**. Defendants Anthony Savastano, Carl Wiese, and Patricia Russo were mandating Mr. Bayad to execute Lewis Kaslow's demand without any further delay or otherwise. (Defendants were planning to send him to the hospital as they did )

36.    Upon Mr. Bayad's arrival at Lucent Largo (Tampa) office, Mr. Bayad was escorted by Defendant Anthony Savastano, the new General Manager Lewis Kaslow, and the Lucent corporate Police Renold Laurino .**Exhibit G attached to the complain of Lucent Front Desk guard's report being briefed for his shift (conspiracy).**

37.    Mr. Bayad was then imprisoned alone in a room with lucent corporate Police acting under the direction of Defendant Anthony Savastano, who proceeded with mental torture and accused Mr. Bayad of stealing from Lucent Technologies Inc. by charging

8

items on his corporate American Card, and it was common conduct by every white

people of Lucent Managers including Defendant Carl Wiese and Mike Reed. **Exhibit I**

**attached to the complain of Wiese and Mike Reed of Lucent Amex Credit card .**

38.     Since Defendant Savastano's title was the Director of Lucent Finance and

accounting. This **conspiracy** was clearly initiated by him without a doubt, and all the

facts implicated him as the author of this ridiculous conspiracy of accusing Mr. Bayad of

**finance fraud** (stealing from the company), Defendant Savastano had a **complete**

**access to Mr. Bayad 's lucent personal financial records. Exhibit J attached.**

39.     Moreover Defendant Anthony Savastano was **an accountant** during his entire

career and a **financial analyst with Wang Laboratory , Lucent Technologies**, and now

**Cisco Systems Inc**.

40.     Defendant Savastano was the **lead conspirator** and the **expert in Finance** and

**accounting.** It was conspicuous of him to accuses Mr. Bayad of **financial fraud** and

**stealing from Lucent technologies Inc.**, It was a **dumb pretext** to **finish him up** once

and **for all,** Brightly Mr. Bayad was a hard working, very educated, and very

technically competent in field of internetworking .

41.     The fact are indisputable about Mr. Bayad's conduct. He is a Tax Payer,

as well as a responsible citizen during his entire life, and without any criminal behavior,

or any mental history as he was framed by Defendants and was committed involuntarily

to the psychiatric award against his will.

42.     Mr. Bayad has never considered filing chapter 11 or any other credit

discharge even when he was destroyed financially by Defendants.

43.     After being screamed at, abusively interrogated, intimidated, physically assaulted,

and confined alone in a room with Lucent Corporate Police, Mr. Bayad became extremely scared and afraid for his safety.

44.     Mr. Bayad advised Lucent Corporate Police that this action taken against him was not right, and if he could leave the room or could call his attorney, or if someone else could be admitted to the room so that his personnel safety could be assured.

45.     Lucent Corporate Police refused Mr. Bayad's demand and kept Mr. Bayad falsely imprisoned and proceeded to scare, Harass, intimidate him as he has been instructed by Defendants. Lucent corporate police Renold Laurino continuously made derogatory remarks about Mr. Bayad's ethnic, racial background as Arab, and about Mr. Bayad's ability to speak English.

46.     While falsely imprisoned at the hand of lucent corporate police acting under the direction of Defendants Anthony Savastano. He stated things like: "I don't know what's wrong with company (Lucent) hiring people like you. "And "ten year ago I wouldn't even be talking to someone like you."(Meaning Arabs)

47.     Such remarks were directed specially at Mr. Bayad's Arab race and ethnic background, and the fact he had been born in Africa and was considered foreigner under the eyes of Defendants.

48.     After being falsely imprisoned and abusively interrogated by Lucent Corporate police for such intense period of time, Mr. Bayad became sick with fear and tried to leave the room.

49.     When Mr. Bayad reached the door, several Lucent Technologies including corporate Police , security and Defendant Anthony Savastano attempted to physically

restrain him and kept him locked in the room where he was being falsely imprisoned.

50.    In the scuffle that ensued, Mr. Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below.

51.    As result of the scuffle, Mr. Bayad received injuries to his head and neck and his clothes were torn. **Exhibit K attached of the Pinellas County Sheriff's office incident/Offense report.**

52.    An ambulance was called to take Mr. Bayad to the hospital, while he was lying in the ambulance with an I.V in his arm and being treated by paramedics, Mr. Bayad was terminated from Lucent at the presence of Defendant Anthony Savastano who was on the phone with Carl Wiese and Patricia Russo.

53.    Mr. Bayad was charged of trespassing even though he was asked to come to Largo (Tampa Florida) office at their request and Mr. Bayad was an employee of Lucent Technologies Inc.

54.    While lying in the ambulance and with an I.V. in his arm, Mr. Bayad was forced through the humiliation of having to give back his business addresses, his pager was wet and not operational, and his corporate American Express cards despite the fact the card had already been deactivated and could no longer be used by anyone. **Exhibit L attached of the Fire Department's report at the scene during the 911 call.**

55.    Defendant deliberately and intentionally humiliated, tortured and degraded Mr. Bayad and it was well act of conspiracy. They **reposed** the **occurrences** of the incident and **conspired** against Mr. Bayad, and they were the **ones** who **called** the **Police and the Fire Rescue to the Scenes**, also they were the ones who provided **defamatory Occurrences** to the police, simply to convinced them to commit Mr. Bayad to the

**Psychiatric ward** against his will (in Florida they call it "**Backer Act**").

56.    At the scene, Defendant Savastano 'secretary Joan Grohe was heard to Exclaim, "I warned", and "I told them (Defendants)  not to do it. They fucked it up." Ms. Grohe also knew that Mr. Bayad was going to be Baker Acted (or committed to the psychiatric ward against his will) before the ambulance had even left the parking lot of the Lucent Largo office and remarked to a coworkers that "**we're going to baker Act him.**"

57.    Forcibly Mr. Bayad was obeyed to spent a good **72 hours in the psychiatric ward**, and since he Was recognized not having any problem, the Sun cost Mental Hospital's Doctors released him **very shortly.(It was the most grim moments of his life)**.

58.    When Mr. Bayad was released from the hospital, and he was left by defendants without any money, clothes, or means of transport ting him self to his home, it was an obvious conduct of hate and disgrace by the Defendants.

59.    On April 4 the year 1997, Mr. Bayad filed a charge of discrimination under the Equal Employment Opportunity Commissions and Human Right Division against Lucent technologies Inc.  Mr. Bayad was issued a right-to-Sue letter by the EEOC on April 22 the year of 1997 and legal action is still pending in the U.S District Court of the 11th Circuit of Appeal.

60.    The reason Mr. Bayad 'law suit is still pending is because Lucent with their power and money and their attorneys  Todd Legon and Fash paid off Mr. Bayad ' attorney attorneys David Sales and Stephanie Alexander, Mr. Bayad attorney threaten Mr. Bayad to accept an amount of  $50,000.00 from Lucent Technologies or otherwise they will

withdraw from the case and they were acting at the direction of Lucent Technologies.

61    Mr. Bayad 'Attorney David Sales and Stephanie Alexander introduced a bogus

Local rules and withdrew from the case. Lucent took advantage of the weak judicial

systems put in place in Florida which is all the lawyers are known for their connection,

and Mr. Bayad is confident of this time around they will not find any one to pay off, but

they will be declared of their violation of the Law. Additionallylawsuit against Mr.

Bayad 'corrupted attorneys is in progress. **Exhibit M of Right-to-Sue letter attached to**

**the complain (a complain is being with the  Bar and Supreme Court of Florida).**

62.    Moreover Lucent employees Cisco **Mr. Hamdi Elsiah and Mr. Amado**

**Navas,** had also been targeted by the same defendants and discriminated against while

working with Lucent , and simply because one of them was an Arab and the other one

was a Spanish of descend, and they were very technically knowledgeable of

internetworking field.

63.    Very shortly after his termination and between the year of 1997 and 1999, Mr.

Bayad attempted to find subsequent employment in data networking industry. Mr. Bayad

was aware of Defendant Anthony Savastano, Carl Wiese, and Pattricia Russo had spoken

to Bay Network Inc., and told them not to hire Mr. Bayad. He was crazy and that he had

been fired for stealing form the company Lucent.

64.    Defendants Anthony Savastano, Carl Wiese, and Patricia Russo did not stop there.

The fact shows Defendants openly conspired with International Network Services

Inc. "INS" against Mr. Bayad. He was humiliated and to terminated him on his first day

on the job. **Exhibit N attached to the complain of the Defendant Patricia Russo**

**conspiracy and defamation.**

13

65.    About One month later Defendant Patricia Russo without caution to conceal her misconduct for her conspiracy and liability of interfering with Mr. Bayad 's Civil Rights. She purchased International Networking Services company to demonstrate her power to all Minorities and specifically to Mr. Bayad of her **power** and her **fortune**, but in **contrary** she has provided and alleviate the burden of proof of this litigation by admitting of the **defamation** and **conspiracy Counts**. Further more and all the **Exhibits attached in this complain** all pointing at her and her followers (Defendant Savastano, Wiese, and Mckinney of INS). This conspiracy caused Mr. Bayad a greater pain to his health, mental anguish, loss of enjoyment of life; include injury to character and reputation.

66.    Moreover it was done with the collaboration of Mckinney of INS to conspire against Mr. Bayad and to purposely terminate his employment with INS Inc., This misconduct Caused Mr. Bayad a greater pain to his health, mental anguish, loss of enjoyment of life; include injury to character and reputation.

66.    Defendant John Chambers was a good friend with McKinney, the primary investor for International Networking Services, and made it happen for Mckinney to raise a capital venture approaching to "**1.5 millions**" and provided him with all the material support that resulted of the **flying colors with a take home of 3.5 Billions, and Mickiney was very grateful to both his friend Defendant Patricia Russo and John Chambers. Exhibit O attached the complain of InformationWeek wire regarding the purchase INS.**

67.    **Their conduct was well severe as Martha Stuart 'case or even far than Enron**

14

corporation. **It is shame their action goes unnoticed.**

68.    On or about **April 12 of the year 2000**, Mr. Bayad was offered a position as

Project Engineer I I grade level 9 Cisco Systems Inc., Professional Services- U.S.

Enterprise Northeast region, reporting directly to Lynn Fraser starting salary of

$90,000.00 yearly, working out of  Cisco Systems Lexington office located in

Massachusetts. **Exhibit P attached of employment offer by Defendant John**

**Chamber 'company Cisco Systems Inc.**

69.    Mr. Bayad was hired because of his experience in the field of Data Networking,

after the well known rigorous five interviews process, and personal background check

that Mr. Bayad  was  put through by Cisco;  Mr. Bayad has been through out his entire

career an excellent employee and Project Engineer with Cisco Systems.

70.    Mr. Bayad continued his outstanding performance by executing well all of his

duties. His Manager Lynn Fraser rated his overall **job performance as an "E"**, which in

Cisco performance rating means: "Employee is successful; meets or exceeds all key

performance expectations". **Exhibit Q attached.**

79.    During a Business trip to San Jose California, Mr. Bayad was **spotted by**

Defendant Anthony Savastano **wearing a Cisco Badge**, while working at the corporate

office in San Jose California.  Defendant Savastano hold a tile as Director or **"Vice**

**President of finance"** with Cisco Systems  Inc., and was reporting to his friend

John Chambers the President of Cisco and owner (An old Body of Wang Laboratory

Inc.), Defendant Savastano was reunited again with Mr. Bayad. **Exhibit R attached**

80.    Upon returning from his trip back to Massachusetts, Plaintiff Anthony Bayad has

informed his Manager Lynn Fraser, was made aware of the act of the discrimination

and disparate treatment that Mr. Bayad have undergone while working with Defendant
Anthony Savastano with Lucent

81.    From that Moment on, Lynn Fraser lunched her self into fishing expeditions by
looking at every avenues for the sole purpose to find an alibi and to dismiss Mr. Bayad
from his employment with Cisco, and knowingly Mr. Bayad was technically competent
and knowledgeable of his job as a Project Engineer, and it was impossible to dismiss him
for no cause.

82.    Lynn Fraser begun to micro manages Mr. Bayad by ordering him not to work from
home and to show up in the Lexington Office, while all his white co-workers were
enjoying the freedom of working from home and her conduct become political toward
Mr. Bayad.

83.    Hence Lynn Fraser was ignoring her commitments to her customers, instead she
was occupied with Mr. Bayad, and she was helped by her friends Brian Low and
Jeremy Noonan. These individuals were always slaking and Lynn Fraser was very
protective of them.

84.    Lynn Fraser demanded Mr. Bayad to submit his **Corporate Financial Expenses**
(**Travel expenses, Business Expenses**) at **all the time** to her before being reimbursed.
her demand of action against him was very abusive of her authority as a manager, and
knowingly all his white co-workers were not mandated as Mr. Bayad was.

85.    Mr. Bayad au courant of these disparate treatments of a **long- standing of**
**pattern** of behavior from Defendant **Anthony Savastano**. Lynn Fraser was simply a
messenger with an order to conspire and to terminate him from his employment.

86.    Lynn Fraser was serving Defendant Savastano Vice President of Cisco's Finance and accounting, **his office was involved in preparing yearly budgetary and monetary reports to all Cisco Managers including Lynn Fraser.**

87.    Mr. Bayad understand his future and his **career with Cisco Systems is over**, specially when Defendant Anthony Savastano and John Chamber were very close friends, and their friend ship goes way back when they were working or associating at (INS) International Networking Services Inc., and Wang Laboratory Inc.

88.    On about **November 2nd of the year 2001 and before** Mr. Bayad being wrongfully terminated from Cisco Systems Inc., Mr. Bayad had applied for the position as a Systems Manager or System leads Engineer for North Africa region, and since Mr. Bayad speaks the languages of Arabic, English, French, and North African Dialect. He was considered well suited for the position by Cisco Europe Division.

89.    Mr. Chris Dedicoat's team of Managers (no Arabs/American as Executives in Cisco) of **Cisco Systems Shared Middle East, Africa** – France were very impressed about Mr. Bayad's technical background, and decided **to fly him** halfway **around the world** for 3 very lengthy and tough rounds of **interviews** with several Engineers and Managers from 3 different countries, the **United Arab Emirate (Dubai)**, the **United Kingdom (London)**, and **France (Paris)**, all within **3 days time period**.

90.    All the European Managers reported to Defendant John Chambers and the interview went very well and Mr. Bayad was offered a verbal offer by the Manager of the region. **(Travel Documents, Visas, places, and Managers 'names contact will be Provide during discovery of the 3 days trip half around the world.**

91.    Upon Mr. Bayad return from his trip he was advised by several European

17

Managers that the decision to hire him was **standing at Cisco Corporate** office in California (Meaning John **Chamber's office**).

92.    Mr. Bayad was acquainted with the Defendants intend to construct the "**Chinese wall**" to **bar** him of all the **enjoyment of life** and block him from being promoted or even of being able to **support his families** ( paying the bills).

93.    The **Managers of Cisco Europe** have **invested** a considerable amount of money approaching more than **$10,000.00 dollars** in travel **expenses** and **time**. They spot him as a well suited and a professional and a potential  candidate to the **North African regions.**

94.    It was with certainty that Mr. Bayad was a perfect match for Cisco Africa regions because of his technical background and his abilities to speak the languages,  such as the English  in the East, West of Africa; French and Arabic in Africa.

95.    Mr. Bayad was also an **American Born in Casablanca Morocco** a 30 Minutes distance duration of **Spain** and **Gibraltar**, and who is well **acquainted** with all the of obligation and the understanding of the **North Africans** way of doing  business.( As was said by Defendant **Carl Wiese** Arabs as you (Mr. Bayad) are **disbarred** of being **promoted as Managers**  and  **Executives at Cisco Systems Inc.,** or **Lucent** .

96.    Mr. Bayad was very **distress** of these inequitable treatments **targeting** him, Mr. Bayad decided to write a letter to Defendant **John Chamber** and to **Rick Justice** the Vice President of world wide operation for Cisco Systems and copied Defendant John Chambers in it.

97.    In the Letter Mr. Bayad laid down his concern and advised him about this unfair

treatment and misconduct, knowingly he was over qualify for this position.

98.      Rick Justice or defendant John Chamber had not replied to Mr. Bayad's

request for immediate attention to his matter. It was a clear sign that they were admitting

their misconduct. **The Letter of correspondence in this matter is in both computers of**

**Mr. Bayad , Defendant John Chambers, and Rick Justice.**

99.      Mr. Bayad had the fortuity to meet with Defendant John Chambers for the first

time in New York City,  where he was conducting a meeting with Key Span Energy

at Cisco office of 10 Pen Plaza New York. **(Travel document and expenses**

**reports of both Mr. Bayad and Defendant John Chambers, and Testimonies of**

**Cisco Client Key Span Energy about the meeting that took place in Cisco office 10**

**pen plaza New York).**

100.   Mr. Bayad was assigned to a project of migrating NY 'Office from the

old phone systems to the new IP Telephony call Manager (AVVID).

101.   While in the office of New York Defendant John Chambers had made contact

with several Cisco Employees, spoke to every one of them, but  ignored Mr. Bayad. It

was a clear behavior of dislike toward him.

102    On about April/ May 2001 time frame, Mr. Bayad for the second time met

personally with Defendant John Chambers, and who was conducting a town meeting in

Massachusetts. Mr. Bayad, and all his coworkers was also Invited, He had the chance to

speak with Defendant John Chamber and to confront him about this conspiracy and

discrimination aimed specially against him.  Defendant John Chambers ignored and

walked way fearless to another crowd tried to avoid Mr. Bayad.

103.   **In  May of the year 2001**, Mr. Bayad was taking by surprise and terminated from

his Employment. Lynn Fraser used a ridicules excuse such as the economy was the reason why he was terminated from his employment. (Lay off)

104.    During the time of Mr. Bayad's termination with Cisco Systems, Lynn Fraser under the direction of Defendant John Chambers and Anthony Savastano, had created the same stressful environment as Lucent Technologies have accomplished back in **January 23rd of 1997**, to purposely frighten Mr. Bayad knowingly he was mentally and physically abused while employed with Defendants at Lucent , likewise she had Mr. Bayad in close doors and at presence of Cisco Systems Corporate Police while he was signing with **obscure ness a Cisco Systems 'documents or contracts.( the obscure Cisco documents will be read and provided during discovery).**

105.    Lynn Fraser unconditionally mandated Mr. Bayad stressfully to sign Cisco documents approaching to twenty pages that was signed without any prior notice or review.

106.    The asserted reason for Mr. Bayad's termination was completely **pretextual** since Mr. Bayad **exceeded** his white coworkers, **Robert Tracy, Mike Ippolito, Brian Low, Jeremy Nooman,** and even **exceeded** his manager **Lyn Fraser,** in any territorial **expertise,** of **educational background** or **Internetworking technologies field.**

**Exhibit S attached to the complain** of Mr. Bayad s experiences and achievement **during his 10 years in the Data Internetworking field and will be compared against the qualification if his Manager Lynn Fraser and his Coworkers who did not get fire as Mr. Bayad was.**

107.    Defendants and specially Savastano was athirst to cause mental and emotional

distress, and loss of enjoyment of life, and; include injury to character and reputation , and injury to credit standing ( He did not succeed this time around at Cisco ).

108.    Shortly after his termination, Lynn Fraser called Mr. Bayad on his Cell phone and admitted to him the asserted reason was not her decision and it was the sole action of **Cisco Corporate** ( Meaning from Defendants), and she will inform  Mr. Bayad of any opening in the nearest future with Cisco.

109.    Lynn Fraser'  call to Mr. Bayad was **alerting**, as she was not a **trustworthy "persona"**.

110.    Mr. Bayad informed her that he was in Florida trying to open a consulting firm (a new company of his) , and welcomed her  if she can assist him with any advise or sales ' leads to jump start his company, Knowingly her contact that day was  to ascertain the effect of her discriminative conduct

111.    Subsequently upon Mr. Bayad 'termination of employment with Cisco, on about May 30th of 2001, **Bruce Bastian** a Systems Engineer **Manager** sent a **"wicked racial Audio "via Electronic mail** within **the authority of Cisco Systems** 's way of mail communications, intentionally to Mr. Bayad's coworkers with Cisco Systems Inc.

112.    The directive audio that was sent and  was controlled with **"multifarious racial jokes"** about Mr. Bayad 's ineptitude to verbalize the expression of the English tongue, clearly ridicule any and all **foreign nationals,** sound stylish and  **feebleminded of the** of **English palaver,** and relate to employees getting terminated as Mr. Bayad was.

113.    The **consignation** of the multifarious **racial jokes** audio was titled as Follow: **hate this "Fucking " job, and I will be fired; I have just been fired , and By-By-everybody; I need a "P" quick and my Etc...),**  and it  goes on and on. It is a shame.

21

114.    Moreover Rick Justice and all other Cisco Executives admitted of Bruce Bastian'

misconduct of sending the racial audio email , and as quoted from their email of ,

correspondence; The email was racist in nature and against all minorities with broken

English (It was Cisco 'policy and customs). Unfortunately they do not terminate White

employees but only Minorities if they violate the Cisco Business conduct. **Exhibit T**

**attached to the complain** as copy of the email and CD contains multifarious sound as

word perfect , click and listen.

115.    At all the time pertinent to this complaint, The Defendant John Chambers had an

employee hand book and a stated policy barring discrimination and retaliation on the

basis of race, religion, and origin. **Exhibit U attached to the complain** of Defendant

**John Chambers of Cisco Code of Business Conduct.**

116.    **Along the multifarious racial** Email from Se Manager Bruce Bastian, Defendant

**Anthony Savastano** visited a coworker Mr. Amado Navas Cisco Channel Manager out

of Tampa office Florida , to let him know personally that Mr. Bayad or any Minorities

including Mr. Navas , has **no business in Cisco Systems** a company of **His Friend**

Defendant **John Chambers**. Mr. Bayad was informed by Mr. Navas a Spanish employee

of Defendant John Chambers of Cisco Systems as **Follows** ( **Exhibit V attached to**

**the complain** of Cisco Channel Manager letter of correspondence) :

" Mr. Bayad,

Per your request I am enclosing this electronic mail message sent with the sole purpose of

ridicule your termination from Cisco Systems by Tony Savastano and Bruce Bastian. The

content of this email is public record currently under review by the US Federal of the

Middle District of Florida in Tampa. This email was sent as a warning and ridicule to all

employees of foreign origin that work at Cisco and want to pursue a management career. The white employees above mentioned warned both me you that we would be terminated if we attempted to seek promotions and or transfers to better jobs within the company. I know this fact because Mr. Savastano came to the St Petersburg office soon after your Termination in early May of 2001, to verbally warn me, and ridicule both me and you. That people like me and you would not be allowed to stay at Cisco Systems. He said that he took care of us at Lucent with the help of Patricia Russo, and know he would take care of us again with the help of Carl Weise.

If you have any questions at all about my case please do not hesitate to contact me, since it is a matter of public record. If you aware of any other individuals that are also victims of this discriminatory behavior, and the conspiracy led by Savastano, Wiese and Patricia Russo please let me know immediately.

Respectfully,

Amado Navas"

117.    After his termination Mr. Bayad was vesting time **and Money** to achieve the **Cisco Certification Internetworking Expert and "CCIE**, which it comprised of two parts, the **writing** and the **lab Exam,** was designed by Defendant **John Chambers** and his company Cisco Systems Inc., to favor only the **White Engineers** in the field of internetworking Technologies field.

118.    Defendants accession of discrimination and disparate treatment against Mr. Bayad proceeded far more of their jurisdictions with threatening to restrict Mr. Bayad from  taking his  **CCIE Lab exam** and  since Mr. Bayad successfully  passed the Written exam that  was administered  by **Silva Prometic  Company. The written Exam** was out of their control. Unfortunately the CCIE Lab was not. John Chamber has all the

jurisdiction under his control and Mr. Bayad was scheduled for the CCIE lab exam which due in February of the year 2004, in Sao Paolo Brazil. **Exhibit V attached to the complain of the threatening and restraining Mr. Bayad's right as share holder to pursuit his certification as white Engineers of Cisco.**

119.    The white Engineers were **(cheating)** given the original copies of the actual exams of the CCIE, and were **facilely appointed as the best Engineers** in the field of internetworking technologies field. They were **compensated a subsequently a** ridiculous amount of money exceeding a  some of **$200,000.00** dollars; and  **some of them were high school drop out. (Bruce Brewer and Dale Ronowski one of them)**

120.    On about between the **year of 1996 and 1997,** Mr. Bayad was an eyewitness Defendant Anthony Svastano aided two persons of common ancestry (white person) **Bruce Brewer** and **Dale Roznowski,** were provided **the original exams** copies for the **Cisco Certify Internetworking expert level. Exhibit Y attached to the complain** of the CCIE copies dated the year of 1997 **that was given to Mckinney, Brewer, and Ronowski.**

121.    Like wise Defendant Savastano promoted Bruce Brewer and Dale Ronowski to Management positions while at Lucent and Dale Ronowski while at Cisco.

122.    Mr. Bayad was also au courant of neither Bruce Brewer nor Dale Ronowski has worked for any fortune  500 companies as Mr. Bayad did, nor they have graduated from any University in the U.S as Mr. Bayad had accomplished,  and ought to pay back over $60,000.00 of Governments students loan.

123.    **Cisco Travel Expenses reports** will show Defendant Savastano took mission trips or tours to Tampa (Florida) at the account of Cisco Systems to visit his  friends Dale

Ronowski Cisco Systems and Bruce Brewer with Lucent Technologies In, and to deliver

His personal message of superiority to the Channel Manager of Cisco Systems and .

Spanish ethnicity about Mr. Bayad' termination.

124.    While working with Cisco Systems Mr. Bayad (recall) had obtained a copy of the

CCIE exams that was distributed to only white Cisco employees by Cisco Systems

Managers Gene Popula was given them to his friends at the Lab of Cisco Lexington,

Defendant Anthony Savastano provided them to his Friends Bruce Brewer and Dale

Ronowski , and John Chambers made it available to Mckinney of International Network

Services Inc., and Patricia Russo of Lucent Technologies for her Engineers in Tampa.

**the updated copies of the CCIE Lab exam will be provided upon request ( they are**

**too many copies)**

125.    On about September 2001, Mr. Bayad founded a company, Global

Internetworking Consulting Inc., that engages in the computer and networking

technology, security, IP telephony, client server technologies, and routing and switching

technologies. **Exhibit z attached to the complain of Company GIC registration in**

**Massachusetts**

126.    Mr. Bayad invested his retirement saving to promote his company Global

Internetworking Consulting Inc.,("GIC") and became partner with other solutions

provider such as Cyber guard Inc., Kalix Inc., for Surveillance and Security, and

Cisco Systems Inc., Routing and a Switching Technologies.

127.    GIC has chosen these service providers as Cisco Systems for its customers, to

build a strategist alliances and business relationships, and **GIC was acting as the front**

Liner for Cisco Systems Inc., to promote and to recommend all the Cisco System's

products and services according to Cisco Systems agreements and guidelines.

**Exhibit X-1 attached in the complain the copy of the registration of Global**

**Internetworking Consulting as Cisco Register Partners.**

128.    Mr. Bayad  was the owner of  Global Internetworking Consulting Company , he

was also aware of  neither of Defendants John Chambers for Cisco  nor Patricia Russo

for Lucent Technologies,  do not promote or **support small business minority owner**

**of companies**, in fact they only promote white businesses as they have done with

Mckinny of International networking Services and not with businesses owned as Mr.

Bayad.

129.    Additionally Defendants John Chambers **did not provide any Business** support

to Mr. Bayad 's company GIC as  he did with his friend **Mckinney of INS,**  and the fact

shows Mr. Bayad requested from **Cisco SE Nick Brandaleone** to provide him with the

name of Cisco Sales Manager for (GEM) Jim Skeele.

130.    Mr. Bayad was a customer and partner of Cisco Systems and it was of his right  to

schedule a business meeting ( Business orientation) to discuss some opportunities  that

GIC will bring to Cisco Systems and vice versa, neither **Jim Skeely of Cisco** nor any

other **Sales Manager of Cisco Lexington office** had contacted Mr. Bayad, and the reason

being of their authority. They proceeded as instructed by Corporate ( meaning John

Chamber) not to do any businesses with minorities and Arabs as Mr. Bayad).**Exhibit X-**

**2 attached to the complain of the request made to  the Cisco SE Nick Brandaleone.**

131.    Each time Mr. Bayad visited Cisco Lexington Office, where it is white race

only dominating office, and  every one from Cisco  was alienating them selves from Mr.

26

Bayad as he was a **criminal or in the Federal Bureau of Investigation ' most wanted list.**

132.    Hence since he left Cisco Systems Inc., in good term and was told he was eligible for rehire (Supposedly).  Mr. Bayad corresponded with his Manager and since she informed him back in May of the year 2001 that he was eligible for rehire,  he also informed her of his intend to apply , he even sent a letter to Human resources who replied back by encouraging  him to apply. Unfortunately when they process Mr. Bayad's application it get stalled and it get  denied the right  by Defendants and the excuse is always Corporate ( meaning Defendants).

133.    Mr. Bayad was destroyed economically and his business was not doing well , he decided to put his resume out in the market by applying  with Cisco as he was told by his good Cisco coworkers about Cisco employments opening.

134.    On about **September 30 of the year 2003** to **present time**, Mr. Bayad had applied of  **multitude employment** opportunities within Cisco Systems Inc., and  noted as " **Cisco requisition** ";

1) **Requisition 714007** contact name Michael Kent, 2) **Requisition 713667** contact name Niki Peleuses,3) **Requisition 713906** contact name Michael Kent,4) **Requisition 713644** contact name Niki Peleuses, 5) **Requisition 713123** contact Michael Kent, 6) Requisition 711846 contact name Chuck Ramsburg, 7) **Requisition 711780** contact Domick Delfino, 8) **Requisition 72133** contact Scoot Lovett, 9) **Requisition 712669** Michael Kent, 10)  and **Requisition 713950** Liz Bacchi, and many more.

**Exhibit X-3 attached to the complain of all the inquiry regarding opportunity with**

Cisco Systems Inc.

135.    These individuals named above were all Manager of Cisco Systems Human

Resources, and all have been contacted via **Electronics Emails and certified mail.**

**Exhibit X-4 attached to the complain** a correspondence to Human Resouces and

**Lynn Fraser of Mr. Bayad complaining about this inequality within Cisco.**

136.    **Untowardly they did not** confirm nor acknowledgements Mr. Bayad's pursuit of

opportunities with Cisco Systems Inc., because of the inequality policics Seth forth

intentionally against Mr. Bayad. They were interfering with his rights and his way of life.

137.    In good faith Mr. Bayad had complied fully with all Cisco's requirement including

signing unspecified documents during his exit interviews, and vis-à-vis with Lynn Fraser

Mr. Bayad was informed that he was eligible for rehire after one year from the time he

was Terminated, and presumably her excuses was the economy. It was a clear conspiracy

aimed to terminate him without justifiable cause.

138.    When Mr. Bayad applied for an open positions with Cisco Systems Inc., and dealt

**directly** with  the hiring Manager as he did with  **Robert Bardani an SE Manager** with

Cisco Systems, who shortly replied and asked Mr. Bayad to provide a convenient time,

for a Telephone Interview. **Exhibit X-5 attached to the complain** of the

**communication with Robert Bardani.**

139.    In the final stage of the interview Mr. Bardani asked Mr. Bayad about his

preceding direct Manager Lynn Fraser, to contact her regarding the  history of  his

employment with Cisco Systems Inc., and after he spoke to Lynn Fraser he lost interest

for no reason. It was obvious conspiracy that was aimed at Mr. Bayad.

140.    Additionally Mr. Bayad has **directly** contacted  **Mike Kent of Cisco Systems**

Inc., He was very professional and welcomed Mr. Bayad back to Cisco.

141.    He was willing to proceed further in the application process. His team sent an electronic mail indicating that Mr. Bayad was considered for a position with Cisco Systems, an application is required to be filled in order to proceed further in this process. **Exhibit X-6 attached to the complain** of the correspondence of Mike Kent **indication of Corporate intention of discriminating against Mr. Bayad.**

142.    About all Bayad has **complied entirely** with all the Cisco requirement and demands, but Unfortunately Mr. Kent sent back an **electronic mail** to Mr. Bayad stating in it as **Follow:**

"**It is all in the Management hand**" meaning Defendants **John Chambers, Carl Wiese,** and **Anthony Savastano.** Mr. Bayad had never heard from him again and it was "**anew**" pattern of behavior and conspiracy against Mr. Bayad, and frimely it was proven by the Hard copies of all correspondence Sent back and forth by **Cisco European Managers, SE Robert Bardani, and Mr. Kent, have taken** in regarding the hiring of Mr. Bayad (the decision to hire Mr. Bayad is a decision of **Corporate, Defendants John Chambers, Carl Wiese, Anthony Savastano**).

143.    On about **December 3rd of the year of 2003,** Defendants deliberately sent an employment email of correspondence to Mr. Bayad requesting him to provide his Ethnic race background and his genders before Cisco Systems a company of Defendants John Chambers can proceed in the regards of his hiring decisions of Mr. Bayad, and it was a clear act of Discrimination that is totally unlawful and contradicting the **Fair Labor act and the Massachusetts Rules of Law.**

29

144.    This unlawful employment of race preferences and practices that was intentionally

consigned by Defends in retaliation of Mr. Bayad as Arab of Race. **Exhibit X-7**

**attached to the complain of Cisco making sure that the applicant Are white**

**Engineers and not black before being hired and Defendant John Chamber of Cisco**

**is still living the 1960's the era of Ms. Rose Parker.**

145.    Defendant **John Chamber the President of Cisco** cannot deny nor can he

provide a defense in this litigation to such information is for the sole " pretext" so

called "EEO" and it is volunteered information only , or it is not requirement, and if it is

assumed required based of his policy ,then it should have been **provided to Mr. Bayad**

and all Cisco employment applicant" **when" they have finalized and secured their**

**positions with this company called Cisco , and then Cisco can proceed with the**

**request of race identification or as he calls it "self identification" as matter of**

**privilege, but unfortunately it was not the case with Mr. Bayad as Arab.**

146.    Moreover Defendant **John Chamber the President of Cisco** "over" again of his

selection policy targeted only **American minorities applicants** of color as **Black, Arab,**

**Spanish, Indian** has violated the Title VII of Civil Act of 1964, codified at 42

U.S.C. and 42 U.S.C section 1981 and 1985, the Fair Labor Law Act, and the Law of

Massachusetts. Defendant john Chambers's misconduct has lawfully admitted to count I,

II, V, and VIII of this complain.

147.    Mr. Bayad who may proceed of fear of not complying with John Chambers 's

Race so called self identification's request of being rejected, and forcibly proceed with

Defendant John Chambers 'demand to identify his race of origin, and even though he

has not "secured"nor have been "**guaranteed**" a **Job** with Defendant **John Chambers**

of Cisco Systems Inc., and  by intentionally sending him the letter of race definition before hiring him. Defendant John Chambers intentionally discriminated against minorities and Mr. Bayad as an Arab.

148.    Defendant John Chambers **"barbarously"** proceed even further by demanding Mr.Bayad,  to submit a letter from his current employer Aztec Inc. and even though no decision of employment was offered to Mr. Bayad with Defendant Chambers, Cisco Systems. Defendant John Chambers's policies mandate Mr. Bayad to furnish an employment of authorization or release letter sign and dated from his employer Aztec Communications and for the purpose to be eligible to work with his company Cisco, and it is clear abuse of power and the Law by Defendant John Chambers.

**Exhibit X-8 attached to the complain Mr. Bayad requesting a letter from his current employer in order to be considered for hire with Cisco Systems.**

149.    And John Chambers and his company Cisco Systems upon receiving the letter from Mr. Bayad 's  employer Aztec Communication, he request one of his Manager as Lynn Fraser to find out about Mr. Bayad 's  current salary from his employer Aztec Communication Inc, even before considered or hired with Defendant John Chambers Cisco Systems Inc. Again Defendant 's conduct is only targeted Mr. Bayad.

150.    Defendant John Chambers disrespectfully neglected the fundamentals **Rules of Law Seth forth in this complain** that strictly prohibit all person and employer such as Defendant John  Chambers of **Cisco** or Patricia Russo of **Lucent** to intentionally threats person as Mr.Bayad differently because of his/her **race**, or national origin; then to pose a specific disparate of treatment of  certain race as Defendant John Chamber of

Cisco or Patricia Russo of **Lucent** have done with Mr. Bayad , and to conspired to intentionally causing emotional distress, mental anguish, and loss of enjoyment of life; and defamation including destroying his Character and reputation as Defendants John Chamber of **Cisco** or Patricia Russo of **Lucent** have done to Mr. Bayad.

151.    Employers as Defendant John Chamber of **Cisco** or Patricia Russo of **Lucent** are Liable (**law of Tort**) of conducting any internal investigation intentionally for personal reason and aimed to hurt that person as they have done with Mr. Bayad , by summoning any employee as they did with Mr. Bayad for the sole purpose to conduct a **pretextual** so" **called** "company internal investigation or termination of employment; both conducts **run parallel** and **produce the same result**, and Employer as Defendants should proceed with cautious in such process as deemed respectfully and appropriate to the well being of such person, as they did not with Mr. Bayad, and the interview **shall not be conducted by one person** and absolutely no close doors as they have done.

152.    Moreover if so called Cisco or Lucent "Corporate Police" is conducting the interview then the interviewer shall inform the person as Mr. Bayad of his rights at the presence of a person or witnesses and in open doors at the convenience and at the direction of such person as Defendants did not, additionally if Defendants John Chambers or Patricia Russo believes the matter is criminal as they have accused Mr. Bayad then you should have been handled by the Law enforcement and with the judicial of such district. Unfortunately Defendants took the matter in their own hand and acted intentionally and against the Law and a violation of his Civil Rights.

153.    Defendant John Chamber of **Cisco** or Patricia Russo of **Lucent** cannot deny the fact that Cisco Systems Inc. or Lucent is **"designedly"** setup to allocate white race only to

be admitted to the Program of Cisco Certify Internetworking Expert and to Managements

positions, and which group of ethnicity ( race) will be dispensed from the job market of

the Internetworking Technologies Field, as they have done to Mr. Bayad.

154.    Mr. Bayad is in mental chock as a young American man of 37 years old,

unemployed even though he is a college grad, and a hardworking citizen. He was

definitely escorted with his family too poverty and to the berth end of misery.

Defendants had successfully set him up to be eligible as an applicant for Public assistance

and Welfare programs, and absolutely without remorse or opportunity in his field of

Internetworking, as it is always said "in our country as ours, America is a land of

opportunities and the right of due process for all the citizens"

155.    Unfortunately, Mr. Bayad is now living in poverty in Massachusetts and rather

far of his salary of 120,000.00 dollars and his contribution to thhe U.S government of

more than 40,000.00 in taxes of every single year.

156.    Moreover Defendants intentionally promoted Mr. Bayad 's coworker Robert

Tracey who has no education nor has he did not work for any fortune 500 companies nor

has he achieved any internetworking certifications. He was promoted purposely as they

have done in the past with others and knowingly he was thought data internetworking and

trained as Cisco Associate Engineer (CCNA) with the leadership of Mr. Bayad.

157.    Cisco employee Robert Tracy was given promotion and relocation packages

estimated more than 100,000.00 dollars. Defendant John Chambers purchased his House

in Massachusetts and bought him a new house in New Jersey and gave him a public

Stocks option Cisco Systems worth more than **800,000.00 dollars and his Cisco**

**portofolio of public Cisco Stocks options is more than 1,000,000.00 dollars, and**

33

simply to sent a message to Mr. Bayad that the American Dreams are only for White and

not for Arabs, Blacks, or Spanish. As of the birth of the year of **1997 to present time** Mr.

Bayad and his family have suffered financially and mentally at the hand of Defendants.

158.    Mr. Bayad as human being with emotional distress brought to him by defendant

and without control of his anger and depression , Mr. Bayad decided to inform

Defendants about their misconduct and his intention of a pursuit of a legal action that

implicating them as **liable** of the **crucifixion  of his career and his way of life**.

159.    Defendants responded shortly as accustomed with retaliations and humiliations

with emails containing **police badges** and threatening letters from their **powerful**

**Co-council** who is also an **officer of the court** and knowledgeable of the rules of

**professional conduct & Ethics** that states as follow : " An attorney as **Cisco Co-counsel**

shall not engage in conduct in connection with the practice of law that is prejudicial to the

administration of justice, including to knowingly or through callous indifference,

disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel,

or other lawyers on any basis, include, but not limited to , on account of race, ethnicity,

gender, religion, national origin, disability, martial status, sexual orientation , age

socioeconomic status, employment, or physical characteristics".

160.    Cisco Co- counsel was viewing Mr. Bayad as a terrorist and second class citizen.

He intentionally encouraged of the threatening emails targeting Mr. Bayad , and plan to

arrest and apprehend him   as of **January 20  the year of 2004 of any of his visit to any**

**of Cisco Systems offices.**

161.    **As stated in their threatening legal Letter dated as of January 20 of the year**

34

2004, Defendants and Cisco Co-counsel begun intentionally sending soliciting conspiring emails and invitations dating as of January 20 if the year 2004 and were served to welcome  Mr. Bayad  to Cisco Systems for the sole purpose to arrest and to reprimanded him as a criminal and terrorist even though in their letters mandating in it no contact what so ever with Defendants and vice versa.

162.    The fact show Mr. Bayad is not criminal nor terrorist nor  a second class Citizen, but  an honest American Citizen and a person who is registered with the United States Selective Arms Services and was willing to volunteer with the United States Central Intelligent Agency without pay just to save life of our Men and Women of the Arms Force. Exhibit 10 attached of the Complain is Letters by the CIA and Mr. Bayad requesting to volunteer without pay to serve in IRAQ and Elsewhere.

163.    Moreover Mr. Bayad was employed by a much known family Mahon family in Boston. Mr. Bayad and Mr. Mahon were responsible for network and security design of Massachusetts government agencies that include all the Police Stations, all the court houses, District Attorney, Criminal History Build in Chelsea, and Miami Airport as well. We all can agree about Mr. Bayad well proper reputation and honesty. Exhibit X-9 is soliciting email and threatening letter by their Co counsel and Defendant John Chambers with  Cisco Systems Inc.

164.    The real dishonest individuals are the Defendants themselves who are in violation of United States Securities and Exchange as they are currently holding strategic positions with Cisco Systems as V.P of accounting and Finance and, and Sales & advance Technologies and working on conspiring deals to only  favor their Stocks options over others as they have done with "Sir" Mckinney with International Network

Services who sold a company INS that has none of liquid able assets or any valuable intellectual properties innovations but simply it was a company admired by John Chambers as business and reseller of Cisco products.

165.    Furthermore Sir Mckinney of INS **derailed** and **cons** the Wall Street and Share holders by introducing a **bogus Software** and calls it **INS Management software** at value **of 3.5 Billions** as Defendant Patricia Russo pretended.

166.    During the period of Defendant Patricia Russo closing the deals with her Friend Mckinney of INS, all the INS engineers were offer employment with John Chamber of Cisco Systems Inc., and all INS Engineers were Cisco Certify Engineers by his contributions and his generosity to his friends as McKinney.

(It is facts backed up by witnesses). It is a violation of Law and Securities fraud.

167.    As always, Defendants are exchanging of crucial information and vice versa about AVAYA Inc., Lucent technologies and Cisco Systems. They are purposely favoring their Cisco , Lucent, and AVAYA ' public Stocks options and looking forward of their values to increase (Securities fraud). **Exhibit X- 11attached to the complain**

168.    **On about February 25, 2004 Lucent Technologies and Cisco Systems unveil joint** voice over IP offering their mobile service providers and the reason behind of this **amicable relationship** was for personal **profit from the public offering Stocks** of **Lucent** Technologies and **Cisco Systems**, It is an unlawful joint venture and clearly evidence that they belong to the good old boys clubs beginning of he year 1997. Defendants are openly admitting of their engagement of aggressions and conspiracy against Mr. Bayad that had begun since January 23 of the year 1997 to present.

**Exhibit X-12 attached to the complain** of Lucent news wire.

169.    Respectfully to this **Honorable Court** and to the **American Tax Payer**,. Mr.

Bayad whish not filed multiple separate law Suites for multiple violation of his Civil

rights and Discrimination; retaliation and defamation, conspiracy against all defendants.

170.    For all the facts Seth forth in this complain, and since Plaintiff Anthony has

suffered great deal of pain and emotional distress, mental anguish, and loss of enjoyment

of life, and; include injury to character and reputation (defamation), and injury to credit

standing. **Therefore Mr. Bayad respectfully demands as matter of right the**

**following:**

## COUNT I
## RACE, ETHNIC NATIONAL ORIGIN
## IN VIOALATION OF MASSACHSSETTS LAW

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

171.    Mr. Bayad incorporates as if realleged paragraphs 1 through 170 of the complaint.

172.    By disrespectfully neglecting the fundamentals **Rules of Law Seth forth in this**

**complain** that strictly prohibit all person and employer to intentionally threats person as

Mr.Bayad differently because of his/her **race,** or national origin; then to

pose a specific disparate of treatment of certain race , and to conspired to intentionally

causing emotional distress, mental anguish, and loss of enjoyment of life; and defamation

including destroying his Character and reputation.

173.    By conducting any internal investigation intentionally for personal reason

aimed to hurt Mr. Bayad, by summoning Mr.Bayad for the sole purpose to conduct a

**pretextual so" called** "company internal investigation or termination of employment; by

knowingly both conducts **run parallel** and **produce the same result,** By proceeding

recklessly in such process as deemed disrespectfully and inappropriate to the well being

of Mr. Bayad, by interviewing conducting the interview by one person and with close

doors, by allowing the Corporate police to conduct such interview and knowingly it is

unlawful, and by failing to inform the person of his rights at the presence of witnesses

and in open doors at the convenience and direction of such person as Defendants did

not, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42

U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts

State law.

## COUNT 11
## DISPARATE TREATMENT
### (Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)

174.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

175.    By intentionally treating Mr. Bayad differently because of his Arab Race, by

failing to provide equal employment opportunity and by failing to truthfully investigate

and reprimand all employees as Mr. Bayad, by not providing equally protection, by

purposely restricting Mr. Bayad promotional opportunity, and by harassing him.

176.    By restricting Mr. Bayad of achieving the Certify Cisco Internetworking Expert,

by discriminating against him, and finally terminating him one time with Lucent and

second time with Cisco Systems on account of his race,

177.    By encouraging or participating of the distribution of the multifarious racial jokes

 and remarks aiming at Mr. Bayad as an Arab, by excluding him from certifications

and promotion, By sending him soliciting emails with the police Badge intentionally

aimed to scare him, by threatening him with restraining order and knowingly he is

a Business owner and partner and reseller of Cisco,

178.    By implementing race preference in hiring and firing of employment selection, by

recklessly, maliciously, injurious negative, communicating a false information to the

Police and to cause  Mr. Bayad to be committed in psychiatric ward,

179.    By  locking him in room, and abusively interrogating him, by firing him while

lying in the ambulance and with an I.V. in his arm , and by taking his business address,

his pager was wet and not operational, and his corporate American cards despite the fact

the card had already been deactivated, by intentionally humiliating tortured.

180.    By Firing wrongfully terminating him while with Lucent Technologies and once

again with Cisco Systems, Defendants are in violation of Title VII of the Civil Right Act

of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. §

200a, and Massachusetts State law.

## COUNT III
## FALSE IMPRISONMENT
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

181.    Mr. Bayad Incorporates as if realledge paragraphs 1 through 170 of the Complain.

182.    By unreasonably confining Mr. Bayad to a locked room at Lucent & Cisco office

against his will and by refusing to let him leave that room, by keeping the door locked

with out his consent , failing to keep the door open and by failing to have  the Corporate

police informing him about his rights, failing to not allowing him to leave, by forcing him

to sign document against his will in a locked room, by having Mr. Bayad to  **obey** to spent

a **72 hours in the psychiatric ward**  Sun cost Mental Hospital, Defendants are in

violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42

U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a, and Massachusetts State law.

## COUNT IV
## INTENTIONAL INFLICT OF EMOTIONAL DISTRESS & ENJOYMENT OF LIFE
### (Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)

183.    Mr. Bayad incorporates as if realleged Paragraphs 1 through 170 the Complain.

184.    By engaging in a concert effort to harass and discredit Mr. Bayad, by fostering a

hostile environment, by locking him in room, screaming at him and hitting him and

falsely accusing him of finances fraud, by firing him from his employment while

he was in an ambulance on the way to the hospital, by ordering, arranging, and

encouraging Mr. Bayad 's confinement in a psychiatric hospital, by leaving him stranded

in largo after his release form the hospital without any money stranded in Largo after his

release form the hospital without any money or mean of transportation back to his home,

and by swearing out of a trespassing complaint against him while he was hospitalized and

after he had been specifically ordered to come to the office by Defendants while working

and associating with  Defendants at Lucent Technologies Inc.

185.    By repeating the same long standing of misbehavior against Mr. Bayad  while

working and associating with Cisco Systems, by engaging for the second time in a concert

effort to harass and discredit Mr. Bayad, by fostering a hostile environment, by locking

him in room, By unconditionally mandating Mr. Bayad to sign documents approaching to

twenty pages that was signed in locked doors at presence of Corporate police, by causing

Mental and emotional distress, loss of enjoyment of life, injury to character and

reputation and injury to credit, by keeping him from achieving the Cisco Certification

Internetworking Expert, By interfering with his way of life, by denying him business

opportunities for his company, by lying to him for rehire, by denying him employment .

40

186.    by intentionally sending email with multifarious racial jokes toward Mr. Bayad

Arab Race and requesting his race and gender before being eligible for hiring while

working and associating with Defendants at Cisco systems Inc., Defendants are in

violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42

U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a,  and Massachusetts State law.

## COUNT V
## CONSPIRACY
**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

187.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

188.    By discharging him whit not cause with Cisco Systems, by terminating Mr.

Bayad 'employment from International Networking Services and Cisco Systems, by

denying equal privilege as white employees, by engaging in mental and physical torture,

189.    by accusing him of stealing and finance fraud, by restricting him access and

achievement to Certifications, by denying promotion, by interfering with life, by

intentionally sending multifarious racial jokes, by unreasonably confining Mr. Bayad to

locked room at Lucent Technologies  and Cisco Systems, by refusing to let him leave that

room, by ordering, lying to the police and Fire Rescue, and causing Mr. Bayad 's illegal

an unwarranted confinement in a psychological ward, the Defendant have violated

## COUNT VI
## BREACH OF CONTRACTUAL OF OBLIGATION
## BUSINESS & EMPLOYMENT  RELATIONSHIP

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

190.    Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the Complain.

191.    By failing to follow its own personnel policies and procedure and procedures

on evaluating, promoting, and providing equal business and employment opportunity, By

41

restricting fair access to the Cisco Certifications, and the support material needed for his

business , and  by failing to truthfully investigate an reprimand the author of the

multifarious jokes against Mr. Bayad and the other conspirators in discrimination ,

192.    By providing  a full support to  **Sir (McKinney)** the  owner of INS Inc.,

Defendants has breached its contractual obligation to Mr. Bayad in violation of

Massachusetts State law.

### COUNT VII
### Wrongful denial of Ceritification to candidate of Arab race
### Against all Defendants

**193.**    Mr. Bayad incorporate as if realleged  paragraph 1 through 173 of the complain .

194.    By restricted  and threatened Mr. Bayad from  the **taking of the CCIE Lab**

**exam** that was due in February of the year 2004.

195.    By promoting and aiding two persons of common ancestry (white person) **Bruce**

**Brewer** and **Dale Roznowski,** were provided **the original exams** copies for the **Cisco**

**Certify internetworking expert level.**

196.    By promoting and allowing only white Engineers **cheating** and given the original

copies of the actual exams of the CCIE, and which they were **facilely appointed** as the

best **Engineers** in the field of internetworking technologies field, and favoring them and

**compensating them subsequently** a ridiculous amount of money exceeding a  some of

**$200,000.00** dollars over minorities as Mr.Bayad , and by giving Sir Mckinney all the

Exams in order to raise His company INS 'Stocks values, Defendants are in violation of

Title VII of the Civil Right Act of 1964, codified at 42 U.S.C. § 407, 42 U.S.C. § 1981,

42 U.S.C. § 1985, 42 U.S.C. § 200a and, Massachusetts State law.

## COUNT VIII
## RECONSTRUCTED ERA CIVIL RIGHTS ACT CLAIM
### Against all Defendants

197.    Mr. Bayad incorporates as if realleged paragraphs 1 through 170 of the complaint.

198.    By deliberately sending Mr. Bayad a correspondence requesting him to provide his **race** and his **genders** before Cisco Systems a company of Defendants John Chambers can proceed in the regards of the decisions of hiring.

199.    By **barbarously"** proceeding and demanding Mr.Bayad, to submit a letter from his current employer Aztec Inc. and even though no decision of employment was offered to Mr. Bayad with Cisco, by mandating Mr. Bayad to furnish from his employer a letter of employment of authorization for no purpose simply to work with his company Cisco

200.    By intentionally theating Mr. Bayad differently, by restricting promotions and opportunites, by harassing, abusing, and finally terminating him while working at Lucent Technologies and Cisco Systems.

201.    By purposely not promoting equality among races in promotional opportunities, Company access to certification achievement, by targeting Mr. Bayad's race when deciding who get terminated and who get reinstated in employment practices, and By encouraging racial prejudice in the making of work and business, by discriminating against Mr.Bayad job applicant on the basis of the belief of his race, ethnicity, and national origin, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a and Massachusetts State law.

## COUNT IX
## RETALIATION

**(Against Defendants, John Chambers, Carl Wiese, Patricia Russo, & Anthony Savastano)**

43

202.   Mr. Bayad Incorporates as if realleged Paragraphs 1 through 170 of the complain.

203.   By intentionally treating Mr. Bayad differently because of his Arab Race, by failing to provide equal employment opportunity and by failing to truthfully investigate and reprimand all employees as Mr. Bayad, by not providing equally protection, by purposely restricting Mr. Bayad promotional opportunity, and by harassing him,

204.   By restricting Mr. Bayad of achieving the Certify Cisco Internetworking Expert certification, by discriminating against him, and finally terminating him not once but the second time in the row with Lucent and with Cisco Systems of his race as Arab.

205.   By encouraging or participating of the distribution of multifarious racial jokes and remarks aiming at Mr. Bayad as an Arab, by excluding him from certifications and promotion, By sending him Emails with police Badge and by humiliating him and to intentionaly scare him, by threatening with restraining order against him and knowingly he is a Business owner and partner and reseller, by implementing race preference in hiring and firing of employment selection, by recklessly, maliciously, injurious negative, and false information to the Police for the purpose to commit Mr. Bayad in psychiatric ward, by selecting and locking him in room, and abusively interrogating him, by firing him while lying in the ambulance and with an I.V. in his arm , and by taking his business address, his pager was wet and not operational, and his corporate American cards despite the fact the card had already been deactivated, by intentionally humiliating tortured, Defendants are in violation of Title VII of the Civil Right Act of 1964, Codified at 42 U.S.C. § 407, 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 200a ,and Massachusetts law.

## RELIEF REQUSTED

WHEREFORE, Plaintiff Bayad prays that this court:

(a) declare the Defendants' conduct to be in violation of his rights;

(b) enjoin defendants from engaging in such conduct;

(c) award him back pay and benefits ( with interest ) that have accrued to date;

(d) award him front pay until normal retirement age;

(e) award him compensatory damages of $10,000,000.000 or more for emotional
distress, mental anguish, and loss of enjoyment of life , humiliation and the
disparate treatment, and discrimination and false imprisonment he suffered at the
hands of the defendants;

(f) award him compensatory damages off $1,000,000.00 for interfering with his
Civil Rights, conspiring to restrict him from equal rights and benefits,
and for retaliation for the second time by the same defendants while at Lucent and
Cisco;

(g) award him damages of 1,000,000.00 or more for defamation and damage to his
business and career, his reputation, injury to character and to credit standing;

(h) award him punitive damages in the amount of 10,000,000.00 or more ;

(i) award him costs and legal fees;

(j) grant such other relief as the court may deem just and proper.

## JURY DEMANDED

Mr. Bayad demands a jury on all claims liable to a judicial trial as a

matter of right by Jury or as deemed appropriate and right by this

honorable court,  and with the Right of Due Process  as a citizen of this

land.

Date  March ___, 2004

Anthony Bayad, Pro Se
2 Magoun Avenue
Medford, MA 02155
(781) 704-8982
abayad@gicamerica.com

# TAB B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD, Pro Se,
    Plaintiff,

    v.                              CIVIL ACTION NO.
                                     04-10468-GAO
JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and
CARL WIESE,
    Defendants.


**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 65);**
**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 73)**

**May 25, 2005**

**BOWLER, U.S.M.J.**

    Pending before this court are cross motions for summary
judgment filed by defendants John Chambers ("Chambers"), Anthony
Savastano ("Savastano") and Carl Wiese ("Wiese") (collectively,
"defendants") (Docket Entry # 65) and plaintiff Anthony Bayad
("Bayad") (Docket Entry # 73). After conducting a hearing on
March 22, 2005, this court took the motions (Docket Entry ## 65 &
73) under advisement.


<u>PROCEDURAL BACKGROUND</u>

    Bayad filed the instant action on March 8, 2004. The
complaint alleges numerous counts of employment discrimination
under Title VII, 42 U.S.C. § 1981 ("section 1981"), 42 U.S.C. §
1985 ("section 1985") and Massachusetts General Laws chapter 151B

("chapter 151B") in addition to claims of false imprisonment, intentional infliction of emotional distress and breach of contract.  (Docket Entry # 1).  In October 2004, the court dismissed all claims except the section 1981 claims arising after March 8, 2000, and the conspiracy claims under section 1985 and Massachusetts law arising after March 8, 2001.[1]  Chambers, Savastano and Wiese are the only remaining defendants.[2]  In sum, the only claims remaining before this court are the post-March 8, 2000 claims under section 1981 and the post-March 8, 2001 conspiracy claims against Chambers, Savastano and Wiese.

Bayad complains that defendants individually and collectively acted and conspired to discriminate against him by denying him employment opportunities at Cisco System's, Inc. ("Cisco") on account of his race and national origin.  (Docket Entry # 1).  Reduced to their essence, Bayad's allegations relevant to defendants' post-March 8, 2000 conduct revolve around a denial of a promotion, his termination and the failure to rehire.  (Docket Entry # 1, ¶¶ 79-143).

Generally speaking, Bayad's complaint recounts the following story.  In November 2000, while employed at Cisco, Bayad applied

---

[1]  The court dismissed the section 1981 claims arising prior to March 8, 2000, as well as the conspiracy claims under section 1985 and Massachusetts law arising prior to March 8, 2001, as time barred.

[2]  All claims against Patricia Russo were dismissed as either time barred or precluded under res judicata.

2

for a transfer/promotion to a systems manager position in Cisco's North Africa region. Bayad was flown abroad for three separate interviews for the position at Cisco's expense in the cities of Dubai, London and Paris. Following the interviews, Bayad received a verbal offer for the position but was advised that the decision would have to be approved by Cisco's corporate office in California. Despite claiming to be "highly qualified" due to his language background and knowledge of the North African region, Bayad was ultimately rejected for the transfer position. Around this time, Savastano purportedly ordered Lynn Fraser ("Fraser"), Bayad's manager, to "micromanage" Bayad in order to find grounds to terminate his employment with the company. Bayad was ultimately terminated in May of 2001. Following Bayad's termination, he applied for several positions with Cisco but was denied employment in each instance. Bayad asserts that the denial of the promotion, his subsequent termination and the failure to rehire all resulted from defendants' racial animus.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

3

56(c); <u>Seaboard Surety Co. v. Town of Greenfield</u>, 370 F.3d 215, 218 (1ˢᵗ Cir. 2004). A factual issue is "genuine" where "the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party." <u>Blackie v. State of Maine</u>, 75 F.3d 716, 721 (1ˢᵗ Cir. 1996). A factual issue is "material" where it "has the potential to alter the outcome of the suit under the governing law." <u>Blackie v. State of Maine</u>, 75 F.3d at 721.

The burden initially rests with the party seeking summary judgment to demonstrate that "no genuine issue of material fact exists." <u>National Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1ˢᵗ Cir. 1995). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . party's pleading." Fed. R. Civ. P. 56(e). The nonmovant, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e); <u>Triangle Trading Co. v. Robroy Ind., Inc.</u>, 200 F.3d 1, 2 (1ˢᵗ Cir. 1999). Factual disputes must be resolved in a "light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1ˢᵗ Cir. 1995).

Cross motions for summary judgment do not alter the normal summary judgment standard. <u>Wightman v. Springfield Terminal Ry.</u>

4

Co., 100 F.3d 228, 230 (1ˢᵗ Cir. 1996).  "Cross motions simply require us to determine whether either of the parties deserves judgment as a mater of law on facts that are not disputed." Wightman v. Springfield Terminal Ry Co., 100 F.3d at 230.


## FACTUAL BACKGROUND[3]

Bayad began working for Cisco at its Lexington, Massachusetts facility in May 2000.  At the time of Bayad's employment, Cisco maintained approximately 40,000 employees.  The title of Bayad's position was Project Engineer II.  Fraser, currently employed as the Senior Sales Manager/Advanced Services in the company's Lexington, Massachusetts facility (the

----

[3] Facts are taken from the affidavits and the agreed upon facts set forth in the parties' Local Rule 56.1 statements. Citations to the record are provided only for direct quotes. Facts are construed in a light most favorable to the nonmoving party.

Pursuant to Local Rule 56.1, defendants properly submitted a statement of undisputed facts along with their memorandum in support of summary judgment.  (Docket Entry # 67).  Bayad, on the contrary, failed to submit his own Local Rule 56.1 statement with either his opposition or cross motion.  In this situation, "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties."  LR. 56.1.  While courts must allow for the liberal construction of complaints by pro se litigants in accordance with Haines v. Kerner, 404 U.S. 519, 520-521 (1972), a litigant's status as pro se "does not insulate him 'from complying with procedural and substantive law.'"  Kenda Corp., Inc. v. Pot O'Gold Money Leagues, 329 F.3d 216, 225 n.7 (1ˢᵗ Cir. 2003) (citations and internal quotations omitted).  Accordingly, defendants' statement of undisputed facts (Docket Entry # 67) shall be adopted into the factual record.

5

"Massachusetts facility"), interviewed Bayad for the Project Engineer II position in or around April 2000 and subsequently extended an offer of employment.  During the interview, Bayad informed Fraser that he expected to attain his Cisco Certified Internetworking Engineer ("CCIE") certification within a short period of time.[4]  Throughout Bayad's employment with Cisco, Fraser served as Bayad's manager and direct supervisor.

Chambers is the Chief Executive Officer and President of Cisco and has been employed by the company at its San Jose, California facility (the "California facility") from 1991 to the present.  Savastano is Cisco's Vice President of Finance and has been employed by the company at the California facility from April 28, 2000 to the present.  Wiese has served as Area Vice President for Advanced Technology at Cisco's Edison, New Jersey office from August 27, 2002 to the present.

In or around February 2001, Cisco management notified Fraser that "due to an economic downturn" the company would be forced to undergo a large scale reduction in force ("RIF") "by laying off approximately 8500 total employees."  (Docket Entry # 68, Att. 3, ¶ 18).  All Cisco managers were instructed to reduce the number of workers on their respective teams "based upon an assessment of

---

[4]  According to Fraser, while the "CCIE certification was not essential for [Bayad's] position . . . it is a highly desired qualification because, occasionally, it may be a direct customer requirement or required for a particular effort."  (Docket Entry # 68, Att. 3, ¶ 7).

6

their team members' contribution to the team's overall
profitability." (Docket Entry # 68, Att. 3). Based on this
directive, Fraser determined that four members of her team would
have to be terminated. This group of individuals consisted of
Bayad, two white males and an additional male whose race and
ethnicity Fraser was unable to recall.

At the time of his termination, Bayad had been employed at
Cisco for less than one year and was the most junior member of
Fraser's team. While employed at Cisco, Bayad was not assigned
as a primary leader to any significant project. Bayad had spent
the majority of his time studying for the CCIE certification
exam, which he ultimately failed to obtain. Fraser avers that
defendants had no involvement in and in no way influenced her
decision to select Bayad for lay off.

On April 25, 2001, Fraser informed the four members of her
team selected for termination, including Bayad, that they were
being layed off due to failing economic conditions. The
terminations were to be effective no later than June 25, 2001.
The individuals were informed that they would be eligible for
rehire after one year in accordance with Cisco's rehire policy.
The individuals were each provided with a Voluntary Severance
Agreement and General Release ("Release"). Under the conditions
of the Release, each individual was entitled to a severance
payment conditioned upon that individual waiving any then-

existing claims against Cisco.  Bayad and the others were each
provided up to 60 days to accept or decline the Release.  Bayad
executed the Release and accepted the severance payment on May 1,
2001, seven days after he was provided with the document by
Fraser.[5]  According to the terms of the Release, Bayad was
allowed up to seven days to revoke his acceptance, which he
ultimately declined to do.  On the Release below his signature,
Bayad wrote, "Thank you to all of you and Good Luck."  (Docket
Entry # 68, Att. 3, Ex. A).

In the fall of 2003, Bayad applied for and was denied a
position with Cisco as Systems Engineer II at the Massachusetts
facility.  According to Cisco's personnel records, the position
required "extensive experience in Network Security and, following
a preliminary telephone screening interview, the hiring manager
determined that" Bayad lacked this necessary minimum requirement.
(Docket Entry # 68, Att. 7, ¶ 11).  The individual ultimately
selected for the position had "extensive experience in Network
Security and had won Cisco's 'Systems Engineer of the Year' award
the previous year."  (Docket Entry # 68, Att. 7, ¶ 12).

Around the same time, Bayad applied for an additional
position with Cisco as a "Voice Specialist" position in the

---

[5]  Bayad's complaint alleges that he was forced to sign the
Release behind "closed doors" in the presence of Cisco's
"Corporate Police."  Bayad, however, has failed to support this
assertion through an affidavit or evidence otherwise allowable
under Rule 56, Fed. R. Civ. P.

California facility.[6]  (Docket Entry # 68, Att. 7, ¶ 13).  Upon

considering Bayad's application, the Human Resources Manager

contacted Fraser, Bayad's former supervisor, and was informed

that Bayad had never completed the CCIE certification.  Moreover,

"Cisco was not at that time paying to relocate prospective

employees."  (Docket Entry # 68, Att. 7, ¶ 13).  Because Bayad

was then living in Massachusetts and the position was in

California, relocation would have been necessary had Cisco

decided to hire Bayad.  Based on these factors, Bayad was not

selected for the position.[7]

In reviewing company records, defendants have been unable to

uncover any documents or testimony supporting Bayad's allegation

that he applied for a transfer position in November 2000.[8]  As of

---

[6]  The record does not expressly reflect the time period of
Bayad's application for the Voice Specialist position.  Based on
the email correspondence from the Human Resources Manager, the
time frame for this application appears to have been the fall of
2003.  (Docket Entry # 68, Att. 7, Ex. C).

[7]  In his complaint, Bayad alleges that he applied for a
number of positions at Cisco.  (Docket Entry # 1).  Cisco's
personnel files, however, contain no record of Bayad applying for
any positions other than the two described above.  Cisco's Human
Resources department has inquired whether various employees
likely to have knowledge about these positions have any
independent recollection of Bayad's application.  All have
answered in the negative.  Moreover, while Bayad raises these
allegations in his complaint, he presents no evidence through
affidavit or other means allowable under Rule 56, Fed. R. Civ. P.

[8]  In her affidavit, Paula Hughes, Cisco's Human Resources
Manager, avows that after conducting "an exhaustive search of
Cisco's records," she has "located no documents, memoranda,

9

November 2000, Bayad had been employed at Cisco for approximately
six months.  Pursuant to Cisco's transfer and promotion policy,
an employee was ineligible for transfer or promotion until
completing one year of employment absent approval from a manager.
Fraser does not recall Bayad ever seeking her approval for a
transfer to North Africa.  Cisco's policy further requires
"Cisco's Recruiting department to notify the manager of the
employee" whenever an employee is seeking another position.
(Docket Entry # 68, Att. 3, ¶ 12).  Fraser does not recall
receiving notification from the Recruiting department of Bayad's
seeking a transfer in November 2000.  Cisco records further
reflect that Bayad did not seek or receive paid time off during
November 2000, the time he alleges he was interviewing in Europe
and Africa.  According to company records, Bayad received regular
pay for performing his duties at Cisco's Lexington, Massachusetts
facility.

　　　While Bayad's complaint asserts numerous factual
allegations, summarized above, the majority are unsupported
through affidavits or other forms of properly documented evidence
that may be considered at summary judgment.  The only evidence
submitted by Bayad that comports with Rule 56(e), Fed. R. Civ.

---

vouchers or any other such materials that substantiate . . .
Bayad's allegations that (1) he applied for the [North Africa]
position, (2) he was flown at Cisco's expense to Europe or Africa
to interview for the position or (3) he interviewed with Cisco
engineers for the position."  (Docket Entry # 68, Att. 7, ¶ 5).

P., is the affidavit of Amado Navas ("Navas"), another former employee of Cisco. (Docket Entry # 75). According to Navas, shortly after Savastano began working at Cisco, Savastano traveled to the Cisco office in Saint Petersburg, Florida, where Navas was employed and proceeded to threaten Navas. Savastano instructed Navas to relay a massage to Bayad "that his days at Cisco are numbered" because "[Savastano's] friend Lynn Fraser [sic] will take care of him soon." Savastano further stated that, "[Bayad] and his people need to go back where they came from, ha ha . . .." (Docket Entry # 75).

Bayad also submits as documentary evidence an alleged no-hire list maintained by Cisco on which his name appears. The top of the no-hire list reads: "Do not hire/transfer/promote Anthony Bayad Cisco Empl # 3799*** Should you have any questions, contact Tony Savastano regarding Anthony Bayad." (Docket Entry # 77). In submitting the document, however, Bayad fails to attach any affidavit to authenticate the document. Defendants challenge the lack of authentication and Bayad fails to explain how the document came into his possession. Absent proper authentication, this court cannot properly consider the alleged no-hire list as evidence supporting Bayad's opposition or cross motion for summary judgment. Fed. R. Civ. P. 56(e); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (failure to authenticate documents

precludes consideration in a motion for summary judgment).[9]

## DISCUSSION

I. Cisco's Release Agreement

Bayad's complaint raises essentially three separate incidents of racial discrimination by defendants: (1) Bayad's termination from Cisco in May 2001; (2) Bayad's denial of a transfer or promotion to Cisco's North African facility in November 2000; and (3) defendants' failure to rehire Bayad in the fall of 2003 for two separate positions following his termination. Defendants argue that Bayad's valid execution of the Release on May 1, 2001, precludes any claims arising from his employment with and termination from Cisco.

As a general rule, releases of federal statutorily created claims, including those involving employment discrimination, are given legal effect provided that the releases are "knowing and voluntary, as evidenced by the totality of the circumstances." Melanson v. Browning-Ferris Industries, Inc., 281 F.3d 272, 274

---

[9] In their motion for summary judgment, defendants dispute the authenticity of Bayad's no-hire list. Defendants, including Savastano, have each submitted an affidavit averring that they have never seen a copy of the document before Bayad produced it during this litigation. Savastano further avers that he has never placed or instructed anyone to place Bayad's name on a "no-hire" list. After conducting extensive investigation, Cisco's Human Resources department has found no evidence to authenticate the alleged no-hire list.

(1st Cir. 2002) (knowing and voluntary execution of release waiving all claims against employer precluded employee's Title VII claim).  The employer carries the burden of demonstrating that the release was knowing and voluntary.  <u>Melanson v. Browning-Ferris Industries, Inc.</u>, 281 F.3d at 276.  To determine whether a given release was knowing and voluntary, the First Circuit has developed a set of six factors:  "(1) plaintiff's education and business experience; (2) the respective roles of the employer and employee in . . . determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice; and (6) the consideration for the waiver."  <u>Melanson v. Browning-Ferris Industries, Inc.</u>, 281 F.3d at 276 n. 4 (citing <u>Smart v. Gillette Co. Long-Term Disability Plan</u>, 70 F.3d 173, 181 n.3 (1st Cir. 1995)).  Of course, "'no single fact or circumstances is entitled to talismanic significance on the question of waiver.'"  <u>Melanson v. Browning-Ferris Industries, Inc.</u>, 281 F.3d at 276 (quoting <u>Smart v. Gillette Co. Long-Term Disability Plan</u>, 70 F.3d at 181).

     In the instant case, Bayad was offered 60 days to review and execute the Release.  This would have afforded Bayad plenty of time to consider the terms of the Release and to consult counsel if he so desired.  The terms of the Release clearly state that, upon execution, the employee agrees to "release Cisco Systems,

any affiliated companies, and their current and former officers,

directors, agents, and employees and assigns from *any and all*

*claims* up through the date of the execution." (Docket Entry #

68, Att. 3, Ex. A) (emphasis added). In no uncertain terms, the

Release states:

> This expressly includes waiver and release of any rights and
> claims arising under any and all laws, rules, regulations,
> or ordinances, including but not limited to the Age
> Discrimination in Employment Act (ADEA); the Workers
> Adjustment and Retraining Notification Act (WARN); Title VII
> of the Civil Rights Act of 1964, as amended; . . . and any
> similar law of any other state or governmental entity.

(Docket Entry # 68, Att. 3, Ex. A). This language is

sufficiently clear to put Bayad on notice that, by signing the

Release, he would be waiving any claims of employment

discrimination against Cisco and its employees that arose during

his employment until May 1, 2001, the date the Release was

executed.

Bayad argues that his execution of the Release was not

voluntary because he was forced to sign the document under

duress.[10] Other than the allegations of his complaint, however,

Bayad has come forward with no evidence to support this

conclusion.[11] Nor does the imminent fact of Bayad's termination

constitute a circumstance of duress. Melanson v. Browning-Ferris

---

[10] Bayad alleges that he was forced to sign the Release
behind closed doors and in the presence of Cisco's corporate
police. (Docket Entry # 1, ¶ 104).

[11] See footnote number five.

14

Industries, Inc., 281 F.3d at 277 (the normal emotional and financial stress associated with termination is insufficient, by itself, to create an inference of duress). Bayad's own words written on the Release below his signature, "Thank you to all of you and Good Luck," further contradict his assertion of duress. The allegations in Bayad's complaint, absent further evidence, are insufficient to create a genuine factual dispute as to whether the Release was knowing and voluntary in light of the evidence put forth by defendants.

Summary judgment is therefore warranted as to Bayad's claims arising from his employment with Cisco from May 1, 2000 to May 1, 2001. Bayad's section 1981, section 1985 and Massachusetts law conspiracy claims arising from his termination and the November 2000 denial of promotion are therefore subject to summary judgment. Thus, the only remaining issues to be decided are the section 1981 and conspiracy claims regarding the two incidents of the failure to rehire Bayad in the fall of 2003.

II.  Bayad's Remaining Section 1981 Claims

Defendants raise two arguments in support of granting summary judgment as to Bayad's claims under section 1981. First, defendants argue that their lack of personal knowledge and involvement regarding any decisions made concerning Bayad's employment bar liability under section 1981. Second, defendants further submit that Bayad has failed to establish a genuine issue

of material fact that he was subjected to employment discrimination by any person at Cisco. The issue of personal knowledge and section 1981 liability need not be addressed because Bayad ultimately fails to make a substantive case for discrimination. In reviewing the record, this court finds insufficient evidence from which a reasonable jury could conclude that defendants' failure to hire Bayad on either occasion was the result of race-based animus.

For cases involving disparate treatment in the employment sector, courts use the common analytical framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-254 (1981). Under this framework, the plaintiff bears the initial burden of establishing each element of his or her prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. at 802. This minimal showing functions to raise an inference of discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. at 253-254. The burden then shifts "to the employer to articulate some legitimate, non-discriminatory reason" for the employment action. McDonnell Douglas Corp. v. Green, 411 U.S. at 804. The plaintiff then carries the final burden of "proving that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." Texas Department of Community

16

<u>Affairs v. Burdine</u>, 450 U.S. at 253.

In establishing pretext, a plaintiff may present evidence including but not limited to "evidence of differential treatment, evidence of discriminatory comments, statistical evidence, and comparative evidence." <u>Rathbun v. Autozone, Inc.</u>, 361 F.3d 62, 72 (1st Cir. 2004). Additional evidence of discriminatory animus is not necessarily required. "In a proper case, the trier of fact may infer the ultimate fact of discrimination from components of the plaintiff's prima facie showing combined with compelling proof of the pretextual nature of the employer's explanation." <u>Rathbun v. Autozone, Inc.</u>, 361 F.3d at 72.

"Because employment discrimination cases arise in a variety of contexts, the prima facie elements must be tailored to the given case." <u>Rodriguez-Torres v. Carribean Form Manufacturer, Inc.</u>, 399 F.3d 52, 58 (1st Cir. 2005). Bayad's final allegation of discrimination arises from Cisco's rejection of his two applications for employment in the fall of 2003: the Systems Engineer II position at the Massachusetts facility and the Voice Specialist position at the California facility. To establish a failure to hire claim, an employee must show that: "(1) he is a member of a protected class . . .; (2) he applied for an open position; (3) he was not hired; and (4) the [employer] sought to fill the positions with individuals who had qualifications similar to his." <u>Lewis v. City of Boston</u>, 321 F.3d 207, 217 (1st

17

Cir. 2003).

Regarding the Systems Engineer II position, though Bayad establishes the first three elements of his prima facie case, he fails to establish the fourth.  Defendants have submitted evidence that the System Engineer II position required extensive experience in Network Security, which Bayad did not possess. Defendants have further submitted that the individual ultimately selected for the position did possess such qualifications.  Bayad has not provided evidence that would support an inference that Cisco sought to fill the Systems Engineer II position with a person of similar qualifications.

Bayad's only remaining allegation under section 1981 is his rejection for the Voice Specialist position.  Even supposing Bayad has put forth evidence to establish each prima facie element, defendants nevertheless submit two legitimate non-discriminatory reasons for denying Bayad's application.  First, the Human Resources Manager chose not to select Bayad after learning that he had never completed the CCIE certification. Second, at the time of Bayad's application, Cisco was not paying to relocate prospective employees.[12]

The burden then shifts to Bayad to demonstrate that

---

[12]   The Voice Specialist position was located at Cisco's California facility, whereas Bayad was living in Massachusetts. Thus, relocation would have been necessary had Bayad been selected.

18

defendants' proffered reasons are a pretext for discriminatory animus. To establish pretext, Bayad may demonstrate that the adverse employment action was "(i) more likely motivated by discrimination than by the explanation proffered by [defendants], or (ii) the proffered explanation [was] unworthy of credence." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001) (citations and internal quotations omitted). Bayad's only evidence of pretext are the discriminatory comments and threats against Bayad made by Savastano, as recounted in the affidavit of Navas.[13] (Docket Entry # 75).

Under certain circumstances, discriminatory remarks made by key decisionmakers or individuals in a position to influence key decisionmakers may constitute evidence of pretext. Walton v. Nalco Chemical Co., 272 F.3d 13, 24 (1st Cir. 2001) (citing Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001)); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000). At the same time, "statements made by nondecisionmakers or decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

---

[13]  Defendants heavily dispute the veracity of the facts alleged in the Navas affidavit. For the purpose of resolving defendants' motion for summary judgment only, the facts alleged in the affidavit will be taken as true.

19

While Savastano was Cisco's Vice President of Finance, he was not the key decisionmaker in regards to Bayad's application for the Voice Specialist position. Savastano has submitted an affidavit explicitly denying involvement in any decision regarding Bayad's employment with Cisco. There is no evidence that the Cisco Human Resources Director, who actually made the employment decision at issue, harbored discriminatory animus against Arabs. The only outside factor considered by the Human Resources Director in denying Bayad's application was the statement of Fraser that Bayad had never completed his CCIE certification.[14] Even if one could draw an inference that Fraser harbored discriminatory animus, through the influence of Savastano, nothing indicates that the information she gave to the Human Resources Director was either false or misleading. Thus, the evidence supplied by Bayad, which includes the Navas affidavit, is insufficient to rebut the legitimacy of defendants' proffered reasons for the failure to hire.

III.  Bayad's Remaining Section 1985 Claims

Section 1985(3) "confers a private right of action for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any persons or class of persons of the equal protection of the

---

[14]  Notably, the Human Resources Director contacted Fraser at the request of Bayad.

20

laws, or of equal privileges and immunities under the laws . .
. .'" <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 n.2 (1st Cir. 1996); 42
U.S.C. § 1985(3).

> To state a claim under 1985(3) a plaintiff must allege the
> existence of (1) a conspiracy, (2) a conspiratorial purpose
> to deprive a person or class of persons, directly or
> indirectly, of the equal protection of the laws or of equal
> privileges and immunities under the laws, (3) an overt act
> in furtherance of the conspiracy, and (4) either (a) an
> injury to person or property, or (b) a deprivation of a
> constitutionally protected right or privilege.

<u>Aulson v. Blanchard</u>, 83 F.3d at 3 (citing <u>Griffin v.</u>
<u>Breckenridge</u>, 403 U.S. 88, 102 (1971)).

Defendants correctly point out that Bayad is unable to
demonstrate that he was deprived of a constitutionally protected
right or privilege.  As discussed in the preceding section, Bayad
presents insufficient evidence for a reasonable jury to conclude
that Cisco's failure to hire him was the result of discrimination
as opposed to the legitimate reasons proffered by defendants.
Because Bayad cannot support his substantive claims under section
1981, his conspiracy claims must likewise fail.  <u>Torres-Rosado v.</u>
<u>Rotger-Sabat</u>, 335 F.3d 1 (1st Cir. 2003) (summary judgment
against conspiracy claim upheld where the plaintiff failed to
demonstrate a constitutional deprivation).  Accordingly, Bayad's
remaining section 1985 claims are without merit.

IV.  <u>Bayad's Massachusetts Law Conspiracy Claims</u>

Massachusetts law recognizes a "very limited" and "rare"
cause of action for conspiracy, often referred to as "true

conspiracy." <u>Massachusetts Laborers' Health & Welfare Fund v.</u>
<u>Phillip Morris, Inc.</u>, 62 F.Supp.2d 236, 244 (D.Mass. 1999). The
plaintiff is required to "allege and prove that by 'mere force of
number acting in unison' the defendants exercised 'some peculiar
power of coercion of the plaintiff which any individual standing
in a like relation to the plaintiff would not have had."
<u>Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris,</u>
<u>Inc.</u>, 62 F.Supp.2d at 244 (quoting <u>Fleming v. Dane</u>, 22 N.E.2d
609, 611 (Mass. 1939)). In "true conspiracy" cases "the wrong
was in the particular combination of the defendants rather than
in the tortuous nature of the underlying conduct." <u>Kurker v.</u>
<u>Hill</u>, 689 N.E.2d 833, 836 (Mass.App.Ct. 1998). "For 'true
conspiracy' the plaintiff must prove that concerted action gave
the defendants a 'peculiar power of coercion' over the plaintiff
enabling them to bring about results that are different in kind
from what any of them could achieve individually." <u>Massachusetts</u>
<u>Laborers' Health & Welfare Fund v. Phillip Morris, Inc.</u>, 62
F.Supp.2d at 244.

Bayad provides no evidence to support an inference that
defendants acted "in unison" to deprive him of employment at
Cisco after March 8, 2001. Defendants' affidavits all assert
that they had no individual or collective involvement in any
decision regarding Bayad's employment with Cisco. Defendants
further aver that they had no communication with one another

22

regarding Bayad's employment at any time during the relevant time period.  Moreover, even if Bayad produced evidence that defendants, in fact, acted in concert, the injury caused to Bayad, his denial of employment, does not appear to be substantially different from what any single defendant could have achieved by himself.

Defendants point to an alternate form of conspiracy recognized under Massachusetts law.  This form of "concerted action" conspiracy "is 'more akin to a theory of common law joint liability for tort.'"  Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F.Supp.2d at 244 (citing Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994)).  "Concerted action" conspiracy assigns liability "for actions done by others pursuant to a common design or with the defendants' substantial assistance or encouragement."  Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F.Supp.2d at 244 (citations omitted).  While "concerted action" conspiracy does not required a "peculiar power of coercion," it does require "proof of underlying tortuous conduct."  Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc., 62 F.Supp.2d at 244 (citing Santiago v. Sherwin Williams Co., 3 F.3d 546, 552 (1st Cir. 1993)).  As previously noted, Bayad fails to show that his not being hired was the result of any tortuous conduct by defendants.  Thus,

23

Bayad's lack of a substantive claim precludes any claim under this form of conspiracy.

In accordance with the above reasoning, Bayad fails to satisfy a claim of conspiracy under Massachusetts law.  Thus, although this court sympathizes with Bayad's plight and circumstances, the law unfortunately provides him no relief.


CONCLUSION

_____In accordance with the foregoing discussion, this court **RECOMMENDS**[15] that defendants' motion for summary judgment (Docket Entry # 65) be **ALLOWED** and Bayad's cross-motion (Docket Entry # 73) be **DENIED**.

                              /s/ Marianne B. Bowler
                              **MARIANNE B. BOWLER**
                              United States Magistrate Judge

---

[15]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

TAB C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10468-GAO

ANTHONY BAYAD,
Plaintiff,

v.

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO, and CARL WIESE,
Defendants.

MEMORANDUM and ORDER
October 25, 2004

O'TOOLE, D.J.

Pro se plaintiff, Anthony Bayad, brings this employment discrimination action against individual defendants John Chambers, Patricia Russo, Anthony Savastano, and Carl Wiese, seeking monetary damages and declaratory and injunctive relief. The defendants have filed two motions to dismiss: one on behalf of Chambers, Savastano, and Wiese (Docket No. 17) and one on behalf of Russo (Docket No. 31). After careful consideration of the complaint and the briefs in support of and in opposition to the motions,[1] I conclude that oral argument is unnecessary and I make the following rulings based on the parties' submissions.

---

[1] I have considered the plaintiff's arguments in his Motion to Strike the Cisco Defendants' Partial Motion to Dismiss (Docket No. 20) as arguments in opposition to the three defendants' motion (Docket No. 17), and his Motion in Response to Defendant Russo's Motion to Dismiss (Docket No. 35) as his opposition to Russo's motion (Docket No. 31).

## I.   Summary of Alleged Facts

For the purpose of evaluating the motions to dismiss, the following factual allegations by the plaintiff are assumed to be provable:

Bayad is a Moroccan born United States citizen.  In 1995 he began working for Lucent Technologies, Inc. ("Lucent") as a manager in the company's Largo, Florida office, where he reported to Russo, Savastano and Wiese.  While at Lucent, Bayad created a plan of action to save Lucent's failing data networking business and communicated his plan to Russo, Savastano, Wiese, and Lucent Chairman, Henry Schachts.  Thereafter, Savastano and Russo sent Wiese to meet with Bayad and to advise him that by communicating Lucent's business flaw to Schachts, Bayad had given Lucent a black eye and that it would be just a matter of time before he was fired.

Over the course of his employment with Lucent, Bayad became aware that Russo, Savastano, Wiese, and other Lucent managers did not like him because of his Arab descent.  Russo, Savastano, and Wiese conspired to discriminate against Bayad by stripping him of his status as lead manager without cause and in order to humiliate him.

On January 21, 1997, Bayad applied for the vacant position of general manager of Lucent's Largo, Florida office, but Savastano refused to promote him and promoted a less experienced white employee instead.  Savastano also prevented Bayad's promotion to other management positions within Lucent.  In addition, Wiese told Bayad that Lucent would never promote or consider an Arab to be Vice President of Operations.

On January 23, 1997, Savastano directed Lucent corporate police to imprison Bayad in a room where he was mentally tortured, interrogated, intimidated, physically assaulted, and accused of stealing from Lucent by incurring personal charges on his corporate American Express credit card.

2

Savastano led the conspiracy to falsely accuse Bayad of stealing from the company. When Bayad tried to leave the room, Savastano and corporate security police attempted to restrain him and keep him in the room. A scuffle ensued and Bayad was dragged or thrown down a flight of stairs and ended up submerged head first in a fountain on the floor below. Bayad received injuries to his head and neck. While Bayad was on his way to the hospital, Savastano, who was on the phone with Wiese and Russo, terminated his employment with Lucent. The defendants also had Bayad committed to a psychiatric hospital for seventy-two hours before being released.

Between 1997 and 1999, Bayad attempted to find subsequent employment in the data networking industry, but Russo, Savastano, and Wiese conspired to prevent him from obtaining and sustaining employment with other companies, including Bay Network, Inc. and International Networking Services, Inc.

In April 2000, Bayad began working as a project engineer at the Lexington, Massachusetts office of Cisco Systems, Inc. ("Cisco"). During a business trip to Cisco's San Jose, California office, Bayad was spotted by Savastano, who was also now a Cisco employee. Savastano reported to John Chambers, the President of Cisco. Upon returning to Massachusetts, Bayad's manager, Lynn Fraser, began keeping close tabs on Bayad in order to find a reason to terminate his employment with Cisco.

In November 2000,[2] Bayad applied for the position of systems manager or engineer for Cisco in the North Africa region. After three interviews for the position in Dubai, London and Paris, Bayad was given a verbal offer by the region manager but was advised that the decision to hire him had to be approved by Cisco's corporate office in California. Even though Bayad, who speaks Arabic,

---

[2]  It appears that Bayad incorrectly states this date as November 2, 2001 in paragraph 88 of his complaint, because he also alleges that he applied for the systems manager position *before* being terminated from Cisco in May 2001. Compl. ¶ 88.

French and English, was a perfect match for the position, he was not given the position. Bayad complained to Chambers of the discriminatory treatment and misconduct, but was ignored.

In May 2001, Bayad was terminated from Cisco. Lynn Fraser told Bayad that he was laid off due to the economy and that he would be eligible for rehire one year from the date of termination. His termination was completely pretextual. He was then asked to sign documents and contracts behind closed doors in the presence of Cisco corporate police. After Bayad's termination, Savastano told one of Bayad's former coworkers that Bayad and other minorities had no business at Cisco, and Chambers prevented Bayad from obtaining his Cisco Internetworking Expert Certification.

In September 2001, Bayad formed his own computer and networking technology company and attempted to do business with Cisco, but Chambers instructed Cisco employees not to do any business with minorities and Arabs such as Bayad.

Since at least September 2003, Bayad has applied for a multitude of employment opportunities at Cisco but has been denied a position. On or about December 3, 2003, in connection with one of Bayad's applications to Cisco, the defendants sent Bayad an email requesting he provide his ethnic or racial background and gender before Cisco could proceed with its hiring decision.

On March 8, 2004, Bayad filed the instant action.

## II.    Discussion

Chambers, Savastano, and Wiese, who are now all employees of Cisco, move to dismiss all of the claims against them, except for claims for violation of 42 U.S.C. § 1981 that arose after May 2001, on the grounds that they are barred by the applicable statutes of limitation, res judicata, collateral estoppel, have been released, or fail to comply with the statutory prerequisites for filing such claims. Russo moves to dismiss all of the claims against her on the grounds that they are barred

4

by the applicable statutes of limitation, res judicata, collateral estoppel, or because Title VII does not create individual liability.

    A.    <u>The Federal and State Employment Discrimination Claims</u>

    1.    The pre-June 1997 claims

Counts I, II, VII, VIII, and IX of Bayad's complaint can be considered together, as there are many overlapping allegations, primarily related to employment discrimination in one facet or another. However, the discrimination claims arising out of Bayad's employment and termination at Lucent (i.e. the pre-June 1997 claims) have already been considered by the United States District Court for the Southern District of Florida and summary judgment was granted for the defendants in that case (Civ. No. 97-06671-NCR).

On June 2, 1997, Bayad, represented by counsel, filed an employment discrimination action in the Southern District of Florida alleging causes of action under Title VII, the Florida Civil Rights Act, 42 U.S.C. § 1981, false imprisonment, intentional infliction of emotional distress, defamation, and breach of contract against Lucent, Savastano and others not parties to the present action. The allegations in his complaint in the Florida action are virtually identical to those in his complaint in this action with respect to events surrounding his employment and termination at Lucent. He also alleged in the Florida action that unnamed Lucent personnel interfered with his attempts to find subsequent employment after he was terminated from Lucent. Summary judgment was granted for the defendants in that action and the Eleventh Circuit dismissed Bayad's appeal.

5

The judgment in the Florida action bars relitigation of Bayad's Title VII, § 1981, false imprisonment, intentional infliction of emotional distress, and breach of contract claims against Savastano, Wiese and Russo arising out of their pre-June 1997 conduct. See Massachusetts Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Savastano was a named defendant in the Florida action. Wiese and Russo were allegedly co-conspirators in the discriminatory actions taken against Bayad at Lucent who should have been joined in the Florida action, and Bayad has not offered any good reason why they were not named in that action. Massachusetts Sch. of Law, 1142 F.2d at 38; see also In re El San Juan Hotel Corp., 841 F.2d 6, 10-11 (1st Cir. 1988). His assertion of these pre-June 1997 claims here is an impermissible attempt to relitigate issues already decided.[3]

        2.      The post-June 1997 Title VII and Mass. Gen. Laws ch. 151B claims

Bayad's Title VII claims against all of the defendants must be dismissed because individuals are not subject to suit under Title VII. Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 n.8 (5th Cir. 2003); Holly D. v. California Inst. of Tech., 339 F.3d 1158, 1179 (9th Cir. 2003); Akers v. Alvey, 338 F.3d 491, 500 (6th Cir. 2003); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc).

---

[3] As evidence of his desire for a second bite at the apple, Bayad claims in his current complaint that he is confident that "this time around" the defendants will be declared in violation of the law. Compl. ¶ 61.

Bayad alleges violations of "Massachusetts State law" in Counts I, II, VII, VIII, and IX.[4]  I construe the complaint as alleging violations of chapter 151B of the Massachusetts General Laws. See Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 n.2 (1st Cir. 1995) ("Mass. Gen. L. ch. 151B is the exclusive remedy under Massachusetts law for employment discrimination claims.").  Unlike Title VII, chapter 151B allows for personal liability of individual employees. Thomas v. EDI Specialists, Inc., 773 N.E.2d 415, 420 (Mass. 2002).  However, Bayad's post-June 1997 discrimination claims under Massachusetts law are subject to dismissal for failure to first file a timely administrative complaint with respect to these claims. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Carter v. Comm'r of Correction, 681 N.E.2d 1255, 1259 (Mass. App. Ct. 1997).

Bayad alleges that he filed a charge with the federal Equal Employment Opportunity Commission on April 4, 1997, as a precursor to his Florida lawsuit and was issued a "right-to-sue" letter on April 22, 1997. Compl. ¶ 59. He then filed the Florida action on June 2, 1997. He did not timely file a complaint with the Massachusetts Commission Against Discrimination (the "MCAD"), as is required prior to seeking redress in the courts. See Mass. Gen. Laws. ch. 151B, §§ 5-9; Lindsay v. Future Elec. Corp., 930 F. Supp. 677, 678 (D. Mass. 1996) (filing charge with EEOC insufficient to satisfy exhaustion requirement under Mass. Gen. Laws ch. 151B). Bayad's failure to timely file an administrative complaint with the MCAD requires dismissal of his discrimination claims under Massachusetts law.

---

[4] The complaint also alleges that the defendants violated the "Fair Labor [A]ct" and the "Massachusetts Rules of Law." Compl. ¶¶ 143, 146.

3.    The post-June 1997 § 1981 claims

Bayad's § 1981 claims have a four-year statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., __ U.S. __, 124 S.Ct. 1836, 1845-46 (2004).  Therefore, his § 1981 claims against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2000 are time barred, but § 1981 claims against these defendants that arose after March 8, 2000 survive.  Because all of the allegations against Russo concern events that occurred prior to March 8, 2000, Bayad's § 1981 claims against her are time barred.

4.    The post-June 1997 § 1985 and state law conspiracy claims

Similarly, Bayad's conspiracy claims under 42 U.S.C. § 1985 and Massachusetts law against Chambers, Savastano, and Wiese for discriminatory conduct that occurred prior to March 8, 2001 are time barred because these claims are subject to a three year statute of limitations.  Nieves v. McSweeney, 73 F. Supp.2d 98, 102 n.4 (D. Mass. 1999), aff'd, 241 F.3d 46 (1st Cir. 2001).[5] But § 1985 and state law civil conspiracy claims against these defendants that arose after March 8, 2001 survive.  Because all of the allegations against Russo concern events that occurred prior to March 8, 2001, Bayad's § 1985 and state law conspiracy claims against her are time barred.

I reject the defendants' contention that the narrow "intracorporate conspiracy doctrine" requires dismissal of Bayad's § 1985 claims at this stage of the litigation, as I find he has at least sufficiently alleged a series of acts over time by Chambers, Savastano, and Wiese going beyond simple ratification of managerial decisions.  See Strathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984).

---

[5] Bayad fails to articulate a specific legal basis for his conspiracy allegations in Count V, so I liberally construe this count as setting forth a claim under both federal and state law.

B.    The State Law Tort and Contract Claims

1.    False imprisonment

Though Bayad alleges false imprisonment under both federal and Massachusetts law, Count III is essentially a claim under state tort law for events occurring in 1997 and is therefore time barred. See Lavecchia v. Massachusetts Bay Transp. Auth., 804 N.E.2d 932, 936 (Mass. 2004) (noting three-year statute of limitations for false imprisonment claims under Mass. Gen. Laws ch. 260, § 2A). This claim is also barred under the doctrine of res judicata. See discussion, supra, Part II(A)(1). To the extent that Bayad alleges a claim for false imprisonment during his tenure at Cisco, there are no factual allegations to support such a claim against the named defendants. The arguably relevant allegations are that Lynn Fraser at Cisco, who is not a defendant in this action, confined Bayad to a room to sign Cisco documents upon his termination. Compl. ¶ 104. Accordingly, Count III is dismissed against all defendants.

2.    Intentional infliction of emotional distress and
breach of contract

As noted above, Bayad's pre-June 1997 intentional infliction of emotional distress and breach of contract claims are barred under the doctrine of res judicata. See discussion, supra, Part II(A)(1). Bayad fails to adequately plead claims under Massachusetts law for intentional infliction of emotional distress and breach of contract for conduct that occurred post-June 1997. Counts IV and VI are dismissed against all defendants.

9

## III.    Conclusion

For all the foregoing reasons, the motion to dismiss of Chambers, Savastano, and Wiese (Docket No. 17) is GRANTED IN PART AND DENIED IN PART, and the motion to dismiss of Russo (Docket No. 31) is GRANTED.    All of the claims against Chambers, Savastano, and Wiese except for the § 1981 claims against them that arose after March 8, 2000 and the § 1985 and state law conspiracy claims against them that arose after March 8, 2001, are dismissed.  The complaint is dismissed in its entirety as against Russo.

It is SO ORDERED.

October 25, 2004                              \s\ George A. O'Toole, Jr.
DATE                                          DISTRICT JUDGE

10

# TAB D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTHONY BAYAD,<br>          Plaintiff,<br>     v.<br><br>JOHN CHAMBERS, PATRICIA RUSSO,<br> ANTHONY SAVASTANO and<br> CARL WIESE,<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 04-10468-PBS |

**ORDER**

February 17, 2006

Saris, U.S.D.J.

After a review of the objections, the Court adopts the reports and recommendations of the Magistrate Judge dated November 15, 2005 and May 25, 2005.  I address only pro se plaintiff's claim that he lacked the opportunity to conduct meaningful discovery through depositions.

This action was initially assigned to another judge.  On October 25, 2004, he dismissed all claims against John Chambers, the CEO and President of Cisco, Anthony Savastano, its Vice President of Finance, and Carl Wiese, the area Vice President for Advanced Technology of Cisco's New Jersey office, except for the § 1981 claims that arose after March 2000 and the § 1985 and state law claims that arose after March 8, 2001.  The complaint was dismissed in its entirety against Patricia Russo.

The matter was then referred to a Magistrate Judge who set a schedule for written discovery to be completed by February 4,

2005. Plaintiffs filed various requests for admission and interrogatories, which defendants responded to by January 28, 2005. At a status conference held on February 7, 2005, the Court ordered discovery suspended and set a summary judgment briefing schedule. Defendants moved for a protective order that provided that Bayad only contact outside counsel because Bayad had made phone calls and left voicemails that defendants described as "harassing, upsetting and burdensome." Transcripts were attached. The Court granted that request on February 9, 2005. The case was reassigned to me on August 12, 2005 after briefing on the summary judgment motion was substantially completed. Thus, it appears from the docket that plaintiff was given ample opportunity to conduct written discovery but was precluded from taking depositions.

One key piece of evidence which Bayad relies on is the so-called Cisco no-hire list, which defendants contend under oath is not authentic, giving detailed reasons in support of that contention. (Hughes Declaration, ¶30). While the record is thick and difficult to follow, the Magistrate Judge concluded that plaintiff provided no admissible evidence by affidavit or otherwise to explain why there is reason to believe its authenticity or to support further discovery under Fed. R. Civ. P. 56(f). Based on this record, I conclude that the Magistrate Judge's discovery rulings are not clearly in error. See Fed. R.

Civ. P. 72(a); <u>Hudson v. Rucker</u>, 2004 U.S. Dist. LEXIS 15442, at *2-3 (D.D.C. July 1, 2004) (reviewing Magistrate Judge's denial of Rule 56(f) motion under "clearly erroneous or contrary to law" standard).

The Court orders that summary judgment enter on behalf of defendants.

PATTI B. SARIS
United States District Judge

TAB E

# United States Court of Appeals
## For the First Circuit

No. 06-1396

ANTHONY BAYAD,

Plaintiff, Appellant,

v.

JOHN CHAMBERS, ET AL.,

Defendants, Appellees.

Before

Boudin, <u>Chief Judge</u>,
Torruella and Lipez, <u>Circuit Judges</u>.

JUDGMENT

Entered: July 24, 2006

On October 25, 2004, the district court dismissed appellant's complaint in its entirety as against appellee Russo and dismissed certain of the claims as against the remaining appellees. On February 17, 2006, the district court disposed of the remaining claims by granting summary judgment in favor of those remaining appellees.

We have reviewed the parties' briefs and the record on appeal. We <u>affirm</u> essentially for the reasons stated in the district court's Memorandum and Order, dated October 25, 2004, the magistrate judge's Reports and Recommendations, dated May 25, 2005 and November 15, 2005, and the district court's Order, dated February 17, 2006.

We reject, as unfounded, appellant's claim that the magistrate judge was biased and was required to recuse herself.

<u>Affirmed</u>.

By the Court:

Richard Cushing Donovan, Clerk.

**MARGARET CARTER**

By: _____

Chief Deputy Clerk.

[cc: Anthony Bayad, Bruce E. Falby, Esq., Mark W. Batten, Esq., Matthew J. Iverson, Esq., Lisa M. Gaulin, Esq., Thomas Edward Shirley, Esq.]

TAB F

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,
    Plaintiff,

v.                                    CIVIL ACTION NO.
                                      04-10468-PBS

JOHN CHAMBERS, PATRICIA RUSSO,
ANTHONY SAVASTANO and
CARL WIESE,
    Defendants.


**REPORT AND RECOMMENDATION RE:**
**DECLARATION OF PLAINTIFF PRO SE NEWLY DISCOVERED EVIDENCE**
**IN SUPPORT OF HIS MOTION OBJECTING TO THE MAGISTRATE REPORT**
**& RECOMMENDATION (DOCKET ENTRY # 92); MOTION FOR JURY TRIAL**
**DEMANDED THE 7TH AMENDMENT OF THE U.S. CONSTITUTION (DOCKET**
**ENTRY # 97); MOTION TO STRIKE (DOCKET ENTRY # 99); MOTION**
**RESPECTFULLY DEMANDING THE AFFIDAVIT OF THE AFFIANT AND**
**WITNESS MR. AMADO NAVAS TO BE REVIEWED & ADMITTED AS ADMISSIBLE**
**AS IT IS SWORN TO BEFORE NOTARY PUBLIC IN COMPLIANCE WITH**
**FEDERAL RULES OF CIVIL PROCEDURE RULE 6(B) AND 28 U.S.C. §**
**1746 (DOCKET ENTRY # 107); MOTION TO ADMIT SUCH EVIDENCE**
**WHEN DISCOVERY AND DEPOSITIONS WERE DENIED (DOCKET ENTRY #**
**108); MOTION TO FILE NOTICE PRAYING HANDS (DOCKET ENTRY #**
**110); MOTION TO ADMIT SUCH DISGRACEFUL-HUMILIATING-**
**RACIALLY MOTIVATED AUDIO**
**(DOCKET ENTRY # 113)**

**November 15, 2005**

**BOWLER, U.S.M.J.**

On May 25, 2005, this court issued a Report and

Recommendation ("the report and recommendation") to allow the

motion for summary judgment filed by defendants John Chambers,

Anthony Savastano ("Savastano") and Carl Wiese ("Wiese")

(collectively: "defendants") (Docket Entry # 65) and to deny the

motion for summary judgment filed by plaintiff Anthony Bayad
("Bayad") (Docket Entry # 73). (Docket Entry # 88). After
reviewing the objections (Docket Entry ## 89-91) as well as a
declaration of newly discovered evidence (Docket Entry # 92)
filed by Bayad, the district judge adopted the report and
recommendation. The district judge then referred the declaration
of newly discovered evidence (Docket Entry # 92) to this court
"to evaluate the materiality of the 'newly discovered evidence'
and to determine whether it should be considered." (Docket Entry
# 96). Having conducted a hearing, the latter two issues are
ripe for review.

Also pending before this court are the additional filings by
Bayad, all of which challenge the appropriateness of entering
summary judgment in defendants' favor. Bayad urges this court to
reconsider the entry of summary judgment, consider certain
additional "new" evidence and proceed to a jury trial on the
alleged discrimination. (Docket Entry ## 97, 98, 102, 107, 108,
110 & 113). Defendants' motion to strike (Docket Entry # 99) the
declaration in support of newly discovered evidence (Docket Entry
# 102) is also ripe for review.


DISCUSSION

Familiarity with the record is presumed. This court is also
mindful of Bayad's pro se status which affords him a measure of

2

latitude.  See Barrett v. Lombardi, 239 F.3d 23, 28 (1st Cir.

2001); Instituto de Educacion Universal Corp. v. United States

Department of Education, 209 F.3d 18, 23 & n. 4 (1st Cir. 2000).

Turning to a number of the requests to belatedly include

certain evidence in the summary judgment record, Bayad's request

"to admit" an affidavit of Amado Navas ("Navas") dated March 7,

2005 (Docket Entry # 107;[1] Docket Entry # 102, Ex. 11) is moot

because this court did consider and include the affidavit as part

of the summary judgment record.  (Docket Entry # 88, pp. 10-11;

Docket Entry # 75).  Similarly, the summary judgment record

included the electronic correspondence Bayad attaches to the

notice of liability and declaration in support of "newly

discovered evidence."[2]  (Docket Entry # 102, Ex. 5; Docket Entry #

92, ¶ 9).

---

[1]  The affidavit is attached as an unnumbered, unlabeled
exhibit to Docket Entry Number 107.  The filing (Docket Entry #
107) also includes an attached declaration by Navas concerning
the allegations of mistreatment that occurred at Lucent
Technologies, Inc. ("Lucent").  The district judge dismissed the
allegations involving Lucent as time barred.  As background
evidence to the timely allegations involving Cisco Systems, Inc.
("Cisco"), they would not alter this court's recommendation.

[2]  The assertion that the electronic correspondence as well as
other evidence in the record amounts to direct evidence of
discrimination thereby obviating resort to the McDonnell Douglas
framework is misplaced.  The evidence Bayad cites does not rise
to the level of "'an admission by the employer that it explicitly
took [Bayad's race] into account in reaching an employment
decision'" or similar "'smoking gun' evidence."  Santiago-Ramos
v. Centennial P.R. Wireless Corporation, 217 F.3d 46, 53 (1st
Cir. 2000).

Much of the "new" evidence involves Bayad's qualifications and experience. This court does not question the merits of Bayad's qualifications, the positive performance ratings he received from his superiors in certain areas while at Cisco, his hours on the job and the dedication Bayad exhibited towards improving his knowledge on the job and pursuing training. (Docket Entry # 102, Ex. 9-10, 21, 22, 24 & 25 ; Docket Entry # 92, Ex. B & E).[3] Unfortunately, the System Engineer II position required *extensive* experience in network security. In contrast to Bayad's qualifications, the individual chosen had such extensive experience and had won Cisco's "Engineer of the Year" award the previous year.[4] Thus, even if this court considered the additional evidence, Bayad still falters on the fourth prong of the prima facie case.[5] See Lewis v. City of Boston, 321 F.3d 207, 217 (1st Cir. 2003) (fourth prong in failure to hire case requires the plaintiff to show that "the [employer] sought to fill the

---

[3] Bayad previously submitted these qualifications as attachments to the opposition to defendants' summary judgment motion. (Docket Entry # 73, Ex. B, Q & S).

[4] As additional "new" evidence, Bayad offers an award or accolade received by Navas in August 2000 as indicative of pretext. (Docket Entry # 92, ¶ 8 & Ex. D). This award is not the same "Engineer of the Year" award received by the hired individual and does not alter this court's original recommendation.

[5] Bayad had the opportunity to submit interrogatories and requests for production of documents regarding the qualifications of this individual and the circumstances surrounding his hiring.

4

positions with individuals who had qualifications similar to
his").

Bayad also continues to fail to make a sufficient showing of
pretext with respect to the Voice Specialist position.  The
reason given was the failure to complete Cisco Certified
Internetworking Engineer ("CCIE") training and the location of
the position in California.  Although Bayad completed the written
portion of the CCIE, he was still working on the laboratory
portion as of February 28, 2001.[6]  (Docket Entry # 102, Ex. 9).
Bayad's resume likewise indicates he was still working on CCIE
for routing and switching.[7]  (Docket Entry # 92, Ex. B).  Lynn
Fraser ("Fraser") therefore "truthfully informed" the Human
Resources Manager that Bayad "had never completed the CCIE."
(Docket Entry # 102, Ex. 5, ¶ 13; Docket Entry # 68, ¶ 13).  The
electronic correspondence confirms this conversation and the
veracity of the non-discriminatory reason.  There is also no
dispute that the position was in California thereby necessitating
Bayad's relocation.  Bayad therefore continues to fail to
demonstrate sufficient evidence of pretext with respect to the

--------------------

[6] Electronic correspondence submitted to support Bayad's
opposition to defendants' summary judgment motion similarly
reflects that as of September 30, 2003, Bayad had passed the CCIE
written test but was "scheduled to take the lab next year."
(Docket Entry # 83, Ex. 27; Docket Entry # 73, Ex. X-2).

[7] Bayad submitted the same resume in opposition to defendants'
summary judgment motion.  (Docket Entry # 73, Ex. S).

Voice Specialist position to proceed to trial and defeat summary judgment. The discrepancy in Wiese's title (Docket Entry # 97, Ex. A-C; Docket Entry # 98, Ex. 6 & 7) would not and does not materially effect this court's recommendation.

The "new" evidence also involves Bayad's 1997 emergency room visit and the events that took place at Lucent Technologies. (Docket Entry # 108, Ex. 10 & 11; Docket Entry # 102, Ex. 1, 15 & 18;[8] Docket Entry # 113, Ex. D). The district judge, as opposed to this court on summary judgment, dismissed this claim as untimely. (Docket Entry # 44). Although this court could

---

[8] Exhibit eighteen, which Bayad also includes in the motion to admit (Docket Entry # 113, Ex. B) as evidence of racially discriminatory comments, is dated January 24, 1997, and thus temporally remote. See McMillan v. Massachusetts SPCA, 140 F.3d 288, 301 (1st Cir. 1998) (discussing stray remarks doctrine and temporal remoteness). The communication was also not made by a key decision maker or an individual in a position to influence a key decision maker with respect to the failure to hire allegations that took place in and around the fall of 2003. See Walton v. Nalco Chemical Co., 272 F.3d 13, 24 (1st Cir. 2001) (discriminatory comments "made by persons in a position to influence the challenged employment action may suffice to establish pretext"). The same deficiencies exist with respect to the September 2002 electronic transmission from Paul Mountford to Chuck Robbins and the May 2001 Heathrow Airport announcements (Docket Entry # 113, Ex. A & C). In short, the conduct and comments are temporally remote from the failure to hire allegations that took place in and around the fall of 2003 and do not involve persons in a position to influence key decision makers. Although the May 2001 conduct occurred in and around the time of the wrongful termination, the release bars this claim as fully discussed in the prior report and recommendation (Docket Entry # 88, pp. 12-15). Finally, as correctly pointed out by defendants (Docket Entry # 117), the exhibits do not constitute "new" evidence. To the contrary, the evidence (Docket Entry # 113, Ex. A-D) was previously submitted (Docket Entry # 83, Ex. 5, 6, 25 & 26) in the same deficient form.

consider such evidence as background to the timely claims that were before this court on summary judgment, <u>Ingram v. Brink's, Inc.</u>, 414 F.3d 222, 229 (1st Cir. 2005) (untimely discriminatory acts that predate "the actionable period can be used as relevant background evidence"), the deposition testimony and the additional submissions would not alter this court's recommendation.

Bayad also submits "new" evidence concerning his application for a position in North Africa during the fall of 2000 and contends that Paula Hughes ("Hughes") submitted a false declaration by averring an inability to locate documents to support Bayad making the trip to North Africa.   (Docket Entry # 102, ¶¶ 4 & 26;[9] Docket Entry # 98,[10] Ex. 2-5).   The alleged misconduct regarding the denial of a promotion or transfer to

---

[9]   In any event, Bayad's notice of liability (Docket Entry # 102) amounts to an unsworn declaration that lacks a statement to the effect that it is made under the pains and penalties of perjury.  <u>See</u> 28 U.S.C. § 1746; <u>Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.</u>, 982 F.2d 686, 689-690 (1st Cir. 1993) (noting that pursuant to 28 U.S.C. § 1746 "an unsworn statement *signed under penalty of perjury* may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment") (emphasis added).  Bayad's initial declaration (Docket Entry # 102) fails to comply with 28 U.S.C. § 1746 as does Bayad's subsequent attempt to cure the defect three days later (Docket Entry # 104, Ex. A).   In contrast, defendants' submissions were declared as being made "under the pains and penalties of perjury."   (Docket Entry # 68).

[10]   Bayad properly submits this unsworn declaration as made "under the pains and perjury" and cites to 28 U.S.C. § 1746.

7

North Africa, however, occurred during Bayad's employment and is
foreclosed by Bayad's execution of a knowing and voluntary
release.  For reasons fully discussed in the report and
recommendation (Docket Entry # 88, pp. 12-15), the release bars
claims arising during Bayad's employment at Cisco prior to May 1,
2001.

The no hire list (Docket Entry # 102, Ex. 2), which Hughes
describes by affidavit as "plaintiff's no-hire list" (Docket
Entry # 68, Hughes Declaration, ¶ 30), remains unauthenticated as
previously discussed in the report and recommendation (Docket
Entry # 88, pp. 11-12).  In any event, the list is not
discriminatory on its face and therefore does not amount to a
discriminatory statement on the part of Savastano.  See Gonzalez
v. El Dia, Inc., 304 F.3d 63, 69-70 (1st Cir. 2002).

In various filings, Bayad additionally contends that he
lacked an adequate opportunity for discovery.  (Docket Entry ##
92, 97, 102 & 109).  This court disagrees.  At the November 12,
2004 status conference, this court set a February 4, 2005
deadline for written discovery.  Bayad had the opportunity during
this time to conduct written discovery.  Although Bayad
disparaged defendants for seeking summary judgment "without a
proper time allowed for discovery" (Docket Entry # 73), he did
not properly move for additional discovery under Rule 56(f), Fed.
R. Civ. P.  In particular, he did not provide the necessary

8

showing, typically done by affidavit, see Patterson-Leitch Co. v.
Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985,
987-989 (1st Cir. 1988), of articulating "a plausible basis for
the movant's belief that previously undisclosed or undocumented
facts exist, that those facts can be secured by further
discovery, and that, if obtained, there is some credible prospect
that the new evidence will create a trialworthy issue."
Massachusetts School of Law at Andover v. American Bar
Association, 142 F.3d 26, 44 (1st Cir. 1998).  Instead, the record
contains conclusory allegations of "no discovery."  See, e.g.,
Patterson-Leitch Co. v. Massachusetts Municipal Wholesale
Electric Co., 840 F.2d at 989 (inadequate Rule 56(f) showing
wherein the "[p]laintiff merely stated, in an entirely conclusory
way, that '[d]iscovery should be commenced' and speculated that
'additional facts need to be established through discovery' in
order to develop certain legal theories").  In addition, the
present lament about the brevis nature of the discovery, if
construed as an attempt to seek Rule 56(f) relief, is untimely.
See Massachusetts School of Law at Andover v. American Bar
Association, 142 F.3d at 44 ("Rule 56(f) extension request made
after the conclusion of oral argument on a summary judgment
motion ordinarily comes too late").

    Alternatively, if construed as a means to support
reconsideration, it is unavailing.  It is true that, as an

interlocutory ruling, this court has the discretion to reconsider
the allowance of summary judgment.  <u>See</u> <u>Geffon v. Micrion</u>
<u>Corporation</u>, 249 F.3d 29, 38 (1st Cir. 2001).  The previous record
on summary judgment was not inadequate and given the "salutory
principles" embodied in the law of the case doctrine, <u>see</u> <u>Ellis</u>
<u>v. United States</u>, 313 F.3d 636, 646-648 (1st Cir. 2002) (listing
and describing in depth these principles), <u>cert.</u> <u>denied</u>, 540 U.S.
839 (2003), reconsideration because of the brevis discovery is
denied.

Separate and apart from the discovery complaint,
reconsideration is inadvisable because "there is no showing that
the information could not have been obtained through the use of
due diligence before the summary judgment motions."  <u>Minh Tu v.</u>
<u>Mutual Life Insurance Company of New York</u>, 136 F.3d 77, 82 (1st
Cir. 1998) (affirming denial of motion for reconsideration based
on newly discovered evidence).  Bayad fails to explain why he
could not have submitted the "new" evidence in the proper form
with the summary judgment materials.  <u>See</u> <u>Ayala-Gerena v. Bristol</u>
<u>Myers-Squibb Co.</u>, 95 F.3d 86, 96 n. 6 (1st Cir. 1996) (refusing to
take into consideration sworn statements submitted with motion
for reconsideration of summary judgment ruling given absence of
explanation of "why this new evidence could not have been timely
provided with the summary judgment materials").  To the contrary,
the evidence is not "new" in the sense that it was previously

available at the time of the summary judgment hearing.  See NPR,
Inc. v. American International Insurance Co. of Puerto Rico, 262
F.Supp.2d 3, 5 (D.P.R. 2003) ("to justify a reconsideration of an
order, a party must show that there has been some intervening
development in the law, some new evidence *not previously
available*, or that the prior order is in clear error or would
operate to create a manifest injustice") (emphasis added); see
also United States v. Rivera-Martinez, 931 F.2d 148, 150-152 (1st
Cir. 1991).

In any event, the release forecloses the claims prior to May
2001 and the "new" evidence would not materially alter this
court's prior recommendation regarding the failure to hire claim.
Specifically answering the issues identified by the district
judge (Docket Entry # 96), the "newly discovered evidence" is not
material and should not be considered.  Even if this court did
consider all of the evidence, it would not alter the
recommendation to allow defendants' summary judgment motion.

CONCLUSION

In accordance with the foregoing discussion, this court
**RECOMMENDS**[11] that the motion for a jury trial (Docket Entry # 97),

---

[11]  Any objections to this Report and Recommendation must be
filed with the Clerk of Court within ten days of receipt of the
Report and Recommendation to which objection is made and the

11

the motions to admit (Docket Entry ## 108 & 113) and the motion

to file notice of praying hands (Docket Entry # 110) be **DENIED**;

the motion to admit the Navas affidavit (Docket Entry # 107) be

**DENIED** as moot; and the motion to strike (Docket Entry # 99) be

**ALLOWED**.



/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge



basis for such objection.  Any party may respond to another
party's objections within ten days after service of the
objections.  Failure to file objections within the specified time
waives the right to appeal the order.  United States v. Escoboza
Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v.
Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

TAB G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,

     *Plaintiff,*

v.

CISCO SYSTEMS, INC., BRUCE
BASTIAN, KATE DCAMP, LYNN
FRASER, CELIA HARPER-GUERRA,
and RICK JUSTICE,

     *Defendants.*

CIVIL ACTION NO. 05-11005-GAO

## DEFENDANTS' RULE 26(a)(1) INITIAL DISCLOSURES

The Defendants in this matter make the following initial disclosures pursuant to

Fed. R. Civ. P. 26(a)(1):

    **A.**    **Identification of Parties With Information**.  Pursuant to Fed. R. Civ.

P. 26(a)(1)(A), the following is a list of persons likely to have discoverable information

that the Defendants may use to support their respective claims or defenses in this action:

> Ms.  Lynn Fraser
> Manager
> Cisco Systems,  Inc.
> 500 Beaver Brook Road
> Boxborough, Massachusetts  01719

> Ms. Paula Hughes
> Manager, Human Resources
> Cisco Systems,  Inc.
> 170 West Tasman Drive, SJ 10/5
> San Jose, CA  95134

There also may exist other persons with information that the Defendants may use

to support their respective claims or defenses in this action, which are not now known by

the Defendants to have such information and which, during the course of discovery, will

be identified pursuant to Fed. R. Civ. P. 26(e).

      **B.**     **Documents.**  Pursuant to Fed. R. Civ. P. 26(a)(1)(B), attached hereto are

copies of all documents, data compilations, and tangible things that are in the

Defendants' possession and that the Defendants may use to support their respective

claims or defenses.  These items include:

| | |
|---|---|
| Exhibit A | Anthony Bayad's ("Bayad's") Personnel File and Employment Records; |
| Exhibit B | Communications concerning Bayad's employment; |
| Exhibit C | Bayad's Voluntary Severance Agreement and General Release; |
| Exhibit D | Documents concerning the Cisco Offshore Development No-Hire Policy; and |
| Exhibit E | Cisco's Employee Resource Guide, dated November 1, 2000. |

    In addition to the items listed above, the Defendants reserve the right to use any

and all documents comprising the record of <u>Bayad v. Chambers, et al.</u>, Civil Action

No. 04-10468-PBS (D. Mass.).  These documents are already in Bayad's possession.

    There also may exist additional documents or other Rule 26(a)(1)(B) materials

that the Defendants may use to support their respective claims or defenses in this action,

which are not now known by Defendants to exist or to support such claims or defenses

and which, during the course of discovery, will be identified and made available for

inspection and copying or will be produced pursuant to Fed. R. Civ. P. 26(e).

2

**C.     Damages.**  Pursuant to Fed. R. Civ. P. 26(a)(1)(C), the Defendants state that they are not at this time claiming an affirmative recovery of damages.  The Defendants reserve the right to assert counterclaims or third-party claims for such damages, and to assert claims against any person or entity in the nature of contribution, indemnification, setoff, or similar claims.  In the event any Defendant asserts a claim for damages against any party, such Defendant will supplement these Initial Disclosures pursuant to Fed. R. Civ. P. 26(e) with a calculation of such damages.

**D.     Insurance.**  Pursuant to Fed. R. Civ. P. 26(a)(1)(D), Defendants state that they are currently investigating whether there is any insurance policy that may be available to satisfy all or any part of any judgment rendered against them in this action.  Defendants will supplement these Initial Disclosures upon the completion of such investigation.

Respectfully submitted,

CISCO SYSTEMS, INC., BRUCE BASTIAN,
KATE DCAMP, LYNN FRASER, CELIA
HARPER-GUERRA, and RICK JUSTICE

By their attorneys,

Bruce E. Falby (BBO #544143)
Matthew Iverson (BBO #653880)
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated:  April 13, 2006

3

# EXHIBIT D TO DEFENDANTS' RULE 26(a)(1) INITIAL DISCLOSURES

### Cisco Offshore Development No-Hire Policy

Cisco has a no-hire policy with the two partner companies in India, HCL and Wipro, who have set up dedicated development centers for Cisco in Chennai and Bangalore

Specifically, our policy is that we will not hire any engineer as a Cisco employee or contractor, working at these development centers during their employment with these companies and for a period of 6 months after they have left their employment. The policy applies to engineers who may travel to US for training or for transfer of information. Hiring of partner's engineers, even after they leave their employment, contributes to higher attrition among the remaining engineers and will affect the stability of the development centers and the projects being executed. We appreciate your support in implementing the no-hire policy.

If you have any questions, please contact HR or Global Partner Engineering Management.

**Active Employee details as of 6th Sep-2000**

| Sl.No | First Name | Last Name | Email | Cisco.No |
|---|---|---|---|---|
| 1 | UDAYAKUMAR | NALINASEKAREN | un@cisco.com | TC08837 |
| 2 | KRISHNAKUMAR | THAKKOLAM | kk@cisco.com | TC18486 |
| 3 | PRABHURAMAN | SAYANAM | prabhu@cisco.com | TC31539 |
| 4 | SANKAR | NAGARAJAN | sn@cisco.com | TC08838 |
| 5 | NATESAN | ANGARAI | anatesan@cisco.com | 10295 |
| 6 | SHANKAR | STHANURETNAM | shanky@cisco.com | TC14104 |
| 7 | KANNAN | JAYARAMAN | jkannan@cisco.com | 9290 |
| 8 | MOHANKUMAR | GOPALASWAMY | tkumar@cisco.com | TC09288 |
| 9 | MEHER | VEMARAJU | meher@cisco.com | TC32925 |
| 10 | PANDIYAN | VARADHARAJAN | pandiyan@cisco.com | TC22536 |
| 11 | SHIVAKUMAR | SUNDARAM | shsundar@cisco.com | TC09715 |
| 12 | BABU | RAMAMURTHY | rbabu@cisco.com | TC08836 |
| 13 | SHANKAR RAMAN | MADRAS JAYARAMAN | mjsramen@cisco.com | TC16744 |
| 14 | BADRINATH | SRIMAN | bsriman@cisco.com | TC08998 |
| 15 | VANNIARAJAN | CHELLAPPAN | vrajan@cisco.com | TC18641 |
| 16 | SURESH | PATHAMADAI | pssuresh@cisco.com | TC18639 |
| 17 | SRIKANTH | VALLABHANENI | vvsri@cisco.com | TC30793 |
| 18 | SRINIVAS | GUDIPUDI | sgudipud@cisco.com | 16669 |
| 19 | BALAJI VENKAT | VENKATASWAMI | bvenkat@cisco.com | TC15026 |
| 20 | PUGAZHENDHI | KAYAPAKKAM | puga@cisco.com | TC19083 |
| 21 | VASAN | SRINI | vasan@cisco.com | TC16977 |
| 22 | PHANINDRA | GARIMELLA | panindra@cisco.com | TC21630 |
| 23 | SANDEPUDI | VENUGOPAL | svenu@cisco.com | TC19199 |
| 24 | KARNEY | SUDHAKAR | karney@cisco.com | TC21648 |
| 25 | VIJAYBASKAR | SANTHAPILLAI | baskar@cisco.com | TC21410 |
| 26 | KAUSHIK | NARAYAN | kaushik@cisco.com | TC17904 |
| 27 | THILLAI | VELUCHAMY | thillai@cisco.com | TC21449 |
| 28 | SURESH BABU | VISWANATHAN | mvbabu@cisco.com | TC22644 |
| 29 | SIKHIVAHAN | GUNDU | sikhi@cisco.com | TC21461 |
| 30 | ARAVIND | APPAN | aravind@cisco.com | TC23707 |
| 31 | KRISHNAMURTHY | THIRUTHAMARAI, NARAYANAN | nkrish@cisco.com | TC30415 |
| 32 | GIRIDHAR | PABBITI | pgiri@cisco.com | TC30289 |
| 33 | ANAND KUMAR | SANKARANARAYANAN | anku@cisco.com | TC22358 |
| 34 | SINGARAVELOU | RAJARAM | svelu@cisco.com | TC24041 |
| 35 | UMA | VADDI | maheshv@cisco.com | TC30624 |
| 36 | RAMCHANDER | NADIPALLY | chander@cisco.com | TC31072 |
| 37 | ASHOK | BHAGAT | ashokb@cisco.com | TC19158 |
| 38 | CHANDRASEKHAR | KANAKAM | csekhar@cisco.com | TC23360 |
| 39 | VEDAMOORTHY | MEENAKSHISUNDARAM | moorthy@cisco.com | TC22638 |
| 40 | LAKSHMI KUMARI | RAMAMURTHI | lakshmi@cisco.com | 22533 |
| 41 | SENTHILKUMAR | PASUPATHY | psk@cisco.com | TC22595 |
| 42 | SESHENDRA | SATRASALA | nathss@cisco.com | TC31063 |
| 43 | RAGHAVENDRA PRASAD | KRISHNASWAMI | prasadkr@cisco.com | TC31178 |

CISCO 00059

| 44 | VENKAT | BALASUBRAMANIAN | venkatb@cisco.com | TC22282 |
| 45 | RAMESH | GANESH | gram@cisco.com | TC22149 |
| 46 | SIVATHANU | NEELAKANTAN | sivan@cisco.com | TC30101 |
| 47 | ASHISH | KOLE | akole@cisco.com | TC22357 |
| 48 | HAREESH KUMAR | NARAYANA PANICKER | hari@cisco.com | TC23254 |
| 49 | SHANKAR | SUBRAMANIAN | sshankar@cisco.com | TC23524 |
| 50 | UDAY | KAPOOR | uday@cisco.com | TC24154 |
| 51 | ASHOK KUMAR | VENKATACHALAPATHY | vak@cisco.com | TC23965 |
| 52 | SUPARNA | GHOSH ROY CHAUDHURY | suparna@cisco.com | TC30356 |
| 53 | MANOKAR | NAMASIVAYAN | nmano@cisco.com | TC30626 |
| 54 | SOKKALINGAM | PALANISAMY | sokk@cisco.com | TC31440 |
| 55 | SURESH | RAJARAM | rsuresh@cisco.com | TC31180 |
| 56 | MEENAKSHI | NARAYANAN | meena@cisco.com | TC31062 |
| 57 | RADHA | MURUGARAJAN | radha@cisco.com | TC33337 |
| 58 | SRIKISHAN | SHANMUGAM | kishan@cisco.com | TC33338 |
| 59 | MARY | KOSHY | mkoshy@cisco.com | TC32924 |
| 60 | SWAROOP | ABRAHAM | swaroop@cisco.com | TC33334 |
| 61 | MANI | JANARDHANAN | jvs@cisco.com | 31181 |
| 62 | KOWSALYA | SUBRAMANIAN | kowsalya@cisco.com | TC32880 |
| 63 | ARUNKUMAR | MUTHURASANALLUR DESIGAN | mdarun@cisco.com | TC34179 |
| 64 | GAYATHRI | VISWANATHAN | gayathri@cisco.com | TC34718 |
| 65 | KANAKA | MAMILLAPALLI | mkb@cisco.com | TC34041 |
| 66 | SHANKARRAO | MISKIN | miskin@cisco.com | TC34921 |
| 67 | AURO | DHARMAPURAM | auro@cisco.com | TC34036 |
| 68 | SRIRAM | RAGURAMAN | rsriram@cisco.com | TC34064 |
| 69 | PRIYA | VISWAMBHARAN | priya@cisco.com | TC34503 |
| 70 | PREM SANKAR | GOPANNAN | prems@cisco.com | TC34535 |
| 71 | AMITAVA | BHATTACHARJEE | amitav@cisco.com | TC34037 |
| 72 | BALACHANDER | CHANDRASEKARAN | cbala@cisco.com | TC33968 |
| 73 | ANAND | NATARAJAN | nanand@cisco.com | TC34181 |
| 74 | ABHISHEK | SUMAN | abhishek@cisco.com | TC34855 |
| 75 | RAMBABU | ANUMOLA | rambabu@cisco.com | TC35149 |
| 76 | RACHNA | KAPOOR | rachna@cisco.com | TC35360 |
| 77 | MOINAK | GHOSH | moinakg@cisco.com | TC35144 |
| 78 | MARUTHACHALA | PONNAMBALAM | marutha@cisco.com | TC34842 |
| 79 | CHANDRASEKARAN | SWAMINATHAN | chandras@cisco.com | TC35148 |
| 80 | JAYASRI | BANDI | jayasri@cisco.com | TC35147 |
| 81 | ARUN SUBASH | MANICKAM | arunsub@cisco.com | TC35158 |
| 82 | SEKAR | CHANDRA | sekarbc@cisco.com | TC35146 |
| 83 | AMRITHANATHAN | NARAYANAN | amrith@cisco.com | TC34923 |
| 84 | AMIT | KAUL | amitk@cisco.com | TC35638 |
| 85 | SIDHARTH | BHAN | bhan@cisco.com | TC35637 |
| 86 | SWAMINATHAN | RANGANATHAN | swathik@cisco.com | TC35150 |
| 87 | SIVAKUMAR | GURUMURTHY | sivag@cisco.com | TC35661 |
| 88 | NANDAKUMAR | KUMARESAN | nanda@cisco.com | TC35940 |
| 89 | KANNAN | MUTHUSAMY | kanna@cisco.com | TC36167 |
| 90 | VANAJA | RAVI | vanaja@cisco.com | TC35773 |
| 91 | VANAJA | PALANISAMY | vanaj@cisco.com | TC35359 |
| 92 | DEVANANDH | RAMAMOORTHY | deva@cisco.com | TC35659 |
| 93 | LAKSHMI | SANKARAN | lakshmis@cisco.com | TC35771 |
| 94 | PRAVEEN | VALLIAVALAPPIL | praveen@cisco.com | TC35472 |
| 95 | KEDAR | PATIL | kedar@cisco.com | TC35772 |
| 96 | BALAN | RAMAMURTHY | balanr@cisco.com | TC35662 |
| 97 | SREE RAMA KUMAR | IPPAGUNTA | isriram@cisco.com | 34034 |
| 98 | MANOHAR | RADHAKRISHNAN | manor@cisco.com | TC37106 |
| 99 | SRINIVASU | KEDARASETTI | srinik@cisco.com | TC37729 |
| 100 | SRIDHAR | KUNDURU | ksreddy@cisco.com | 37965 |
| 101 | CHANDRAN | NARASIMHAN | nchan@cisco.com | TC37107 |
| 102 | TONY | JACOB | tonyj@cisco.com | TC37109 |
| 103 | GURU SAMY | KUPPU SAMY | guruk@cisco.com | TC39042 |

CISCO 00060

| | | | |
|---|---|---|---|
| 104 OUMAPATHY | SARANGAPANY | ouma@cisco.com | TC37106 |
| 105 RAJESH | JOSE | pjrajesh@cisco.com | TC37728 |
| 106 KANNAN | THILLAIGOVINDAN | teekay@cisco.com | TC37105 |
| 107 RAJESH | MADAMALA | rajeshmi@cisco.com | 38137 |
| 108 TIZIL | ZECHERIA | tizil@cisco.com | TC37599 |
| 109 DHANAKUMAR | SUBRAMANIAN | dhana@cisco.com | TC38163 |
| 110 SURESH KUMAR | PARAMBATH | kpsuresh@cisco.com | TC37727 |
| 111 RAMASWAMY | KRISHNASWAMY | rkrish@cisco.com | TC37954 |
| 112 SRIKANTH | RAMACHANDRAN | srikanth@cisco.com | TC37964 |
| 113 SENTHIL NATHAN | CHANDRASEKHARAN | csenthil@cisco.com | TC39637 |
| 114 ROHINI | RAVINDRAN | rohini@cisco.com | TC39574 |
| 115 RAJENDRA PRASAD | TURAGA | rpturaga@cisco.com | TC37953 |
| 116 ARUNA | PADHI | pkarun@cisco.com | TC39569 |
| 117 PREMCHANDAR | NAMASIVAYAM | nprem@cisco.com | TC39570 |
| 118 DHANANJAY | SHENDE | psdhan@cisco.com | TC38990 |
| 119 BABU | SRINIVASAN | bsriniva@cisco.com | TC40852 |
| 120 BIJU | RAMACHANDRAN | bijur@cisco.com | TC39633 |
| 121 CHANDRA SEKHAR | PUTHA | csekharp@cisco.com | TC41652 |
| 122 RAMESH | SRIRAMAN | ramesh@cisco.com | TC39573 |
| 123 JANARDHANAN | RADHAKRISHNAN | jana@cisco.com | TC39613 |
| 124 KARTHIKEYAN | VEERAPANDIAN | kaveerap@cisco.com | TC39947 |
| 125 SRINIVASAN | SUBRAMANIAN | srinis@cisco.com | TC39635 |
| 126 MEENAKSHI | DEKSHINAMURTHY | mdekshin@cisco.com | TC39949 |
| 127 SIVAKUMAR | THIRUKKANNA THEVAR | sthirukk@cisco.com | TC41448 |
| 128 MANIKANDAN | RAMDOSS | mramdoss@cisco.com | TC39948 |
| 129 KARTHIC PRABU RAM | VENKATASAMY | kvenkati@cisco.com | TC40853 |
| 130 DINESH | BHONSLE | dbhonsle@cisco.com | TC40160 |
| 131 SARAVANAN | VELRAJAN | svelraja@cisco.com | TC40605 |
| 132 BIJU JACOB JOHN | | biju@cisco.com | TC39572 |
| 133 RIAZ | AHAMED | rahamed@cisco.com | TC40851 |
| 134 GIRISH | BIST | gbist@cisco.com | TC41854 |
| 135 DORA BABU | V.V.S. | drasamse@cisco.com | TC41586 |
| 136 KAVITHA | PATCHAYAPPAN | kap@cisco.com | TC41482 |
| 137 RAJA | DHANASEKAR | rdhanase@cisco.com | TC42211 |
| 138 REVATHA | BOOTHALINGAM | reb@cisco.com | TC41483 |
| 139 MURUGAN | AMIRTHALINGAM | mamirtha@cisco.com | TC42028 |
| 140 BHARATHI | BALAJI | bbalaji@cisco.com | TC41481 |
| 141 PERUMAL | RAJU | praju@cisco.com | TC41651 |
| 142 NADARADJANE | NAVINE | nmc@cisco.com | TC42173 |
| 143 KRISHNAMOORTHY | DURAISAMY | kduraisa@cisco.com | TC42027 |
| 144 RAMANATHAN | LAKSHMIKANTHAN | rlakshmi@cisco.com | TC41268 |
| 145 ANAND | JAYARAMAN | ajayaram@cisco.com | TC41309 |
| 146 SAJAY | SELVARAJ | sselvara@cisco.com | TC42012 |
| 147 PARAMESWARAN | BALASUBRAMANIAN | pabalasu@cisco.com | TC42171 |
| 148 MAYA DEVI | SREEDEVI | msreedev@cisco.com | TC41449 |
| 149 SHIRIN | RAHMAN | shrahman@cisco.com | TC41580 |
| 150 SENDIL VADIVU | GANESH | seganesh@cisco.com | TC43861 |
| 151 MUTHU KUMARAN | KASI VISWANATHAN | mviswana@cisco.com | TC42602 |
| 152 ANISH | THOMAS | anthomas@cisco.com | TC43863 |
| 153 SUNDARESAN | BALASUBRAMANIAN | subalasu@cisco.com | TC43329 |
| 154 BIJU | NAIR | bnair@cisco.com | TC42982 |
| 155 SRIKRISHNA | SARANATH | ssaranat@cisco.com | TC44391 |
| 156 MARIA | GOMEZ | magomez@cisco.com | TC42981 |
| 157 BALAJI | MOHAN | bemohan@cisco.com | TC44507 |
| 158 KANNAN | KRISHNAMOORTHY | kankrish@cisco.com | 45330 |
| 159 CARTHIC | SUNDARARAJ | csundara@cisco.com | 45328 |
| 160 ARVIND | PARTHASARATHY | aparthas@cisco.com | 45720 |
| 161 SENTHILKUMAR | VARADARAJAN | svaradar@cisco.com | 46132 |
| 162 DEVANAND | PALANISAMY | dpalanis@cisco.com | 46131 |
| 163 PRASANNA | VENKATARAMAN | pvenkatr@cisco.com | 46130 |

CISCO 00061

| 164 | RADHIKA | SUDHARSAN | rsudhars@cisco.com | 45903 |
| 165 | KANNAN | VATHINATHAN | kvaithin@cisco.com | 46589 |
| 166 | RATHNA | LANKAPALLI | rlankapa@cisco.com | 46644 |
| 167 | NARAYANAN | NAMPOOTHIRI | nnampoot@cisco.com | 45493 |
| 168 | SWAMINATHAN | NARAYANAN | swnaraya@cisco.com | 45516 |
| 169 | RAJAVEL | GANESA MOORTHY | rganesam@cisco.com | 46588 |
| 170 | ANUPAMA | NATARAJAN | anataraj@cisco.com | 46406 |
| 171 | AMEEN IS'HAQ | PAVILION | aishaq@cisco.com | 46695 |
| 172 | AKIL | NAMADURAI | anamadur@cisco.com | 46767 |
| 173 | SRINIVASAN | VEERARAGHAVAN | sriragha@cisco.com | 46738 |
| 174 | BALAJI | KRISHNAN | bkrishna@cisco.com | 46233 |
| 175 | KAMESH RAJ | VELU | kvelu@cisco.com | 46638 |
| 176 | PRASANNA KUMAR | GAJENDRAN | panandan@cisco.com | 47092 |
| 177 | KRISHNAN | SRINIVASAN | srkrishn@cisco.com | 46765 |
| 178 | VENKATA SAI | NEMANI | vnemani@cisco.com | 47090 |
| 179 | RAMESH | RANGAVITTAL | rrangavi@cisco.com | 47758 |
| 180 | MAHADEVAN | CHELLAPERUMAL | mchellap@cisco.com | 47759 |
| 181 | KOUSHIK | RAJARAM | krajaram@cisco.com | 47091 |
| 182 | RAMESH | VARADARAJULU | ravarada@cisco.com | 47755 |
| 183 | GAYATHRI | VAIDYANATHAN | gvaidyan@cisco.com | 47757 |
| 184 | RAMESH | SRIPATHY RAO | ramrao@cisco.com | 47943 |
| 185 | SUBRAMANIAN | THAMARAISAMY | sthamara@cisco.com | 48243 |
| 186 | GANESH | CHITTIPEDHI | gchittip@cisco.com | 48214 |
| 187 | RAMANATHAN | NARAYANAN | ramnaray@cisco.com | 48213 |
| 188 | ASHOKKUMAR | NAGARAJAN | anagaraj@cisco.com | 48244 |
| 189 | VENKATA | VEERAVALLI | vveerava@cisco.com | 48505 |
| 190 | KRISH | VERMA | kverma@cisco.com | 48332 |
| 191 | VINOTH KUMAR | ANANDAN | vanandan@cisco.com | 48508 |
| 192 | VELUMANI | CHENNAKESAVAN | vchennak@cisco.com | 48574 |
| 193 | SASI | CHANDRAN | saschand@cisco.com | 48678 |
| 194 | MOHAN RAJ | RATHINASABAPATHY | mrathina@cisco.com | 48575 |
| 195 | UMAMAHESWARI | VISWANATHAN | uviswana@cisco.com | 48576 |
| 196 | RUDRESHWAR | NATARAJAN | m@cisco.com | 48399 |
| 197 | BALAJI | VENKATACHALAPATHY | bvenkata@cisco.com | 48679 |
| 198 | NAVEEN | CHOUKSEY | nchoukse@cisco.com | 48507 |
| 199 | INDULEKHA | RAVINDRAN | iravindr@cisco.com | 48107 |
| 200 | KUMAR | SARMA | ksarma@cisco.com | 48640 |
| 201 | NAVENDRAN | RAMDAS | nramadas@cisco.com | 48680 |
| 202 | VEERENDRA KIRAN | MUPPANA | vmuppana@cisco.com | 49504 |
| 203 | SUDHIR | PARASURAM | sparasur@cisco.com | 49124 |
| 204 | PRIYA | KESAVAN | pkesavan@cisco.com | 48886 |
| 205 | AJITH | BALACHANDRAN | abalacha@cisco.com | 49215 |
| 206 | PRADEEP | BHATT | pbhatt@cisco.com | 50001 |
| 207 | MAN SINGH | SARDAR | msardar@cisco.com | 50061 |
| 208 | SAILESH | GANDHAM | sgandham@cisco.com | 49999 |
| 209 | SENTHIL | PANDIAN | spandian@cisco.com | 49788 |
| 210 | SATHISH | CHANDRAN | satchand@cisco.com | 50268 |
| 211 | GANESA | RAMASAMY | gramasam@cisco.com | 50080 |
| 212 | RAMACHANDRAN | RADHAKRISHNAN | raradhak@cisco.com | 49787 |
| 213 | PRADEEP | SAMPATH | psampath@cisco.com | 50676 |
| 214 | HARIBALARAMAN | RAMASUBRAMANIAN | hramasub@cisco.com | 50675 |
| 215 | RAJESHKUMAR | RAJAPPAN | rrajappa@cisco.com | 51043 |
| 216 | ARUN THEEBAN | | akrishna@cisco.com | 50673 |
| 217 | SAJEEV | JOS | sjos@cisco.com | 51171 |
| 218 | SRINIVASU | KADALI | skadali@cisco.com | 51152 |
| 219 | SUSMITHA | SUNDARARAMAN | sussunda@cisco.com | 51165 |
| 220 | RAMESH BALAJI | SUBRAMANIAN | ramessub@cisco.com | 51153 |
| 221 | NARAYANAN | MADHAVAN | madnaray@cisco.com | 51028 |
| 222 | SUBALAKSHMI | GANAPATHIRAMAN | sganapat@cisco.com | 51010 |
| 223 | KUMAR | THIAGARAJAN | kthiagar@cisco.com | 51577 |

CISCO 00062

| 224 | NANDACOUMAR | BALARAMANE | nbalaram@cisco.com | 51358 |
| 225 | CHANDRA | VANKA | cvanka@cisco.com | 51578 |
| 226 | JAYACHANDRAN | KULANGARA | kjayacha@cisco.com | 51013 |
| 227 | SRIRAMAN | SAHASRANAMAN | ssahasra@cisco.com | 52437 |
| 228 | ROY | JOSE | rojose@cisco.com | 51575 |
| 229 | GAYATHRI | RAMAKRISHNAN | gayramak@cisco.com | 47288 |
| 230 | GIJU | GEORGE | gigeorge@cisco.com | 52140 |
| 231 | MOHAMED THAGHA | ASAN ALI | masanali@cisco.com | 52436 |
| 232 | SARAVANAN | SUBRAMANIAN | sarsubra@cisco.com | 52117 |
| 233 | RAMANATHAN | MUTHAIAH | rmuthaia@cisco.com | 51574 |
| 234 | SHYAMALA | RADHAKRISHNAN | sradhakr@cisco.com | 54072 |
| 235 | SHIVAKUMAR | NARAYANASWAMY | shinaray@cisco.com | 53169 |
| 236 | GANESH | SRINIVASAN | gsriniva@cisco.com | 52771 |
| 237 | HANNIBAL | BAULIAH | hbauliah@cisco.com | 53249 |
| 238 | SURESH | JAYACHANDRAN | sjayacha@cisco.com | 53539 |
| 239 | RAJU | NANDURI | rnanduri@cisco.com | 54073 |
| 240 | DINESH | CHIKOTI | dchikoti@cisco.com | 53279 |
| 241 | KIRAN | MADABHUSHI | mkiran@cisco.com | 53284 |
| 242 | SAMPATH | PATNALA | spatnala@cisco.com | 53564 |
| 243 | MYTHREYI | SUBRAMANIYAM | msubrama@cisco.com | 54644 |
| 244 | MAYURESH | BAKSHI | mbakshi@cisco.com | 55987 |
| 245 | MADHUMATHY | VENKATARAMAN | mvenkatr@cisco.com | 54754 |
| 246 | MADHAVAN | JAGANNATHAN | madjagan@cisco.com | 57630 |
| 247 | CHACKO | ANTONY | Cantony@cisco.com | 55181 |
| 248 | SANDEEP | NAIK | snaik@cisco.com | 55372 |
| 249 | ASHISH | KUMAR | ashikuma@cisco.com | 56017 |
| 250 | BALAJI | KRISHNAMURTHY | bakrishn@cisco.com | 54318 |
| 251 | CHIDAMBARAM | PERIYAKARUPPIAH | cperiyak@cisco.com | 55082 |
| 252 | SUBRAMANIAN | NALLASIVAM | snallasi@cisco.com | 55087 |
| 253 | MADHAVAN | VILVARAYANALOOR | mvilvara@cisco.com | 55742 |
| 254 | MURUGAVEL | MUTHUKUMARASAMY | mmuthuku@cisco.com | 56050 |
| 255 | MANIKANDAN | SOMASUNDARAM | msomasun@cisco.com | 60318 |
| 256 | BIJU | JOSE | bjose@cisco.com | 55746 |
| 257 | ARUN KUMAR | BALASUBRAMANIAN | arbalasu@cisco.com | 55738 |
| 258 | SIBI | KANNAN | smuthura@cisco.com | 55737 |
| 259 | KAUSHIK | DATTA | kdatta@cisco.com | 56047 |
| 260 | SUGANTHI | NATESAN | snatesan@cisco.com | 54753 |
| 261 | MADHUSUDHANAN | VENUGOPAL | mavenugo@cisco.com | 55195 |
| 262 | LENIN | LAKSHMINARAYANAN | lelakshm@cisco.com | 55740 |
| 263 | SUNDAR | DINAKARAN | sdinakar@cisco.com | 55736 |
| 264 | GANESH | SANKARAN | gsankara@cisco.com | 55196 |
| 265 | KRISHNAMOORTHY | KARTHIKEYAN | kkarthik@cisco.com | 55739 |
| 266 | BALASUBRAMANIAN | PALANISAMY | bpalanis@cisco.com | 55377 |
| 267 | MANISH | AGARWAL | megrawal@cisco.com | 54756 |
| 268 | SUDHIN | V .K. | svk@cisco.com | 54752 |
| 269 | SENTHIL RAJA | VELU | srajavel@cisco.com | 54758 |
| 270 | DEVANADHAN | MUNUSWAMY | dmunuswa@cisco.com | 54750 |
| 271 | INDUKUMAR | ILANGOVAN | lilangov@cisco.com | 54726 |
| 272 | SAIRAMPRABHU | VEDAM | svedam@cisco.com | 56029 |
| 273 | SARAVANA KUMAR | UMA MAHESHWARAN | sumamahe@cisco.com | 54727 |
| 274 | GUNASEKARAN | BALAKRISHNAN | gbalakri@cisco.com | 56051 |
| 275 | ANAND | ARVIND | aarvind@cisco.com | 55735 |
| 276 | HARIHARAN | KUNCHITHAPATHAM | hkunchit@cisco.com | 54755 |
| 277 | ARVIND | MOLLIN | amollin@cisco.com | 47293 |
| 278 | TUHIN | SHIT | tukumar@cisco.com | 54751 |
| 279 | RAVI | BALAKRISHNAN | rbalakri@cisco.com | 54728 |
| 280 | HARI KRISHNA | KURMALA | hkurmala@cisco.com | 55139 |
| 281 | SOLOMON | MOHANTY | smohanty@cisco.com | 54757 |
| 282 | PRASHUN | PURKAYASTHA | ppurkaya@cisco.com | 55986 |
| 283 | SANKARAN | VAIDYANATHAN | svaidyan@cisco.com | 56052 |

CISCO 00063

| | | | |
|---|---|---|---|
| 284 NARAYANA | MOHAN RAJ KUMAR | nakumar@cisco.com | 58297 |
| 285 PRAKASH | RAJA | praja@cisco.com | 58294 |
| 286 SRINIVASAN | RATNASWAMY | srathnas@cisco.com | 58295 |
| 287 VINOD KUMAR | CHANDRAN | vichandr@cisco.com | 58231 |
| 288 VINOD | PADMANABHAN | vipadman@cisco.com | 58298 |
| 289 SURESH | PACHIAPPAN | spachiap@cisco.com | 58232 |
| 290 PAZHANIVEL | MEIYAMMUTHU | pmeiyamu@cisco.com | 58487 |
| 291 RAMESH | JAGANNATHAN | ramjagan@cisco.com | 58964 |
| 292 JAMES | PANICKER | jpanicke@cisco.com | 58293 |
| 293 SAJITH | SADANANDAN | ssadanan@cisco.com | 57818 |
| 294 SACHIN | VINAYAKAN | svinayak@cisco.com | 58296 |
| 295 VINOD | PONNAPPAN | vponnapp@cisco.com | 60608 |
| 296 YUNUS | IQBAL | yiqbal@cisco.com | 58661 |
| 297 SHYAM | SOMANATHAN NAIR | ssomanat@cisco.com | 60154 |
| 298 FIRDOUSI | FAROZAN | ffarozan@cisco.com | 58965 |
| 299 BINU | UDAYAKUMAR | budayaku@cisco.com | 58792 |
| 300 SUDHAKAR | TADI | stadi@cisco.com | 58894 |
| 301 VIDJEA KUMAR | ARUNACHALAM | varunach@cisco.com | 60203 |
| 302 BAKTHAVATCHALAM | RAMAMURTHY | baramamu@cisco.com | 58234 |
| 303 SUBRAMANIAN | DANDAPANI | sdandapa@cisco.com | 59765 |
| 304 SANJEEV | KUMAR | sansinha@cisco.com | 58661 |
| 305 GANGADHAR | KORITALA | gkorital@cisco.com | 61391 |
| 306 HARI | NARAHARI | hnarahar@cisco.com | 60436 |
| 307 RAMESH BABU | ERANAVEERU | reranave@cisco.com | 60619 |
| 308 AMARESAN | BALAKRISHNAN | amabalak@cisco.com | 60618 |
| 309 JEYACHITRA | ALAGAR | jalagar@cisco.com | 60624 |
| 310 SIVAKUMAR | RAMAKRISHNAN | siramakr@cisco.com | 59966 |
| 311 NANDHAKUMAR | SWAMINATHAN | naswamin@cisco.com | 60260 |
| 312 BIKRAM | GUPTA | bgupta@cisco.com | 60155 |
| 313 TANIGAIARASSANE | DJEARAMANE | tdjearam@cisco.com | 60429 |
| 314 LOOKOSE | JOSEPH | ljoseph@cisco.com | 60156 |
| 315 PRABAHAR | MURUGAIYAN | pmurugai@cisco.com | 60920 |
| 316 VIDYA SHANKAR | SANTHANA KRISHNAN | vsanthan@cisco.com | 61009 |
| 317 SURENDRA KUMAR | VISWSANATHAN | suviswan@cisco.com | 61089 |
| 318 RAJESWARI | NAGARAJAN | magaraj@cisco.com | 60924 |
| 319 MUTHUKUMAR | SUBRAMANIAN | musubram@cisco.com | 60923 |
| 320 KRISHNAN | RAMAGOPAL | kramagop@cisco.com | 61558 |
| 321 MANIKANDAN | SHANMUGAM | mshanmug@cisco.com | 60922 |
| 322 DEEPA | SUBRAMONIAM | dsubramo@cisco.com | 61560 |
| 323 MANIVANNAN | DEVARAJAN | mdevaraj@cisco.com | 61927 |
| 324 VENKATANARASIMHAN | RAMAKRISHNAN | vramakri@cisco.com | 61398 |
| 325 PARTHASARATHY | VENKATAVARADHAN | pvenkata@cisco.com | 62711 |
| 326 GAYATRI | SANKARAN | gasankar@cisco.com | 61928 |
| 327 KOUSALYA | KASINATHAN | kkasinat@cisco.com | 62950 |
| 328 RAJA | KANNAN | rajkanna@cisco.com | 62320 |
| 329 VEDAVYASA | GURJALE | vgurjale@cisco.com | 61511 |
| 330 PARAMASIVAM | NAGARAJACHETTY | pnagaraj@cisco.com | 62949 |
| 331 JAGDISH | NARAYAN | jnarayan@cisco.com | 62948 |
| 332 PRASANNA | VISWAKUMAR | pviswaku@cisco.com | 63662 |
| 333 ELANGO | KRISHNASAMI | ekrishna@cisco.com | 63196 |
| 334 MADHUSUDAN | KRISHNA PRABHAKAR | makrishn@cisco.com | 62951 |
| 335 KRISHNAMACHARI | RANGANATHAN | krangana@cisco.com | 63199 |
| 336 MAGESH | VISWANATHAN | maviswan@cisco.com | 63266 |
| 337 JAIDIL | KARIPPARA | jkarippa@cisco.com | 63029 |
| 338 RAJEEV | SREEDHARAN NAIR | rsreedha@cisco.com | 63586 |
| 339 PADMA | THANASEKARAN | pthanase@cisco.com | 62947 |
| 340 MOHAMED ISMAIL | JAMAL MOHAMED | mismeil@cisco.com | 63495 |
| 341 DESIREDDY | SUDHAKAR REDDY | dsudhaka@cisco.com | 63661 |
| 342 GANESH | PARTHASARATHY | gparthas@cisco.com | 63843 |
| 343 CHANDRASEKAR | BALASUBRAMANIAN | cbalasub@cisco.com | 63727 |

CISCO 00064

| 344 | KANNAN | KADIRVEL | kkadirve@cisco.com | 63844 |
| 345 | TANIGAIVELOU | SELVARAJU | tselvara@cisco.com | 63726 |
| 346 | JAYAKUMAR | RAJAGOPAL | jrajagop@cisco.com | 64625 |
| 347 | PRASANNA | KOTHANDARAMAN | prkothan@cisco.com | 65042 |
| 348 | ARNALD | SAMTHAMBI | asamtham@cisco.com | 63028 |
| 349 | KARUPPUSAMY | SENTHILKUMAR | ksenthil@cisco.com | 65041 |
| 350 | BALAJI | NATARAJAN | bnataraj@cisco.com | 66747 |
| 351 | SIVAKUMAR | MANI | sivmani@cisco.com | 66844 |
| 352 | PREMRAJ | SUNDARAM | psundara@cisco.com | 66839 |
| 353 | JEGAN | CHANDRASEKARAN | jechandr@cisco.com | 66840 |
| 354 | AMIRTHAVENI | VELUSAMY | amvelusa@cisco.com | 66843 |
| 355 | LAXMANA | POLISETTI | lpoliset@cisco.com | 66842 |
| 356 | RAMESH | BALABHADRUNI | rbalabha@cisco.com | 66836 |
| 357 | APARNA | NAIR | anair@cisco.com | 64626 |
| 358 | SELVAN | EDWARD | sedward@cisco.com | 65364 |
| 359 | BHARAT KUMAR | PERUMALLA | bperumal@cisco.com | 67337 |
| 360 | RAJENDRA | NAGABHUSHAN | magabhu@cisco.com | 67668 |
| 361 | SAKTHIDHARAN | VADAKEYPAT | svadakey@cisco.com | 65365 |
| 362 | ARUN | ARUMUGANAINAR | aarumuga@cisco.com | 69146 |
| 363 | JAGATHESAN | ARUMUGAM | jarumuga@cisco.com | 66841 |
| 364 | YOGESH | BAKSHI | ybekshi@cisco.com | 69144 |
| 365 | SANTHOSH RAM | MANOHAR | smanohar@cisco.com | 68323 |
| 366 | VINAY | JAMWAL | vjamwal@cisco.com | 69649 |
| 367 | AMITHA | HARILAL | aharilal@cisco.com | 69142 |
| 368 | PRASEEDA | SASIDHARAN | pnair@cisco.com | 68324 |
| 369 | RAGHU | ELLAPPAN | rellapan@cisco.com | 69897 |
| 370 | SANTOSH | NAGARAJ | sannagar@cisco.com | 69143 |
| 371 | MATHEWS | ABRAHAM | mabraham@cisco.com | 69141 |
| 372 | AYYAPPAN | DHANDAPANI | adhandap@cisco.com | 70265 |
| 373 | VENKATA | ARUMUGAM | venksubr@cisco.com | 69896 |
| 374 | RITESH | SHELAT | rshelat@cisco.com | 70560 |
| 375 | SELVAMANI | RAMASAMY | rselvama@cisco.com | 70686 |
| 376 | AMUDHA | MUTHIAH | ammuthia@cisco.com | 70559 |
| 377 | THIRUMAL | VENKATESAN | thvenkat@cisco.com | 69139 |
| 378 | SENTHIL KUMAR | GOVINDAN | segovind@cisco.com | 70562 |
| 379 | MALLESWARI | PABBIDI | mpabbidi@cisco.com | 71463 |
| 380 | VISWANATHAN | RAMAN | vraman@cisco.com | 69821 |
| 381 | ANANDHI | PERIANDAVAN | aperiand@cisco.com | 71995 |
| 382 | KALPANA | JAGATHALAPRATHABAN | kjagatha@cisco.com | 70558 |
| 383 | NARSIMHA REDDY | CHALLA | creddy@cisco.com | 70847 |
| 384 | MANIMALA | MUTHURAMAN | mmuthura@cisco.com | 72491 |
| 385 | PRAKASH KUMAR | MANICKAM | pmanicka@cisco.com | 71311 |
| 386 | SRINIVASAN | VENUGOPAL | srivenup@cisco.com | 73028 |
| 387 | KANNAN | SAMPATH | ksampath@cisco.com | 74478 |
| 388 | SRIRAM ANANDRAJ | SAEENATHAN | ssaeenat@cisco.com | 71718 |
| 389 | HARI PRASATH | MEENAKSHI SUNDARAM | hsundara@cisco.com | 71719 |
| 390 | SANJEEV | CHIDAMBAR | schidamb@cisco.com | 71561 |
| 391 | CHITAMBARAM | NEELAKANTAN | cneelaka@cisco.com | 72488 |
| 392 | HARI PRASAD | DOKKU | hdokku@cisco.com | 71560 |
| 393 | CHANDRASEKHARREDDY | VEDANPARTHI | cvedanep@cisco.com | 72592 |
| 394 | RAJESH | SHAH | rajessha@cisco.com | 72593 |
| 395 | RAJESH KUMAR | CHEKURI | rchekuri@cisco.com | 72594 |
| 396 | AKHILESH | SHRIKRISHNA | amahajan@cisco.com | 74053 |
| 397 | ANANTHANARAYANAN | RAMASWAMY | aramaswa@cisco.com | 69822 |
| 398 | ULAGANATHAN | MAHADEVAN | umahadev@cisco.com | 74054 |
| 399 | SRIVIDHYA | NARENDRAN | snarendr@cisco.com | 72591 |
| 400 | MANOJ | KUMAR | manojkum@cisco.com | 74052 |
| 401 | SEETHAMANI | SAMBHANA | ssambhan@cisco.com | 74480 |
| 402 | KRISHNAN | VENKATARAMAN | krvenkat@cisco.com | 73621 |
| 403 | FAISAL | SIYAVUDEEN | fsiyavud@cisco.com | 74363 |

CISCO 00065

| | | | |
|---|---|---|---|
| 404 ALAGAPPAN | SANKARALINGAM | alsankar@cisco.com | 74366 |
| 405 YOGESH | RAMDOSS | yramdoss@cisco.com | 72489 |
| 406 PRAMOD | MENON | prmenon@cisco.com | 74051 |
| 407 SANKARASUBRAMANIAN | GOMATHINAYAGAM | sgomathi@cisco.com | 72490 |
| 408 RUPESH | RAGHUVARAN | rraghuva@cisco.com | 73286 |
| 409 SUNDARARAMAN | KALYANARAMAN | skalyana@cisco.com | 74362 |
| 410 JAMES | THOMAS | jamthoma@cisco.com | 74847 |
| 411 SWAMINATHAN | SRINIVASAN | swsriniv@cisco.com | 78266 |
| 412 PAARI | ELANGOVAN | pelangov@cisco.com | 75118 |
| 413 PRIYA | SUDHARSHAN | psudhars@cisco.com | 74360 |
| 414 BRUCELIN | CLEMENS | bclemens@cisco.com | 74364 |
| 415 LENINBABU | DONTUBOYINA | ldontubo@cisco.com | 76751 |
| 416 SHASHIKANTH | KUDRE | skudre@cisco.com | 77782 |
| 417 KUMARA GURUBARAN | GUNALAN | kgunalan@cisco.com | 76997 |
| 418 GEETHA | RAMAMOORTHY | gramamoo@cisco.com | 74894 |
| 419 ARUN KUMAR | JAYARAMAN | arjayara@cisco.com | 75120 |
| 420 ANURADHA | VISWANATHAN | anviswan@cisco.com | 75121 |
| 421 RAMACHANDRAN | SATHYANARAYANAN | rsathyan@cisco.com | 75974 |
| 422 VASUDEVAN | VISVANATHAN | vvisvana@cisco.com | 76803 |
| 423 VENKATESAN | SIVAGURUNATHAN | vsivagur@cisco.com | 77088 |
| 424 DEVADATHAN | BALAKRISHNAN | dbalakri@cisco.com | 76802 |
| 425 VIJAYARAJKUMAR | PARAMASIVAM | vparamas@cisco.com | 76892 |
| 426 PANDIARAJAN | SELVARAJ | pselvara@cisco.com | 76890 |
| 427 SOMASUNDER | SUBRAMANIAN | sosubram@cisco.com | 77768 |
| 428 PREMKUMAR | AINAKUTTI | painakut@cisco.com | 76996 |
| 429 BISWAJIT | DASH | bidash@cisco.com | 77776 |
| 430 JAGANATHAN | KRISHNAN | jagkrish@cisco.com | 76998 |
| 431 RAJA SEKHAR | GOGULA | rgogula@cisco.com | 76891 |
| 432 NOUSHAD | KUNJUMUHAMMED | nkunjumu@cisco.com | 77398 |
| 433 AMITHA | HIRIADAKA | ahiriada@cisco.com | 77777 |
| 434 KONDALRAJ | KOSALRAM | kkosalra@cisco.com | 76752 |
| 435 LEO | THAINASE | lthainas@cisco.com | 78337 |
| 436 SENTHIL KUMAR | SATHIAH | sasenthi@cisco.com | 78476 |
| 437 DAKSHNAMURTHY | RAJASELVAM | rdakshna@cisco.com | 80257 |
| 438 DINESH | SIVARAJ | dsivaraj@cisco.com | 78475 |
| 439 VIJAY | WILSON | vijwilso@cisco.com | 78473 |
| 440 RAMLOK | DOMMARAJU | rdommara@cisco.com | 78472 |
| 441 NARAYANAN | RAMAMOORTHY | nramamoo@cisco.com | 79604 |
| 442 AYYANAR | AYYASAMI | aayyasam@cisco.com | 76995 |
| 443 JANAKI | SHANMUGAM | jshanmug@cisco.com | 78474 |
| 444 SHIRISH | INDURKAR | sindurka@cisco.com | 78752 |
| 445 SENTHILKUMAR | RENGARAJAN | serengar@cisco.com | 81020 |
| 446 BALAMURUGAN | VENGATTASUBBUN | bvengatt@cisco.com | 79907 |
| 447 VIKRAMA | UNNIKRISHNAN | uvikrama@cisco.com | 79605 |
| 448 SARAVANAN | BALASUBRAMANIAN | sabalasu@cisco.com | 79908 |
| 449 NAPOLEON | PADMANABAN | npadmana@cisco.com | 81754 |
| 450 BALASUBRAMANIYAN | GOVINDA SAMY | bgovinda@cisco.com | 80246 |
| 451 MARIMUTHU | KALIMUTHU | mkalimut@cisco.com | 80249 |
| 452 RAMESH | MEESALA | rmeesala@cisco.com | 80735 |
| 453 JOHN | THIMOTHY | jthimoth@cisco.com | 81023 |
| 454 GIRIDHARAN | AGASAVEERAN | gagasave@cisco.com | 79609 |
| 455 SATYADIKSHITA | BULUSU | sbaluso@cisco.com | 79803 |
| 456 LAKSHMINARAYANAN | VENUGOPAL | vlakshmi@cisco.com | 79606 |
| 457 VENKATARAMANAIAH | RAMAKRISHNAIAH | veramakr@cisco.com | 79909 |
| 458 SRINIVAS | SUBRAMANIAN | srinsubr@cisco.com | 79611 |
| 459 KUMAR | ABHISHEK | kabhishe@cisco.com | 81136 |
| 460 BIJOY | THOMAS | bijthoma@cisco.com | 82020 |
| 461 PRADEEPKUMAR | VENKATRAMAN | pravenka@cisco.com | 81138 |
| 462 RAMESH | KRISHNAMURTHY | rameskri@cisco.com | 82022 |
| 463 RAMESH | PAVADAI | rpavadai@cisco.com | 81305 |

CISCO 00066

| | | | |
|---|---|---|---|
| 464 CINI | ANTONY | ciantony@cisco.com | 81021 |
| 465 ARUN | VENKATARAMAN | aruvenka@cisco.com | 80247 |
| 466 SHANMUGA | VELLAICHAMY | svellaic@cisco.com | 83661 |
| 467 MURUGANANDAN | KANAGARAJ | mkangara@cisco.com | 84327 |
| 468 VENKATARAMANA | CUDDAPAH | vcuddape@cisco.com | 81755 |
| 469 NABENDU | NATH | nnath@cisco.com | 82898 |
| 470 THANGAVEL | MUDALIAR | mthangav@cisco.com | 82323 |
| 471 PRAVEEN | PRABHAKAR | prprabha@cisco.com | 84672 |
| 472 SIVARAMAN | SWAMINATHAN | siswamin@cisco.com | 84328 |
| 473 NATARAJAN | MANTHIRA MOORTHY | manatara@cisco.com | 83666 |
| 474 PRATHIMA | JAYARAMAN | prjayara@cisco.com | 83272 |
| 475 LALITHA | GANGA KUMAR | lgangaku@cisco.com | 84684 |
| 476 KARTHIKEYAN | NATARAJAN | kanatara@cisco.com | 82901 |
| 477 MURALI | RAMALINGAM | mramalin@cisco.com | 83664 |
| 478 KARTHIKEYAN | SAMYNATHAN | ksamynat@cisco.com | 82899 |
| 479 ELAMPARITHI | SHANMUGAM | eshanmug@cisco.com | 83660 |
| 480 JANAKI | BALLAV | jprusty@cisco.com | 83658 |
| 481 SARASSOU | RADJOU | sradjou@cisco.com | 84678 |
| 482 KUMARESH | PERUMAL | kperumal@cisco.com | 83662 |
| 483 VIJAYA | DORAISAMY | vdoraisa@cisco.com | 84326 |
| 484 GUHAN | RAMAN | guraman@cisco.com | 82902 |
| 485 GEETHA | RADHAKRISHNAN | gradhakr@cisco.com | |
| 486 SRINIVASU | MAJETI | smajeti@cisco.com | 82903 |
| 487 THENMOZHI | NATARAJAN | tnataraj@cisco.com | 84670 |
| 488 ANUSHA | PERUMALSAMY | aperumal@cisco.com | 83143 |
| 489 SRIKANTH | KRISHNAMACHARI | srikkris@cisco.com | 83663 |
| 490 VENKATARAMESH | GUDAPATI | vgudapat@cisco.com | 83659 |
| 491 VIDYA | SANTHANAKRISHNAN | visantha@cisco.com | 84325 |
| 492 SUKANYA | SUBBIAH | ssukanya@cisco.com | 83857 |
| 493 MAHESH | GOPALAKRISHNAN | mgopalak@cisco.com | 84323 |
| 494 KARTHIK | DINAKARAN | kdinakar@cisco.com | 84671 |
| 495 VENKATA SURESH | CHAMALA | vchamala@cisco.com | 85448 |
| 496 NALINI | THANGAVELU | nthangav@cisco.com | 84480 |
| 497 KEETHAN | AMBIKAPATHY | kambikap@cisco.com | 84920 |
| 498 PHANEENDRA | MASEEDU | mphaneen@cisco.com | 85443 |
| 499 PALANI | ARUMUGA ACHARI | parumuga@cisco.com | 84032 |
| 500 HASSAN | SHAIK | hshaik@cisco.com | 85436 |
| 501 RAJESH KANNA | SIVARAJ | To be received | |
| 502 EASWAR | KRISHNAN | eakrishn@cisco.com | 85440 |
| 503 JOSEPH | KURIAKOSE | jkuriako@cisco.com | 84922 |
| 504 PRASAD BABU | GIRIRAJAN | pgiriraj@cisco.com | 85437 |
| 505 KARTHIKEYAN | SUBRAMANIAM | kasubram@cisco.com | 85435 |
| 506 RAVIKUMAR | ESWARAN | reswaran@cisco.com | 85445 |
| 507 ESWARI | MADHAPPAN | emadhapp@cisco.com | 85438 |
| 508 VANITHA | JESUDURAI | vjesudur@cisco.com | 85439 |
| 509 SREEJA NAIR | SASIDHARAN | To be received | |
| 510 SATISH | SANTHANAM | To be received | |
| 511 MADHIVADHANAN | KALIYAPERUMAL | mkaliyap@cisco.com | 85141 |
| 512 SUDHA | SIVASHANMUGAM | To be received | |
| 513 SENTHIL | VEERAPPAN | To be received | |
| 514 RAJENDRAN | RAMASAMY | rramasam@cisco.com | 85142 |
| 515 SUBA | PANDIAN | supandia@cisco.com | 85447 |
| 516 SIVARAJA | KRISHNAMOORTHY | To be received | |
| 517 RATHI | VADAKEVEETIL | rvadakev@cisco.com | 85444 |
| 518 SHANMUGA PRIYA | RAJENDRAN | shrajend@cisco.com | 85434 |
| 519 VIJAYKUMAR | SUNDARARAJAN | vsundara@cisco.com | 85446 |
| 520 MANOHARAN | IRULANDY | miruland@cisco.com | 84921 |

CISCO 00067

## Cisco Offshore Development No-Hire Policy

Cisco has a no-hire policy with the two partner companies in India, HCL and Wipro, who have set up dedicated development centers for Cisco in Chennai and Bangalore.

Specifically, our policy is that we will not hire any engineer as a Cisco employee or contractor, working at these development centers during their employment with these companies and for a period of 6 months after they have left their employment. The policy applies to engineers who may travel to US for training or for transfer of information. Hiring of partner's engineers, even after they leave their employment, contributes to higher attrition among the remaining engineers and will affect the stability of the development centers and the projects being executed. We appreciate your support in implementing the no-hire policy.

If you have any questions, please contact HR or Global Partner Engineering Management.

### LEFT EMPLOYEES DETAILS FROM APRIL-SEPTEMBER 2000

| SL.NO. | FIRST NAME | LAST NAME | EMAIL-ID | LWD | CISCO NO |
|--------|------------|-----------|----------|-----|----------|
| 1 | RASHMI | SAHOO | rrsahoo | 2-Apr-03 | TC31437 |
| 2 | RAGHUNATH | BRAHMADEVARA | braghu | 6-Apr-03 | TC23708 |
| 3 | VIDYARANYA | MADDI | maddi | 7-Apr-03 | TC22279 |
| 4 | SRINIVAS | CHUTARI | csreenu | 17-Apr-03 | TC34502 |
| 5 | JAGANMOHAN | ADIREDDY | ajmreddy | 23-Apr-03 | TC33685 |
| 6 | SUBRAMANIAN | AKILA | aksubram | 28-Apr-03 | 46407 |
| 7 | VAIDEESWARAN | GANESAN | vganesan | 4-May-03 | TC17199 |
| 8 | VIMALI | KANNAN | vimalink | 8-May-03 | TC35152 |
| 9 | VISHAL | LAKHOTIA | vishal | 15-May-03 | TC33996 |
| 10 | JAY | KARTHIK | jakarthi | 21-May-03 | 44825 |
| 11 | BASKARAN | GONETI | baski | 25-May-03 | TC33995 |
| 12 | VENKANAGOUDA | GOUDAR | vgoudar | 1-Jun-03 | TC42396 |
| 13 | NITINKUMAR | SHINGNE | vshingne | 3-Jun-03 | TC44002 |
| 14 | NAAZNI | BEERAVU | nbeeravu | 15-May-03 | TC16666 |
| 15 | ABDUL | HYATH MOHAMMED | nmabdul | 16-Jun-03 | TC37237 |
| 16 | GANGADHARAN | RAMAKRISHNAN | ganges | 8-Jul-03 | TC33336 |
| 17 | SURESH | KRISHNAN | sureshk | 8-Jul-03 | TC31439 |
| 18 | VICTOR STEPHEN RAJ | EBENEZER | evictor | 17-Jul-03 | TC33745 |
| 19 | MURALIKRISHNA | ACHANTA | achanta | 17-Jul-03 | TC22903 |
| 20 | ABHIJIT | JERE | abhij | 24-Jul-03 | TC39347 |
| 21 | SIVA SHANMUGA PRAKASH | SUNDARAVEL | prakash | 24-Jul-03 | TC23840 |
| 22 | RAMASUBRAMANIAN | SETHURAMAN | subbu | 24-Jul-03 | TC31438 |
| 23 | RAMAKRISHNA | NARAYANAREDDY | ramki | 24-Jul-03 | TC30794 |
| 24 | AUGUSTUS | DIRAVIAM | franklin | 24-Jul-03 | TC39639 |
| 25 | SRIHARI | RAGHAVAN | srihari | 24-Jul-03 | TC39638 |
| 26 | CHANDRASEKAR | RAMACHANDRAN | cramacha | 30-Jul-03 | 45721 |
| 27 | BALASUBRAMANIAN | RAMACHANDRAN | beramach | 30-Jul-03 | 44337 |
| 28 | SANJAY | HABEEB | sanju | 31-Jul-03 | TC39024 |
| 29 | MANISH | MAHAJAN | manishm | 4-Aug-03 | TC33103 |
| 30 | CHEZHIAN | RANGANATHAN | chezhian | 7-Aug-03 | TC23735 |
| 31 | GOPALAKRISHNAN | RAMALINGAM | crgopal | 14-Aug-03 | TC37956 |
| 32 | VIJAYAN | SESHAN | vseshan | 27-Aug-03 | TC33335 |
| 33 | SARAVANA DAS | SUBRAMANIAN | pdas | 31-Aug-03 | TC16976 |
| 34 | SRIVATSAN | VEERARAGHAVAN | srveerar | 4-Sep-03 | 48639 |
| 35 | VIJAYA SARADHI | PULA | saradhi | 4-Sep-03 | TC31268 |
| 36 | SOMEN | BHATTACHARYA | somen | 11-Sep-03 | TC37966 |
| 37 | MURAHARI | VADAPALLI | mvadapal | 2-Oct-03 | 51161 |
| 38 | YAVANARAJAN | VINAYAGAM | yvinayag | 2-Oct-03 | 47290 |
| 39 | SRIRAM | NATARAJAN | srinatar | 26-Oct-03 | 47824 |

CISCO 00068

| 40 | MATHEW | JOSEPH | mjoseph | 18-Sep-03 | TC41119 |
|----|--------|--------|---------|-----------|---------|
| 41 | GURU PRADEEP | ACHUTHA | gachutha | 1-Oct-03 | TC42172 |
| 42 | BHARANI | INDRAN | bharani | 2-Oct-03 | TC35680 |
| 43 | PRASANNA KUMAR | MURUGESAN | prasanna | 21-Oct-03 | TC33686 |
| 44 | SRINIVASAN | KUMANDOOR | sriniks | 30-Oct-03 | TC39636 |
| 45 | RAJKUMARAN | CHANDRASEKARAN | rajkumar | 6-Nov-03 | TC33102 |
| 46 | VENKATESAN | GOPALAKRISHNAN | vgopalak | 27-Nov-03 | 44390 |
| 47 | PARAMESWARAN | KOMARASAMY | param@cisco.co | 1-Dec-03 | TC08997 |
| 48 | MUGUGANANDAM | GANAPATHY | gmuruga@cisco.c | 4-Dec-03 | TC13775 |
| 49 | SANDEEP | SHANDILYA | sshandil@cisco.c | 11-Dec-03 | TC42272 |
| 50 | SATEESH KUMAR | RAMAMOORTHY | sramamoo@cisco. | 31-Dec-03 | TC40161 |
| 51 | KARTHIKEYAN | GOPAL | kagopal@cisco.co | 1-Jan-04 | 47823 |
| 52 | SHOBA | PANCHATSHARAM | shobha@cisco.com | 29-Jan-04 | TC32890 |
| 53 | SUJAY | GOPINATHAN | sujay@cisco.com | 15-Jan-04 | TC33687 |
| 54 | PADMANABHAN | BHAYANKAR | pbhayank@cisco.com | 22-Jan-04 | TC44429 |
| 55 | KARTHIKSELVAN | SACHITHANANDAM | ksachith@cisco.com | 29-Jan-04 | 54626 |
| 56 | SUJAY | GOPINATHAN | sujay@cisco.com | 29-Jan-04 | TC33687 |
| 57 | ANAND | AMMUNDI | aammundi@cisco.cor | 15-Feb-04 | TC42486 |
| 58 | TITO | KARATHRA | titthoma@cisco.com | 14-Mar-04 | TC42010 |
| 59 | VISHAL | JAIN | vishjain@cisco.com | 16-Mar-04 | 58195 |
| 60 | MANISH | TIWARI | mtiwari@cisco.com | 29-Mar-04 | 61932 |
| 61 | FRANCIS | KURUPACHERIL JEROME | fanthony@cisco.com | 26-Apr-04 | TC44778 |
| 62 | SIVARAMAN | RAJALINGAM | srajalin@cisco.com | 22-Apr-04 | 45329 |
| 63 | EDWIN | SAVARIMUTHU | sbritto@cisco.com | 5-Apr-04 | 46766 |
| 64 | RATHNAGIRISH | MATHRUBOOTHAM | rmathrub@cisco.com | 29-Apr-04 | 48884 |
| 65 | RAMYA | RAJAGOPALAN | ramrajag@cisco.com | 18-Apr-04 | 51949 |
| 66 | SARIKA | GUPTA | sargupta@cisco.com | 15-Apr-04 | 65043 |
| 67 | AVINASH | KUMAR | avkumar@cisco.com | 26-Apr-04 | 71996 |
| 68 | GURNAM | VILKHOO | gurasing@cisco.com | 01-May-00 | 73287 |
| 69 | SOMESHWAR | PARATE | sparate@cisco.com | 01-May-00 | 73289 |
| 70 | EDWIN | SAVARIMUTHU | sbritto@cisco.com | 04-Apr-00 | 46766 |
| 71 | SANTHA RAMI | YELURU | sanreddy@cisco.com | 05-May-00 | 52644 |
| 72 | MUTHU GOPAL | BALASUBRAMANIAN | mubalasu@cisco.com | 05-May-00 | 56234 |
| 73 | DELIP | SINGH | delsingh@cisco.com | 12-May-00 | 72590 |
| 74 | ARUN | SATHIAMURTHI | sarun@cisco.com | 19-May-00 | TC35145 |
| 75 | SAKTHIVEL | KARIAPPAN | skariapp@cisco.com | 19-May-00 | 49154 |
| 76 | MAHESH | MALI | mmali@cisco.com | 28-Apr-00 | 69140 |
| 77 | RAVIKUMAR | RAYALA | rrayala@cisco.com | 30-Apr-00 | 51573 |
| 78 | LOGHASHANKAR | SRINIVASAN | losriniv@cisco.com | 02-Jun-00 | 41030 |
| 79 | SANJAY | MUPPANENI | smuppane@cisco.com | 30-Jun-00 | 52633 |
| 80 | LOGHASHANKAR | SRINIVASAN | losriniv@cisco.com | 02-Jun-00 | TC41030 |
| 81 | SANJAY | MUPPANENI | smuppane@cisco.com | 30-Jun-00 | 52633 |
| 82 | SAI SRINIVAS | DASARI | sdasari@cisco.com | 03-Jul-00 | 72487 |
| 83 | RAMAKOTESWARA RAO | MUTHIREDDY | rmuthire@cisco.com | 07-Jul-00 | 48506 |
| 84 | NAVEEN | GAMINI | ngamini@cisco.com | 07-Jul-00 | 48451 |
| 85 | RASHEED | MOHAMAD | rmohamad@cisco.cor | 07-Jul-00 | 69648 |
| 86 | RAMYA | SENTHIL KUMAR | rsenthil@cisco.com | 13-Jul-00 | 59988 |
| 87 | SATYANARAYANA RAO | KALIKIVAYI | satyrao@cisco.com | 14-Jul-00 | 45525 |
| 88 | ZIAUDDIN | SHAIKMOHIDEEN | zshaikmo@cisco.com | 14-Jul-00 | 75454 |
| 89 | HARI | GOLLAPALLI | hgollapa@cisco.com | 17-Jul-00 | 50167 |
| 90 | KATHIRVEL | SHANMUGAM | kshanmug@cisco.cor | 19-Jul-00 | 59175 |
| 91 | SANKARAN | PARASARAM VISWANATHAN | saviswan@cisco.com | 20-Jul-00 | 44826 |
| 92 | NAGABHUSHANAM | KONGARA | nkongara@cisco.com | 25-Jul-00 | 74055 |
| 93 | GANESH | RAMAN | graman@cisco.com | 27-Jul-00 | 47088 |
| 94 | VASUDHA | SHARMA | ksharma@cisco.com | 28-Jul-00 | 57819 |
| 95 | KANNAN | GOPINATHAN | kgopinat@cisco.com | 31-Jul-00 | 70561 |
| 96 | NAGAPPAN | SUBRAMONI | nsubramo@cisco.con | 02-Aug-00 | 45193 |

CISCO 00069

| 97 | RAJKUMAR | KETTIMUTHU | rkettimu@cisco.com | 11-Aug-00 | 54320 |
| 98 | SAILENDRA | MAHANTY | smahanty@cisco.com | 25-Aug-00 | 52773 |
| 99 | ANJANISH | PANDEY | apandey@cisco.com | 25-Aug-00 | 53563 |
| 100 | SRIDHAR | SRINIVASAN | sridsrin@cisco.com | 29-Aug-00 | 52116 |
| 101 | VARADARAJ | SHYAMSUNDER | vshyamsu@cisco.com | 30-Aug-00 | 67336 |
| 102 | SANJEEV | SAHU | ssahu@cisco.com | 31-Aug-00 | 47756 |
| 103 | VISHWAS | MANRAL | vmanral@cisco.com | 31-Aug-00 | 54467 |
| 104 | SATHISH | NARAYANAN | satnaray@cisco.com | 31-Aug-00 | 70848 |

CISCO 00070

## Cisco Offshore Development No-Hire Policy

Cisco has a no-hire policy with the two partner companies in India, HCL and Wipro, who have set up dedicated development centers for Cisco in Chennai and Bangalore. Specifically, our policy is that we will not hire any engineer as a Cisco employee contractor working at these development centers during their employment with these companies and for a period of 6 months after they have left their employment. The policy applies to engineers who may travel to US for training or for transfer of information. Hiring of partner's engineer, even after they leave their employment, contributes to higher attrition among the remaining engineers and will affect the stability of the development centers and the projects being executed. We appreciate your support in implementing the no-hire policy.

If you have any questions, please contact HR or GPE Management Team. Thank you.



|  |  |  |  |  |
|---|---|---|---|---|
| 1 | SANDESH PUVVADA | 48827 | 2-Feb-03 | 2-Apr-03 |
| 2 | MOHHAMMED ABBAS | 48830 | 23-Apr-00 | 6-Apr-03 |
| 3 | BINNY JOHN (Support) | 48829 | 2-Feb-03 | 6-Apr-03 |
| 4 | KAMALAKAR PAWAR (Support) | 48828 | 27-Oct-95 | 6-Apr-03 |
| 5 | JAYAKUMAR MANICKAVASAGAM | 48832 |  | 6-Apr-03 |
| 6 | AVIJIT NASKAR | 48800 | 8-Sep-02 | 9-Apr-03 |
| 7 | SUDIPTO CHAKRABORTY (Resigned) |  | 8-Sep-02 | 9-Apr-03 |
| 8 | ANAND B |  | 13-Apr-03 |  |
| 9 | SOURAV CHAKRABORTY | 49219 | 2-Mar-03 | 20-Apr-03 |
| 10 | ARUNKUMAR AYACHITH | 49241 | 2-Mar-03 | 20-Apr-03 |
| | | | | |
| 1 | B SURESH BALASUBRAMANIA | 49981 | 6-Apr-03 | 4-May-03 |
| 2 | JOSEPH E.J. ETTOLIL | 49996 | 10-Nov-02 | 7-May-03 |
| 3 | NAGENDRA SAKREPATNA | 51102 |  | 13-May-03 |
| 4 | VIJAY KUMAR PESHKAR | 50124 | 9-Mar-03 | 13-May-03 |
| 5 | DEBABRATA DUTTA | 50272 | 23-Apr-03 | 18-May-03 |
| 6 | RAJU KADAM | 50270 | 26-Aug-01 | 18-May-03 |
| 7 | SANDIP DEVNATH | 50396 | 16-Apr-03 | 18-May-03 |
| 8 | SOMANKS SOMAN | 50452 | 6-Apr-03 | 20-May-03 |
| | | | | |
| 1 | PARAG BADGE | 51216 | 13-Apr-03 | 4-Jun-03 |
| 2 | TAHER MOHD SHAIKH | 51582 | 13-May-03 | 10-Jun-03 |
| 3 | MUTHUSAMY SADAPPAN | 51581 | 13-May-03 | 12-Jun-03 |
| 4 | PRAVEEN KINATHY | 51836 | 2-Mar-00 | 12-Jun-03 |
| 5 | PUSHPAJA THEKKEDAM | 51579 | 11-May-03 | 12-Jun-03 |
| 6 | SARAVANA PALAMANGALAM | 51828 |  | 12-Jun-03 |
| 7 | JAYASURYA VENUGOPALAN (Support) | 51580 |  | 12-Jun-03 |
| 8 | MANJUNATH BALASUBRAMANAM | 51966 | 1-Jun-03 | 22-Jun-03 |
| 9 | MURALI ANUR | 51970 | 25-May-03 | 22-Jun-03 |
| 10 | RAVINDRA RAO | 51948 | 11-Apr-03 | 22-Jun-03 |
| 11 | SANTOSH PADMANABHAN | 51950 | 10-Nov-02 | 22-Jun-03 |
| 12 | ARUNKUMAR GOPALAKRISHNAN | 52124 | 10-Nov-02 | 22-Jun-03 |
| 13 | GAURISH DALVI | 52221 | 25-May-03 | 26-Jun-03 |
| 14 | BHANU MARWAHA | 52469 | 15-Jun-03 | 1-Jul-03 |
| | | | | |
| 1 | ASHWINI HEGDE | 52467 | 6-Apr-03 | 2-Jul-03 |
| 2 | DENCY STEPHEN | 52452 | 6-Apr-03 | 2-Jul-03 |
| 3 | LAKSHMI HARIHARAN | 52472 | 17-Jun-03 | 2-Jul-03 |
| 4 | ARULMANI KRISHNAN | 53414 | 3-Jun-03 | 14-Jul-03 |
| 5 | RAJESH CHAPARALA | 53416 | 11-May-03 | 14-Jul-03 |
| 6 | ARUP BANERJEE | 53429 | 6-Jul-03 | 17-Jul-03 |
| 7 | MAHANTESH PATTANSHETTI | 53424 |  | 24-Jul-03 |
| 8 | PIYUSH JAJU | 53418 | 22-Jun-03 | 24-Jul-03 |
| 9 | PRASADABABU YENKIPATI | 53416 |  | 24-Jul-03 |
| 10 | SARIKA INAMDAR | 53422 |  | 24-Jul-03 |
| 11 | DEEPAK KUMAR | 55137 | 8-Jun-03 | 30-Jul-03 |
| 12 | NIKHIL GUPTA | 54760 |  | 30-Jul-03 |
| 13 | VINO THOMAS JACOB | 55204 |  | 31-Jul-03 |
| 14 | YADALA BALAJI NAIDU | 55205 |  | 31-Jul-03 |
| 15 | RITU JAIN (Relocated Internally) |  | 2-Jun-03 | July |
| | | | | |
| 1 | PRADEEP DEBAI (Support) | 54316 | 25-May-03 | 6-Aug-03 |
| 2 | SHANTHAMOORTHI VELUSWAMY |  | 26-May-03 | 6-Aug-03 |
| 3 | VENKATNARAYANA SUNKARA |  | 2-Jul-03 | 11-Aug-03 |
| 4 | VANI ANUR | 43330 | 6-Jul-03 | 17-Aug-03 |
| 5 | ASHUTOSH KUMAR | 54812 | 27-Jul-03 | 17-Aug-03 |
| 6 | IMTIYAZ AHEMAD RON | 55580 |  | 26-Sep-03 |
| 7 | GAURAV YADAV | 55579 | 6-Jul-03 | 1-Sep-03 |
| 8 | MEGHNA DHAR | 55581 | 6-Jul-03 | 1-Sep-03 |
| 9 | PRAVEEN PATHIYIL | 55577 | 5-Jul-03 | 1-Sep-03 |
| 10 | PREETY PURI | 55401 | 5-Jul-03 | 1-Sep-03 |
| 11 | VINOD KHILNANI | 55580 | 6-Jul-03 | 1-Sep-03 |

CISCO 00071

| | | | | |
|---|---|---|---|---|
| 12 | RENUKA S P | | 27-Jul-03 | 1-Sep-03 |
| | **August '99** | | | |
| 1 | ANAND VINAYAGAM | 56576 | 19-Aug-03 | 7-Sep-03 |
| 2 | DODDAMULUGUDU SHESHADRI | 58284 | 7-Sep-03 | 7-Sep-03 |
| 3 | SANJAY SIBOO | 57836 | 7-Sep-03 | 7-Sep-03 |
| 4 | SUDHIR KENCHIREDDY | 57837 | | 7-Sep-03 |
| 5 | SUBRAMANI SUNDAR | | 7-Sep-03 | 15-Sep-03 |
| 6 | ARAVIND VINCENT | 58243 | 17-Aug-03 | 22-Sep-03 |
| 7 | DEEPA THILAKAVANI | 57834 | 17-Aug-03 | 22-Sep-03 |
| 8 | LAKSHMI BALAKRISHNA | 58007 | 24-Aug-03 | 22-Sep-03 |
| 9 | MEDHA BHATT | 58263 | 3-Aug-03 | 22-Sep-03 |
| 10 | RAJ RANJAN | 58249 | 17-Aug-03 | 22-Sep-03 |
| 11 | RAMACHARAN BALAKRISHNA | 58260 | 7-Sep-03 | 22-Sep-03 |
| 12 | SANGRAM REDDY GUDUR | 58259 | 17-Aug-03 | 22-Sep-03 |
| 13 | SIDDHARTH PATIL | 58269 | 3-Aug-03 | 22-Sep-03 |
| 14 | SUMIT LAKHOTIA | 58262 | 3-Aug-03 | 22-Sep-03 |
| 15 | VIDYA MURTHY | 57835 | 3-Aug-03 | 22-Sep-03 |
| 16 | SRINIVAS NEGINHAL | 57836 | 17-Aug-03 | 22-Sep-03 |
| 17 | PADMANABHARAO VISWANADHULA | 58242 | 17-Aug-03 | 28-Sep-03 |
| 18 | MANJULA RAMACHANDRA | 58240 | | 28-Sep-03 |
| 19 | ANBARASAN SRINIVASAN | 58241 | | 28-Sep-03 |
| 20 | KUMARAN MALARKKAN | 61497 | | 28-Sep-03 |
| 21 | SUDHEER KURICHYATH | 56584 | 10-Aug-03 | |
| | **October '99** | | | |
| 1 | VENKATA KRISHNAM RAJU | 59100 | 12-Oct-03 | |
| 2 | SATHEESH APPUKUTTAN | 59099 | 13-Oct-03 | |
| 4 | SUNDEEP PULICCOTT | 60931 | 27-Oct-03 | |
| 5 | RAMESH RAMESH GOWDA | 60929 | 27-Oct-03 | |
| 6 | MALLIKARJUN DEVARMANI | 60928 | 27-Oct-03 | |
| | **November '99** | | | |
| 1 | SHAILU SHAILENDRA | 61042 | 4-Nov-03 | |
| 2 | SANTOSHKUMAR MD SANTOSH | 61039 | 4-Nov-03 | |
| 3 | SUMAN DEEPTI | 61513 | 11-Nov-03 | |
| 4 | RENU PARASURAMAN | 61041 | 11-Nov-03 | |
| 5 | AJEYA HINDUPUR | 61169 | 11-Nov-03 | |
| 6 | RANGARAJAN RAMACHANDRAN | 61496 | 14-Nov-03 | |
| | **December '99** | | | |
| 1 | GUMMALLA SRINIVASARAO | 62518 | 25-Nov-03 | 14-Dec-03 |
| 2 | MURALI PADMANABAN | 62517 | 9-Dec-03 | 14-Dec-03 |
| 3 | KAVITHA KAVITHA (DUDDUKURI) | 62516 | 9-Dec-03 | 14-Dec-03 |
| 4 | ANUP AGRAWAL | | 9-Dec-03 | 14-Dec-03 |
| 5 | LAKSHMINARAYANA JAYANTHI | 62513 | 1-Dec-03 | 14-Dec-03 |
| 6 | PRASHANTH ARUN | | 4-Dec-03 | 14-Dec-03 |
| 7 | V P PRAKASH | | 9-Dec-03 | 14-Dec-03 |
| 8 | MOHAN KASHYAP | | 22-Dec-03 | |
| 9 | SETTY SANJAYA | 63434 | 22-Dec-03 | |
| 10 | MARUTI DINAKAR | 63428 | 22-Dec-03 | |
| 11 | GAURAV RAGHU G K SETTY | 63436 | 22-Dec-03 | |
| 12 | SANTHOSH HARASIMHAN | 62521 | 17-Nov-03 | 14-Dec-03 |
| 13 | SUBHAYA SHENOY | 62519 | 17-Nov-03 | |
| 14 | JASON LAL (Hero 'father' name) | 61495 | 17-Nov-03 | |
| 15 | PAVAN KUMAR | 62520 | 20-Nov-03 | 14-Dec-03 |
| 16 | PARASHURAM KADADI | 62509 | 1-Dec-03 | 14-Dec-03 |
| 17 | KISHORE KUMAR | 62514 | 1-Dec-03 | 14-Dec-03 |
| 18 | VIDYA MORAS | 62606 | 1-Dec-03 | 14-Dec-03 |
| 19 | H SATHYAMURTHY VIJAYSHREE | 62512 | 1-Dec-03 | 14-Dec-03 |
| | **January '2000** | | | |
| 1 | STALIN PAULRAJ | | | 14-Jan-04 |
| 2 | JAYAPRAKASH KULKARNI | | | 14-Jan-04 |
| 3 | MAHESH VARDAMANAIAH | | | 14-Jan-04 |
| 4 | ARUT SELVAN | | | 14-Jan-04 |
| 5 | MAHESH BELUR | | | 14-Jan-04 |
| 6 | MANJUNATH UGRU | | | 14-Jan-04 |
| 7 | RENUKA SACHIDEV | | | 14-Jan-04 |
| | **February 2000** | | | |
| 1 | SIDDAPPA RAJAPPA | 66786 | | 2-Feb-04 |
| 2 | DHAVAMY KARTHIGEYAN | 66786 | | 2-Feb-04 |
| 3 | SURESH BABU | 67139 | | 2-Feb-04 |
| 4 | ASHISH SINGH | 66782 | | 5-Feb-04 |
| 5 | SANTHOSH THRIVIKRAMAN | 67669 | | 2-Feb-04 |
| 6 | RAJENDRAKUMAR D K | | | 11-Feb-04 |
| 7 | BRIJ SETHI | 66787 | | 6-Feb-04 |
| 8 | VINOD KUMAR R | | | 17-Feb-04 |
| 9 | SUMAN ALEXANDER | | | 23-Feb-04 |
| 10 | VENKATESAN S K P | | | 23-Feb-04 |
| 11 | HAMSAVENI | | | 25-Feb-04 |
| 12 | JAYADEEP GADGIL | | | 3-Mar-04 |
| 13 | SUJATHA SREERAM | | | 3-Mar-04 |
| 14 | PRAMOD | | | 3-Mar-04 |

CISCO 00072

| | | | | |
|---|---|---|---|---|
| 15 | ANKUR AGRAWAL | | | 18-Mar-04 |
| | | | | |
| 1 | RAGHU NATARAJAN | | Mar. 2000 | 24-Mar-04 |
| 2 | SHIVA MAHAJAN | | Mar. 2000 | 21-Mar-04 |
| 3 | AMIT GOYAL | | Mar. 2000 | 21-Mar-04 |
| 4 | DAXESH PATWA | | Mar. 2000 | 21-Mar-04 |
| 5 | SONU FARID | | Mar. 2008 | 21-Mar-04 |
| 6 | SHIVANAND SHIVANNAGOWDA | | Mar. 2000 | 21-Mar-04 |
| 7 | RUPESHA KEMPANNA | | Mar. 2000 | 21-Mar-04 |
| 8 | VINODKUMAR PULSAY | | Mar. 2008 | 21-Mar-04 |
| 9 | ANUPAM PANDEY | | Mar. 2000 | 21-Mar-04 |
| 10 | SUBRAT PANDA | | Mar. 2000 | 21-Mar-04 |
| 11 | VICTOR D'COSTA | | 31-Mar-04 | 14-Apr-04 |
| 12 | SHIVAKUMAR MANJUNATHASWAMY | | 23-Mar-04 | 14-Apr-04 |
| 13 | AMIT SHARMA | | 31-Mar-04 | 14-Apr-04 |
| 14 | SUBHRANSU PATNAIK | | | |
| | | | | |
| 1 | SHANTANU DUTTA | | 4-Apr-04 | 14-Apr-04 |
| 2 | RAGHAVENDRA MURTHY | | 4-Apr-04 | 14-Apr-04 |
| 3 | DEEPAK KUMAR | | 11-Apr-04 | 14-Apr-04 |
| 4 | VARADARAJ VENKATACHARJ | | | 18-Apr-04 |
| 5 | GIRIDATH CHANDRASHEKAR | | Apr-04 | 19-Apr-04 |

CISCO 00073

## Cisco Offshore Development No-Hire Policy

Cisco has a no-hire policy with the two partner companies in India, HCL and Wipro, who have set up dedicated centers for Cisco in Chennai and Bangalore. Specifically, our policy is that we will not hire any engineer as a contractor working at these development centers during their employment with these companies and for a period of 6 months after they have left their employment. The policy applies to engineers who may travel to US for training or for transfer of information. Hiring of partner's engineer, even after they leave their employment, contributes to higher attrition among the remaining engineers and will affect the stability of the development centers and the projects being executed. We appreciate your support in implementing the no-hire policy.

If you have any questions, please contact HR or GPE Management Team. Thank you.

| Sl. No. | Name | D.O.L. |
|---|---|---|
| 1 | BALAKUMAR V | 11-Mar-03 |
| 2 | BADRINATH S R | 20-Mar-03 |
| 3 | ANAND G | 31-Mar-03 |
| 1 | D'COSTA AGNELO | 17-Apr-03 |
| 2 | UMESH B KULKARNI | 24-Apr-03 |
| 3 | RAVINDRANATH P S | 24-Apr-03 |
| 4 | SURESH S | 1-May-03 |
| 5 | GHANASHYAM B A | 1-May-03 |
| 1 | AKKARACHITTOR PRAMOD J | 7-May-03 |
| 2 | NITIN SUD | 13-May-03 |
| 3 | RAMKUMAR S | 1-Jun-03 |
| 4 | KIRAN KUMAR V | 13-May-03 |
| 1 | RAVI BAIL | 4-Jun-03 |
| 1 | SANKARAN N | 8-Jul-03 |
| 2 | VENU MADHAV H C | 20-Jul-03 |
| 3 | MARTIN K V | 21-Jul-03 |
| 4 | BALARAMAN K | 22-Jul-03 |
| 5 | JANNY RODRIGUEZ H | 31-Jul-03 |
| 6 | SMITHA | 1-Aug-03 |
| 7 | SRIKANTH L | 1-Aug-03 |
| 8 | GANGADHARAN K | 1-Aug-03 |
| 9 | SRIDEVI S V | 1-Aug-03 |
| 1 | HIMANSU SHEKHAR SAHU | 4-Aug-03 |
| 2 | PRASAD MAGANTI S | 31-Aug-03 |
| 3 | CHANDRASEKHARAN V | 18-Aug-03 |
| 4 | VARGHESE VAIDHYAN | 25-Aug-03 |
| 5 | ROOPA B | 31-Aug-03 |
| 6 | ROHITT SHARMA | |
| 1 | JEET CHAUDHURI | Sep |
| 2 | RAJAN KAPOOR | Sep |
| 3 | SIVAKUMAR | 16-Sep-03 |
| 1 | RAGHURAMAN T | 23-Oct-03 |
| 2 | SATHYA BEEMA | 30-Oct-03 |
| 1 | RAJA RANGARAJAN | 8-Nov-03 |
| 2 | AMIT KUMAR AGGARWAL | 4-Nov-03 |
| 3 | PRAMODE NEDUNGADI | 2-Nov-03 |
| 4 | DURAI CHINNAIAH | 27-Nov-03 |
| 5 | NARESH SHARMA | 2-Nov-03 |
| 6 | LOKESH CHINNADURIAH | 2-Nov-03 |
| 7 | SOBHA KONDAVEETI | 27-Nov-03 |
| 8 | SANTOSH SHETTY | 1-Dec-03 |

CISCO 00074

| | | |
|---|---|---|
| 1 | SAMBHRAM SAHOO | 16-Dec-03 |
| 2 | ANIL JOSHI | 3-Dec-03 |
| 3 | SRINIVAS CHINTAPALLY | 1-Jan-04 |
| 4 | TAHER MOHD SHAIKH | 1-Jan-04 |
| 5 | VIJAYAKUMAR SUBBARAO | 19-Dec-03 |
| 6 | NIKHIL HEGDE | 23-Dec-03 |
| 7 | RAJAGOPAL BALASUBRAMANIAN | 25-Dec-03 |
| 8 | ASHUTOSH KUMAR | 1-Jan-04 |
| 9 | GOVINDARAJULU SESHACHALAM | 1-Jan-04 |
| | | |
| 1 | SIVAKUMAR I | 8-Jan-04 |
| 2 | PRAVEEN KINATHY | 15-Jan-04 |
| 3 | SUDHEER KURICHYATH | 15-Jan-04 |
| 4 | RAJU KADAM | 11-Jan-04 |
| 5 | SANJAY BASAVANAKATTIMATHA | 16-Jan-04 |
| 6 | ANAND RAJAMANI | 11-Jan-04 |
| 7 | SATHEESH KUMAR | 1-Feb-04 |
| | | |
| 1 | PRITAM DE | 5-Feb-04 |
| 2 | MANJUNATH JAGANNATHARAO | 8-Feb-04 |
| 3 | JANARDAN REVURU | 26-Feb-04 |
| 4 | KRISHNADAS BHAGWAT | 1-Mar-04 |
| 5 | UDAYA RANI UMESAN | |
| 6 | KAMALAKAR PAWAR | |
| 7 | PRAKASHGOUDA PATIL | |
| 8 | SHISABRATA MONDAL | |
| 9 | THOMAS SUNU | |
| 10 | SOMANKS SOMAN | |
| | | |
| 1 | BHANU MARWAHA | |
| 2 | SATHISH KUMAR DURAISAMY | |
| 3 | SHREEKALA KEKUDA | |
| 4 | SANDEEP DHAR | |
| 5 | UDUPI HARISHARAN | |
| | | |
| 1 | HARASIMHAN GANAPATHIRAMAN | 1-May-04 |
| 2 | NAGARAJAN RAJAGOPAL | 15-Apr-04 |
| 3 | SATHEESH VELMURUGAN | 16-Apr-04 |
| 4 | LINGARAJ PATIL | 8-Apr-04 |
| 5 | DAMODAR RAJU | 11-Apr-04 |
| 6 | SRIRAM SHANKA | 8-Apr-04 |

May-00

| 1 | AJAY SIMHA | 13-May-00 |
|---|---|---|
| 2 | PAVAN KUMAR | 20-May-00 |
| 3 | ABDULLAH HABIB BISWAS | 19-May-00 |
| 4 | PRADEEP DESAI | 2-May-00 |
| 5 | ANUP ANUP (AGRAWAL) | 15-May-00 |

Jun-00

| 1 | VANI ANUR | 2-Jun-00 |
|---|---|---|
| 2 | MURALI ANUR | 2-Jun-00 |
| 3 | RAJENDRAKUMAR D K | 9-Jun-00 |
| 4 | CHANDRASHEKAR KORLAHAL | 16-Jun-00 (internal re-location) |
| 5 | VARADARAJ VENKATACHARI | 16-Jun-00 |
| 6 | GAURAV YADAV | 3-Jun-00 |
| 7 | RAMESH BYSANI | 5-Jun-00 |
| 8 | ARUNKARTHIK SENGOTTUVEL | 30-Jun-00 |
| 9 | FAROOQUE MUFTI | 30-Jun-00 |
| 10 | ARUNKUMAR AYACHITH | 30-Jun-00 |
| 11 | SUMAN ALEXANDER | 30-Jun-00 |

Jul-00

| 1 | SANDEEP DEVNATH | 5-Jul-00 |
|---|---|---|
| 2 | BINNY JOHN | 17-Jul-00 |
| 3 | BASAVARAJU HALAPPA | 16-Jul-00 |
| 4 | DAVI GUPTA | 6-Jul-00 |
| 5 | NIRANJAN BALWALLI | 3-Jul-00 |
| 6 | SANDEEP DEVNATH | 6-Jul-00 |
| 7 | SIDDHARTH PATIL | |
| 8 | PRADEEP DAKSHAYANI RAGHV | 16-Jul-00 |
| 9 | SAMEER JOG | 1-Jul-00 |

CISCO 00075

|   |   | Aug-00 |
|---|---|---|
| 1 | MEGHNA DHAR | 2-Aug-00 |
| 2 | MADAN KUMAR | 11-Aug-00 |
| 3 | ANAND VINAYAGAM |  |
| 4 | SHARAN KANTIKAR | 10-Aug-00 |
| 5 | PROJESH BAGCHI |  |
| 6 | SATISH JASTI CHOUDAHRY | 2-Aug-00 |
| 7 | SANTOSH PADMANABHAN |  |
| 8 | RAVINDRA RAO | 8/21/2000 |

CISCO 00076

Cisco's Offshore Development Center (ODC) in India, is working to execute offshore projects. These projects include: Network Management, Hardware/Firmware development, Test technology development, Product test, and Sustaining of IOS, hardware and software. Both HCL and WIPRO supply ODC with qualified engineers dedicated to the projects.

We have been approached by the Cisco's Offshore Development Initiative group to ensure that we recognize and support the current agreement between Cisco and WIPRO concerning recruitment procedures. Cisco is prohibited from hiring any WIPRO employee while they are assigned to the Offshore Development Center and is also prohibited from hiring up to 6 months after they leave WIPRO. If you come across a resume that includes current employment with WIPRO, please reference this list to determine whether the recruiting process can continue.

| CODC | First Name | Middle Name | Last Name |
|---|---|---|---|
| 1 | Medhavi | | Nori |
| 2 | Aswini | Kumar Das | Adikanda Das |
| 4 | Veeral | Shah | Prabhodhchandra |
| 5 | Sellam | | Karuppaiah |
| 6 | Swaminathan | | Balasubramanian |
| 7 | Narayanan | | Kasturirangan |
| 8 | Sundaram | | Ramasamy |
| 10 | Thirupathi | Reddy | Annadi |
| 11 | Vivek | | Kumar |
| 12 | Sowdambiga | | Karthikeyan |
| 13 | Jinesh | | Nagakumar |
| 14 | Banu | | Mohan |
| 15 | Thangam | | Sundaram |
| 16 | Ravikiran | | Jonnadula |
| 17 | Roshan | | Sequeira |
| 18 | Jawahar | | Chinnaian Velayutham |
| 19 | Neelesh | Kumar | Jain |
| 20 | Kalaivani | | Sankaralingam |
| 21 | Srinivasa | Reddy | Gundala |
| 22 | Venkat | Satya | Narayana M |
| 23 | Jyoti | | Gupta |
| 24 | Rashmi | Ranjan | Sahoo |
| 25 | Raghunath | | Brahmadevara |
| 26 | Maddi | | Vidyaranya |
| 27 | Srinivas | | Chutari |
| 29 | Jagan | Mohan | Reddy |
| 30 | Akila | | Subramanian |
| 31 | Vaideeswaran | | Ganesan |
| 32 | Vimali | Nagavali | Kannan |
| 33 | Vishal | | Lakhotia |
| 34 | Jay Karthik | | Jayaraman |
| 35 | Goneti | Mohandas | Baskaran |
| 36 | Venkanagouda | Hanamagouda | Goudar |
| 37 | Nitinkumar | Shrirampant | Shingne |
| 38 | Naazni | Beeravu | Chirapurath |
| 39 | Suresh | | Krishnan |
| 40 | Gangadharan | | Ramakrishnan |
| 41 | Sangeetha | | Chandru |
| 42 | Muralikrishna | | Achanta |
| 43 | Victor | Steven Raj | Ebenezer |
| 44 | Abhijit | | Jere |
| 45 | Ramasubramanian | | Sethuraman |
| 46 | Siva | Shanmughapraka | Sundaravel |
| 47 | Augustus | | Franklin |
| 48 | Srihari | | Raghavan |
| 49 | Ramakrishna | | Sullkunte |
| 50 | Chandrasekar | | Ramachandran |

CISCO 00077

| 51 | Balasubramanian | Ramachandran |
| 52 | Sanjay | Habib |

CISCO 00078

Cisco agrees that for a period of six (6) months from November 1, 1999, Cisco staff not knowingly, without the prior written consent of the Company, directly solicit for employment any employee of the Company who has been involved in the discussions contemplated herein, including persons making technical disclosures, as listed below:

| | |
|---|---|
| Beach | Bob |
| Cooper | Colin |
| Farrell | Ed |
| Geiger | Ed |
| Hadley | Mike |
| Hudson | Chuck |
| Hutton | Tom |
| Kawaguchi | Dean |
| Klein | John |
| Lefore | Brad |
| Martino | Ray |
| Montgomery | Richard |
| Neilsen | Bob |
| Vesuna | Saroeh |
| Werbeck | Andy |
| Yeh | David |
| Zegelin | Chris |

CISCO 00079

CISCO 00080



CISCO 00081

| Company | | Phone | First | Last | Rep |
|---|---|---|---|---|---|
| ABB | | | | | Tunji Akintokun |
| ABS | | 01825-769933 | William | Hunter | Sarah Berry |
| Action/Fraser | | 0181-8434800 | Fabio | Torfini | David Gauld |
| ADA Computer Systems (Southampton) | | | | | Richard Ellis |
| ADA Computer Systems Ltd (Burgess Hill) | | | | | Richard Ellis |
| Advanced Digital Telecoms Ltd | | | | | Simon Jones |
| Advantage Communications | | 0171-3871237 | Tammy | | Tunji Akintokun |
| Advantage Technologies Ltd | | | | | Simon Jones |
| Allnet | | 0171-2568222 | Dave | Allcock | Tunji Akintokun |
| Alpha Business Computers | | | | | Nick Maguire |
| Alphagen Ltd | | | | | Waqar Siraj |
| Apex | | 01285-862100 | Graham | Henly | David Gauld |
| Applied Micro Systems Ltd | | | | | Simon Jones |
| Atalantic Software Ltd | | | | | Simon Jones |
| ATL | | | | | Jo Laking |
| Atlanta Technology | | | | | Waqar Siraj |
| B&T Connexions | | | | | Jo Laking |
| Bailey Telecom Ltd | | | | | Simon Jones |
| Barron Mccann | | 001462-482626 | Peter | Alderson | Nick Coleman |
| Bartlett Taberner Associates | | | | | Waqar Siraj |
| Basilica | | | | | Jo Laking |
| Black Box | | 01734-655265 | Roger | Croft | David Gauld |
| Brilaw International | | | | | Nick Maguire |
| BTN | | 01189-936 1800 | John | Murphy | Sarah Berry |
| Bull Information Systems | | | | | Nick Maguire |
| Business Systems Group (BSG) | | | | | Waqar Siraj |
| Business Systems International Ltd | | | | | Waqar Siraj |
| Bylord Computer Services | | | | | Nick Maguire |
| Cableship | | | | | Jo Laking |
| CAE Computer Services | | | | | Jo Laking |
| Cambridge Online Systems Ltd | | | | | Simon Jones |
| Canon Voice & Data Services | | | | | Richard Ellis |
| Castleton Communications Ltd | | | | | Simon Jones |
| C-Cat Ltd | | | | | Simon Jones |
| Ciscom | GOLD | 0181 6140700 | Iain | McTaggart | Mathew Pickersgill |
| Comax Secure Business Services - (NDSG) | | | | | Simon Jones |
| Compel | | 0191-4913777 | Brien | Robertson | Nick Coleman |
| Computacenter | GOLD | 01454-622100 | Gary | James | Tina Herron |
| Computer Sense Ltd | | | | | Waqar Siraj |
| Computer Solutions & Finance (CSF) | | 0171-4902727 | Mike | Taylor | Tunji Akintokun |
| Comtech | | 01753 685444 | Derek | Allan | Waqar Siraj |
| Comtek Electronics | | 01189-756191 | Tage | Tatman | Mathew Pickersgill |
| Concept Computing (UK) Ltd | | | | | Waqar Siraj |
| Conex Datacomms | | 0191-5191445 | Mark | Douglass | Nick Maguire |
| Connectology | | | Neil | Henderson | David Gauld |
| Croft Plc | | | | | Simon Jones |
| CSI Ltd | | 0171-735108 | Richard | Sherwood | Richard Ellis |
| Data General | | | | | Jo Laking |
| Data Integration Ltd | | | | | Richard Ellis |
| Datarange | | 01494-441256 | Julie | Tucker | David Gauld |
| Decorum Networks | | 01992-787577 | Neil | Sturgess | Richard Ellis |
| Deverill Computers Ltd | | | | | Richard Ellis |
| DIS Ltd (Data Installation & Supplies) | | | | | Simon Jones |
| ECS Limited | | 01543-414751 | John | Crossland | Nick Coleman |
| EHL | | | | | Jo Laking |

CISCO 00082

| | | | | | | |
|---|---|---|---|---|---|---|
| Electronic Systems & Periphels (ESP) | | | | | | Richard Ellis |
| Enterprise Network Group | | | | | | Jo Laking |
| Eurodata Systems PLC | | | | | | Waqar Siraj |
| European Electronique | | 01865-883300 | Mike | Gill | | David Gauld |
| Eurostar Network Systems | | 01256-880551 | | | | Sarah Berry |
| Everlogic Ltd | | | | | | Simon Jones |
| Fast Networks U K Ltd | | | | | | Nick Maguire |
| Fastnet Systems | | 00990-993366 | Ian | Brown | | Mathew Pickersgill |
| FH Brown | | | | | | Nick Maguire |
| Fibernet | | 01734-819122 | Keith | Morgan | | Sarah Berry |
| Fordway Solutions Ltd | | | | | | Richard Ellis |
| Fosstech | | 00181 288 6500 | Jason | Short | | Tunji Akinlokun |
| Frantic Networks | | | | | | Richard Ellis |
| GADC | | 01908-262121 | Simon | Boyle | | David Gauld |
| GCS Network Services Ltd | | | | | | Simon Jones |
| Genisys (Wentworth Holdings) Ltd | | | | | | Richard Ellis |
| Granville/TIME | | | | | | Nick Maguire |
| Hemini PLC | | | | | | Waqar Siraj |
| Honeywell Control Systems Ltd | | | | | | Sarah Berry |
| Hydra Ltd | | 00171-3677600 | Martin | Anastasi | | Tunji Akinlokun |
| ICM NetServe | | 01924-442849 | | | | Nick Maguire |
| IKM | | 01252-578101 | Micheal | Eaton | | FORCE2000 |
| Installation Technologies | | | | | | Jo Laking |
| Integrated Network Svcs | | 01908-570500 | Sarah | Alexander | | David Gauld |
| Integrated Solutions Developement Ltd | | | | | | Waqar Siraj |
| Integrated Technology Services | | | | | | Waqar Siraj |
| Intergraph | | | | | | Richard Ellis |
| Interop Technologies | | | | | | Waqar Siraj |
| IS NETWORKING (new name tbc) | | | | | | Jo Laking |
| ISC Networks Ltd | | | | | | Simon Jones |
| IT Net UK Ltd | | | | | | Nick Maguire |
| IT Services | | 0 01925-835802 | Jeff | Howarth | | Nick Maguire |
| ITC Network Services Ltd | | | | | | Waqar Siraj |
| ITEX Jersey/Guernsey | | | | | | Jo Laking |
| JAGRULE LIMITED/Trans European | | | | | | Waqar Siraj |
| JM Computing | | | | | | Nick Maguire |
| Kalamazoo Motor Trade Ltd | | | | | | Nick Maguire |
| Kavanagh | | | | | | Sarah Berry |
| Keltec | | | | | | Sarah Berry |
| Kerridge Computing Company | | 01635-523456 | R | Kell | | Sarah Berry |
| Kewill Electricmail | | | Dave | Draycott | | Sarah Berry |
| KX Communications | | | | | | Tunji Akinlokun |
| Kyotek Ltd | | | | | | Waqar Siraj |
| Lacewood Systems | | 01474-357000 | David | Ace | | Sarah Berry |
| Lan Express Ltd | | | | | | Richard Ellis |
| Lanz Ltd | | | | | | Waqar Siraj |
| Leonard Carter Associates | | | | | | Waqar Siraj |
| Line Management Group Ltd | | | | | | Waqar Siraj |
| Logical Networks | | 01753-696699 | George | Georgiou | | Barry Lineaker |
| Logitek Distribution/Vitec | | | Merk | Thornton | | Nick Coleman |
| Lynx Technology | | 01773-826811 | Carolyn | Wotjes | | Nick Coleman |
| Maindec | | | | | | Jo Laking |
| Matrix International | | 01753-681500 | Keith | Carter | | Barry Lineaker |
| MDIS | | | | | | Sarah Berry |
| Merit Support | | | | | | Nick Maguire |
| MHG Systems Ltd | | | | | | Simon Jones |

CISCO 00083

| | | | | |
|---|---|---|---|---|
| Microtechnics Systems Limited | | | | Richard Ellis |
| MicroWarehouse | 0990-168674 | Kwei | Wong | David Gauld |
| Misce Computer Supplies | | | | Nick Maguire |
| Misys/Cyberdesk | 01869-253555 | Charles | Burns | Sarah Berry |
| Mitech Europe | 01494-472600 | Marcus | Jewell | Mathew Pickersgill |
| Mitel Telecom Ltd | | | | Simon Jones |
| ML Networks | 01189-216000 | Leigh | Collett | David Gauld |
| Montal Computer Services | | | | Nick Maguire |
| Morphis/Isogon | 01203-690659 | Derick | Dale | Nick Coleman |
| Morse Computers | | | | Tunji Akintokun |
| MPL | | | | Jo Laking |
| Netsoft Solutions | | | | Waqar Siraj |
| Netwise Systems | | | | Waqar Siraj |
| Network 24 | | | | Richard Ellis |
| Network Connections Ltd | | | | Richard Ellis |
| Network Interlinks Ltd | | | | Waqar Siraj |
| Networking Solutions (UK) Plc | | | | Simon Jones |
| NSC Technology | 0171-2338953 | Mo | Yaseen | Tunji Akintokun |
| ONI | | | | Jo Laking |
| Osprey Network Communications | | Tony | Taylor | Richard Ellis |
| P&C Communications Ltd | | | | Nick Maguire |
| Panacea Services Ltd | | | | Waqar Siraj |
| PANDI | 0181-7568567 | | | Mathew Pickersgill |
| PC World Business Direct | | | | Nick Maguire |
| Phoenix Computers Ltd | | | | Simon Jones |
| Pinacl Communication Systems | 01506-440257 | Thierry | Donovan | Nick Coleman |
| Plato/Convergent Networks (Watford) | | | | Jo Laking |
| Powermark | | | | Jo Laking |
| Prime Business Solutions | | | | Richard Ellis |
| Prodec Computing | | | | Barry Lineaker |
| Productivity Computer Solutions | | | | Waqar Siraj |
| PSM Microcomputers Ltd | | | | Nick Maguire |
| QNS | | | | Jo Laking |
| Quatrix Communications | 0116-2504000 | Andy | Dyson | Nick Coleman |
| Rednet Ltd | 01494-513333 | Olivier | Lebleu | Richard Ellis |
| Relay Business Systems | | | | Richard Ellis |
| Repton Computers | 0181-8949000 | Greg | Carlow | Barry Lineaker |
| Rockliff Computers Ltd | 0181-756 245 | | | Nick Coleman |
| Scalable Networks | | | | Jo Laking |
| Scan Computers International Ltd | | | | Nick Maguire |
| SCC (to purchase Elcom, +$500,000) | | Paul | Jones | Mathew Pickersgill |
| Science Systems | | | | Richard Ellis |
| SEC Datacom | | | | Jo Laking |
| Sequent Computers | 01932-814334 | Keith | Morgan | Sarah Berry |
| Servo Computer Services | 01629-832111 | Richard | Heavyside | Nick Coleman |
| Sirocom Ltd | 01932 700100 | Simon | Rogan | Barry Lineaker |
| Skenco Business Systems | | | | Nick Maguire |
| Skynet Systems | 01256-880011 | David | Carrington | Sarah Berry |
| SMS (Shared Medical Systems) | 0161 773 9211 | | | Nick Coleman |
| SOL-TEC | | | | Jo Laking |
| Solway Communications Limited | | | | Nick Maguire |
| Starwand Computers | | | | Jo Laking |
| Storm (V Data , Integrated Technology Europe) | | | | Simon Jones |
| Summitt Technologies | 0171-3075000 | Simon | Jones | Nick Maguire |
| Sun Management Ltd | | | | Waqar Siraj |
| Synetrix Ltd | | | | Nick Maguire |

CISCO 00084

| | | | | | | |
|---|---|---|---|---|---|---|
| Synstar | | | | | | Jo Laking |
| Syntax Integration | | | | | | Waqar Siraj |
| T.N.T.G. LTD | | | | | | Waqar Siraj |
| Tangible Benefit | | | | | | Waqar Siraj |
| Technocom/Easynet PLC | | 01753-714100 | Robert | Hamilton-Day | | Barry Lineker |
| Teksys | | 01784-477555 | David | Freer | | Barry Lineker |
| Telecomet International | | 0171 3153150 | Ron | Butler | | Waqar Siraj |
| TFM Services | | 01698-327000 | Paul | McGowan | | Tunji Akintokun |
| The Database (Cablebase) | | | | | | Simon Jones |
| Tiny Computers | | | | | | Nick Maguire |
| Total Network Solutions (TNS) | ████ | 01691-650075 | Mike | Harris | | Nick Coleman |
| Total-E | | | | | | Jo Laking |
| Touchbase Communications | | 0171-6767107 | Mark | Wilson | | Tunji Akintokun |
| Trans Ltd | | | | | | Waqar Siraj |
| Trend Communications | | 01628-524977 | Phil | Humphries | | David Gould |
| Tribune Business Systems | ████████████████████████████████████████████████ | | | | | Waqar Siraj |
| Tunek International | | 01925-833144 | Frank | Tunek | | Richard Ellis |
| UDO Service Point | | | | | | Jo Laking |
| Ultime Business Systems | | | | | | Jo Laking |
| Ultralink Systems | | | | | | Nick Maguire |
| United Networks | | | | | | Jo Laking |
| UTN Integration Ltd | | | | | | Nick Maguire |
| Vanco Euronet | | 0181-3801000 | Wayne | Churchill | | Barry Lineker |
| VAS Systems | | | | | | Richard Ellis |
| Viglen | | | | | | Tunji Akintokun |
| Viking Direct | | | | | | Nick Maguire |
| VIP | | | | | | Barry Lineker |
| Vosper Mantech | | | | | | Richard Ellis |
| Voyager | ████ | 01789-842722 | Nigel | Williams | | Nick Coleman |
| Westwood Associates | | | | | | Jo Laking |
| Westwood West | | | | | | Richard Ellis |
| Whitehall Systems Ltd | | | | | | Waqar Siraj |
| Xenon | | | | | | Nick Maguire |
| XMA Ltd | | | | | | Simon Jones |
| Xpert Systems/Caltell | | 01925-851111 | Mr | Tom | | Nick Coleman |
| XTML LTD | | | | | | Nick Maguire |
| Yes Europe | | | | | | Barry Lineker |
| Zeuros | | 01256-760061 | Julie | Nicholl | | Mathew Pickersgill |

CISCO 00085