# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY BAYAD, | )<br>) |
| Plaintiff, | ) **CIVIL ACTION**<br>)<br>) **CASE NO. 05-11005PBS** |
| BUCE BASTIAN; KATE DCAMP<br>LYNN FRASER;CELIA HARPER-GUERRA;<br>RICK JUSTICE; CISCO SYSTEMS INC.<br>Defendants, | )<br>)<br>)<br>) |

### SUPPLEMENT FILING OF TWO SWORN DECLARATION AND AFFIDAVIT OF WITNESS IN SUPPORT OF CISCO SYSTEMS –EXECUTIVE TONY SAVASTANO ' RACIST HISTORY OF DISCRIMINATION - IN SUPPORT OF FINAL JUDGMENT FOR THE PLAINTIFF

Plaintiff Bayad, I, provide to the court, hon. Patti B. Saris sworn declaration (1) and affidavit of a witness (2) that was involve and have seen and heard and witnessed of hate crime and racist conduct of Tony Savastano owner of Cisco Systems, such racist individual always hide behind big companies because he knows the tricks, and what he has done to me at lucent Technologies is calculated and he knew he will be liability free that because of my race. The law will be on his side and his lawyers will bail him out. This Tony Savastano, also called at Lucent <u>the tree stars</u> adjutant General (* * *), grew up in Lawrence Mass Spanish dominated city, has assaulted me at lucent Technologies- hate crime and now at Cisco Systems called me MONKEY- terminated my employment and took my CCIE certification that I have passed; see Exhibit No. 2 page 4 of the Docket Entery # 1, the complaint, the activity during my employment at Cisco completed. I completed the <u>CCIE EXAMS</u>. Also see Docket Entry # 103 Celia Harper

under oath testimonies where she admitted to the CCIE EXAM. Such Savastano Cisco Executive once My Manager at Lucent Technolgies had Blocked me from working any where or doing business any where in my country. Respectfully, this Savastano is not the law this country.

See Exhibits – (1) **declaration** and (2) **the affidavit** of the witness is Attached hereto .

**Wherefore**, Plaintiff Anthony Bayad ("I") demands that this court: See Complaint Docket # 1 page 36-37, the relief requested.

(a) declare the defendants' conduct to be in violation of my rights;

(b) enjoin defendants from engaging in such conduct in the future;

(c) award me back pay and benefits (with interest) that have accrued to date;

(d) award me front pay until normal retirement age as I am 39 years old;

(e) award me compensatory damages of $ 10,000,000.000 or more for emotional distress, mental anguish, and loss of enjoyment of life and the disparate treatment, and discrimination and false imprisonment that I suffered at the hand of the defendants;

(f) award me compensatory damages of $2, 000,000.000 for interfering with my Civil Rights, conspiring to restrict me from equal rights and benefits, and for defaming and destroying my life, and blocking me for working and conducting my business;

(g) Award my damages of $3, 000,000.000 or more for defamation and damage to my business and my career and my health, my reputation, injury to my character and to my credit standing;

(h) Award me punitive damages in the amount of $20, 000, 000. 000 or more;

(i) Award me costs and legal fees;

    (j)        Grant me such other relief as the court may deem just proper.

For the following count(s):

**PUNITIVE DAMAGES** ( Published by Dla Piper Rudnick Gray Carry 'official web site)

- "The record are clear that federal race discrimination claims brought under Title 42 Section 1981 as well as claims brought under numerous state laws are not subject to **any limits**, A recent unpublished opinion in the Fourth Circuit Court of Appeals, *White v. BFI Waste Services, LLC* (No. 05-1804, 4th Cir. May 23, 2006), serves as a pointed, when the jury in *White* found that defendant BFI's supervisors subjected two African-American plaintiffs to a racially hostile work environment for over **ten years** and awarded the plaintiffs **$4 million** in punitive damages on top of $1.2 million in compensatory damages. And Several recent cases illustrate just how costly discrimination and harassment punitive damages can be; also In *Issa v. Roadway Package Sys.*, a California jury awarded two FedEx drivers $50 million in punitive damages after finding that a manager subjected the two <u>drivers to ethnic harassment</u> and ridicule during their two years of employment at FedEx (June 2, 2006). See In *Zubulake v. UBS Warburg*, a federal jury in New York awarded a single plaintiff over $20 million in punitive damages on her gender discrimination claims (April 6, 2005). . . . etc"

1. **COUNT I RACE DISCRIMINATION**

    Respectfully, Plaintiff request relief on Count I ( Race Discrimination) record contains direct evidence exist supporting such claim, is evidence that established the existence of discriminatory intend behind the employment decision without the inference or the presumption. see *Santiago-Ramos vs. Centennial P.R. Wireless Corp.*, 217 F. 3d 46, 56 ( 1st Cir.)

2. **COUNT III CLASSIFICATION OF RACE – CISCO-NO-HIRE-LIST**

    Respectfully, Plaintiff request relief on Count III ( Race Discrimination) record contains direct evidence exist supporting such claim, is evidence that established the existence of discriminatory intend behind the employment decision without the inference or the presumption. see *Santiago-Ramos vs. Centennial P.R. Wireless Corp.*, 217 F. 3d 46, 56 ( 1st Cir.)

3. **COUNT VI BREACH OF ORAL CONTACT AND CONTRACTUAL OF OBLIGATION**

Respectfully, Plaintiff request relief on Count VI ( Race Discrimination) record contains direct evidence exist supporting such claim, is evidence that established the existence of discriminatory intend behind the employment decision without the inference or the presumption. see *Santiago-Ramos vs. Centennial P.R. Wireless Corp.*, 217 F. 3d 46, 56 ( 1st Cir.)

4. **COUNT VIII CONSPIRACY**

Respectfully, Plaintiff request relief on Count VIII ( Race Discrimination) record contains direct evidence exist supporting such claim, is evidence that established the existence of discriminatory intend behind the employment decision without the inference or the presumption. see *Santiago-Ramos vs. Centennial P.R. Wireless Corp.*, 217 F. 3d 46, 56 ( 1st Cir.)

5. **COUNT IX FALSE IMPRISONMENT**

Respectfully, Plaintiff request relief on Count I ( Race Discrimination) record contains direct evidence exist supporting such claim, is evidence that established the existence of discriminatory intend behind the employment decision without the inference or the presumption. see *Santiago-Ramos vs. Centennial P.R. Wireless Corp.*, 217 F. 3d 46, 56 ( 1st Cir.)

6. **RETALIATION ( NOT MASSACHUSETTS LAW )**

Respectfully, Plaintiff request relief on Count ( Retaliation record contains direct evidence exist supporting such claim, is evidence that established the existence of discriminatory intend behind the employment decision without the inference or the presumption. see *Santiago-Ramos vs. Centennial P.R. Wireless Corp.*, 217 F. 3d 46, 56 ( 1st Cir.)

**As the court deems and proper or tier of fact or by jury .** (See Docket Entry #1, in support)

**CERTIFICATION OF SERVICE**

4


I, Anthony Bayad, certify that I caused this document to be served upon Attorney Bruce Falby, Dla Piper Rudnick Gray Cray Carry, 33 Arch Street, 26 th, Boston, MA 02110, First class - U.S. Mail on March 30, 2007.

Respectfully submitted

Anthony Bayad
2 Magoun Avenue
Medford, MA 02155

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTHONY BAYAD, )
)
)
Plaintiff, )
)
v. ) CASE NO. 97-6671-CIV-ROETTGER
) Magistrate Judge Seltzer
LUCENT TECHNOLOGIES, INC., )
LEWIS KASLOW, MIKE REED, )
RONALD LAURINO, ANTHONY )
SAVASTANO and JOAN GROHE )
)
)
Defendants. )
_____)

DECLARATION OF AMADO NAVAS IN SUPPORT OF PLAINTIFF'S
RESPONSE TO THE DEFENSE'S MOTION FOR
FINAL SUMMARY JUDGEMENT

I, AMADO NAVAS, declare as follows:

1. I have personal knowledge of the facts set forth herein.

2. I, AMADO NAVAS witnesses the fact that Anthony Bayad while employed at Lucent by his own initiative and because of his expertise with the Bay Networks product line, volunteered to share his knowledge, by teaching numerous classes in the Largo facility; these classes were offered to the Technicians as well as the Sales Force in charge of selling Maintenance to Lucent's Customers.

1

EXHIBIT A

3. I AMADO NAVAS, witnessed Tony Savastano, then the General Manager in charge of the Largo Facilty demoting Anthony Bayad both in my presence, and in the presence of Mr. Bayad and for no reason. Savastano then asked that I, Amado Navas take over the position of team lead, which I felt forced to take in order not to miss the opportunity to help our organization. Savastano's tactic was aimed at keeping both Mr. Anthony Bayad and I, Amado Navas stuck down in the lower ranks while he was planning to promote Bruce Brewer a white employee trusted by Savastano, to a position higher ranking than that of both minority employees Amado Navas, and Anthony Bayad.

4. I, AMADO NAVAS, witnessed that Mr. Anthony Bayad requested a meeting with Amado Navas, Carl Wiese and Anthony Savastano to complain about Savastano's and Carl Wiese's treatment towards Anthony Bayad because of his race, national origin the color of his skin and/or religion. The meeting took place in Tony Savastano's office in the presence of Carl Wiese and Amado Navas. Anthony Bayad was contacted via telephone and placed on the speaker phone, so Anthony Bayad was able to hear everyone in the room, as well as everyone in the room was able to hear Anthony Bayad. After the meeting had started, Anthony Bayad made this statement: "DO YOU HAVE A PROBLEM WITH PEOPLE WITH AN ACCENT LIKE ME??", "WHY CAN JOHN WHITE (White employee under Carl Wiese who had just gotten a significant promotion) FLY HIGH, LIKE AN EAGLE AND I CAN'T??, "WHY IS IT THAT I HAVE TO PROVE MYSELF EVERYDAY TO YOU AND TONY" Carl Wiese immediately shouted: "SHUT UP!!" "STOP TALKING ABOUT MY PEOPLE!!".

5. I, AMADO NAVAS in my capacity as the Operations Manager of the Bay Networks Router Support group in the Largo Center, granted permission to Anthony Bayad to purchase two Airline tickets for his parents to fly from Morocco to the US. I AMADO NAVAS, suggested to Anthony Bayad to purchased the Airline tickets through the Lucent Technologies travel department.

6. I, AMADO NAVAS, in my capacity as the Operations Manager in charge also of the Ft. Lauderdale Bay Networks Support Office gave direct orders to Anthony Bayad to purchase using his Lucent Corporate American Express Card, office supplies as well as other miscellaneous items, destined to be used in the same Ft. Lauderdale Bay Networks Support Office. I explained to my employee Anthony Bayad, that we could not wait the six months or more time frame given to us by the

EXHIBIT A1

purchasing department if we were going to meet the date promised to Vice President Jeffrey Akers as the date when the Ft. Lauderdale Office would be in full operation.

I also mentioned to Anthony Bayad that my boss Tony Savastano gave me instructions to "**DO WHAT YOU HAVE TO DO!!, BUT GET THAT OFFICE UP AND RUNNING AS SOON AS POSSIBLE!!**"

I, AMADO NAVAS, declare that the foregoing is true and correct.

Executed on ____July 21____, 1999.



_____
Amado Navas

The above known to me, and signed before me — July 21, 1999

Notary Public

Orson I. Skorr

3

EXHIBIT A 2

# AFFIDAVIT IN SUPPORT OF PLAINTIFF ANTHONY BAYAD'S CROSS-MOTION FOR SUMMARY JUDGEMENT, AND IN SUPPORT FOR HIS CLAIM AGAINST JOHN CHAMBERS, CARL WIESE AND ANTHONY (TONY) SAVASTANO

I Amado V. Navas have known Mr. Anthony Bayad since 1993 when we both worked at Wellfleet Communications, in Billerica Massachusetts. Our relationship has always been at a professional level, I have had the opportunity and privilege to work closely with Mr. Bayad on several projects, at such times I have seen first hand the caliber of professional skills that Mr. Bayad enjoys; as well as the integrity, honesty and ethics which are strongly built into Mr. Bayad's character.

I witnessed first hand and with my own two eyes the abuse suffered by Mr. Bayad at the hands of agents and management of Lucent Technologies. Mr. Bayad's trust and skills were severely violated by numerous individuals led by Mr. Anthony (Tony) Savastano, and Mr. Carl Weise. Mr. Bayad's knowledge and skills were taken advantage of while he was forced to teach other fellow employees his knowledge of a particular brand of products, which at the time were critical for the success of the company. But when Mr. Bayad asked a simple favor or one of Mr. Savastano's trusted agents, Mr. Bruce Brewer he was insulted and denied the simple training in the matter of Cisco router configuration. At the time Mr. Brewer and one of his trusted agents, Mr. John Staltzer told Mr. Bayad that he could not speak any English therefore he was not good enough to be working for Lucent Technologies. The abuses continue to escalate, turning into physical and mental torture at the hands of agents of Anthony (Tony) Savastano and Lucent. Mr. Bayad was flown to the Lucent regional headquarters in Saint Petersburg, Florida were he was

1

locked up in a room, physically tortured and threatened and finally arrested under an illegal "Baker Act" by the local law enforcement agency acting on the orders of Lucent and Savastano.

Mr. Bayad tried to move forward with his life and career by joining the consulting firm by the name of "International Network Services" or "INS", only to have once again to endure suffering at the hands of a small group of white conspirators led by Anthony Savastano, Carl Weise and others. Mr. Bayad was terminated the first day of his employment with INS, by individuals acting on behalf of Lucent and Savastano, the proof and evidence is that INS was purchased by Lucent Technologies shortly thereafter, through a questionable deal the gave immense wealth to a handful of individuals. Mr. Bayad health and career suffered a tremendous blow, while Savastano was on his way to become a Vice President at Cisco Systems, even though Savastano's knowledge of TCP/IP and data communications was non existent.

The layers of conspiracy against Mr. Bayad are very deep yet. During his litigation against Lucent Technologies, Henri Schadtt, Anthony (Tony) Savastano and others Mr. Bayad was betrayed and sold out by his attorneys, Stephanie Alexander and David Sales who practice in the state of Florida, evidence and proof are the fact that both acted in a very suspicious manner, which clearly violated the Attorney Client trust, since they would extract information from Mr. Bayad, and then fed it to opposing counsel. As well as acting in an obvious incompetent and careless manner during critical stages of the litigation.

Still Mr. Bayad's suffering did not end there. Trying to still move forward with his life and career Mr. Bayad accepted employment with Cisco systems in Massachusetts, while Savastano was still employed and Lucent/INS, shortly thereafter Savastano joined Cisco Systems much to the surprise of Mr. Bayad and Amado Navas, since Savastano's knowledge of TCP/IP, the Internet and its systems was non existent. Savastano's knowledge was on the trade of accounting, and for organizations like AT&T and Lucent that were mainly involved in the manufacture of Telephone Systems. But, there is a piece of evidence that is clear and obvious, Mr. Savastano worked at Wang Laboratories, with individuals that now work at Cisco Systems, including John Chambers. Shortly after Savastano joined Cisco, he traveled to the field sales office in Saint Petersburg, even though he really had no business there, to threaten Amado Navas, and to deliver a message. He told Amado Navas to relay a message to Bayad "….tell that monkey Bayad that his days at Cisco are numbered, my friend Lynn Frazer will take care of him soon, that he and his people need to go back where they came from, ha ha…..".

The very day that Savastano joined Cisco one of his agents, Mr. Dale Roznowski delivered a message to Amado Navas to announce that Savastano had finally arrived at Cisco and his mission was to take care of Bayad, and Navas.

3

The statements I give in this Affidavit, are given on my own free will, and I swear them to be the truth, the whole truth and nothing but the truth, so help me God. And I am prepared to repeat them as testimony in any court of Law.

Witness: Amanda L. Martin

Sworn and subscribed before me this 7th day of March A.D. 2005

_____   _____
Amado Navas                                    Amanda L. Martin

> AMANDA MARTIN
> Notary Public, State of Florida
> My Comm. Expires Apr. 29, 2007
> No. DD206704