UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY BAYAD,                 )
                  Plaintiff,   )
                               )    C.A. No. 05-11005-WGY
        v.                     )
                               )
                               )
BRUCE BASTIAN, ET AL.,         )
                  Defendants.  )

MEMORANDUM AND ORDER RE: SANCTIONS AGAINST PLAINTIFF

YOUNG, D.J.

On April 9, 2007, Judge Saris recused herself from the above captioned matter, and the case was randomly reassigned.  Now pending before this Court is the Defendants' Emergency Motion for Protective Order Terminating Depositions and For Sanctions (#90). This motion (#90) allegedly was prompted after Plaintiff conducted a "three-and-a half hour tirade" as part of a telephonic deposition.[1]  Id. at 1.  Defendants contend that further deposition discovery would be both unsafe and fruitless, and that Plaintiff has engaged in "legalized stalking."  Id. at 2-3.  The motion requests that further discovery be foreclosed and/or that this action be dismissed as a sanction against Plaintiff Anthony Bayad, based on his conduct during the course of the litigation.  By Order (#22) dated January 22, 2007, Judge

_____

[1]The Defendants also allege that Plaintiff illegally made an audio recording of Defendant Celia Harper-Guerra's deposition, without informing the Defendants or the Court Reporter, in violation of Mass. Gen. Laws ch. 272, § 99(C)(prohibiting interception of oral communications and providing for fine and/or imprisonment).  Defendants' Response to Plaintiff's Emergency Motion (#97) at 1.

Saris Stayed further deposition discovery and directed Plaintiff respond to the Defendants' motion by February 6, 2007. Although Plaintiff has made numerous submissions since that date, he has not directly responded to the Defendants' allegations.

Upon review of the numerous pleadings filed by the Plaintiff, and the Defendants' responses to those pleadings, this Court finds that Defendants' Emergency Motion for Protective Order Terminating Depositions and For Sanctions (#90) is well-founded under the circumstances presented in this case. Further, for the reasons set forth below, the Court finds that the Plaintiff is an abusive and vexatious litigant, and that only the severest of sanctions--*i.e.*, dismissal with prejudice and an Order enjoining Plaintiff from re-litigating issues raised in this case--will serve as a sufficient deterrent to the Plaintiff to curb his abusive behavior. The Court further finds that a dismissal with prejudice is a necessary measure to secure the safety of the Defendants, their counsel, and the Court.

It is abundantly clear from his filings that Plaintiff is dissatisfied with the way his employment discrimination litigation is progressing.[2] Although most of Plaintiff's

---

[2]Plaintiff's employment discrimination claims based on his Moroccan/Arab descent, have been the subject of much litigation spanning over a decade, in this Court and others. Plaintiff's related discrimination case in this Court was dismissed on the merits, upon the adoption of the Report and Recommendation of Magistrate Judge Bowler, on February 17, 2006. See Order (#135) in Bayad v. Chambers, et al., C.A. 04-019468-PBS aff'd, Bayad v.

2

pleadings are not entirely coherent or lucid, those pleadings, in
conjunction with his actions, reveal a heightened level of
agitation, hostility, and maliciousness directed not only toward
the Defendants, but to defense counsel and to this Court.   This
level of hostility has escalated steadily throughout the
litigation to an intolerable point.   Because Plaintiff is
appearing *pro se* in this action, Judge Saris has afforded him
much leeway, presumably recognizing that he lacks legal training,
does not fully understand pretrial proceedings, and that the
subject matter of the litigation (racial discrimination) invokes
sensitive and/or acrimonious feelings in him.   However,
Plaintiff's *pro se* status cannot shield him from the consequences
of outrageous and extreme litigation practices, and this Court
cannot sit idly by and watch as the hostility unfolds further.
Rather, affirmative measures must be taken at this juncture, for
the reasons set forth below.

I.    Conduct Toward Defendants and Defense Counsel

The Court notes that in virtually every pleading filed by
Plaintiff, he consistently makes a variety of personal insults
directed to the Defendants and their counsel, to the point of
harassment.[3]   At this point, the Court finds that these pleadings

_____

Chambers, et al., No. 06-1396 (1st Cir. Nov. 8, 2006)(Judgment,
#142).

[3]For instance, in a recent filing, Plaintiff accused defense
counsel of committing perjury and fraud, because they obtained a

impermissibly strain the Defendants' ability to defend this action, and/or that the Defendants are otherwise prejudiced in having to file Motions to Strike, Memoranda, Affidavits and Declarations, or other responses in order to address Plaintiff's vexatious allegations.

Moreover, this Court finds significant the fact that Plaintiff's actions have gone beyond the mere written attacks as contained in court filings or a deposition transcript, and that Plaintiff has, in fact, taken affirmative actions outside the Court arena which were designed solely to harass defense counsel. For instance, defense counsel claims that before Christmas 2006,

---

rough deposition transcript from the court reporter. Plaintiff states:

> I applaud as I am laughing at the misconduct and fraud by these two clown attorneys who made this court intentionally without jurisdiction when they think this litigation is a Disney movie because I, Anthony Bayad, is a Monkey and Flying Carpet, Ali Baba and the Magic Lamp.

Plaintiff's Response to Emergency Motion (#90) for Sanctions (#94) at 3.  See also Notice to Attorneys (#71) (stating Plaintiff does not like Defendants or their attorneys); Motion Demanding Court to Grant Sua Sponte all Relief Stated in the Complaint (#79) (profanity in caption). It is also noted that on February 9, 2005, in the related case Bayad v. Chambers, et al., C.A. 04-019468-PBS, Magistrate Judge Bowler granted the Defendants' Motion for Protective Order (#54), which prohibited Plaintiff from directly or indirectly communicating with employees of Cisco Systems, Inc., except for its outside counsel. The Protective Order was based on Defendants' complaints that Plaintiff made repeated and harassing telephone calls, and that he left voice-mail messages that Defendants considered "harassing, upsetting and burdensome." Id.

4

he received in the mail a box which had Plaintiff's name and address in the "from" portion of the mailing label. The box was decorated with pictures of cartoon characters, Mickey Mouse and Huey, Dewey, and Louie, to which handwritten dialogue balloons had been added. See Affidavit of Bruce Falby in Support of Defendants' Motion to Strike and For Protective Order Terminating Discovery (#82) at 2. Counsel contends that these figures are meant to represent defense counsel. Counsel also alleges the box contained an enormous baby pacifier. Id. Given the filing by Plaintiff in which he analogizes this case with Disney movies, see Plaintiff's Response to Emergency Motion (#90) for Sanctions (#94) at 3, this Court finds defense counsel's assertions to be credible, and further finds the Plaintiff's conduct to be reprehensible and sanctionable.

II.   Conduct Toward the Court

Apart from the intolerable pleading practices and actions directed toward the Defendants and/or their counsel, this Court finds that Plaintiff has also crossed the line with respect to his pleadings directed toward this Court.

On September 14, 2006, Plaintiff was advised that "hostile or agitated communications with Court personnel will no longer be tolerated..." Procedural Order (#58) at 2. He was also warned that he could be subject to sanctions, including dismissal of this action. Id.

5

Despite stern warnings, Plaintiff has taken his wrath out on Magistrate Judge Marianne B. Bowler, in a variety of ways, and the record is replete with his dissatisfaction with Magistrate Judge Bowler's rulings in connection with the prior litigation and this action.[4]  For instance, he has accused her of conspiring with defense counsel Bruce Falby and others, to direct "their gang"--the United States Marshals to search Plaintiff's family home.  He accused Magistrate Judge Bowler of talking to his mother on the phone, and directing the United States Marshal to "sexually rape her son "Moussa Bayad" for two years then kidnapped him to main land[.]"  Plaintiff's Response to Emergency Motion (#90) for Sanctions (#94) at 6.  He then alleged that Magistrate Judge Bowler "spoke to my ill mother abused her U.S. Marshal, the Men of Magistrate Bowler and Bruce Falby, Et Al., Turned the Bayad Family 'House into Whorehouse-My Naked and Very Ill mother as the Madame of the Borthel [sic]-Red District of "Amsterdam[.]" Id. at 7.

Because Plaintiff is proceeding pro se, this Court might have overlooked such bizarre assertions, were it not for Plaintiff's further egregious (and possibly criminal) conduct, wherein he made indirect threats against a judicial officer.

---

[4]Plaintiff has assumed, erroneously, that adverse rulings in this action have been made by Magistrate Judge Bowler.  In fact, no matters in this action have been referred to Magistrate Judge Bowler, nor has she made any rulings directly or indirectly in this action.

6

More specifically, the threat was that Magistrate Judge Bowler

could be kidnaped and executed.  In support of Plaintiff's motion

calling for recusal by Magistrate Judge Bowler, Plaintiff stated:

> It is my duty as an American and citizen of this land
> to advise you, you Hon. Patti B. Saris, the Court, to
> distance your self from this women, Marianna [sic] B.
> Bowler.... Also, it is my duty to advise this honorable
> Judge, Patti B. Saris that this woman called Magistrate
> Bowler has made a lot of Moroccan people angry with her
> criminal act against my family, My Brother Moussa Bayad
> who dated Amy Crowley, and who has been incarcerated by
> this Court, Magistrate Judge Marianna [sic] B. Bowler
> for her personal deals, such woman has incarcerated my
> brother for about two years and had him raped in such
> duration of time and throw visits to him at the
> Plymouth Corr. Facility that is run by her
> friends/family....Here, your honor, you must pay
> attention to this, my mother told the family all
> Americans that when she dies to be flown to Morocco and
> to be given to the United States Embassy located in
> Rabat, Morocco and to tell the U.S. Ambassador and the
> Moroccan People to look at her stomach and her death
> body of my mother that was tortured by this women,
> Marianna [sic] B. Bowler and her friend Bruce Falby,
> et, [sic] al., and to show them her picture of this
> criminal [woman]...."

Notice of Motion Respectfully Demanding the Hon. Patti B. Saris
to Recuse Marianne Bowler from this Case... (#87) at 1-2.

Plaintiff continues:

> ...Knowingly Morocco have a constitution in place
> prohibiting insult and defamation on the king and his
> kingdom and his people, it is said that whenever any
> person engage in defamation and insulting the Royal
> Family, the king Mohammed VI as the magistrate Judge
> and her girl fried of Boston Globe are doing sending
> message that a "Moroccan Man is Terrorist["] and the
> fact of the matter she is generalizing the whole
> country of Morocco, the Government of Morocco may
> initiated [sic] a secret order to bring the magistrate
> Judge Marianna [sic] B. Bowler and her friend to
> justice when they are vacationing in Europe, Italy or
> Monaco-Monte Carlo; those who insult the King and his

<u>family have been brought to justice in Morocco to face</u>
<u>execution.</u> Charlestown Tangerine-restaurant or her
girlfriend and her boyfriend that I spent once a new
year with them at the Ritz Carlson [sic] Hotel off
Washington Street, they can help the Magistrate Judge
understand such a fact-such a law is in effect in
Morocco.

<u>Id.</u> at 3-4 (emphasis added).[5]

Additionally, the Plaintiff has also referred twice to Judge

Saris's "4 beautiful children." <u>See</u> Notice of Motion [Demanding

Recusal of Magistrate Judge Bowler] (#87) at 3; Plaintiff's

Affidavit in Support of Complaint (#84) at ¶ 6.  While the

context of the comments do not expressly indicate any threat,

they are nevertheless disconcerting and highly inappropriate, to

---

[5]Section 115 of Title 18 provides for the crime of
influencing, impeding, or retaliating against a Federal official
by threatening or injuring a family member.  Section 115
provides, in relevant part:

(a)(1) Whoever--

(A) assaults, kidnaps, or murders, or attempts or conspires to
kidnap or murder, or threatens to assault, kidnap or murder a
member of the immediate family of a United States official, a
United States judge, a Federal law enforcement officer, or an
official whose killing would be a crime under section 1114 of
this title; or

(B) threatens to assault, kidnap, or murder, a United States
official, a United States judge, a Federal law enforcement
officer, or an official whose killing would be a crime under such
section, with intent to impede, intimidate, or interfere with
such official, judge, or law enforcement officer while engaged in
the performance of official duties, or with intent to retaliate
against such official, judge, or law enforcement officer on
account of the performance of official duties, shall be punished
as provided in subsection (b).

18 U.S.C. § 115(a)(1)(A)-(B).

say the least.

Recently, Plaintiff submitted additional pleadings which, in this Court's view, also contain veiled threats. Specifically, in his Supplemental Filing of Testimony of the Fire Department (#112), Plaintiff states:

> Respectfully, in 20 or 30 years all Europe will be multiracial and America will go back to civil war-- white with Spanish and black--the minorities and we are seen it right now that our young men and women--the minorities, all carry guns and all are killing them selves [sic], here in Boston, because they do not have a job--all unemployed as I, me, the Plaintiff Bayad, 10 year unemployed, but Carl wise [sic] is not unemployed and protected and Tony Savastano is not unemployed and he is protected....

Supplemental Filing of Testimony of the Fire Department (#112) at 2 (filed April 2, 2007).

Further, in his Supplemental Filing of Sworn Deposition of Tony Savastano and Carl Wiese (#110), he states:

> I the plaintiff is unemployed for about 10 years because of Savastano and Wiese [L]ucent Technologies and now Cisco Systems. I have nothing to say that what they have done to me in Florida and they got away with it--will not going to happen here without I cause this case to go to the senate <u>and I will make lot of people regret what they have done to me here in this litigation by playing with me and denying and denying all my motions without justification under the law</u> and letting these attorneys playing with the systems and let not forget what is going on at the Justice Department. Fraud is not good because it is illegal. Please who ever is presiding use the rain check for another case and easy stupid minority who does not know better. Thank you[.]"

Supplemental Filing of Sworn Deposition of Tony Savastano and Carl Wiese (#110) at 1. (emphasis added).

9

III. Severe Sanctions are Warranted Based on Extreme Misconduct

The extreme and outrageous filings and actions by the
Plaintiff as outlined above are merely illustrations and are by
no means a complete recitation of Plaintiff's behavior throughout
this litigation. Based on all of the above, this Court agrees
with the Defendants that Plaintiff's behavior has become more and
more hazardous as this litigation has unfolded, culminating in a
veiled threat of violence. Accordingly, this Court finds that
sanctions are warranted against the Plaintiff.

A. Authority to Impose Sanctions

Under Rule 11, the Court may impose sanctions on an
unrepresented party if he or she submits a pleading for an
improper purpose or if the claims within it are frivolous or
malicious. See Fed. R. Civ. P. 11(b)(1),(2)[6]; Eagle Eye Fishing

<hr/>

[6]Rule 11 provides in pertinent part:

(b) Representations to Court. By presenting to the court
(whether by signing, filing, submitting, or later
advocating) a pleading, written motion, or other paper, an
attorney or unrepresented party is certifying that to the
best of the person's knowledge, information, and belief,
formed after an inquiry reasonable under the
circumstances,--

    (1) it is not being presented for any improper
purpose, such as to harass or to cause unnecessary
delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions
therein are warranted by existing law or by a
nonfrivolous argument for the extension, modification,
or reversal of existing law or the establishment of new
law;
(3) the allegations and other factual contentions have
evidentiary support or, if specifically so identified,

10

Corp. v. Department of Commerce, 20 F.3d 503, 506 (1ˢᵗ Cir. 1994)
(*pro se* parties, like all parties and counsel, are required to
comply with the Federal Rules of Civil Procedure); Pronav Charter
II, Inc. v. Nolan, 206 F. Supp. 2d 46, 53 (D. Mass. 2002) (Rule
11 applies to *pro se* litigants) (citation omitted).  Rule 11
exists, in part, to protect defendants and the Court from
wasteful, frivolous and harassing lawsuits, and provides for
sanctions as a deterrent.  See Navarro-Ayala v. Nunez, 968 F.2d
1421, 1426 (1ˢᵗ Cir. 1992).

In addition to the authority under Rule 11, section 1927 of
Title 28 provides for the imposition of costs and expenses,
including attorneys' fees, against a person for unreasonable and
vexatious litigation.  Section 1927 states:

> Any attorney or other person admitted to conduct cases
> in any court of the United States or any Territory
> thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the
> court to satisfy personally the excess costs, expenses,
> and attorneys' fees reasonably incurred because of such
> conduct.

28 U.S.C. § 1927.

Apart from authority under Rule 11 and section 1927, a

---

> are likely to have evidentiary support after a
> reasonable opportunity for further investigation or
> discovery;
> (4) the denials of factual contentions are warranted on
> the evidence or, if specifically so identified, are
> reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11.

11

district court has the inherent power to manage its own
proceedings and to control the conduct of litigants who appear
before it through orders or the issuance of monetary sanctions
for bad-faith, vexatious, wanton or oppressive behavior.  See
Chambers v. Nasco, Inc., 501 U.S. 32, 46-50 (1991); accord United
States v. Kouri-Perez, 187 F.3d 1, 6-8 (1st Cir. 1999) (same);
John's Insulation, Inc. v. L. Addison & Assocs., 156 F.3d 101,
109 (1st Cir. 1998) (district court did not abuse its discretion
in ordering dismissal of complaint and default judgment as a
sanction for plaintiff's protracted delay and repeated violation
of court's order under inherent powers rather than Rule 41);
Alexander v. United States, 121 F.3d 312, 315-316 (7th Cir. 1997)
(sanctioning inmate in the amount of $500 pursuant to court's
inherent authority for repetitious, meritless litigation).
Vexatious conduct occurs where a party's actions are frivolous,
unreasonable or without foundation.  Local 285 Service Employees
Intern'tl v. Nontuck Resources Assoc., Inc., 64 F.3d 735, 737
(1st Cir. 1995); accord Alexander, 121 F.3d at 315-316 (sanction
appropriate when objectively unreasonable litigation-multiplying
conduct continues despite a warning to desist).  Subjective bad
intent is not necessary to justify an award for vexatious
conduct, Local 285 Service Employees Intern'tl, 64 F.3d at 737,
and bad-faith behavior in this context is equivalent to bringing
suit on a frivolous claim, meaning a claim that no reasonable

12

person could suppose to have any merit.  Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000).

This inherent authority includes the power to enjoin litigants who abuse the court system by filing groundless and vexatious litigation.  Elbery v. Louison, 201 F.3d 427 (1st Cir. 1999) (*per curiam*) (citing Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993) for the proposition that "[f]ederal courts... possess discretionary powers to regulate the conduct of abusive litigants" and Castro v. United States, 775 F.2d 399, 408 (1st Cir. 1985) (*per curiam*) for the power to enjoin a party from filing "frivolous and vexatious lawsuits" pursuant to such authority)).

### B.   Appropriate Sanctions in This Action

In light of the above, and under the authority of Rule 11 and the Court's inherent authority to impose sanctions, serious consideration has been given as to what the most appropriate sanction is under the circumstances described herein.  The Court finds that a Dismissal with prejudice and, concomitantly, an Order enjoining Plaintiff from re-litigating this action against any of the Defendants or against defense counsel, is the most appropriate course of action, and indeed, it is considered the only recourse available to the Court, based on what can only be

13

characterized as extreme misconduct by the Plaintiff.[7]

The Court is mindful that a the sanction of dismissal should be limited to extreme cases. Benitez-Garcia v. Gonzalez-Vera, 468 F.3d 1, 4 (1st Cir. Nov. 3, 2006)(except for contempt,

---

[7]The United States Court of Appeals for the First Circuit ("First Circuit") has recognized that in cases involving extreme misconduct, dismissal is an appropriate sanction. The First Circuit stated:

> To be sure, dismissal orders typically are measures of last resort, reserved for extreme cases. But we have held that a party's disregard of a court order is a paradigmatic example of extreme misconduct. See Young, 330 F.3d at 81; Tower Ventures, 296 F.3d at 46. Using dismissal as a sanction in such a case recognizes the court's strong interest in maintaining discipline and husbanding scarce judicial resources; after all, such a sanction not only serves to punish the noncompliant litigant but also acts as a deterrent to those who might be tempted to emulate a bad example. See Nat'l Hockey League, 427 U.S. at 643, 96 S.Ct. 2778.

Torres-Vargas v. Pereira, 431 F. 3d 389, 393 (1st Cir. (Puerto Rico) December 19, 2005). The First Circuit further stated:

> It is settled law that a party flouts a court order at his peril. Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). Where... the court appropriately forewarns a plaintiff of the consequences of future noncompliance with an unambiguous order, the court need not exhaust less toxic sanctions before dismissing a case with prejudice. See, e.g. Young, 330 F.3d at 82; HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988).

Torres-Vargas v. Pereira, 431 F. 3d at 393. While the September 2006 Order of the Court warned Plaintiff against hostile communications with Court personnel, the Court does not rely on this as the basis for dismissal, because the Order is not unambiguous. However, the Court likens the flouting of a Court Order to the abhorrent conduct of the Plaintiff during the course of litigation.

14

dismissal is the harshest sanction). "[Dismissal as a sanction]
is reserved for cases of "extremely protracted inaction (measured
in years), disobedience of court orders, ignorance of warnings,
contumacious conduct, or some other aggravating circumstance."
Id. citing Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.
1987). A dismissal should not be with prejudice unless "a
plaintiff's misconduct is particularly egregious or extreme."
Benitez-Garcia v. Gonzalez-Vera, 468 F.3d at *5 quoting Benjamin
v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 107 (1st Cir. 1995).
Such is the case here.

The Court has considered the several factors as outlined in
Benitez-Garcia, 468 F.3d at *5 and in the recent First Circuit
case, Malot v. Dorado Beach Cottages Associates, 2007 WL 549110
(1st Cir. Feb. 23, 2007)(discussing the use of dismissal as a
sanction) in finding that dismissal with prejudice, and an Order
enjoining him from re-asserting the issues raised in this action,
in any way, shape or form, are the only appropriate sanctions.[8]
First, the Court finds that the abusive behavior is not an

---

[8]
These factors include, but are not limited to
considerations of "the severity of the violation, the legitimacy
of the party's excuse, repetition of violations, the
deliberateness *vel non* of the misconduct, mitigating excuses,
prejudice to the other side and to the operations of the court,
and the adequacy of lesser sanctions, as well as a procedural
dimension affording the litigant an opportunity to demonstrate
good cause for the non-complying behavior. Benitez-Garcia v.
Gonzalez-Vera, 468 F.3d 1, 5 (1st Cir. Nov. 3, 2006).

15

isolated incident; rather, there is a demonstrated pattern of
abusive and vexatious pleadings on a continual basis. Second,
Plaintiff had been warned previously that hostile communications
could lead to sanctions, yet has ignored this warning. Third,
Plaintiff has been given an opportunity to show cause why he
should not be sanctioned, and has failed to provide any excuse
sufficient to overcome the Court's findings. Fourth, Plaintiff
alleges he has little funds available. Thus, a monetary sanction
does not, in practical terms, provide a sufficient deterrent to
ensure compliance with any future Court Orders in connection with
this litigation. Fifth, as noted above, Defendants are harmed
and unduly prejudiced by Plaintiff's conduct in connection with
their ability to defend and/or in expending their resources to
combat Plaintiff's vexatious filings. This prejudice would
likely continue if this action proceeded further. Sixth,
Plaintiff's pleading practices have not advanced the litigation
in any meaningful way, and have put a strain on the limited
judicial resources of the Court. The continuation of this case
would only serve to drain the Court's resources further, to the
detriment of the Defendants in this action and other litigants
appearing in this Court. Seventh, in view of the repeated
harassment to defense counsel, and threats to judicial officers,
Plaintiff's conduct constitutes "aggravated circumstances"
amounting to extreme misconduct, and he must be sent a clear

16

message that a litigant may not pursue claims in this fashion. Finally and perhaps most importantly, given the litigation history of the Plaintiff, not only in this case but in his earlier case as well, combined with Plaintiff's own admissions that he is not capable of stopping his pursuit, and that he has difficulties dealing with "White People,"[9] the Court finds it is not likely that any further Orders directed to the Plaintiff regarding the conduct of the litigation would be obeyed.   The Court further finds that the risk of future harm to the Defendants, their counsel, and/or to judicial officers or Court personnel outweighs any further attempts by this Court to set parameters in this litigation.   In short, the Court seriously doubts whether Plaintiff can conform his behavior, or tailor his pleadings, so that this action might proceed in a meaningful and safe fashion.

---

[9]By Plaintiff's own admission, he is unable to control his behavior.   On November 6, 2006, Plaintiff stated:

Unless you [sic] honor do not stop it is not going to stop and I am not going to let my right for the third times [sic] be violated.   Sorry respectfully.

Motion to Consider/Admit Order Dated November 10, 2005 in CA 04-40146-FDS (#62) at 4.

More recently, Plaintiff conceded: "...I do have a problem expressing my self and I do have problem interacting with White people because what defendant have done to me Lucent Technologies...."   Emergency Motion Respectfully Demanding Sua Sponte the Court Examination of the Authentic Deposition Taken on January 19, 2007 (#93) at 1.

17

ORDER

Based on all of the above, it is hereby Ordered that:

1.  Defendants' Motion for Sanctions (#90) is ALLOWED;

2.  All pending motions in this action are hereby terminated as
    moot in view of this Memorandum and Order for Dismissal;[10]

3.  This action is DISMISSED in its entirety with prejudice, as
    a sanction against the Plaintiff;

4.  Plaintiff is hereby ENJOINED from re-litigating this action,
    or any of the issues raised in this action, either directly
    or indirectly, against any of the Defendants or against
    Defense counsel, absent permission of a judicial officer of
    this Court, upon a motion and good cause shown.  A copy of
    this Memorandum and Order shall be submitted along with any
    Motion for Leave to Institute Lawsuit or any other pleading
    filed by Plaintiff.  The Clerk is directed to return any
    non-complying pleading to the Plaintiff, and no action shall
    be taken by the Court with respect to any document which
    does not strictly adhere to this Order.

SO ORDERED.

William A. Young

WILLIAM G. YOUNG
UNITED STATES DISTRICT JUDGE

DATED: April 13, 2007

---

[10] These include: Plaintiff's Motion Respectfully Demanding
Sua Ponte the Court Examination of the Authentic Deposition Taken
on January 19, 2007 (#93); Plaintiff's Motion for Hearing (#96);
Plaintiff's Motion for Judgment on the Pleadings (#99) and
Defendants' Motion to Strike (#106).

18